THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, LLC,<br>        Plaintiff,<br><br>        v.<br><br>KENNETH R. LAY, in his official capacity as<br>Secretary of the North Carolina Department of<br>Revenue,<br>        Defendant. | No. 2:10-cv-00664-MJP<br><br>**MOTION TO INTERVENE**<br><br>**NOTE ON MOTION CALENDAR:<br>JULY 9, 2010**<br><br>**Oral Argument Requested** |
| JANE DOE 1, JANE DOE 2, JANE DOE 3,<br>JANE DOE 4, JANE DOE 5, JANE DOE 6,<br>AND CECIL BOTHWELL,<br>        Plaintiffs-Intervenors,<br><br>        v.<br><br>KENNETH R. LAY, in his official capacity as<br>Secretary of the North Carolina Department of<br>Revenue, and AMAZON.COM, LLC,<br>        Defendants in Intervention. | |

MOTION TO INTERVENE --
No. 2:10-cv-00664-MJP

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................1

ARGUMENT ....................................................................................................................4

    I.      MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT. ..............4

          A.     The Motion To Intervene Is Timely...................................................5

          B.     Movants Have Significant First and Fourteenth Amendment
                 Interests in Ensuring That Their Amazon Purchasing Records Are
                 Not Disclosed...................................................................................5

          C.     The Disposition of This Lawsuit May Irreparably Impair Movants'
                 Ability to Protect Their Interests.......................................................7

          D.     The Existing Parties May Not Adequately Represent Movants'
                 Interests in This Litigation. ...............................................................7

    II.     MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION. ........11

CONCLUSION.................................................................................................................12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF AUTHORITIES

**Cases**

*Cal. Hosp. Ass'n v. Maxwell-Jolly*, No. CV 09-3694 CAS, 2009 WL 4120725
(C.D. Cal. Nov. 23, 2009).........................................................................................8

*Cent. Valley Chrysler-Jeep Inc. v. Witherspoon*, No. CV-F-04-6663 REC/JLO,
2005 U.S. Dist. LEXIS 26536 (E.D. Cal. Oct. 20, 2005).....................................10

*Coal. for a Sustainable Delta v. Carlson*, No. 1:08-CV-00397 OWW, 2008 WL
2237038 (E.D. Cal. May 29, 2008)..........................................................................9

*Conserv. Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39 (1st Cir.
1992) .........................................................................................................................8

*County of Fresno v. Andrus*, 622 F.2d 436 (9th Cir. 1980) ...........................................5

*Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489 (9th Cir. 1999)..............10

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*,
Misc. No. 09-118, 2009 WL 3495997 (RCL) (D.D.C. Oct. 26, 2009)...................6

*In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D.
570 (W.D. Wis. 2007)...............................................................................................6

*In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr.
1599 (D.D.C. 1998) ..................................................................................................6

*Lamont v. Postmaster General*, 381 U.S. 301 (1965)...................................................7

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)..........................5

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983)................................9

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993).....................................................5

*Smuck v. Hobson*, 408 F.2d 175 (D.C. Cir. 1969) ....................................................10

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977)...........11, 12

*Stanley v. Georgia*, 394 U.S. 557 (1969) ....................................................................6

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)........ passim

*Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044 (Colo. 2002).......................6

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ........................................8

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004) ..............................................5

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002) ........................................11

*United States v. Rumely*, 345 U.S. 41 (1953) ............................................................................7

*Venegas v. Skaggs*, 867 F.2d 527 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990) ........................12

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425
    U.S. 748 (1976)......................................................................................................................6

**Statutes**

18 U.S.C. § 2710....................................................................................................................6, 11

28 U.S.C. §1331..........................................................................................................................11

**Rules**

Fed. R. Civ. P. 24 ..........................................................................................................1, 4, 11, 12

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Pursuant to Federal Rules of Civil Procedure 24(a), Jane Does 1-6 and Cecil Bothwell ("Movants") move for leave to intervene as of right as plaintiffs in this action in order to protect their constitutional rights to free speech and privacy.  In the alternative, Movants request permission to intervene under Fed. R. Civ. P. 24(b).

Movants are individuals whose personal information and constitutional rights to privacy and freedom of expression are directly at issue in this lawsuit.  Because this motion is timely, Movants' fundamental rights are at stake, disposition of this lawsuit will impair their ability to protect those rights, and Movants have unique, personal interests in the information that is the subject of this lawsuit which are different from the parties' interests, intervention is appropriate to ensure that Movants' constitutional rights will not be compromised in the ongoing tax dispute between Defendant and Amazon.[1]

## FACTUAL BACKGROUND

In December 2009, as part of a tax audit of Amazon, the North Carolina Department of Revenue ("DOR") sent an information document request to Amazon asking that it provide "all information for all sales to customers with a North Carolina shipping address by month in an electronic format," for all dates between August 1, 2003 and February 28, 2010.  Intervenors' Compl., attached as Exh. A, ¶¶ 39-40.  In response, Amazon provided DOR with detailed purchase records for the relevant time period, including Amazon's standard product code for each item, which reveals detailed information such as the name, title and brand of the item purchased.  *Id.* ¶¶ 41-42.  Amazon did not, however, disclose the customer name or address that corresponds to each purchase record.  *Id.* ¶ 44.

DOR sought to force Amazon to provide that information.  *Id.* ¶ 45.  In March 2010, DOR sent Amazon an information request stating that Amazon had failed to provide "Bill to Name; Bill to Address (Street, City, State, and Zip); Ship to Name; Ship to Address (street);

---

[1] Amazon does not consent to this motion.  Movants have contacted Defendant Lay, but he has not indicated his position on this motion.

MOTION TO INTERVENE -- 1
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Product/item code or description," and that if it did not provide that information, DOR would issue a summons against Amazon, which would allow DOR to initiate a summary proceeding against Amazon to force it to turn over the information.  *Id.* ¶¶ 45-46.

The information demanded by DOR implicates the fundamental rights of Amazon's customers, including Movants.  If DOR were to receive this information from Amazon, DOR would be able to combine that information with the detailed product codes that it already has to learn which North Carolina customers, including Movants, purchased which specific books, movies, music, and other expressive and private items.  *Id.* ¶¶ 60-61.  That prospect is especially distressing to Movants, whose customer records reveal profoundly personal and private details about their intimate family problems, their religious and political beliefs, and their medical and mental health issues.  *Id.* ¶¶ 68 –122.  For example:

- Jane Doe 1,[2] an engineer, has purchased numerous self-help books from Amazon in order to file for divorce and to obtain a restraining order for herself and her child against her abusive spouse.  *Id.* ¶¶ 68-70.  Her experience was traumatizing and life-changing for her, and she does not want the State or anyone else to know about her private family struggles.  *Id.* ¶ 71.

- Jane Doe 2, General Counsel of a global firm, has purchased books with overt political leanings, like Michael Moore's "Dude, Where's My Country?" and Al Franken's "Lies and the Lying Liars Who Tell Them: A Fair and Balanced Look at the Right."  *Id.* ¶ 78.  She does not want the State to know about her political leanings or the other private details of her life that can be pieced together from the over 200 items that she has purchased from Amazon since 2003.  *Id.* ¶¶ 78-79.

- Jane Doe 3, a writer for a software company, has purchased books about atheism, as well as books on saving her marriage and on mental health conditions afflicting

---

[2] Use of the pseudonym "Jane Doe" or gender pronouns does not signify that Jane Does 1-6 are male or female.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

- Jane Doe 4, a student at the University of North Carolina Law School, has received books from Jane Doe 5, her parent (and a Florida resident), which may be viewed as controversial, such as "Lies the Government Told You: Myth, Power, and Deception in American History" and "Obama Zombies: How the Liberal Machine Brainwashed My Generation." *Id.* ¶ 93.  She aspires to work in a legislative or public policy capacity in the future, and she does not want the State or anyone else to judge her based on what she has been reading. *Id.* ¶ 94. Jane Doe 5, an accountant, does not want the subject of her conversations with her child or the potentially controversial books she purchased revealed to the State or to anyone else. *Id.* ¶¶ 102-103.

- Jane Doe 6, a retired lawyer, has purchased books on potentially sensitive and revealing matters, such as "The Stages of Meditation," by the Dalai Lama. *Id.* ¶ 107.  She does not want the private details of her reading history revealed to the State or to anyone else. *Id.* ¶ 108.

- Cecil Bothwell, an elected member of the Asheville City Council, has purchased expressive items from Amazon and sold books he has written and published through Amazon. *Id.* ¶ 111.  As a public official who knows that anything he purchases can become political fodder, he does not want the State or anyone else to learn which items he has purchased. *Id.* ¶¶ 113-116.  He also does not want the State to know who purchases his books, which concern potentially controversial and sensitive subjects. *Id.* ¶ 116.

Given their purchases and the adverse effect that disclosure of those purchases could have on their personal relationships, family lives, reputations and careers, Movants are

understandably anxious about the State obtaining records of which items they have been reading, viewing, or purchasing.  Despite issuing a new request that does not now seek customer information, DOR has refused to acknowledge that it is not entitled to this information and has expressly reserved the right to demand such information.  It has also refused to destroy or to return the detailed purchasing information that it still has in its possession.

If DOR were to obtain information about which specific items Movants have purchased or received from Amazon, it would chill Movants from purchasing items on Amazon, especially controversial, personal and sensitive items.  *Id.* ¶¶ 63, 76, 80, 90, 95, 105, 109, 121.  DOR has issued similar information requests to other websites and out-of-state businesses.  *Id.* ¶¶ 52-53.  DOR's policy and practice of issuing broad information requests that encompass private and expressive information, if permitted to be continued, would also make Movants seriously consider whether they can purchase such items over the Internet at all.  *Id.* ¶ 65.  Movants seek to intervene in this lawsuit to protect their rights to keep this information private and to ensure that their rights will not be compromised in the future.

## ARGUMENT

## I.     MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT.

Rule 24(a), governing intervention as of right, is construed "liberally in favor of potential intervenors."  *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).  The decision whether to allow intervention is "guided primarily by practical considerations, not technical distinctions."  *Id.* (internal quotation marks omitted).  In considering this motion to intervene, the Court must accept all well-pleaded allegations in Movants' proposed pleadings.  *Id.* at 819-20.

The Ninth Circuit has adopted a four-part test to resolve applications for intervention as of right:

(1) [T]he application for intervention must be timely; (2) the applicant must have 'a significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately

represented by the existing parties in the lawsuit.

*Id.* at 817 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)).

Movants meet each of these requirements.

### A.      The Motion To Intervene Is Timely.

This Motion is timely because the litigation is still in its infancy, no party will be prejudiced by intervention at this time, and Movants have deferred intervening only long enough to ascertain whether their intervention would be necessary to protect their rights.  *See United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (weighing three factors in determining timeliness:  the stage of the proceeding, the prejudice to other parties, and the reason for and length of the delay).  Defendant has yet to answer the Complaint, and no substantive motions have been filed.  Permitting Movants to intervene to protect their interests at this stage will, thus, neither delay adjudication of the action nor prejudice Amazon or Defendant.  *See Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (affirming district court's determination that application filed at outset of litigation is timely).[3]

### B.      Movants Have Significant First and Fourteenth Amendment Interests in Ensuring That Their Amazon Purchasing Records Are Not Disclosed.

Movants have a "significant protectable interest" at stake in this action.  To satisfy this factor, "[i]t is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue."  *Sierra Club*, 995 F.2d at 1484.  The interest test is, therefore, "a threshold one, rather than the determinitive criterion for intervention."  *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980).

At the heart of this lawsuit are the customer records of Movants and other individual Amazon customers.  Movants have clear First and Fourteenth Amendment rights to prevent that

---

[3] Movants notified Amazon and Defendant of their intent to intervene right after the lawsuit was filed.  Movants have waited to file this request for intervention until now in order to attempt to negotiate a resolution with the parties that would eliminate the need for intervention.  Those efforts have now proven unsuccessful.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

information from being obtained by the State.[4]  Courts have uniformly held that similar government requests for expressive information about its citizens, such as which books people are reading or which movies they are watching, implicate individuals' constitutional rights to anonymity and free expression.  *See, e.g.*, *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, Misc. No. 09-118, 2009 WL 3495997 (RCL), at \*5-9 (D.D.C. Oct. 26, 2009) (denying motion to compel subpoena for the identities of customers who obtained specific movies through a website); *In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D. 570, 572-73 (W.D. Wis. 2007) (holding that a grand jury subpoena seeking information about the identities of book buyers raises First Amendment concerns); *In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr. 1599, 1600 (D.D.C. 1998) (holding that a subpoena seeking titles of books purchased by Monica Lewinsky implicates the First Amendment);[5] *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) (holding that search of bookseller's customer purchase records necessarily intrudes into areas protected by the First Amendment).  Those decisions are grounded in the Supreme Court's recognition that the First Amendment protects the right of individuals to receive information and ideas.  *See, e.g.*, *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, *Inc.*, 425 U.S. 748, 757 (1976) (recognizing the First Amendment right to receive information and ideas); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("[The] right to receive information and ideas, regardless of their social worth … is fundamental to our free society.").

Movants' allegations illustrate why the First Amendment prohibits government requests for information about expressive choices.  Movants' purchase records reveal intimate information about their private family struggles, political and religious beliefs, and medical and mental health issues.  Intervenors' Compl. ¶¶ 69-71, 73, 78, 84-89, 93, 101, 107, 116.  Movants would be chilled from making similar purchases in the future from Amazon and from other

---

[4] Movants also have rights under the Video Privacy Protection Act, 18 U.S.C. § 2710, which protects against the disclosure of customer records relating to video or audiovisual materials.

[5] A copy of this decision is attached as Exhibit B.

websites if they knew that their purchase records would be handed over to the government, and many would simply choose not to purchase those items from Amazon or from anyone.  *Id.* ¶¶ 76-77, 80-81, 90-91, 95-96, 105-06, 109-110, 121-22.  *See, e.g., Lamont v. Postmaster General*, 381 U.S. 301, 307 (1965) (invalidating requirement that addressees must file written request with postal service to receive "communist political propaganda" through the mail, because such a requirement is "almost certain to have a deterrent effect"); *United States v. Rumely*, 345 U.S. 41, 57 (1953) (Douglas, J., concurring) ("Once the government can demand of a publisher the names of the purchasers of his publications, the free press as we know it disappears. . . . Some will fear to read what is unpopular, what the powers-that-be dislike . . . .").  Movants, therefore, have significant protectable rights at stake, and they are entitled to intervene to defend those rights.

### C. The Disposition of This Lawsuit May Irreparably Impair Movants' Ability to Protect Their Interests.

Movants are also entitled to intervene because they are individuals who would be most directly and adversely affected by the outcome of this lawsuit.  *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822.  If the Court rules that DOR can obtain and retain this information, it is Movants' personally identifiable information regarding their reading, viewing, and other expressive and private habits that will be subject to disclosure.  If that information is turned over by Amazon, Movants' constitutional rights to privacy and free expression will be irreparably injured.  Movants would not just suffer harm to their constitutional rights.  The disclosure of such private and intimate information would likely also gravely affect Movants' reputations, their careers, and their family and personal relationships.  Because disclosure is the very harm Movants seek to prevent, Movants should be permitted to intervene now before that issue is permanently resolved.

### D. The Existing Parties May Not Adequately Represent Movants' Interests in This Litigation.

Intervention should also be granted because Movants have unique, personal interests that may not be adequately represented unless they are able to intervene.  Movants' burden on this

1   requirement "should be treated as minimal," and is satisfied by showing that representation of

2   their interests by the existing parties "may be" inadequate.  *Trbovich v. United Mine Workers of*

3   *America*, 404 U.S. 528, 538 n.10 (1972); *see also Conserv. Law Found. of New England, Inc. v.*

4   *Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) ("An intervenor need only show that the

5   representation may be inadequate, not that it is inadequate").  In analyzing this factor, courts

6   consider:  (1) whether the interest of a present party is such that it will undoubtedly make all the

7   intervenor's arguments; (2) whether the present party is capable and willing to make such

8   arguments; and (3) whether a proposed intervenor would offer any necessary elements to the

9   proceedings that other parties would not provide.  *Sw. Ctr. for Biological Diversity*, 268 F.3d at

10  822.

11          Movants' interests in this action are sufficiently different from Amazon's interest that

12  Movants may not be adequately represented if they are unable to intervene.  Although a

13  presumption of adequacy arises when the proposed intervenor shares the same ultimate objective

14  in the case as a party, that presumption is rebutted where the two do not share "sufficiently

15  congruent interests."  *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.  That is the case here.

16  Movants are motivated solely by their personal interests in ensuring that records of their private

17  and expressive activities are not revealed to DOR or to anyone else.  As a public company,

18  Amazon's ultimate responsibility is to its shareholders; although Amazon may also want to

19  protect its customers' rights, that is, in part, because doing so is good for business.  Like any

20  seller and buyer, Amazon and Movants both want the same thing – to consummate the sale – but

21  both are driven by different, and potentially conflicting, interests.  *See, e.g., Trbovich*, 404 U.S.

22  at 538-39 (holding that intervention was justified where the existing party had a duty to serve

23  two distinct interests, which were related but not identical); *Sw. Ctr. for Biological Diversity*, 268

24  F.3d at 823 (finding inadequate representation where proposed intervenors were, unlike the

25  existing party, driven by profit motive); *Cal. Hosp. Ass'n v. Maxwell-Jolly*, No. CV 09-3694

26  CAS, 2009 WL 4120725, at *3 (C.D. Cal. Nov. 23, 2009) (holding that the state cannot be

27  expected to adequately represent proposed intervenor's economic interests).

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

There are several additional differences between Amazon and Movants which make intervention appropriate.  First, although Amazon can legitimately state that its customers' activities will be chilled by Defendant's actions, only Movants can personally provide that evidence and explain why their First Amendment activity would be chilled should DOR receive these records, what the impact on their and their families' lives would be, and why it is important that the Court protect their interests.  Intervenors' Compl. ¶¶ 68-126.  Movants' participation, and the unique, personal perspectives that they would provide, are critical to establishing why DOR should not be able to obtain their constitutionally protected information, and would otherwise be absent from this action.  *See, e.g., Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (offering necessary elements to the proceedings that other parties cannot provide is factor favoring intervention); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (reversing denial of intervention where the proposed intervenor offered expertise and perspective materially different from the present parties); *Coal. for a Sustainable Delta v. Carlson*, No. 1:08-CV-00397 OWW, 2008 WL 2237038, at *5 (E.D. Cal. May 29, 2008) (holding that interests are not adequately represented where proposed intervenors have a "unique perspective" that is distinguishable from the existing parties).

Second, because Movants have a privacy interest in their Internet purchases beyond those purchases made on Amazon, they seek to bring broader claims and request broader relief than Amazon does.  Specifically, in addition to invalidating the requests to Amazon, Movants also seek to challenge DOR's policy and practice of issuing information document requests encompassing customers' private and expressive information to other websites, and to enjoin DOR from issuing such similar requests in the future.  Amazon has not expressly included such a claim in its Complaint or requested such relief; its priority is the information requests issued to Amazon itself.  Intervention is appropriate where, as here, the existing parties and the proposed intervenors do not represent the same scope of interests and the proposed intervenors will present additional arguments that the existing parties will not make.  *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 822; *Cent. Valley Chrysler-Jeep Inc. v. Witherspoon*, No. CV-F-04-6663

REC/JLO, 2005 U.S. Dist. LEXIS 26536, at *20-21 (E.D. Cal. Oct. 20, 2005) (granting intervention in action challenging the constitutionality of state regulations because intervenors intended to raise different arguments than the parties); *cf., e.g.*, *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1999) ("Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." (internal quotation marks omitted)); *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (permitting intervention where "[t]he intervening appellants may have more parochial interests" than the existing party).

Finally, Amazon and DOR have a larger, ongoing dispute about whether Amazon is obligated to collect sales taxes on behalf of the State of North Carolina—a dispute that creates a potential conflict between Movants' privacy interests and Amazon's broader economic interests. Movants take no position in this larger tax dispute; Movants seek to intervene solely to ensure that their expressive and private information is not caught up in that dispute.  Because other issues are at play in the dispute between Amazon and DOR, however, issues unrelated to the privacy interests of Movants will likely be taken into consideration by the parties as this action unfolds, which very well may conflict with Movants' interests.

Any remaining doubt that Amazon may not fully represent the interests of Movants should be dispelled by the fact that Movants' Proposed Complaint names Amazon as a defendant in their claim under the Video Privacy Protection Act.  Amazon and Movants will have divergent interests with respect to that claim.  As a result, it cannot be said that Amazon and Movants share sufficiently congruent interests and that Amazon would fully represent all of Movants' interests. Indeed, Amazon has indicated that it will not consent to this motion.

Like the intervenors in *Southwest Center*, Movants will "offer important elements to the proceedings that the existing parties would likely neglect," including "their own unique private perspectives." 268 F.3d at 823.  Where, as here, the Movants "would be substantially affected in a practical sense by the determination made in an action, [they] should, as a general rule, be entitled to intervene." *Id.* at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## II.   MOVANTS ARE ENTITLED TO PERMISSIVE INTERVENTION.

Even if Movants were not entitled to intervene as a matter of right, the Court should nonetheless allow them to intervene permissively pursuant to Rule 24(b).  Rule 24(b) provides, in relevant part:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . .  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b).

Movants satisfy the three conditions for permissive intervention under this rule:  (1) the motion is timely; (2) Movants have their own independent ground for subject matter jurisdiction; and (3)  their claims and the main action have a question of law or a question of fact in common.  *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002).  First, for the reasons already set out above, *see* Part I(A), *supra*, the motion is timely.  Second, there is an independent basis for subject matter jurisdiction over Movants' claims because their claims raise federal questions under the First and Fourteenth Amendments and the Video Privacy Protection Act, 18 U.S.C. § 2710.  *See* 28 U.S.C. §1331.  Third, the legal and factual issues raised by Movants' claims are similar to those in the existing action, although, as described above, *see* Part I(D), *supra*, Movants present a unique factual perspective on those questions, will make different arguments, and seek broader relief.

Movants should be permitted to intervene in this lawsuit at this stage because their personal information and their constitutional rights are most directly affected by this lawsuit.  *See City of Los Angeles*, 288 F.3d at 405 ("'[S]treamlining' the litigation . . .should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome."); *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (holding that "the nature and extent of the intervenors' interest" is a relevant factor for permissive intervention).  As explained earlier, *see* Parts I(A) & (D), *supra*, Movants'

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

intervention would cause no delay or prejudice, and would "contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler*, 552 F.2d at 1329; *Venegas v. Skaggs*, 867 F.2d 527, 530-31 (9th Cir. 1989), *aff'd*, 495 U.S. 82 (1990) (considering factors of undue delay, prejudice, judicial economy, and adequate representation before reversing district court's denial of permissive intervention).

## <u>CONCLUSION</u>

For the foregoing reasons, Movants respectfully request that the Court grant their motion for intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, or, in the alternative, their motion for permissive intervention pursuant to Rule 24(b).

Respectfully submitted this 23rd day of June, 2010.

ATTORNEYS FOR PLAINTIFFS-INTERVENORS

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION
Sarah A. Dunne, WSBA # 34869
901 Fifth Ave, Suite 630
Seattle, Washington  98164
Tel:     (206) 624-2184
Fax:     (206) 624-2190
Email: dunne@aclu-wa.org

/s/ Venkat Balasubramani
Venkat Balasubramani, WSBA #28269
FOCAL PLLC
8426 40th Ave SW
Seattle, WA 98136
Tel:     (206) 529-4827
Fax:     (206) 260-3966
Email: venkat@focallaw.com

AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA FOUNDATION
Katherine Lewis Parker (*pro hac vice* application pending)
Post Office Box 28004
Raleigh, North Carolina 27611
Tel:     (919) 834-3466
Fax:     (866) 511-1344
Email:  acluncklp@nc.rr.com

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
**Speech, Privacy and Technology Project**
Aden J. Fine (*pro hac vice* application pending)
Mariko Hirose (*pro hac vice* application pending)
125 Broad Street, 18th Floor
New York, NY 10004
Tel:     (212) 549-2500
Fax:     (212) 549-2651

Email:  afine@aclu.org
        mhirose@aclu.org

# EXHIBIT A

THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, LLC,
            Plaintiff,

        v.

KENNETH R. LAY, in his official capacity as
Secretary of the North Carolina Department of
Revenue,
            Defendant.

JANE DOE 1, JANE DOE 2, JANE DOE 3,
JANE DOE 4, JANE DOE 5, JANE DOE 6,
AND CECIL BOTHWELL,
            Plaintiffs-Intervenors,

        v.

KENNETH R. LAY, in his official capacity as
Secretary of the North Carolina Department of
Revenue, and AMAZON.COM, LLC,
            Defendants in Intervention.

No. 2:10-cv-00664-MJP

**[PROPOSED] COMPLAINT IN
INTERVENTION FOR
DECLARATORY AND INJUNCTIVE
RELIEF**

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

**NATURE OF THE ACTION**

1.      This case involves the constitutional rights of thousands of individual Amazon customers to read books, watch films, and buy other items without the government learning about their purchasing decisions and expressive activities.

2.      The North Carolina Department of Revenue ("DOR") has demanded that Amazon turn over the purchase records of anyone in North Carolina who received any products or services through Amazon.com from August 2003 through February 2010, including the individuals' names and addresses and a description of the specific items purchased.  This information was requested in connection with DOR's tax audit of Amazon.

3.      Amazon responded to this demand by providing detailed information to DOR revealing the specific items received by individuals in North Carolina and the total amount of such purchases, but Amazon has refused to disclose any personally identifiable information to DOR, such as the name and address of a customer.  As a result, DOR already knows exactly which items – which books, movies, music and other items – have been purchased through Amazon and shipped into North Carolina.  The only thing that DOR does not yet know is which individuals purchased which items.

4.      DOR has attempted to obtain this identifying information despite Amazon's refusal to provide it, and has threatened to issue a summons against Amazon, which would permit DOR to initiate a summary enforcement proceeding if the information were not provided.

5.      Upon information and belief, DOR recently issued another information document request to Amazon asking for new information.  Although DOR has apparently indicated that it does not need identifying information right now, DOR has refused to withdraw its requests for that information or to agree not to seek that information.  DOR has also refused to destroy or to return the detailed information that it already has regarding the specific items that were shipped to North Carolina unless Amazon agrees to provide other information.

6.      Intervenors Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane

INTERVENORS' COMPLAINT -- 2
No. 2:10-cv-00664-MJP

Doe 6, and Cecil Bothwell ("Intervenors") bring this Complaint in Intervention seeking declaratory and injunctive relief to prevent DOR from being able to obtain this constitutionally protected information about them and other individuals in North Carolina, and thereby to preserve their constitutional rights to free expression, anonymity, and privacy.

7.     This is not the first time that DOR has issued a broad information request to an out-of-state website or other business that encompasses this extremely personal and sensitive information.  According to DOR, it is also not the last time that such information requests will be issued.  Intervenors therefore also seek to have the Court declare DOR's policy and practice of issuing information requests encompassing their expressive and private information to be unconstitutional and to enjoin DOR from issuing such overbroad and constitutionally impermissible information requests in the future.

## JURISDICTION AND VENUE

8.     This case arises under the Constitution of the United States and the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710, and presents a federal question within this Court's jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  This action is brought pursuant to 42 U.S.C. § 1983.

9.     The Court has authority to issue declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, 18 U.S.C. § 2710, Rules 57 and 65 of the Federal Rules of Civil Procedure, and its inherent equitable powers under *Ex Parte Young*, 209 U.S. 123 (1908).

10.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events at issue took place in substantial part in this District; because a substantial part of the property that is at issue in this lawsuit – Amazon's customer records – is located in this District; and because compliance with any demands of DOR for disclosure of customer data would take place largely in this District.

11.    This Court has personal jurisdiction over Defendant in the underlying lawsuit because DOR's employees, acting under Defendant's supervision and direction, specifically

INTERVENORS' COMPLAINT -- 3
No. 2:10-cv-00664-MJP

targeted and instituted an audit of a Washington corporation; directed telephone calls and correspondence to Amazon's headquarters in Washington; and personally visited and met with Amazon employees and reviewed Amazon's records at Amazon's offices in Seattle, Washington. In addition, the cause of the harm to Intervenors resulting from disclosure of their personal information would occur in Washington, because the information sought by Defendant will apparently be compiled and disclosed by Amazon employees located in Washington, and those actions would constitute the constitutional and statutory violations described herein.

12.     The Court has the authority to award costs and attorneys' fees under 42 U.S.C. § 1988 and 18 U.S.C. § 2710.

13.     Plaintiffs-Intervenors satisfy the Fed. R. Civ. Proc. 24(a) standard for intervention as a matter of right:  (1) the request is timely; (2) Plaintiffs-Intervenors claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) Plaintiffs-Intervenors are so situated that disposition of the action may as a practical matter impair or impede their ability to protect their interests; and (4) Plaintiffs-Intervenors' interests are not adequately represented by the parties to the action.  Alternatively, Plaintiffs-Intervenors satisfy the standards for permissive intervention under Fed. R. Civ. Proc. Rule 24(b).

## PARTIES

14.     Plaintiffs-Intervenors Jane Does 1-6 file this action using pseudonyms in place of their real names.  Use of the pseudonym "Jane Doe" and gender pronouns does not signify that they are either female or male.

15.     Plaintiff-Intervenor Jane Doe 1 is an engineer and a recognized expert in information systems security.  She lives in Raleigh, North Carolina.  She is divorced, and has sole custody and is the sole supporter of her young child.  She has purchased numerous items from Amazon since August 2003, and intends to and would like to continue purchasing products from Amazon in the future.  She does not want DOR, or any governmental entity, to obtain information about the specific items she has received from Amazon, and she has taken

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1   reasonable steps to ensure that this information is not publicly known.

2      16.   Plaintiff-Intervenor Jane Doe 2 lives in Raleigh, North Carolina.  She is the

3   General Counsel of a company that operates across the United States and globally.  She has

4   purchased numerous items from Amazon since August 2003, and intends to and would like to

5   continue purchasing products from Amazon in the future.  She does not want DOR, or any

6   governmental entity, to obtain information about the specific items she has received from

7   Amazon, and she has taken reasonable steps to ensure that this information is not publicly

8   known.

9      17.   Plaintiff-Intervenor Jane Doe 3 lives in Raleigh, North Carolina.  She is a writer

10  for a software company.  She has purchased numerous items from Amazon since August 2003,

11  and intends to and would like to continue purchasing products from Amazon in the future.  She

12  does not want DOR, or any governmental entity, to obtain information about the specific items

13  she has received from Amazon, and she has taken reasonable steps to ensure that this information

14  is not publicly known.

15     18.   Plaintiff-Intervenor Jane Doe 4 lives in Chapel Hill, North Carolina.  She just

16  completed her first year at the University of North Carolina Law School.  She moved to North

17  Carolina from Florida in 2009.  She has received numerous items from Amazon since she has

18  lived in North Carolina, and intends to and would like to continue purchasing and receiving

19  products from Amazon in the future.  She does not want DOR, or any governmental entity, to

20  obtain information about the specific items she has received from Amazon, and she has taken

21  reasonable steps to ensure that this information is not publicly known.

22     19.   Plaintiff-Intervenor Jane Doe 5 lives in the State of Florida.  She has lived her

23  entire life in Florida except for one year when she was in high school.  She is a certified public

24  accountant, and owns her own accounting firm in Florida.  She is the parent of Jane Doe 4.  She

25  has purchased numerous items from Amazon and had them shipped to North Carolina since her

26  child moved to North Carolina.  Jane Doe 5 intends to and would like to continue purchasing

27

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

products from Amazon in the future. She does not want DOR, or any governmental entity, to obtain information about the specific items she has purchased from Amazon and shipped to North Carolina, and she has taken reasonable steps to ensure that this information is not publicly known.

20. Plaintiff-Intervenor Jane Doe 6 lives in Asheville, North Carolina. She is a retired attorney. She has purchased numerous items from Amazon since August 2003, and intends to and would like to continue purchasing products from Amazon in the future. She does not want DOR, or any governmental entity, to obtain information about the specific items she has received from Amazon, and she has taken reasonable steps to ensure that this information is not publicly known.

21. Plaintiff-Intervenor Cecil Bothwell lives in Asheville, North Carolina. He is an elected Member of the Asheville City Council. Mr. Bothwell has purchased items from Amazon since August 2003, and he intends to and would like to continue purchasing products from Amazon in the future. He is also an author and the proprietor of Brave Ulysses Books, which is a small publishing house. Brave Ulysses' books, including those written by Mr. Bothwell, are available for purchase through Amazon. Mr. Bothwell files this action on behalf of himself and his readers and customers whose information is also at stake. He does not want DOR, or any governmental entity, to obtain information about the specific items he has received from Amazon, or about who has purchased his or Brave Ulysses' books, and he has taken reasonable steps to ensure that this information is not publicly known.

22. Defendant Kenneth R. Lay is the Secretary and head of the DOR pursuant to N.C. Gen. Stat. § 143B-220. DOR is charged with the administration of tax laws and regulations in the State of North Carolina. Defendant Lay is sued in his official capacity.

23. Plaintiff and Defendant in Intervention Amazon.com, LLC is a Delaware limited liability company with its principal place of business in Seattle, Washington. Amazon sells a diverse array of items online, including books, videos, music, clothing, and other goods.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington 98164
(206) 624-2184

Amazon is a defendant in this Complaint in Intervention solely with respect to Intervenors' claim under the Video Privacy Protection Act, 18 U.S.C. § 2710.

## FACTUAL ALLEGATIONS

### Products Sold On Amazon

24.     Amazon is one of the world's largest online retailers of books, music, movies, and other products.

25.     Almost anything one can want to purchase is available on Amazon.  For example, in addition to books, music, and movies, individuals can also purchase items such as housewares, electronics, clothing, medical products, health care items, and sexual wellness items.

26.     The breadth of items available on Amazon enables Amazon's customers, including Intervenors, to find items that might not be available for sale in their vicinity, like rare titles and other hard-to-find items, including potentially controversial products that local stores may not be willing to carry.

27.     Many of the items available for purchase on Amazon may be viewed by some as being controversial or offensive.  For example, if one so desires, one can purchase through Amazon pro-choice or pro-life clothing, books supporting and criticizing President Obama, feminist or anti-feminist literature, Bibles or anti-Bible writings, anti-gun or pro-gun books and accessories, and Confederate flags or Rainbow Coalition flags, just to name a few.

28.     Many of the items available for purchase on Amazon are also highly personal and private.  For example, Amazon sells condoms, sex toys, such as vibrators and male masturbators, medical products, such as cold sore remedies, anti-fungal creams, anti-gas remedies or yeast infection kits, and books and DVDs on child rearing and other intimate family issues.

29.     Because of the way its business is set up, Amazon collects and retains information regarding each item purchased and the individual receiving and paying for each item.  In order to ensure its customers that such information will be kept private, Amazon has a Privacy Notice in place which specifies the circumstances under which Amazon is permitted to disclose its

INTERVENORS' COMPLAINT -- 7
No. 2:10-cv-00664-MJP

customers' personal information.  Links to that Privacy Notice are displayed on various pages on the Amazon website.

30.     According to Amazon's complaint, between August 1, 2003 and February 28, 2010, customers in North Carolina purchased more than 50 million books, music CDs, DVDs, and other products from Amazon's website.

31.     What a person chooses to purchase on Amazon reveals personal, private and profoundly intimate information about that person's life and identity.  For example, an individual's purchase history can provide details about his or her political or religious beliefs, organizations or groups he or she associates with, who his or her friends or family are, and whether he or she has any medical, psychological or family problems.  That information could be used by some to paint a picture – accurate or inaccurate – of what kind of person that individual is.

32.     For example, according to Amazon's Complaint, since 2003, Amazon's North Carolina customers have purchased books on sensitive and private issues like "Bipolar Disorder: A Guide for Patients and Families" by Francis Mark Mondimore, "He Had It Coming: How to Outsmart Your Husband and Win Your Divorce," by Stacy Schneider, and "Outing Yourself: How to Come Out as Lesbian or Gay to Your Family, Friends, and Coworkers," by Michelangelo Signorile, and controversial movies like "Brokeback Mountain" and "Fahrenheit 9/11."

33.     Amazon's customers, including Intervenors, expect this sensitive and intimate information to be kept confidential and private.  If it were not kept confidential, there is a realistic possibility that the information could significantly harm or destroy an individual's reputation, family relationship or career.

34.     Because of the sensitive nature of this information, Amazon has adopted a Privacy Notice which describes the specific instances in which this information might be shared with others.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

35.     Amazon has not taken the position in its Complaint that its Privacy Notice prohibits it from disclosing its customer records to DOR.  Amazon also has interests which are separate and distinct from Intervenors' interests.  As a result, the existence of the Privacy Notice does not resolve Intervenors' privacy and speech concerns.

DOR's Information Requests and Amazon's Response

36.     DOR and Amazon have been embroiled in a dispute for more than a year over whether Amazon is legally obligated to collect sales tax from its customers in North Carolina. Intervenors do not take a position on this tax issue; Intervenors are simply trying to ensure that their constitutionally protected information does not become caught up in this larger dispute.

37.     In June 2009, Amazon ended all business relationships with its affiliates located in North Carolina in response to a proposed new North Carolina state law imposing sales tax regulations on online retailers with in-state affiliates.

38.     DOR subsequently initiated an audit of Amazon for compliance with state sales tax laws.  According to Amazon's Complaint, as part of this audit process, DOR agents, under the direction of Defendant Lay, sent information requests to Amazon's principal place of business in Seattle and physically visited the Seattle offices to obtain information.

39.     More specifically, on December 1, 2009, as part of its audit of Amazon, DOR sent an Information Document Request to Amazon's Seattle office (the "December Information Request")

40.     Question 16 of the December Information Request asked, in part, that Amazon provide "all information for all sales to customers with a North Carolina shipping address by month in an electronic format," for all dates between August 1, 2003 and February 28, 2010.

41.     According to Amazon's Complaint, Amazon employees in Seattle responded to the Request by providing DOR with detailed purchase records of North Carolina customers for the relevant time period.  The information provided to DOR included:  the order ID number; the name of the seller; the city, county, and zip code to which the items were shipped; the total price

for the transaction; and Amazon's standard product code for each item, known as the Amazon Specific Identification Number ("ASIN").

42.     The ASIN number is the specific product code that Amazon assigns to each item. The ASIN number can be used to obtain complete, detailed information, including the name, title and brand, of the item purchased on Amazon's website.

43.     Because DOR already has the ASIN number, DOR now knows exactly which books, movies, music and other items were purchased and shipped to people in North Carolina, including Intervenors.  That information can be broken down even further by the city, county and zip code included in the information Amazon turned over, meaning that DOR now knows exactly which books, movies, music, and other items were purchased and shipped to individuals in each zip code.

44.     Amazon's response to the December Information Request did not include the customer name, address, phone number, or email address that corresponds to each purchase record.  As a result, although DOR knows exactly which items were purchased and shipped into North Carolina, DOR does not yet know who purchased or received each item.

45.     DOR has attempted to force Amazon to provide that information.  By letter hand-delivered to Amazon in Seattle on March 19, 2010 (the "March Information Request"), DOR stated that Amazon's response to Question 16 of the December Information Request improperly omitted the "Bill to Name; Bill to Address (Street, City, State, and Zip); Ship to Name; Ship to Address (street); Product/item code or description."  DOR demanded that Amazon provide this information for examination on or before April 19, 2010.

46.     The March Information Request also stated that if Amazon did not provide this information, DOR would issue a summons against Amazon, which would allow the DOR to initiate a summary proceeding against Amazon to force it to turn over the information.

47.     Amazon did not provide DOR with this information.  Instead, on April 19, 2010, Amazon filed suit in this Court against Defendant Lay in his official capacity as the head of

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

DOR, seeking declaratory relief and injunctive relief against DOR's requests to it.

48.     DOR does not need purchase records that include detailed information about the specific items purchased for its audit of Amazon, or for any other legitimate reason related to tax collection.  DOR has not asserted that any of the items shipped into Amazon customers in North Carolina are illegal.

49.     DOR has subsequently told media outlets that it did not request specific product information from Amazon, and that it does not need such detailed information about the products.

50.     Despite those public statements, DOR is still in possession of this detailed product information that it concedes it does not need.  Upon information and belief, DOR has now indicated that it is willing to return the information to Amazon, but only in exchange for additional product information, even though DOR has conceded that there is no legitimate reason or need for DOR to retain this detailed information.

51.     Upon information and belief, although DOR has recently indicated that it does not need personally identifiable information at this time, DOR has refused to withdraw its earlier requests for such information and has expressly reserved the right to demand that Amazon provide that earlier requested information to it.

DOR's Policy and Practice of Issuing Similar Information Document Requests

52.     The information document requests to Amazon are not the only time that DOR has issued requests to out-of-state websites and businesses broadly requesting information about individuals' purchasing records, including expressive and private information.  DOR has issued hundreds of such requests, and it is DOR's policy and practice to issue such requests using the same broad "all information" language used in Question 16 of the December Request.

53.     For websites and other out-of-state businesses that do not collect sales tax from individuals in North Carolina, it is DOR's policy and practice to issue information document requests that broadly request "all information" about customer purchases, including audiovisual

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

material purchases, shipped into North Carolina and do not exclude material that implicates

individuals' free speech and privacy rights.  The December and March requests to Amazon are

consistent with this policy and practice.

54.     Although DOR has now publicly stated that it does not actually want "all

information" about purchases made through Amazon, such as the titles of the specific books

purchased, nothing in the December or March requests to Amazon make that clear, and DOR

routinely asks out-of-state businesses for "all information," without specifying that those details

are not actually desired.

55.     Although its public statements acknowledge that it does not need to know specific

information about which specific book or DVD or CD or other items were purchased, DOR has

stated that it needs information about whether individuals have purchased a book or a DVD or a

CD or another category of item.

56.     There is no need for DOR to have such information.  The most DOR might need

to know is whether the particular item purchased was taxable or tax exempt, and whether a

different tax rate applies – not details like whether an individual likes to read books or to watch

DVDs.

57.     DOR's policy and practice of demanding information about the details of

products, including audiovisual materials, purchased by individuals violates the constitutional

rights of those individuals, including Intervenors.  The State is not permitted to invade

individuals' private affairs by monitoring and compiling information about everything that they

choose to purchase.

58.     Recent actions by DOR make clear that DOR intends to continue this policy and

practice of seeking purchasing information from customers of websites and other out-of-state

businesses that do not collect sales tax on the State's behalf.  Immediately after Amazon filed

this lawsuit, DOR announced a new program called the "Internet Transactions Resolution

Program."  Under this program, the State is offering not to hold Internet retailers like Amazon

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

liable for their alleged failure to collect past sales taxes if the companies agree to collect sales taxes for purchases made by individuals in North Carolina for the next four years.  The Program expressly states that for Internet retailers who agree to the proposal, DOR promises not to exercise its alleged authority to obtain information about their customers for previous years.  The clear implication is that those retailers who do not agree to the proposal will – like Amazon – receive information document requests seeking detailed information about their customers' purchases.

59.     Upon information and belief, consistent with its policy and practice, DOR has recently refused to agree not to ask Amazon for personally identifiable customer purchase information in the future, and has stated that it expressly reserves the right to demand that Amazon provide that information to it.

<u>The Constitutional Rights Of Intervenors That Are At Stake</u>

60.     DOR is currently still in possession of all of the information it obtained from Amazon under the December Information Request, including the ASIN numbers revealing the specific items purchased.

61.     If Amazon were to give DOR the personally identifiable information it demanded, including the customer name and address, that information, when combined with the ASIN number, would tell DOR which North Carolina customers purchased which specific books, movies, music, and other expressive items.

62.     DOR would also obtain detailed information about which non-expressive, but highly personal and confidential, items were purchased by individuals in North Carolina, such as whether an individual purchased certain types of items like sex toys, contraceptives, or medication for private, potentially embarrassing medical conditions.  That information is highly personal and private, and a reasonable person would believe that such information would be kept confidential and should not be publicly disclosed.

63.     Permitting DOR to have access to North Carolina customers' reading, viewing,

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

listening, and other personal product choices, would violate the constitutional rights of these individuals, including Intervenors, to receive these items without intrusion from the government. If Amazon's customers knew that their Amazon purchase records would be accessible by the government, they would be chilled from purchasing items from Amazon, especially controversial, personal and sensitive items, and they would, at a minimum, carefully have to consider whether they want to purchase an item through Amazon. Many would also hesitate to use Amazon in the future for their purchases, especially purchases involving controversial or sensitive items. Given that many items purchased through Amazon reveal the deeply personal and First Amendment-protected preferences of Intervenors and other individuals in North Carolina, Intervenors might simply not purchase those items at all.

64.    DOR's information requests are especially problematic because they are overly broad, and sweep in information that is not relevant to the collection of taxes. In addition to calling for the disclosure of private and expressive information for which DOR has no need, the requests also improperly ask for information about numerous individuals who are not North Carolina residents and are not obligated to pay any North Carolina or local sales taxes.

65.    Because DOR has a policy and practice of regularly asking for this information from websites and out-of-state retailers and has made clear that it intends to continue that practice, these concerns about confidentiality and privacy are not limited solely to individuals' purchase histories on Amazon, which are the subject of the December and March information requests. If DOR is permitted to obtain this information from Amazon, Intervenors and others in North Carolina will not just think twice about purchasing some items from Amazon, they will seriously have to consider whether they can purchase such items over the Internet at all.

66.    After being advised by Intervenors that its requests were overbroad and infringed on the First Amendment and privacy rights of Amazon's customers, DOR refused to withdraw its requests or to destroy or return the detailed product information it already has. DOR also refused to acknowledge the First Amendment and privacy interests at stake. Upon information

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

and belief, DOR has now advised Amazon – following the filing of this lawsuit by Amazon and after receiving demand letters from Intervenors – that it is willing to return the detailed information about which items were purchased, but only if Amazon agrees to provide it with additional product information.

67.     Although Amazon sought judicial relief with respect to DOR's overly broad information requests, other online retailers, especially small ones, may not have the resources or desire to do so.  Accordingly, if DOR is allowed to continue to implement its policy of seeking broad customer and purchase information in the context of audits, it is likely that the First Amendment and privacy rights of customers of other online retailers, including Intervenors, will continue to be infringed.  At a minimum, the prospect of a future DOR information request will chill the exercise of First Amendment and privacy rights by Intervenors and other customers of different online retailers.

The Effect Of DOR's Requests On Intervenors

Jane Doe 1

68.     Jane Doe 1 is a North Carolina resident whose former spouse had substance abuse and domestic violence problems.  She recently established a new life for her family after obtaining a divorce from her abusive spouse and securing sole custody over her young child.

69.     Over the course of her marriage, Jane Doe 1's former spouse developed a substance abuse problem.  As her former spouse's substance abuse problems escalated, her former spouse became violent and threatened to kill her, requiring intervention from the police.

70.     In fear for her life and her child's safety, Jane Doe 1 thereafter purchased self-help books from Amazon on how to, among other things, understand and deal with her spouse's problems better, obtain a divorce and secure a restraining order against her spouse to protect her and her child.  For example, she purchased "You Don't Need A Lawyer," by James Kramon, "Represent Yourself In Court:  How to Prepare & Try A Winning Case," by Paul Bergman, "Practical Guide to Family Law," by Matthew S. Cornick, and "How To File For Divorce in

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

North Carolina:  With Forms," by Jacqueline D. Stanley.

71.     Having to go through this situation was traumatic, life-changing and deeply private and personal for Jane Doe 1.  It is critical to Jane Doe 1 that her purchasing record on Amazon be kept private and confidential, and that no one – especially the government – obtain this information about something that was so devastating and personal to her.

72.     In addition, as a recognized expert in her professional field, her reputation and image is very important.  Her ability to retain clients and procure new business is tied to her reputation.  A simple perusal through her Amazon purchase record would reveal the most intimate of family and personal problems, and, without knowing the full story, it might lead someone to paint an erroneous picture about Jane Doe 1.

73.     Jane Doe 1 has also purchased numerous other books from Amazon since 2003 about which she does not want the government to know.  Examples include politically-charged books like "Laura Bush:  An Intimate Portrait of the First Lady," by Ronald Kessler, "Hoodwinked:  The Documents That Reveal How Bush Sold Us A War," by John Prados, and "Body of Secrets:  Anatomy of the Ultra-Secret National Security Agency," by James Bamford.  Jane Doe 1 does not want others to know that she has purchased these, and other, books because she is afraid that they might lead someone to jump to conclusions about her political or social beliefs and values, and that her reputation, career and family life might be put in jeopardy by people who may not agree with the points of view expressed in many of these books.

74.     Jane Doe 1 has kept her purchasing records confidential and private, and she has not publicly disclosed her purchasing records to others.

75.     The possibility that DOR might obtain her purchasing record from Amazon has made Jane Doe 1 extremely upset and anxious.  Had she known that this information would become accessible to the government, she would not have purchased some of these items on Amazon.

76.     Jane Doe 1 has purchased numerous expressive and private items through

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Amazon since August 2003, and she would like to and intends to continue doing so in the future. That may change, however, if the State is permitted to obtain her Amazon purchasing records. At a minimum, Jane Doe 1's behavior will be changed as she will seriously have to consider whether at least certain items can be purchased through Amazon, and it is likely that she will simply not purchase those items through Amazon.

77.     Jane Doe 1 has purchased numerous expressive and private items from websites other than Amazon in the past, and she would like to and intends to continue doing that in the future.  That may also change, however, if the State is permitted to obtain her Amazon purchasing records.  At a minimum, Jane Doe 1's behavior will be changed as she will seriously have to consider whether at least certain items can be purchased online, and it is likely that she will simply not purchase those items through websites if the State is able to obtain that information.

Jane Doe 2

78.     Jane Doe 2 is General Counsel of a company that operates across the United States and globally.  She is an avid Amazon customer, and has placed well over 200 orders with Amazon since August 2003, often purchasing multiple items in each order.  These items include books, DVDs, CDs, games, magazine subscriptions, and other items.  Among items she has purchased are books with overt political leanings, like Michael Moore's "Dude, Where's My Country?" and Al Franken's "Lies and the Lying Liars Who Tell Them: A Fair and Balanced Look at the Right," books that may or may not reveal her religious beliefs, like "God: The Failed Hypothesis.  How Science Shows That God Does Not Exist," and self-help books like "Learned Optimism: How to Change Your Mind and Your Life."

79.     Jane Doe 2 does not believe the government should be able to learn what she has purchased through Amazon because that is personal and private, and she has not publicly disclosed that information to others.  It is especially important to Jane Doe 2 that her purchasing record remains private because she does not want her political and personal beliefs – and her

INTERVENORS' COMPLAINT -- 17
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

purchasing choices – to taint her professional reputation as General Counsel of a global firm.  If she had known that her purchasing record could become accessible to DOR, she would have thought twice about purchasing these items from Amazon.

80.     Jane Doe 2 would like to and intends to continue purchasing expressive and private items through Amazon in the future.  That may change, however, if her purchasing records are turned over to the State.  At a minimum, Jane Doe 2's behavior will be changed as each time she purchases certain items, she will seriously have to consider whether to purchase them through Amazon.

81.     Jane Doe 2 has also purchased personal items over the Internet from other websites, including condoms.  Jane Doe 2 would like to and intends to continue purchasing such items in the future, both from Amazon and other websites, but she is concerned about doing that if DOR is going to obtain that information.  It is therefore critical to Jane Doe 2 that DOR stop issuing information document requests that call for such information both to Amazon and to other out-of-state websites.

Jane Doe 3

82.     Jane Doe 3 is a writer for a software company in Raleigh.  She has purchased numerous items from Amazon since August 2003.  She has kept her purchasing records confidential and private, and has taken steps to ensure that her purchase records are not disclosed to others.

83.     Jane Doe 3 is an atheist.  She is not "out" about that, and Jane Doe 3 does not publicly discuss those personal beliefs.  That is especially the case at her job.  Many of the people at her company, including her direct supervisor, are quite religious, and Jane Doe 3 does not want them to find out that she is an atheist.  She is extremely concerned that if her personal beliefs were discovered, her supervisor would treat her differently, whether consciously or unconsciously.

84.     Jane Doe 3 has purchased several books reflecting her personal beliefs through

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Amazon, including "Godless:  How an Evangelical Preacher Became One of America's Leading Atheists," by Dan Barker and Richard Dawkins, "God Is Not Great:  How Religion Poisons Everything," by Christopher Hitchens, and "The God Delusion," by Richard Dawkins.  She is extremely anxious about that private and personal information being obtained by the government, and is concerned that such a disclosure would seriously affect her reputation and career, and reveal her personal beliefs.

85.     Jane Doe 3 has also purchased DVDs through Amazon reflecting her political and personal beliefs, including "The God Who Wasn't There," a documentary highly critical of modern Christianity which questions the existence of Jesus Christ, and "Religulous," a politically charged documentary by Bill Maher which criticizes organized religions of all types.

86.     Jane Doe 3 has also purchased books on mental health conditions, including "Malignant Self Love – Narcissism Revisited," by Sam Vaknin, "Narcissism:  Denial of the True Self," by Alexander Lowen, and "Stop Walking On Eggshells:  Taking Your Life Back When Someone You Care About Has Borderline Personality Disorder," by Paul T. Mason.  The subject matters of these books are highly personal and sensitive, and concern the most intimate of personal and family issues for Jane Doe 3.  She purchased these books in order to better understand the mental health conditions afflicting her former spouse.

87.     She likewise purchased "The Seven Principles For Making Marriage Work:  A Practical Guide From the Country's Foremost Relationship Expert," by John M. Gottman, in an attempt to salvage her marriage.  Information revealing her marital difficulties concerns a similarly personal and private matter that Jane Doe 3 believes is no one else's business.

88.     She purchased these books through Amazon both because it was convenient to do so and because she did not want others physically to see her with such books.  She does not want anyone to know these intimate details about her personal and family situation, and had she known that these records would be disclosed to the State, it is likely that she would not have purchased such materials from Amazon.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

89.     Jane Doe 3 has also purchased several books about cancer, such as "Eating Well Through Cancer:  Easy Recipes & Recommendations During & After Treatment," by Holly Clegg, and "Cancer:  50 Essential Things To Do:  Revised and Updated," by Greg Anderson. Cancer is a highly intimate and private matter, and Jane Doe 3 does not want anyone, especially the government, to know that she has purchased such books.

90.     Jane Doe 3 would like to and intends to continue purchasing expressive and private items through Amazon in the future.  That may change, however, if her purchasing records are turned over to the State.  If she had known that her purchase records would be provided to the State, she likely would not have purchased many of the items through Amazon, and she would likely not do so again.  She is so concerned about keeping what she reads, watches and listens to private that if she knew the State could obtain her purchase records, she might not purchase certain items from anyone.  At a minimum, Jane Doe 3's behavior will be changed as each time she purchases certain items in the future, she will seriously have to consider whether to purchase them through Amazon or through anyone.

91.     Jane Doe 3 has purchased expressive and private items from websites other than Amazon in the past, and she would like to and intends to continue doing that in the future.  That may also change, however, if the State is permitted to obtain her Amazon purchasing records.  At a minimum, Jane Doe 3's behavior will be changed as each time she purchases certain items in the future, she will seriously have to consider whether to purchase them on a website if the State is able to obtain that information.

Jane Doe 4

92.     Jane Doe 4 is a student at the University of North Carolina Law School.  She just finished her first year of law school.  After law school, Jane Doe 4 is interested in working in the public sector, hopefully in a legislative or public policy capacity.

93.     Like other students, Jane Doe 4 obtains many materials through Amazon and other websites.  Since she has lived in North Carolina, she has received several items through

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Amazon from her parents, who live in Florida.  One of her parents is Jane Doe 5.  The items she has received from her parents include books that may or may not reflect her political beliefs, such as "Lies The Government Told You:  Myth, Power, and Deception in American History," by Andrew P. Napolitano, "Obama Zombies:  How The Liberal Machine Brainwashed My Generation," by Jason Mattera, and "Who Killed The Constitution?:  The Federal Government vs. American Liberty From World War I to Barack Obama," by Thomas E. Woods, Jr.

94.     Jane Doe 4 does not believe the government should be able to learn what she has received through Amazon because information like that – regarding her potential political beliefs or leanings – is personal and private, and she has not publicly disclosed that information to others.  It is especially important to Jane Doe 4 that information about her Amazon products remain private because she does not want her political and personal beliefs – and her reading choices – to taint her reputation or to cause people to judge her or to think of her in a certain way.  Jane Doe 4 is concerned that her prospects for working in a legislative or public policy capacity after she graduates from law school will be damaged if the State finds out what materials she has received through Amazon and what types of books she is reading.  Had she known that this information would be accessible to DOR, she would have obtained the products from a different source or she would not have obtained them at all.

95.     Jane Doe 4 would like to and intends to purchase and to continue to receive expressive and private items through Amazon in the future.  That will change, however, at least for certain items, if her records are turned over to the State.  If her records are disclosed to the State, Jane Doe 4 will no longer purchase or receive certain items through Amazon.  At a minimum, Jane Doe 4's behavior will be changed as each time she purchases anything through Amazon, she will seriously have to consider what the impact on her will be when the State obtains that information.

96.     Jane Doe 4 has received numerous expressive and private items from websites other than Amazon in the past, and she would like to and intends to continue doing that in the

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

future.  That will also change, however, if the State is permitted to obtain her Amazon purchasing records.  If her records are disclosed to the State, Jane Doe 4 will no longer purchase or receive certain items through websites.  At a minimum, Jane Doe 4's behavior will be changed as each time she purchases anything through a website, she will seriously have to consider what the impact on her will be if the State obtains that information.

Jane Doe 5

97.    Jane Doe 5 is Jane Doe 4's parent.  She is a certified public accountant, who owns her own accounting firm in Florida.  She is a resident of the State of Florida, and has no ties with the State of North Carolina other than the fact that her child now goes to school in North Carolina.

98.    Jane Doe 5 has purchased numerous items through Amazon, some of which are detailed in paragraph 93, *supra*, and had them shipped to her child in North Carolina since she moved there in 2009.

99.    Jane Doe 5 has kept her purchasing records confidential and private, and she has not publicly disclosed her purchasing records to others.

100.    DOR's requests to Amazon call for the disclosure of information about Jane Doe 5 – the purchaser.  DOR specifically told Amazon that its responses were deficient because, among other things, they do not provide identifying information about the purchaser – i.e., the "Bill to Name; [and] Bill to Address (Street, City, State, and Zip)."  If Amazon is forced to turn over this information, Jane Doe 5's constitutionally protected purchasing choices – the personal, private items she has chosen to purchase for her child – will also be obtained by DOR, even though Jane Doe 5 is a Florida resident and has no ties to North Carolina.  There is no reason or justification for DOR to receive information about a Florida resident like Jane Doe 5.

101.    Many of the items Jane Doe 5 has purchased are political in nature.  Jane Doe 5 does not want any governmental entity to know what her political views or beliefs are, or to know what books she chooses to purchase.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

102.     Jane Doe 5 is extremely concerned that if her purchasing records and her political beliefs are disclosed, she will lose clients and put her professional reputation and career at risk. The nature of Jane Doe 5's practice causes her to work with bankers, trust officers, attorneys, stock brokers, and other CPAs, many of whom do not share her political views and many of whom likely would be put off by some of the items that she has purchased for her child.  She has substantial concerns that if her personal views become known, her relationships with these individuals, many of whom are sources of referrals, will be destroyed.

103.     Jane Doe 5 purchased many of the books for her child after having discussions with her child about the books and their subject matters.  Those parent-child communications are deeply personal and private, and Jane Doe 5 does not want the government to intrude on such conversations and to know what she is discussing with her child.  Jane Doe 5's discussions with her child are so private that even Jane Doe 5's spouse does not know the specific books that Jane Doe 5 has purchased for their child.

104.     Had Jane Doe 5 known that her purchasing information would be accessible to DOR, she would have obtained the products from a different source or she would not have obtained them at all.

105.     Jane Doe 5 would like to and intends to continue purchasing and sending expressive and private items to her child through Amazon in the future.  That is especially the case because her child lives in another state.  That will change, however, at least for certain items, if her records are turned over to the State.  If her records are disclosed to the State, Jane Doe 5 will no longer purchase certain items through Amazon.  Instead, she will likely purchase them at a local bookstore, using cash to ensure that government does not obtain her private purchasing information.  At a minimum, Jane Doe 5's behavior will be changed as each time she purchases anything through Amazon, she will seriously have to consider whether the State will obtain that information.

106.     Jane Doe 5 has purchased numerous expressive and private items from websites

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

other than Amazon in the past, and she would like to and intends to continue doing that in the future.  That will also change, however, if the State is permitted to obtain her Amazon purchasing records.  If her records are disclosed to the State, Jane Doe 5 will no longer purchase or receive certain items through websites.  At a minimum, Jane Doe 5's behavior will be changed as each time she purchases anything through a website, she will seriously have to consider whether the State will obtain that information.

Jane Doe 6

107.    Jane Doe 6 is a retired lawyer who now lives in Asheville, North Carolina.  She has purchased numerous items from Amazon since 2003, including many books with potentially controversial, sensitive and revealing subject matters, such as "The Stages of Meditation," by the Dalai Lama, and "The Things They Carried," by Tim O'Brien, a book about the Vietnam War.

108.    Jane Doe 6 does not believe the government should be able to learn what she has received through Amazon because that is personal and private, and she has not publicly disclosed that information to others.  Nor did she have any reason to believe it would be accessible to the State.  Had she known that this information would be accessible to DOR, Jane Doe 6 would have considered purchasing the items from another source.

109.    Jane Doe 6 would like to and intends to continue purchasing and receiving expressive and private items through Amazon in the future.  That may change, however, at least for certain items, if her records are turned over to the State.  At a minimum, Jane Doe 6's behavior will be changed as each time she purchases certain items, she will seriously consider whether to purchase certain items through Amazon and what it would mean if the State obtained that information.

110.    Jane Doe 6 has purchased expressive and private items from websites other than Amazon in the past, and she would like to and intends to continue doing that in the future.  That may also change, however, at least for certain items, if her records are turned over to the State.  At a minimum, Jane Doe 6's behavior will be changed as each time she purchases certain items

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1
2

through a website, she will seriously consider whether to purchase those items through a website and what it would mean if the State obtained that information.

3

Cecil Bothwell

4
5
6
7

111.    Cecil Bothwell is an elected Member of the Asheville City Council.  He is also an author and the proprietor of Brave Ulysses Books, a publishing house.  Books published by Brave Ulysses, including those written by Mr. Bothwell, are available for purchase on Amazon, and Mr. Bothwell has himself purchased expressive items from Amazon since August 2003.

8
9
10

112.    Mr. Bothwell is a former newspaper journalist and editor.  He retired and ran for public office in 2009.  He was elected to the Asheville City Council in November 2009, and is currently serving a four-year term.

11
12
13
14

113.    Mr. Bothwell is an atheist.  His political opponents seized on that fact following his election and undertook high profile, public efforts to attempt to prevent him from being sworn in to office pursuant to a provision of the North Carolina state Constitution which purports to prohibit anyone who "den[ies] the being of Almighty God" from holding public office.

15
16
17
18
19
20

114.    Mr. Bothwell eventually overcame that challenge and was permitted to take office.  He was sworn in to office in December 2009.  That experience has made Mr. Bothwell acutely aware of how damaging and potentially life-altering the revelation of personal and intimate details about public officials can be, and how critical it is to make sure that government does not unnecessarily obtain personal and private information about individuals, especially public officials.

21
22
23
24
25

115.    The challenge to Mr. Bothwell's election created a significant amount of public attention, both in North Carolina and elsewhere.  Several other non-City Council elected public officials in the State subsequently told Mr. Bothwell that they shared his personal beliefs, but that they could not risk having their personal beliefs become public knowledge, and that if they did, their careers would be at risk.

26
27

116.    Because of this experience, Mr. Bothwell does not want to take any chances that

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

his private, personal purchasing records on Amazon will be turned over to the State if they are linked to his name and other identifying information.  Mr. Bothwell has kept his purchasing records confidential and private, and he has not publicly disclosed them to others.  As a public official, Mr. Bothwell is aware that information about anything he purchases – regardless of its content – may appear in the press or become political fodder for use by opponents, especially if it is potentially controversial in any manner.  Although he personally does not believe that there is anything wrong with what he has purchased, he knows that there are some in the State and in his community who might so believe, so it is critical that what he has chosen to purchase and read remain private and confidential.

117.    Mr. Bothwell is also concerned about DOR's requests to Amazon because of what it means to him as an author and a publisher.  Brave Ulysses publishes books written by Mr. Bothwell and by other authors.  The vast majority of the books published by Brave Ulysses focus on issues or subject matters that could be associated with particular political, social, cultural, or religious beliefs.  For example, one of the books, written by Mr. Bothwell, is "The Prince of War:  Billy Graham's Crusade For A Wholly Christian Empire," a highly critical, unauthorized biography of Billy Graham, one of North Carolina's most famous and popular former residents.  Mr. Bothwell faced severe criticism and hostility for writing this book, and he is very concerned that his readers and customers will suffer similar adverse consequences, including retaliation, if it were publicly disclosed that they were reading the book.

118.    Books published by Brave Ulysses are available for sale through Amazon.  Amazon is a critical outlet for a small publisher like Brave Ulysses, as it is simply not possible for many of its works to otherwise get into the hands of individuals across the country and the world who might desire to purchase and read the books.

119.    Mr. Bothwell does not want the State to know which individuals have purchased books he has written and/or authored, both because he believes that the State should not be collecting and retaining information about what people are reading, and because he knows that

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

his readers and customers could face retaliation and adverse consequences if their purchases became publicly known.  Mr. Bothwell has taken reasonable steps to ensure that information about his customers is not publicly disclosed, and he has not publicly disclosed that information to others.

120.    Mr. Bothwell reasonably believes that his readers and customers will be chilled from purchasing his books and reading them if Amazon is forced to turn over information revealing who has purchased his books.  That chill will, in turn, prevent him from accomplishing his principal goal:  having his messages heard by as many people as possible.

121.    Mr. Bothwell would like to and intends to continue purchasing expressive and private items through Amazon in the future.  He would also like to and intends to continue selling his books through Amazon.  That may change, however, at least for certain items, if Amazon is forced to turn over his records and the records of his customers and readers.  At a minimum, Mr. Bothwell's behavior will be changed as each time he purchases certain items, and each time he makes his books available for sale through Amazon, he will seriously have to consider whether to purchase those items or to sell those items through Amazon.

122.    Mr. Bothwell has purchased and sold expressive and private items from websites other than Amazon in the past, and he would like to and intends to continue doing that in the future.  That may also change, however, at least for certain items, if Amazon is forced to turn over his records and the records of his customers and readers.  At a minimum, Mr. Bothwell's behavior will be changed as each time he purchases certain items on a website, and each time he makes his books available for sale through a website, he will seriously have to consider whether to purchase those items or to sell those items through websites.

123.    The fear and anxiety over the State gaining access to information about what Intervenors and other individuals are reading, watching, listening to and purchasing is heightened by the risk that DOR would misplace or lose this highly personal data that it receives and/or inadvertently disclose it to the public.  Upon information and belief, the records that DOR has

INTERVENORS' COMPLAINT -- 27
No. 2:10-cv-00664-MJP

received from Amazon so far appear to be in CD or email format.  Those records could easily be released to third parties by mistake or negligence, as happens frequently when the government and private companies handle private data.

124.    DOR has, in fact, recently had incidents in which highly personal, confidential information about taxpayers has been lost and released into the public.  In one such incident, a laptop containing confidential information about 30,000 individuals was lost by a DOR employee who left the laptop in her car.

125.    Jane Doe 1 has personal experience with the fact that DOR occasionally makes mistakes and does not properly safeguard individuals' confidential information.  Several years ago, DOR mailed Jane Doe 1 a refund statement for another individual's tax return, which included highly sensitive tax data.  That person was not related to Jane Doe 1.  As a result, Jane Doe 1 has little confidence in DOR's ability to keep computer records of private information secure, and she is concerned that if her information ends up in DOR's hands, there is a realistic chance that it will be disclosed.

126.    Because the information requested by DOR about what individuals are reading, watching, listening to and purchasing is so personal and sensitive, any possibility that their information could be disclosed is sufficient to chill the First Amendment rights of Intervenors.

127.    There are hundreds of thousands of individuals like Intervenors who have purchased items, including potentially controversial and sensitive items, through Amazon since August 2003 and had them shipped into North Carolina.  The privacy and free speech rights of these individuals are also directly at stake in this lawsuit, and Intervenors bring this constitutional challenge to DOR's overbroad document request on their behalf as well.

128.    Except through reports in the media about this lawsuit, Amazon's North Carolina customers, including Intervenors, were not given any notice of DOR's request for Amazon's purchase records.  They were likewise not given any opportunity to contest the request and protect their constitutional rights.

**FIRST CAUSE OF ACTION**

**(First and Fourteenth Amendments)**

**(Against Defendant Lay)**

129.    Intervenors hereby restate and incorporate by reference the allegations contained in Paragraphs 1 through 128 of this Complaint in Intervention.

130.    The First and Fourteenth Amendments to the United States Constitution protect the right to receive lawful expressive materials free from government scrutiny.

131.    The First and Fourteenth Amendments also protect the right to receive lawful expressive materials without having to reveal one's identity to the government.

132.    If Amazon provides DOR with the purchase records of Intervenors and other North Carolina customers, including a description of items purchased linked with their names and addresses, DOR will have access to information about the expressive and private choices made by individuals in North Carolina, including exactly which items they are reading, viewing, listening to, and purchasing, in violation of these individuals' First and Fourteenth Amendment rights.

133.    DOR's demand for Amazon customers' purchase records will chill Intervenors' and other individuals' free speech rights and their right to privacy by deterring them from buying certain items or using Amazon to buy such items.

134.    DOR's demand for personally identifiable purchase information will also violate Intervenors' and other individuals' free speech and privacy rights by forcing them to give up their anonymity in order to receive items from their chosen distributor.

135.    DOR does not have any legitimate interest, let alone a compelling interest, in receiving a description of each item purchased by Amazon's North Carolina customers.

136.    DOR has also not shown a sufficiently strong connection between the information sought and any governmental interest allegedly furthered by its request.

137.    DOR's information document requests to Amazon and DOR's policy and practice

of issuing similar requests to other out-of-state websites and businesses are unconstitutionally overbroad because they request far more constitutionally protected information than could possibly be justified by any governmental interest.

138.   DOR's information document requests to Amazon and DOR's policy and practice of issuing similar requests to other out-of-state websites and businesses violate the First Amendment and the Due Process Clause of the Fourteenth Amendment because they request information that implicates individuals' free speech and privacy rights without providing any notice, opportunity to challenge, or other procedural protections, to the individuals whose constitutional rights are at stake.

139.   If DOR obtains access to personally identifiable purchase records that include a description of each item purchased, Intervenors and other Amazon customers will suffer irreparable injury to their constitutional rights to free speech and privacy under the First and Fourteenth Amendments.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

### SECOND CAUSE OF ACTION

**(Video Privacy Protection Act, 18 U.S.C. § 2710)**

**(Against Defendant Lay and Defendant in Intervention Amazon)**

140.    Intervenors hereby restate and incorporate by reference the allegations contained in Paragraphs 1 through 139 of this Complaint in Intervention.

141.    DOR's request for customer records relating to sales of video and other audiovisual material conflicts with the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710.

142.    Amazon is engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials.

143.    Jane Does 2 and 3 are purchasers of prerecorded video or audiovisual goods or services from Amazon.

144.    Jane Does 2 and 3 have not given informed, written consent to the disclosure to DOR of their purchase records relating to the sales of video or audiovisual material.

145.    DOR has not obtained a warrant, a grand jury subpoena, or a court order for the purchase records relating to the sales of video or audiovisual material.

146.    If Amazon complies with DOR's requests for personally identifiable purchase records, Amazon will knowingly disclose information which identifies a person as having requested or obtained specific video or audiovisual materials or services from a video tape service provider in violation of the Video Privacy Protection Act.

147.    If DOR obtains these personally identifiable video or audiovisual purchase records, DOR will also be in violation of the Act for possessing private information as a direct result of the violation of the Act, knowing that such material has not lawfully been provided to it under the Act.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

## **PRAYER FOR RELIEF**

WHEREFORE, Intervenors Jane Does 1-6 and Cecil Bothwell respectfully ask this Court for:

    a.      A declaration that DOR's demand for personally identifiable purchase records violates the free speech and privacy rights of Intervenors and other individuals in North Carolina;

    b.      Appropriate injunctive relief, including, but not limited to, a permanent injunction:  prohibiting DOR from requesting that Amazon provide personally identifiable customer information or detailed information about the specific items purchased by Amazon customers; prohibiting DOR from receiving that information from Amazon; and ordering DOR to destroy or return any records or past uses of such records that it already has or may obtain containing detailed information about the items shipped to Amazon's North Carolina customers;

    c.      A declaration that DOR's policy and practice of issuing information document requests to out-of-state websites and other businesses that encompass constitutionally protected information violates the free speech and privacy rights of Intervenors and other individuals in North Carolina;

    d.      Appropriate injunctive relief, including, but not limited to, a permanent injunction:  prohibiting DOR from issuing information document requests that encompass constitutionally protected information about individuals' expressive and private activities; and ordering DOR to destroy or return any information it receives about individuals' expressive and private activities;

    e.      A declaration that DOR's demand for the disclosure of personally identifiable customer information from Amazon concerning sales of video or audiovisual material violates the Video Privacy Protection Act, 28 U.S.C. § 1710;

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

f.       Appropriate injunctive relief, including, but not limited to, a permanent injunction:  prohibiting Amazon from disclosing personally identifiable customer information concerning sales of video or audiovisual material to DOR absent the receipt of informed, written consent from the affected customers or a warrant, grand jury subpoena, or court order permitting such disclosure; prohibiting DOR from receiving personally identifiable customer information concerning sales of video or audiovisual material absent the receipt of informed, written consent from the affected customers or a warrant, grand jury subpoena, or court order permitting such disclosure; and prohibiting DOR from issuing future information document requests that call for the disclosure of personally identifiable customer information concerning sales of video or audiovisual material absent the receipt of informed, written consent from the affected customers or a warrant, grand jury subpoena, or court order permitting such disclosure;

g.       Attorneys' fees and costs; and

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

h.        Such other and other further relief that the Court deems just and proper.

Respectfully submitted this 23rd day of June, 2010.

ATTORNEYS FOR PLAINTIFFS-
INTERVENORS

/s/ Venkat Balasubramani
Venkat Balasubramani, WSBA #28269
**FOCAL PLLC**
8426 40th Ave SW
Seattle, WA 98136
Tel:    (206) 529-4827
Fax:    (206) 260-3966
Email: venkat@focallaw.com

**AMERICAN CIVIL LIBERTIES UNION OF**
**WASHINGTON FOUNDATION**
Sarah A. Dunne, WSBA # 34869
901 Fifth Ave, Suite 630
Seattle, Washington  98164
Tel:    (206) 624-2184
Fax:    (206) 624-2190
Email: dunne@aclu-wa.org

**AMERICAN CIVIL LIBERTIES UNION OF**
**NORTH CAROLINA FOUNDATION**
Katherine Lewis Parker (*pro hac vice*
application pending)
Post Office Box 28004
Raleigh, North Carolina 27611
Tel:    (919) 834-3466
Fax:    (866) 511-1344
Email:  aclucklp@nc.rr.com

**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**
**Speech, Privacy and Technology Project**
Aden J. Fine (*pro hac vice* application
pending)
Mariko Hirose (*pro hac vice* application
pending)
125 Broad Street, 18th Floor
New York, NY 10004
Tel:    (212) 549-2500
Fax:    (212) 549-2651
Email:  afine@aclu.org
          mhirose@aclu.org

# EXHIBIT B

and plaintiff fails to state a claim for negligent infliction of emotional distress.

Plaintiff's claim for unfair and deceptive trade practices is based on the assumption that the statements were defamatory. Because we found above that plaintiff failed to state claims for defamation, her claim under N.C. Gen. Stat. §75-1 et seq. (1994 & Supp. 1996) cannot be maintained. *See Ellis v. Northern Star Co.*, 326 N.C. 219, 225, 388 S.E.2d 127, 131, *reh'g denied*, 326 N.C. 488, 392 S.E.2d 89 (1990) (Court declined to consider unfair and deceptive trade practices claim based on libel claim, when jury found no libel). The trial court properly dismissed plaintiff's unfair and deceptive trade practices claim.

Having determined that plaintiff failed to state a claim for relief we do not address the issues arising by reason of defendants' affirmative defenses. For the foregoing reasons the instant case is affirmed.

Affirmed.

Judges EAGLES and McGEE concur.

Report per Rule 30(e).

---

# IN RE GRAND JURY SUBPOENA TO KRAMERBOOKS & AFTERWORDS INC.

### U.S. District Court
### District of Columbia

IN RE GRAND JURY SUBPOENA TO KRAMERBOOKS & AFTERWORDS INC.; IN RE GRAND JURY SUBPOENA TO BARNES & NOBLE INC.; Misc. Action Nos. 98-135 (NHJ) and 98-138 (NHJ), April 6, 1998

## NEWSGATHERING

1. **Forced disclosure of information — Disclosure of unpublished information — In general (§60.1001)**

**Forced disclosure of information — Common law privilege (§60.20)**

Subpoenas issued by office of independent counsel to two bookstores seeking titles of books purchased by former White House intern chilled their First Amendment rights and those of intern,

and office must submit ex parte filing describing its need for materials sought and connection between information sought from bookstores and grand jury investigation.

---

Motion by non-party bookstores and former White House intern seeking to quash subpoenas issued by office of independent counsel.

Office of independent counsel ordered to submit ex parte filing describing its need for materials sought and connection between information sought and grand jury investigation.

*Full Text of Opinion*

Johnson, J.:

The Independent Counsel has issued a subpoena to Kramerbooks & afterwords, Inc. ("Kramerbooks"), an independent bookstore and cafe in Dupont Circle. The subpoena requests "all documents and things referring or relating to any purchase by Monica Lewinsky" from November 1995 to the present, including but not limited to certain purchases made by check. Both Kramerbooks and Monica Lewinsky have moved to quash the subpoenas. Barnes & Noble, a national chain of bookstores, has received a similar subpoena directed to one of its local stores, and has moved to quash that subpoena.[1] Before the Court are also briefs filed by *amici curiae* in support of the motions to quash: one from the American Civil Liberties Union and the American Civil Liberties Union of the National Capital Area and another from the American Booksellers Foundation for Free Expression *et al.*

The Office of Independent Counsel ("OIC") contends that the Supreme Court's decision in *United States v. R. Enterprises*, 498 U.S. 292 (1991), governs the outcome of the motions to quash. In *R. Enterprises*, a federal grand jury issued subpoenas to three companies its suspected of interstate transportation of obscene materials. *Id.* at 294. The subpoenas in that case sought corporate books and rec-

---

[1] The Court finds that Kramerbooks and Barnes & Noble have standing to challenge the subpoena. *See Virginia v. American Booksellers Associations*, 484 U.S. 383, 392-93 [14 Med.L.Rptr. 2145] (1988).

ords as well as copies of videotapes and the three companies moved to quash the subpoenas, arguing that the materials sought were irrelevant to the grand jury's investigation and that the enforcement of the subpoenas was likely to infringe upon their First Amendment rights. *Id.* at 294-95.

The *R. Enterprises* Court decided that the movants' relevancy argument was unavailing because there existed a "reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation. *Id.* at 301. The Court went on to state: "The Court of Appeals determined that the subpoenas did not satisfy Rule 17(c) and thus did not pass on the First Amendment issue. We express no view on this issue and leave it to be resolved by the Court of Appeals." *Id.* at 303. Because it did not address the First Amendment question at issue here, *R. Enterprises* does not end the Court's inquiry.

The Court finds that the First Amendment is indeed implicated by the subpoenas to Kramerbooks and Barnes & Noble. The First Amendment right to receive ideas "follows ineluctably from the sender's . . . right to send them" and is also "a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom." *Board of Education v. Pico*, 457 U.S. 853, 867 (1982); *see also Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) ("In a variety of contexts this Court has referred to a First Amendment 'right to receive information and ideas.'"); *Griswold v. Connecticut* 381 U.S. 479, 482 ("The right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read. . . .").

It is apparent that the materials sought by the subpoenas would disclose specific titles of books purchased by Ms. Lewinsky, whose First Amendment rights are at issue here. *See Virginia v. American Booksellers Association* 484 U.S. 383, 393 [14 Med.L.Rptr. 2145] (1988) (recognizing First Amendment rights of bookbuyers). Kramerbooks and Barnes & Noble are also engaged in constitutionally protected expressive activities. "The constitutional guarantee of freedom of the press embraces the circulation of books as well as their publication." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 65 n.6 [1 Med.L.Rptr. 1116] (1963). Justice Douglas emphasized the First Amend-

ment implications of revealing an individual's book purchases: "A requirement that a publisher disclose the identity of those who buy his books, pamphlets, or papers is indeed the beginning of surveillance of the press . . . . Once the government can demand of a publisher the names of the purchasers of his publications, the free press as we know it disappears . . . the purchase of a book or pamphlet today may result in a subpoena tomorrow." *United States v. Rumely*, 345 U.S. 41, 57 (1953) (Douglas, J., concurring); *see also Denver Area Educational Telecommunications Consortium Inc. v. FCC*, 116 S.Ct. 2374, 2391 (1996) (finding that the requirement that viewers must affirmatively request certain programming "will further restrict viewing by subscribers who fear for their reputations should the operator, advertently or inadvertently, disclose the list of those who wish to watch the 'patently offensive' channel"); *Lamont v. Postmaster General*, 381 U.S. 301, 307 (1965) (finding unconstitutional the requirement that an addressee file a written request with the post office to receive political propaganda because such a requirement "is almost certain to have a deterrent effect").

[1] The bookstores and Ms. Lewinsky have persuasively alleged a chilling effect on their First Amendment rights. Many customers have informed Kramerbooks personnel that they will no longer shop at the bookstore because they believed Kramerbooks to have turned documents over to the OIC that reveal a patron's choice of books. Kramer Decl. at ¶17. Sales at the bookstore have also declined, *id.* at ¶18, and the store was picketed by a group of librarians. Kramerbooks' Mot. to Quash at Exh. 2. Barnes & Nobles states that it believes the compelled disclosure of this information will chill its First Amendment right to distribute reading material and its customers' First Amendment right to have access to such material. Rosen Decl. at ¶8. Ms. Lewinsky alleges that her right to purchase books has been chilled for fear of intrusion and embarrassment. Lewinsky's Mot. to Quash at p. 6.

The Supreme Court has never explicitly defined the standard under which a grand jury subpoena that implicates the First Amendment must be examined, though it has noted, "We do not expect that courts will forget that grand juries must operate within the limits of the First Amendment." *Branzburg v. Hayes*,

408 U.S. 665, 710 [1 Med.L.Rptr. 2617] (1972). In *Branzburg*, the Supreme Court ruled that there was no "reporter's privilege" and that reporters were obliged to respond to grand jury subpoenas and to answer questions relevant to an investigation into the commission of crime just as any citizen would. The Court found that the First Amendment did not apply to prevent the testimony; "neither the First Amendment nor any other constitutional provision protects the average citizen from disclosing to a grand jury information that he has received in confidence." *Id.* at 682. The Court stated that, "[i]f the test is that the government 'convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest,'" then that test was met in that case. *Id.* at 700-01 (citation omitted).

That test has been adopted by the courts of appeal facing the question of a grand jury subpoena implicating the First Amendment. First, the government must demonstrate a compelling interest in the information sought or a compelling need for the information sought. *In re Grand Jury Subponea Duces Tecum*, 78 F.3d 1307, 1312 (8th Cir.) (holding that "a grand jury subpoena will be enforced despite a First Amendment challenge if the government can demonstrate a compelling interest in . . . the information sought"), *cert. denied* 117 S.Ct. 432 (1996); *In re Grand Jury Proceedings*, 776 F.2d 1099, 1102-03 (2d Cir. 1985) (holding that state interests must be "compelling" and able to survive "exacting scrutiny" as to whether they are "sufficiently important to outweight the possibility of infringement" of the First Amendment by a grand jury subpoena); *In re Grand Subpoena*, 701 F.2d 115, 119 (10th Cur, 1983) (holding that, if the district court determines that enforcement of a subpoena would chill associational rights, the government "must show a compelling need to obtain documents identifying petitioners' members"); *Bursey v. United States*, 466 F.2d 1059, 1083 (9th Cir. 1972) (holding in the grand jury subpoena context that "[w]hen governmental activity collides with First Amendment rights, the Government has the burden of establishing that its interest are legitimate and compelling and that the incidental infringement upon First Amendment rights is no greater than is essential to vindicate its subordinating interests"), *overruled in part on other* grounds, *In re Grand Jury Proceedings*, 863 F.2d 667, 670 (9th Cir. 1988).

Second, the government must also show a sufficient connection between the information sought and the grand jury investigation where there is a First Amendment challenge to a grand jury subpoena. *In re Grand Jury Subpoena Duces Tecum*, 78 F.3d at 1312 (holding that "a grand jury subpoena will be enforced despite a First Amendment challenge if the government can demonstrate . . . a sufficient nexus between the information sought and the subject matter of its investigation"); *In re Grand Jury Proceedings*, 776 F.2d at 1103 (holding that there must be a "substantial relation" between the governmental interest and the information required to be disclosed.)

The Court finds, then, that it must determine whether the Office of Independent Counsel has a compelling need for the materials it seeks and whether there is a sufficient connection between that information and the grand jury's investigation. Because the OIC did not have an opportunity at the public hearing on this matter to make such a submission, the Court will order that it do so at this time.

Accordingly it is this 6th day of April 1998,

ORDERED that the Office of Independent Counsel submit to the Court *ex parte* a filing describing its need for the materials sought by the subpoenas to Kramerbooks and Barnes & Noble and the connection between the information sought and the grand jury investigation, no later than Thursday, April 9, 1998, at 5:00 p.m.

## ORDER

Before the Court are two motions of *amici curiae*. The Court has previously granted the motion of American Booksellers Foundation for Free Expression *et al* ("American Booksellers") for leave to file a brief as *amici curiae*. Now the American Booksellers move to file their amicus brief on the public record. Also pending is the motion of the American Civil Liberties Union and the American Civil Liberties Union of the National Capital Area for leave to file a memorandum of law as *amici curiae* in support of Kramerbooks' motion to quash a grand jury subpoena.

Upon consideration of these motions, it is this 6th day of April 1998.

ORDERED that the motion of the American Booksellers Foundation for Free Expression *et al* for leave to file their *amici curiae* brief on the public record be, and hereby is, granted; it is further

ORDERED that the motion of the American Civil Liberties Union and the American Civil Liberties Union of the National Capital Area for leave to file a memorandum of law as *amici curiae* in support of Kramerbooks' motion to quash a grand jury subpoena, be, and hereby is, granted; it is further

ORDERED that the motions of *amici curiae* American Booksellers Foundation for Free Expression *et al*, and the American Civil Liberties Union and the American Civil Liberties Union of the National Capital Area in support of the motion of Kramerbooks to quash a grand jury subpoena be, and hereby are, *unsealed*.

———————

# MILSAP v. STANFORD

### U.S. Court of Appeals
### Seventh Circuit
### (Unpublished)

JAMES W. MILSAP v. GREGORY D. STANFORD, No. 95-C-0086, March 9, 1998

## REGULATION OF MEDIA CONTENT

### 1. Defamation — Retraction (§11.47)

Federal district court in Wisconsin did not err by dismissing plaintiff former job training center director's libel action, based on statement in newspaper column that he "simply reneged on paying people," for failure to comply with requirements of Wis. Stat. Section 895.05(2), since his retraction demand letter failed to identify offending statement and contained no statement of what plaintiff claimed to be true facts.

———————

Libel action against newspaper, reporter, editorial page editor, and attorney in charge of newspaper's legal department. The U.S. District Court for the District of Minnesota granted defendants' motion to dismiss for lack of personal jurisdiction (23 Med.L.Rptr.

1349). The U.S. District Court for the Eastern District of Wisconsin granted defendants' motion for summary judgment (25 Med.L.Rptr. 1050), and the U.S. Court of Appeals for the Seventh Circuit affirmed in part, reversed in part, and remanded (25 Med.L.Rptr. 1046). From decision of the U.S. District Court for the Eastern District of Wisconsin dismissing the claim, plaintiff appeals.

Affirmed.

[Editor's Note: The U.S. Court of Appeals for the Seventh Circuit has designated this decision as an "unpublished order not to be cited per Circuit Rule 53."]

*Full Text of Opinion*

Before Ripple, Manion, and Rovner, JJ.

This successive appeal concerns an editorial column written by Gregory Stanford, containing a statement that James Milsap alleges is defamatory under Wisconsin law. In the editorial column, Stanford referred to Milsap's activities in Milwaukee in the late 1960's when Milsap ran a job training program and opened a center called "Inner City Hall." The center published a local newspaper, and Stanford worked at the newspaper. In the article, Stanford commented on how Milsap was able to afford certain items at the center and certain personal items, stating: "if my case was typical. . . . [Milsap] simply reneged on paying people."

Initially, Milsap brought a variety of claims, including defamation, against Stanford; the Milwaukee Journal, which published the article; and two other Milwaukee Journal employees. The district court granted summary judgment in favor of the defendants on all claims. Milsap appealed, challenging only the decision on the defamation claim. We held that Stanford's statement that Milsap reneged on paying people was actionable, but only to the extent it suggested that Milsap had failed to pay Stanford. *Milsap v. Journal/Sentinel, Inc.*, 100 F.3d 1265, 1268 [25 Med.L.Rptr. 1046] (7th Cir. 1996). We remanded the case only with respect to Stanford and his statement that Milsap reneged on paying him. *Id* at 1271. On remand, the district court dismissed this claim pursuant to Fed.R.Civ.P 12(b)(6), finding that Milsap had not complied with the requirements of Wis. Stat. §895.05(2) prior to