THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, LLC,

                Plaintiff,

      v.

KENNETH R. LAY, in his official capacity
as Secretary of the North Carolina Department
of Revenue,

                Defendant.

No. 10-cv-00664-MJP

**NORTH CAROLINA
MOTION TO DISMISS
(Fed. R. Civ. P. 12)**

NOTE ON MOTION CALENDAR:
August 6, 2010

NOW COMES defendant Kenneth R. Lay, in his official capacity as Secretary of the North Carolina Department of Revenue, by and through undersigned counsel, and moves the court to dismiss the Complaint for Declaratory Relief filed in this action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure for the following reasons:

    1.   The court lacks jurisdiction of the subject matter of the complaint on the grounds that declaratory relief is barred in this case under the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA").

    2.   The court lacks jurisdiction of the subject matter of the complaint based on principles of comity.

    3.   The court lacks jurisdiction of the subject matter of the complaint on the prudential

NC MOTION TO DISMISS - 1
10-cv-00664-MJP

grounds that plaintiff's claims lack ripeness.

4.   The complaint fails to state a claim upon which relief can be granted in that the claims asserted have no basis in law or fact.

## NATURE OF THE ACTION

Amazon asks this court to impermissibly restrain the assessment and collection of North Carolina sales and use taxes and disrupt the sovereign's administration of its tax system. Specifically, it seeks a declaratory judgment that the collection of neutral commercial information by the North Carolina Secretary of Revenue necessary for assessing sales and use taxes should be curtailed by a federal court on First Amendment grounds.  Amazon alleges that the production of customer names and limited product information would violate its customers' rights of freedom of speech and expression under the United States and Washington State Constitutions.  Its entire claim is premised on its gratuitous provision of unnecessary information that the Secretary has repeatedly stated he neither requires nor desires (and has offered to return). Amazon additionally seeks to preempt North Carolina's audit on the grounds that providing detailed information regarding its customers' expressive choices would violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").

The United States Supreme Court has long held that the Tax Injunction Act and principles of comity prohibit federal courts from entertaining claims for relief that risk disrupting state tax administration, including actions for declaratory judgment such as that brought by Amazon.  These fundamental and entrenched principles of non-interference bar this action and it must be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1).  In addition, Amazon's claims do not present a case or controversy that is ripe for determination and the court therefore

lacks jurisdiction for this reason as well.  Finally, Amazon's complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

## FACTS

### The North Carolina Sales and Use Tax Statutory Scheme

North Carolina imposes a "sales tax" on retailers, such as Amazon.  N.C. Gen. Stat. § 105-164.4.  North Carolina also imposes a "use tax" on customers who purchase property for use within North Carolina.  N.C. Gen. Stat. § 105-164.6.[1]  The use tax is due when the retailer fails to collect the sales tax.  This case involves North Carolina's investigation of the sales tax liability of Amazon and the use tax liability of Amazon's North Carolina customers.

As the North Carolina Supreme Court recognized long ago, "[t]he legislative history of our sales and use tax discloses that when our sales tax was imposed in 1933, it tended to encourage residents to make out-of-state purchases to escape payment of the tax."  *Colonial Pipeline Company v. Clayton*, 275 N.C. 215, 223, 166 S.E.2d 671, 677 (1969).  "As a result, the legislature enacted the use tax in 1937 . . . to impose the same burdens on out-of-state purchases as the sales tax imposes on purchases within the state."  *Id*.  The "chief function" of the use tax is "to prevent the evasion of the North Carolina sales tax" by persons purchasing property outside of North Carolina for use within the State.  *Johnston v. Gill*, 224 N.C. 638, 643, 32 S.E.2d 30, 33 (1944).  "While a sales tax and a use tax in many instances may bring about the same result, they are different in conception.  They are assessments upon different transactions and are bottomed on distinguishable taxable events."  *Id*. at 643, 32 S.E.2d at 33.  The sales tax and the use tax are,

---

[1]   North Carolina also imposes a variety of local sales and use taxes which are administered by the Secretary of Revenue.  *See* Articles 39, 40, 42, and 43 of Chapter 105 of the North Carolina General Statutes.

NC MOTION TO DISMISS - 3
10-cv-00664-MJP

however, "complementary and functional parts of one system of taxation." *Id*. at 644, 32 S.E.2d at 33.

### Amazon's Refusal to Collect and Remit North Carolina Sales Taxes

The North Carolina Department of Revenue ("NC Revenue") first contacted Amazon in 2000 regarding its tax obligations to the State.  Declaration of Alan Woodard ("Woodard Decl.") ¶ 11, Ex. A.  NC Revenue informed Amazon that it was responsible for the collection of sales and use taxes because it was engaged in business in North Carolina based on its relationships with affiliates in the State.  *Id*.  Amazon responded by letter, contending that the Internet Tax Freedom Act and the Commerce Clause precluded North Carolina from asserting tax liability. *Id*., Ex. B.  This impasse remained unresolved.  *Id.* ¶ 11.

In 2009, NC Revenue wrote to Amazon, again informing it of its obligation to collect North Carolina sales and use taxes, and instructed the company to remit all taxes due.  *Id*., Ex. C. Amazon objected to liability on statutory and constitutional grounds, stating that NC Revenue "may not compel Amazon to collect or remit North Carolina sales or use taxes on any of its internet sales to North Carolina residents." *Id*., Ex. D.  NC Revenue responded that it disagreed with Amazon's analysis of the relevant law and informed Amazon that an audit would be scheduled.  *Id*., Ex. E.  To date, Amazon has not registered for North Carolina sales and use tax purposes and has not collected and remitted any sales tax on its sales to North Carolina residents. *Id*. ¶ 11.

As alleged by plaintiff, its customers in North Carolina purchased more than 50 million products from Amazon's website between August 1, 2003 and February 28, 2010.   Compl. ¶¶ 3, 5, 23.  Amazon has not collected sales taxes on any of these purchases.  Woodard Decl. ¶ 11. NC Revenue has been unable to determine whether any use tax was reported on these

NC MOTION TO DISMISS - 4
10-cv-00664-MJP

1   transactions by the purchasers because Amazon has refused to provide it with its customer lists.

2   *Id.* ¶ 17.

3   ### North Carolina's Sales and Use Tax Examination of Amazon and its Customers

4   NC Revenue began a sales and use tax examination of Amazon in December 2009. *Id.*

5   ¶ 11. This audit involves not only the potential sales tax liability of Amazon, but also the

6   potential use tax liability of Amazon's North Carolina customers. By this examination, NC

7   Revenue seeks to determine whether Amazon is required to collect and remit North Carolina

8   sales taxes on the products sold to North Carolina customers based on its business activities in

9   North Carolina and, if so, the proper amount of sales tax due. In order to calculate the correct

10  amount of tax due (and make the required distributions to local governments), NC Revenue

11  requires certain general information regarding the product purchased and the purchaser. *Id.* ¶ 8.

12  North Carolina's statutory scheme contains numerous exemptions.[2] *See* N.C. Gen. Stat. §

13  105-164.13. In addition, some items, such as food, are taxed at preferential rates. N.C. Gen.

14  Stat. § 105-164.13B. These exemptions and differential rates depend on either the type of

15  product sold, the nature of the purchaser or both. NC Revenue therefore requires the

16  identification of Amazon's customers and the identification of the products sold by very general

17  product categories in order to determine which transactions are exempt from the sales tax and

18  which rate of tax applies to the taxable transactions. Woodard Decl. ¶¶ 7-9.

19  Because Amazon has failed to collect sales tax on its sales to North Carolina customers,

20  NC Revenue also requires the identity of those customers and minimal product descriptions in

21  order to determine whether they have complied with the North Carolina use tax laws. This

22  information is even more critical in this case than the run-of-the-mill audit because Amazon has

---

[2] The exemptions in N.C. Gen. Stat. § 105-164.13 apply to both North Carolina sales tax and North Carolina use tax.

NC MOTION TO DISMISS - 5
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

plainly stated that it will not voluntarily collect sales tax on its sales to North Carolina customers. *Id.* One aspect of this investigation is to determine whether, based on its business structure and practices, Amazon can be required to collect sales tax. On the other hand, until NC Revenue has obtained all of the necessary information to determine whether Amazon's customers have complied with their use tax reporting responsibilities under North Carolina law, it cannot evaluate whether Amazon's customers should be assessed for any use tax due. *Id.*

In order for NC Revenue to determine the amount of sales or use tax due to the State and to collect those amounts, it requires certain minimal information regarding the purchaser and the products purchased. It does not, however, require detailed personal information or expressive content such as the titles of specific books or movies purchased. As explained to Amazon (and the ACLU), this information is of absolutely no value to NC Revenue in performing its statutory duties to account for and collect the revenue due the State. *Id.* ¶ 14.

**Information and Document Requests and Summons Authority**

In connection with the sales and use tax examination, NC Revenue issued a number of information and document requests ("IDRs") pursuant to its statutory authority. *Id.* ¶ 12. The North Carolina General Assembly has authorized NC Revenue to gather information from both taxpayers and third parties as part of its responsibility to administer and enforce the State's tax laws. For example, N.C. Gen. Stat. § 105-258 authorizes NC Revenue, "for the purpose of ascertaining the correctness of any return, making a return where none has been made, or determining the liability of any person for a tax, or collecting any such tax," to summons data "which may be relevant and material" from either the taxpayer or "any other person having knowledge in the premises." If the information requested is not voluntarily provided, NC Revenue has the authority to issue a summons seeking the production of such information. N.C.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

Gen. Stat. § 105-258.  That summons is not-self executing.  If a party fails to comply with the summons, it can only be enforced by the Secretary's filing an application with the Superior Court of Wake County (N.C.) which may hear and adjudicate objections to the summons.  *See In re Summons Issued to Ernst & Young, LLP*, 363 N.C. 612, 617, 684 S.E.2d 151, 154 (2009).  No summons seeking information from Amazon has been issued by NC Revenue.  Woodard Decl. ¶ 19.

In response to the IDRs, Amazon produced disks with data on millions of purchases but did not provide customer names – information for which NC Revenue has a legitimate need.  *Id.* ¶ 13.  Although NC Revenue only requires sufficient general product information to determine tax rates and exemptions, in response to the IDRs Amazon included, without objection or cautionary comment,[3] what it terms the "Amazon Specific Identification Number" ("ASIN") for the 50 million purchases by North Carolina customers.  *See* Compl. ¶ 28.  Amazon provided this information in electronic format on disks which also contained vast quantities of other information, including the county, city and postal code where the orders were shipped.  Woodard Decl. ¶ 13.  Due to the format in which the data was provided, NC Revenue cannot simply strip out the ASIN numbers.  *Id.* ¶ 16.  NC Revenue needs the other data included on the disks, including county of destination and purchase amounts, in order to properly compute the amount of tax due (the counties levy different rates of tax).  *Id.*

The gravamen of Amazon's First Amendment claim is its contention that if NC Revenue were to individually search the 50 million North Carolina customer purchases by ASIN number on the Amazon website, it could locate each item and learn the title of each book, DVD or music

---

[3] Amazon never suggested to the auditors collecting the data being provided that there was any concern that the ASIN numbers provided expressive content or other private information.  Woodard Decl. ¶ 13.  The first time NC Revenue knew about such concerns was when this lawsuit was filed.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

selection purchased.  Compl. ¶ 28.  It is simply not feasible, however, for NC Revenue to manually search Amazon's website and match up the ASIN numbers with 50 million transactions for purposes of determining the appropriate rate of tax for each transaction. Woodard Decl. ¶ 14.  The ASIN numbers are therefore essentially useless for NC Revenue's purposes.  *Id*.  What NC Revenue requires instead is much less detailed information about these products.  *Id*.

Although Amazon produced without objection the ASIN numbers – which provide a level of detail wholly unnecessary to NC Revenue's investigation needs – it now refuses to provide customer names or addresses based on its speculative and unreasonable assertion that NC Revenue could determine which customer purchased what book title and that this would violate its customers' rights of privacy, including customer choices of expressive material.  *See* Compl. ¶ 29.  NC Revenue simply does not need the level of detail provided by Amazon.  It has absolutely no interest in Amazon's customers' reading habits, their religious or political beliefs or sexual orientation.  This fact has been explained to Amazon on more than one occasion. Woodard Decl. ¶ 16, Ex. F.  Even if Amazon believed at one time that NC Revenue had requested ASIN numbers, NC Revenue has offered to return the disks containing ASIN codes in exchange for more general product information and the names of the North Carolina customers. *Id.* ¶ 16.  For reasons unexplained, Amazon has chosen not to have the "expressive content" to which it objects returned in exchange for providing more neutral commercial information.  It is Amazon, not NC Revenue, that has created and perpetuated the problem about which it now complains.

## ARGUMENT

### I.    THE TAX INJUNCTION ACT AND COMITY BAR THIS ACTION.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

This court lacks jurisdiction over plaintiff's efforts to restrain the assessment and collection of North Carolina sales and use taxes. The United States Supreme Court has "long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 586 (1995). The reason for this policy of federal non-interference was articulated by the Court in 1871: "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Dows v. Chicago*, 78 U.S. (11 Wall.) 108, 110 (1871). The Supreme Court very recently underscored the vitality and criticality of these fundamental principles. *Levin v. Commerce Energy, Inc.*, 176 L. Ed. 2d 1131 (2010) (Thomas J., concurring).

The passage of the Tax Injunction Act in 1937 represents one manifestation of the aversion repeatedly shown by Congress and the Supreme Court to federal interference with state tax administration. *National Private Truck Council*, 515 U.S. at 586. The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S 68, 73 (1976). The Tax Injunction Act instructs: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The United States Supreme Court has explained that the TIA is "a jurisdictional rule" and a "broad jurisdictional barrier." *Arkansas v. Farm Credit Services*, 520 U.S. 821, 825 (1997); *see also Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522 (1981) (the TIA is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

important a local concern as the collection of taxes"). As most recently articulated: "The TIA prohibits the federal courts from exercising jurisdiction over any action that would 'suspend or restrain the assessment, levy, or collection of [a] tax under State law.'" *Commerce Energy*, 176 L. Ed. 2d at 1149. Significantly, the TIA's jurisdictional bar against injunctions applies equally to declaratory judgment actions, such as that brought by plaintiff. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). The Court explained that those actions are just as violative of the TIA as actions for injunctive relief because they may "'in every practical sense operate to suspend the collection of the state taxes.'" *Id*. (citation omitted)

The Court of Appeals for the Ninth Circuit has applied these principles in a number of cases, including *Blangeres v. Burlington Northern, Inc.,* 872 F.2d 327, 328 (9th Cir. 1989) (per curiam) (affirming district court ruling that TIA deprived it of subject matter jurisdiction). There, the court held that even an indirect restraint on the assessment of state taxes violates the TIA. In that case, the plaintiffs sought to enjoin the production of records to the state taxing authority. The court held that the injunction would prevent the taxing authority from obtaining the information necessary to assess a tax and would therefore restrain the assessment of state taxes. "The fact that the injunction would restrain assessment indirectly rather than directly does not make the Tax Injunction Act inapplicable." *Id*. *Blangeres* is directly on point and requires dismissal of plaintiff's action.

Other Ninth Circuit decisions confirm that the TIA is "'a broad jurisdictional impediment to federal court interference with the administration of state tax systems.'" *Dillon v. Montana*, 634 F.2d 463, 466 (9th Cir. 1980) (citation omitted); *see also Jerron West, Inc. v. California State Board of Equalization*, 129 F.3d 1334, 1338 (9th Cir. 1997) (TIA has been "broadly construed" to bar federal court jurisdiction over actions seeking interference with a state's tax assessment and

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

collection processes), *cert. denied*, 525 U.S. 819 (1998); *May Trucking Co. v. Oregon DOT*, 388 F.3d 1261, 1266 (9th Cir. 2004) (rejecting "cramped construction" as counter to Supreme Court's interpretation of TIA as "broad jurisdictional barrier").

Plaintiff's claims in this case fall squarely within the TIA's jurisdictional bar because they seek to prevent NC Revenue from obtaining the information necessary to assess a tax. Significantly, the party asserting jurisdiction bears the burden of establishing subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss. *Kokkonen v. Guardian Life Insur. Co.*, 511 U.S. 375, 377 (1994). "[U]nlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint – it may consider facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). In support of a Rule 12(b)(1) motion, "the moving party may submit affidavits" and it "'then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *Colwell v. Dep't of Health and Human Services*, 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted).

The court therefore need not and should not accept Amazon's bald assertion that NC Revenue "does not need personally identifiable information about Amazon's customers in order to audit Amazon's compliance with state tax laws." Compl. ¶ 1. This assertion is erroneous for a number of reasons. First, as explained in the Woodard Declaration, NC Revenue does, in fact, need information about Amazon's customers in order to properly assess Amazon for sales tax liability. Woodard Decl. ¶¶ 8, 17. More fundamentally, however, this information is absolutely critical to NC Revenue's ability to assess Amazon's customers for use tax liability. Under North Carolina law, "[a]n individual in North Carolina owes use tax on an out-of-state purchase when

NC MOTION TO DISMISS - 11
10-cv-00664-MJP

the item purchased is subject to North Carolina sales tax and the retailer making the sale does not

collect sales tax on the sale . . . .   When an out-of-state retailer does not collect sales tax, the

responsibility of paying the tax falls on the purchaser."   *Id.* ¶ 18, Ex. G.   Because Amazon has

refused to collect sales taxes on the sales of products shipped to North Carolina, its customers are

liable for the use tax under North Carolina law.   Amazon's refusal to provide customer

information therefore directly impedes NC Revenue's ability to assess taxes properly due the

State.

The fact that plaintiff has raised constitutional challenges to the tax assessment process

cannot overcome the lack of jurisdiction.   "The Tax Injunction Act does not distinguish between

statutory and constitutional claims; the district courts are without jurisdiction to review either, if

the dispute concerns a tax under state law and there is an adequate state remedy."   *Miami Herald*

*Publishing Co. v. Hallandale*, 734 F.2d 666, 672 (11th Cir. 1984).   The Supreme Court has also

specifically observed that "[c]arving out a special exception [to the Tax Injunction Act] for

taxpayers raising First Amendment claims would undermine significantly Congress' primary

purpose 'to limit drastically federal district court jurisdiction to interfere with so important a

local concern as the collection of taxes.'"   *Grace Brethren Church*, 457 U.S. at 416 (citation

omitted).   This court therefore lacks jurisdiction over plaintiff's federal and state constitutional

challenges, as well as its claim under the Video Privacy Protection Act, and each must be

dismissed under the TIA.

Although there is a limited exception to the TIA, that exception has no application here.

"While the Act excludes jurisdiction over actions seeking district court intrusion into the state

taxation process, the Act provides an exception where there is no adequate state remedy."

*Jerron West*, 129 F.3d at 1338.   In order to be faithful to the concerns underlying the TIA, the

NC MOTION TO DISMISS - 12
10-cv-00664-MJP

Supreme Court has held that this "plain, speedy and efficient" exception must be narrowly construed. *Grace Brethren Church*, 457 U.S. at 413. The state remedy must meet "certain minimal *procedural* criteria." *LaSalle National Bank*, 450 U.S. at 512 (emphasis in original). Specifically, it must provide a taxpayer "with a 'full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections." *Id*. at 514. Here, plaintiff has a "plain, speedy and efficient" remedy in the North Carolina state courts as interpreted by the Supreme Court.

Amazon alleges that it "must either comply with the DOR's information request and violate the privacy and First Amendment rights of Amazon and its North Carolina customers, or refuse to comply with a request from a state agency that has stated its intention to issue an administrative summons." Compl. ¶ 35. Based on its self-created conundrum, Amazon improperly attempts to protect its rights and those of its customers through a declaratory judgment by this court. *See id*. The North Carolina Revenue Laws contain a specific remedy for precisely this situation, however, in N.C. Gen. Stat. § 105-258. This state remedy provides an opportunity for a hearing and a judicial determination at which Amazon may raise any objections to the information requested by NC Revenue, including constitutional objections.

The North Carolina General Assembly has granted the Secretary of Revenue broad authority to gather information needed to perform his statutory duties. N.C. Gen. Stat. §§ 105-251; 105-252; 105-258. "Since the enactment of North Carolina's first income tax in 1921, the legislature has expressly authorized the Secretary to . . . examine books and records to ensure compliance with the revenue laws." *In re Summons Issued to Ernst & Young, LLP,* 636 N.C. at 618, 684 S.E.2d at 155. The law specifically permits the Secretary to request data "which may be relevant and material" to "determining the liability of any person for a tax" from "any other

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

person having knowledge in the premises." N.C. Gen. Stat. § 105-258(b). The Secretary may issue a summons for such data in connection with either a civil or criminal tax investigation and, if it is not produced, enforce the summons in the North Carolina courts. The North Carolina statute is modeled after 26 U.S.C. § 7602, the comparable federal provision, which has been upheld as constitutional by the United States Supreme Court. *See Couch v. United States*, 409 U.S. 322, 326 (1973). The North Carolina statute has been also been sustained against constitutional challenge by the North Carolina appellate courts.

The North Carolina Court of Appeals held that N.C. Gen. Stat. § 105-258 did not "violate constitutional search and seizure provisions because the statute is *not* self-enforcing." *State v. Davis*, 96 N.C. App. 545, 551, 386 S.E.2d 743, 746 (1989) (emphasis in original). Because the Secretary must seek enforcement of his summons from the superior court, "the court's scrutiny of the order will ensure that no abuse of process occurs." *Id.* The Court of Appeals explained that a summons under N.C. Gen. Stat. § 105-258 would violate constitutional protections, however, if it were "overly broad, not issued in good faith for a legitimate purpose or not relevant to that purpose." *Id.* at 552, 386 S.E.2d at 746. Importantly, the court further held that, like its federal counterpart, the Secretary's administrative summons power was necessary to "allow investigations on the suspicion that a [tax] law is being violated or even because the Department wants assurances that it is not." *Id.*

Recently, the North Carolina Supreme Court held that N.C. Gen. Stat. § 105-258 "expressly gives the Superior Court of Wake County jurisdiction over summons enforcement proceedings." *In re Summons Issued to Ernst & Young, LLP,* 363 N.C. at 617, 684 S.E.2d at 154. Pursuant to this "express grant of jurisdiction," the state court has the inherent authority to take any and all actions reasonably necessary to administer its duties under the statute, including

NC MOTION TO DISMISS - 14
10-cv-00664-MJP

providing third parties with notice and an opportunity to assert privileges.  *Id*.  Here, if and when NC Revenue exercises its authority to issue a summons, N.C. Gen. Stat. § 105-258 provides a "plain, speedy and efficient" remedy for Amazon to raise any objections to the information requested.  The TIA therefore expressly precludes federal court jurisdiction over Amazon's declaratory judgment.

Additionally, the United States Supreme Court recently reaffirmed that comity provides a separate and independent bar to "claims for relief that risk disrupting state tax administration" that is even "[m]ore embracive than the TIA."  *Commerce Energy*, 176 L. Ed. 2d at 1138.  The Court strongly cautioned that "[c]omity's constraint has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity," and reiterated that comity requires that constitutional challenges to state taxation proceed originally in state court.  *Id*.  As the Supreme Court has consistently emphasized, the North Carolina courts are better positioned than their federal counterparts to interpret and enforce the statutory and constitutional limitations on the Secretary's summons authority under North Carolina law.  *See Id*. at 1138.  Significantly, the North Carolina Supreme Court has specifically held that the "specialized procedures [in N.C. Gen. Stat. § 105-258] are vital to the effectiveness of the Secretary's summons power."  *In re Summons Issued to Ernst & Young, LLP*, 636 N.C. at 618, 684 S.E.2d at 155.  The North Carolina courts are also better positioned to understand the interplay between the North Carolina sales and use tax, the exemptions and preferential rates that the State legislature enacted, as well as statutory presumptions and documentation and record retention requirements.  Comity provides an alternative and even "more embracive" bar to plaintiff's claims and they must be dismissed for this reason as well.

## II.      PRINCIPLES OF RIPENESS BAR THIS ACTION.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

Even if Amazon could somehow overcome the insurmountable barriers of the TIA and comity, it nevertheless has no claims ripe for adjudication.   Article III of the United States Constitution requires that the federal courts decide only cases or controversies.   This requirement is reflected in the doctrine of ripeness, which serves as an additional jurisdictional bar to plaintiff's action.

Ripeness is "peculiarly a question of timing."   *Buckly v. Valeo*, 424 U.S. 1, 114 (1976). "[I]ts basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative position has been formalized and its effects felt in a concrete way by the challenging parties."   *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967).   The role of the courts is "neither to issue advisory opinions not to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."   *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc); *see also Chemerinsky*, FEDERAL JURISDICTION, 99 (1989) (ripeness "seeks to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action").

The doctrine of ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."   *Id*.   As the Ninth Circuit Court of Appeals has held, "[r]ipeness is more than a mere procedural question; it is determinative of jurisdiction.   If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."   *Southern Pacific Transp. Co. v. Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990).

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

Here, Amazon's claims are premature and seek judicial interference with administrative decisions that have not been finalized.  NC Revenue has not decided whether to issue to a summons against Amazon or what information any such hypothetical summons might request.  If a summons is issued and if that summons includes a request for customer names – a purely speculative proposition at this point – Amazon has a choice whether or not to comply.  If Amazon fails to comply – also speculative – NC Revenue is then faced with a decision: to enforce or not to enforce the summons.  In lieu of proceeding with a summons enforcement action, NC Revenue could proceed to issue a sales tax assessment against Amazon, assessing tax on all transactions at the highest rate.  The burden is on Amazon to establish that it qualifies for an exemption or a lower rate.  *Olin Mathieson Chemical Corp. v. Johnson*, 257 N.C. 666, 667, 127 S.E.2d 262, 263 (1962).  This would not be an unreasonable decision on the part of NC Revenue; past experience with summons enforcement actions has proven that they are both time and resource-consuming propositions.  *See In re Summons Issued to Ernst & Young, LLP*, 363 N.C. at 617, 684 S.E.2d at 154 (litigation over summons issued in February 2007 resolved by highest court of North Carolina in October 2009).  Alternatively, NC Revenue could determine that Amazon lacks the requisite nexus with North Carolina and decide not to issue an assessment against Amazon.  It would then be faced with the decision whether to pursue use tax assessments against Amazon's customers. Finally, NC Revenue could decide to issue a summons that includes customer names and move to enforce that summons in the courts of North Carolina.  Amazon's claims involve speculation and conjecture about decisions yet to be made and events that may or may not come to pass.  *See Babbitt v United Farm Workers Nat'l Union*, 442 U.S. 289, 304 (1979) (based on prudential ripeness, district court should not have exercised

jurisdiction when it was impossible to know if challenged statute would be applied as alleged by plaintiffs based solely on a hypothesis that such an event will come to pass).

All of these administrative decisions (except Amazon's choice to comply with any hypothetical summons) require a balancing of various factors by the Secretary of Revenue. These are precisely the sorts of decisions that taxing authorities make as sovereigns and which principles of comity counsel a "hands off" approach by the federal courts.    Prudential considerations similar to those animating comity and the TIA also require that plaintiff's premature and speculative claims be dismissed on jurisdictional grounds. *See Laird v. Tatum*, 408 U.S. 1, 14 (1972) ("this approach would have the federal courts as virtually continuing monitors of the wisdom and the soundness of Executive action; such . . . is not the role of the judiciary, absent actual present or immediately threatened injury resulting from unlawful government action").

Because there will be a forum in which to raise any statutory or constitutional issues, there is no hardship to Amazon if this court declines jurisdiction on ripeness grounds.  If the Secretary of Revenue decides, after gathering and evaluating the necessary information, that summons enforcement is warranted, Amazon can raise any objections to the summons at that time in the North Carolina courts.  As a matter of law, those state courts restrict the scope of a NC Revenue summons to comport with constitutional protections and its issuance must be "in good faith for a legitimate purpose."   *Davis*, 96 N.C. App. at 552, 386 S.E.2d at 746. Determinations on such matters should not be the forced result of premature federal adjudication disrupting the Secretary's tax investigation and assessment efforts.

In *Alaska Right to Life v. Feldman*, 504 F.3d 840, 843 (9th Cir. 2007), the plaintiffs challenged a judicial ethics cannon as violating the First Amendment because it "chilled judicial

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

candidates from responding to their survey." The Ninth Circuit Court of Appeals held the plaintiff's constitutional challenges were not ripe and should have been dismissed. *Id.* at 843. Specifically, the court found, without evidence of some real threat of enforcement and a showing that withholding federal adjudication would impose a hardship on the plaintiffs, the district court should have declined to exercise jurisdiction for lack of a justiciable case or controversy. *Id.* The court also concluded there was a "strong likelihood that the Alaska Supreme Court would construe the canon to avoid the constitutional concerns." *Id.* at 850. Here, the North Carolina appellate courts have already held that NC Revenue's summons authority must be exercised in a constitutional manner. *Davis*, 96 N.C. App. at 552, 386 S.E.2d at 746. Thus, there is no reason to expect that the North Carolina courts would enforce any summons issued by NC Revenue that infringed First Amendment rights.

Although pre-enforcement review may be warranted in some First Amendment cases, a court may adopt this "somewhat relaxed approach to justiciability" only upon a showing that the plaintiff is immediately in danger of sustaining a direct injury as a result of an executive action. *Alaska Right to Life*, 504 F.3d at 851; *see also Tatum*, 408 U.S. at 12-13. Here, Amazon cannot make the requisite showing of immediate danger. As explained, no administrative decision has been made to issue a summons, and, if a summons is issued, the North Carolina courts have not had an opportunity to rule on any First Amendment implications relating to such a request. It is an established matter of North Carolina law that a summons will not be upheld by a North Carolina court if it violates the federal or state constitutions, does not serve a legitimate purpose and is not relevant to that purpose. *Davis*, 96 N.C. App. at 552, 386 S.E.2d at 746. Furthermore, plaintiff will not suffer any injury or "undue hardship" since they will have a full and fair "opportunity to raise their constitutional objections . . . if and when" proceedings to enforce any

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

summons issued are initiated sometime in the future. *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1133 (9th Cir. 1996). The "harm" posited by Amazon – the matching of customer names with over 50 million ASIN numbers – involves layer upon layer of speculation, not to mention the wholly unrealistic assumption that NC Revenue could or would actually perform this herculean matching exercise. Such remote and speculative harm fails to satisfy the rigorous demands of a pre-enforcement challenge. For these reasons, the court should dismiss plaintiff's action on ripeness grounds and decline to exercise subject matter jurisdiction.

## III.  AMAZON'S COMPLAINT FAILS TO STATE A CLAIM.

Before the court considers the merits of NC Revenue's 12(b)(6) motion, it must first determine that it has subject matter jurisdiction. "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998) (citation omitted). As a result, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In the event the court reaches the merits of the complaint, plaintiff's federal and state claims should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

### A.    Federal First Amendment Claim

Federal courts routinely recognize that the power of taxation is a compelling governmental interest and have upheld administrative summons and subpoenas against First Amendment challenges. "No power is more basic to the ultimate purpose and function of government than is the power to tax." *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960).

NC MOTION TO DISMISS - 20
10-cv-00664-MJP

1
2
3
4
5
"Nor can it be doubted that the proper and efficient exercise of this essential governmental power may sometimes entail the possibility of encroachment upon individual freedom." *Id.* at 524-25. In fact, the "broad public interest in maintaining a sound tax system" justifies even a substantial burden on free exercise rights under the First Amendment. *Hernandez v. Commissioner of Internal Revenue,* 490 U.S. 680, 699 (1989).

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
The Ninth Circuit Court of Appeals has specifically found the government's interest in maintaining a workable tax system to be compelling in the face of First Amendment challenges. *United States v. Richey*, 924 F.2d 857, 861 (1991); *Bradley v. United States*, 817 F.2d 1400, 1405 (9th Cir. 1987); *see also Graham v. Commissioner of Internal Revenue*, 822 F.2d 844, 853 (1987) (government's interest in an enforceable taxation system is compelling, "as that term has been interpreted in the context of taxation cases and the *first amendment*"), *aff'd*, 490 U.S. 680 (1989); *In re Townley*, 91 A.F.T.R. 2d (RIA) 2231, 2002 U.S. Dist. LEXIS 26497, at *14 (E.D. Wash. 2002) ("United States has a compelling interest in a reliable and efficient tax system"); *Klunder v. United States*, 85 A.F.T.R. 2d (RIA) 1424, 2000-1 U.S. Tax Cas. (CCH) P50381, 2000 U.S. Dist. LEXIS 5471, at *5 (W.D. Wash. 2000) (plaintiff "does not dispute that the government has a compelling interest in determining the substantial correctness of personal income taxes"). In *Bradley*, 817 F.2d at 1405, the court specifically held that this important governmental interest overrode the taxpayer's First Amendment interests and justified the alleged restriction on free expression.

24
25
26
27
28
The Ninth Circuit Court of Appeals has also held that the government's interest in enforcing a summons for tax information is compelling. *United States v. C.E. Hobbs Foundation for Religious Training and Education*, 7 F.3d 169, 173 (9th Cir. 1993). This included an explanation of the necessary steps in analyzing a First Amendment challenge to a summons for

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

tax information.  First, the challenger "must make a showing that the . . . summons burdens the exercise" of First Amendment rights.  If the challenger succeeds in "making this prima facie showing, the [tax authority's] action will be upheld 'only upon demonstration that a compelling interest warrants the burden, and that less restrictive means to achieve the government's ends are not available.'"  *Id.* (citation omitted); *see also United States v. Trader State Bank,* 695 F.2d 1132, 1133 (9th Cir. 1983) (per curiam) (if a party can make a prima facie showing of First Amendment infringement, tax agency must show "a rational connection between the disclosure required by the summons and a legitimate governmental end").  Here, Amazon cannot make this requisite prima facie showing because there has been no summons issued.  Once again, this fact underscores that Amazon's action is both premature and in the wrong forum.

The Court of Appeals for the Second Circuit has also ordered the enforcement of a summons for tax information over First Amendment objections.  The court held that the summons was related to compelling governmental interest – the enforcement of the tax laws.  *St. German of Alaska Eastern Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1094 (2d Cir. 1988).  Amazon's First Amendment challenge to a non-existent summons must be dismissed for failure to state a claim under Rule 12(b)(6).

### B.     Video Privacy Protection Act

Amazon seeks a declaratory judgment that providing a state taxing authority with customer names and the nature of the videos sold to them would violate the Video Privacy Protection Act.  The VPPA has no application to this case and this claim must be dismissed under Rule 12(b)(6).  The VPPA was enacted in response to the release of a list of 146 video tapes rented by the family of a nominee for a seat on the United States Supreme Court.  Congress was "outraged" by the invasion of privacy and "acted quickly to outlaw certain disclosures of

NC MOTION TO DISMISS - 22
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

such clearly private information." *Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 238 (D.N.J. 1996).   The Act creates a civil cause of action for money damages by any person disclosing information identifying a person as having obtained specific video materials. By the plain language of the statute, only a "videotape service provider" as defined by the statute can be held liable for knowingly disclosing the protected information. NC Revenue does not fit within the categories of persons deemed to be a "provider" when protected information is disclosed to them.  *See Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004).   Nor can the provisions of the Act trump the jurisdictional bar of the TIA.   *Blangeres*, 872 F.2d at 328 ("The statute does not expressly provide an exception to the Tax Injunction Act.  We will not carve out exceptions to the Tax Injunction Act unless Congress clearly expresses an intent to create an exception.").

Here, NC Revenue is seeking generic commercial data identifying sales of property subject to North Carolina's sales or use tax.  There are no differential tax rates based on the title or content of video materials so NC Revenue has not sought and would not seek disclosure of the "expressive" content of Amazon's video sales.  The non-issue of the ASIN numbers has been explained elsewhere.  To the extent Amazon believes it is constrained by VPPA from providing generic information about videos sold to its customers, if and when a summons is issued and enforcement proceedings commenced, it may at that time assert the provisions of the Act to the state court for appropriate protection.  *See In re Summons Issued to Ernst & Young, LLP*, 336 N.C. at 617, 386 S.E.2d at 154 (North Carolina court has authority to allow parties to assert privileges).  Amazon may raise this and any other objection to the scope of the summons in the proper state forum.  Plaintiff's VPPA allegations fail to state a claim.

C.    **Washington State Constitution**

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

Amazon also seeks to bring a claim under article I, sections 4 and 5 of the Washington State Constitution.  Because its federal constitutional claim must be dismissed for lack of jurisdiction, its pendant state constitutional claim must similarly be dismissed.  Absent a viable federal claim, it is well established that "pendant state claims also should be dismissed."  *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 651 (9th Cir. 1984) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)).  As explained in *Adams v. Dep't of Corr.*, No. CO8-15RSM, 2008 U.S. Dist. LEXIS 98457, at *7 (W.D. Wash. Dec. 3, 2008) (citing *Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 205 (9th Cir. 1991)), "[o]nly in exceptional cases will the balance of factors to be considered, such as judicial economy, convenience, fairness, and comity, weigh in favor of the federal court deciding the state law claims."  This is not such an exceptional case, however, because the TIA and comity deprive the court of subject matter jurisdiction.  With respect to judicial economy, "this Court has not expended sufficient time on this case to warrant incursion into the areas of state law presented here."  *See id.*  At this early stage of the proceedings, the pendant state claim warrants dismissal.

In the alternative, should the court reach the merits of plaintiff's federal claims, the Washington State Constitution provides no additional First Amendment protection in this case and must also be dismissed under Rule 12(b)(6).[4]

---

[4]   Although there may be some instances where the Washington state constitutional protections are broader than those under the First Amendment, this does not present such a case because it relates to commercial matters.  *See Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn. 2d 789, 800 (2010).

NC MOTION TO DISMISS - 24
10-cv-00664-MJP

DATED this the 12th day of July, 2010.

**MCKAY CHADWELL, PLLC**

By: */s/ Thomas M. Brennan*
Thomas M. Brennan
WSBA No. 30662
600 University St., Suite. 1601
Seattle, WA  98101
Telephone:  (206) 233-2800
Facsimile:  (206) 233-2809
Email:  tmb@mckay-chadwell.com

*Pro Hac Vice*:
**ATTORNEY GENERAL ROY COOPER**
By: */s/ Kay Linn Miller Hobart*
Kay Linn Miller Hobart
Special Deputy Attorney General
N.C. State Bar No. 16746
Telephone: (919) 716-6550
Facsimile: (919) 715-3550
Email:  khobart@ncdoj.gov

By: */s/ Tiare B. Smiley*
Tiare B. Smiley
Special Deputy Attorney General
N.C. State Bar No. 7719
Telephone:  (919) 716-6900
Facsimile:  (919) 716-6763
Email:  tsmiley@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC  27602

*Attorneys for Defendant*

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763