THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, LLC,

                Plaintiff,

    v.

KENNETH R. LAY, in his official capacity
as Secretary of the North Carolina Department
of Revenue,

                Defendant.

No.  10-cv-00664-MJP

**DECLARATION OF
H. ALAN WOODARD IN
SUPPORT OF NORTH CAROLINA
MOTION TO DISMISS
(Fed. R. Civ. P. 12)**

I, H. Alan Woodard, do hereby depose and say as follows:

1.  I am a resident of Cabarrus County, North Carolina. I have been continuously employed by the North Carolina Department of Revenue ("Department") for over 18 years.  Since May 1, 2009, I have held the position of Director of the Examination Division.  Before that I held the position of Assistant Director of the Western Section of the Examination Division.   Since November 1, 1993, I have held various positions with the Examination Division.

2.  As Director of the Examination Division, I am responsible for the examination program of the Department, which encompasses office and field audits conducted by the Department's auditors, both within and without North Carolina. The Examinations Division is comprised of

DECLARATION OF WOODARD - 1
10-cv-00664-MJP

N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

four primary sections: Central Examination; Eastern Field Examination; Western Field Examination; and Interstate Examination. The Examination Division is responsible for all individual income tax, withholding tax, sales and use tax, corporate income and franchise tax and license tax audits.

3. My primary duties as Director consist of monitoring and ensuring compliance with the State's revenue laws. The Department conducts sales and use tax audits pursuant to its statutory responsibility to "collect and account for the State's tax funds." N.C. Gen. Stat. § 143B-218.

4. Under the North Carolina revenue laws, a sales tax is imposed on a retailer's net taxable sales or gross receipts at specific tax rates. A use tax is also imposed on property purchased for storage, use or consumption in the State. The sales and use tax are different taxes and are assessed on different taxpayers. The sales tax is imposed on the seller of the property and the use tax is imposed on the purchaser of the property. If the sales tax is paid on a transaction, the use tax does not apply.

5. There is a State rate of sales and use tax as well as various local rates, which vary by county. The total applicable rate is referred to as the "combined rate." The Department has responsibility for administering and collecting the local taxes, which are then distributed to the counties.

6. There are many exemptions from the sales and use tax. These exemptions depend on the type of property sold or the nature of the purchaser or both. For example, sales to the military are exempt (North Carolina is home to a number of military bases). Sales for resale are exempt. Sales of items to manufacturers that become part of manufactured property are exempt. Sales of certain items to farmers are exempt. Food items are exempt from the State rate but are subject to

DECLARATION OF WOODARD - 2
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

some or all of the local rates, depending upon the county in which the product is sold, resulting in differential tax rates for qualifying food items and other tangible property, such as books.

7. In sales and use tax audits, the Department requires sufficient information about the product in order to determine whether the transaction qualifies for an exemption or a lower rate of tax. In addition, for purposes of determining the correct local rate or rates, the Department must know in which county the product was sold. For products that have been shipped, this requires knowing the county of destination.

8. In sales and use tax audits, the Department routinely requires the following information in order to compute the tax due: product type sufficient to identify any applicable exemptions or special rates, sales price, freight charges, purchaser name and address and shipped to name and address. The Department requires the purchaser and shipped to name and address for a variety of reasons including: to identify the location of the sales for purposes of determining the correct rate of local tax, to identify any use liability that may be due in the event the Department cannot or does not collect the sales tax, and to identify any discrepancies between purchaser information and shipped to information which may indicate that the transaction is a sale for resale and that another party is liable for the tax.

9. The exemptions and differential rates of taxation under the North Carolina revenue laws are not based on the expressive content of books, music or videos. The Department has no reason to request expressive content, such as book or movie titles, and this information has not been intentionally sought by the Department from this or any other taxpayer.

10. When the Department conducts an audit of a taxpayer, it conducts a "sales and use tax" audit and determines which transactions are subject to the sales tax, which transactions are subject to the use tax and which transactions are exempt or receive a preferential rate of tax.

DECLARATION OF WOODARD - 3
10-cv-00664-MJP

N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

Transactions may be subject to either the sales tax or the use tax.  As part of the Department's audit responsibilities, it determines which tax is due.  In the event either a sales tax or a use tax may be due, the Department reviews the documentation and determines which tax is appropriate and which taxpayer is liable for the tax.  Although a transaction may be subject to either the sales tax or the use tax, only one tax is legally due.

11. I have been involved in the sales and use tax audit of Amazon since it began in late 2009. The Department first contacted Amazon in 2000 regarding its tax obligations to the State.  Ex. A. The Department informed Amazon that it was responsible for the collection of sales and use taxes because it was engaged in business in North Carolina based on its relationships with affiliates in the State.  *Id.*  Amazon responded by letter, contending that the Internet Tax Freedom Act and the Commerce Clause precluded North Carolina from asserting tax liability. Ex. B.  This impasse remained unresolved.  In 2009, the Department wrote to Amazon, again informing it of its obligation to collect North Carolina sales and use taxes, and instructed the company to remit all taxes due.  Ex. C.  Amazon objected to liability on statutory and constitutional grounds, stating that the Department "may not compel Amazon to collect or remit North Carolina sales or use taxes on any of its internet sales to North Carolina residents." Ex. D. The Department responded that it disagreed with Amazon's analysis of the relevant law and informed Amazon that an audit would be scheduled.  Ex. E.  The Department contacted Amazon in December 2009 and scheduled an on-site review to begin in March 2010.  To date, Amazon has not registered for North Carolina sales and use tax purposes and has not collected and remitted any sales tax on its sales to North Carolina residents.

12. In connection with the audit, the Department issued a number of information and document requests ("IDRs") to Amazon.  The Department through its IDRs had requested

DECLARATION OF WOODARD - 4
10-cv-00664-MJP

N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900  Fax (919) 716-6763

1  information from Amazon that included sales price, purchaser names and addresses, ship to
2  names and addresses and product information sufficient to determine differential tax rates and
3  exemptions.

4      13. Amazon provided disks in response to the IDRs.  It included on the disks what it calls the
5  Amazon Specific Identification Number ("ASIN") for 50 million transactions.  It did not include
6
7  customer names in the data, although it provided purchase amounts and names of counties and
8  towns and zip codes that would allow assessment at the different local rates.  In turning over the
9  ASIN numbers, Amazon never expressed any concern that these numbers contained expressive
10  or other personal information that could be used to identify the specific book or movie titles
11  purchased by specific customers.  It did not indicate that it was not including customer names on
12  the disks; nor was there any indication that it was not including customer names because of First
13
14  Amendment or privacy concerns.  The Department only learned that Amazon had not provided
15  customer names when it downloaded the data on its computer system on March 18, 2009.  The
16  very next day, March 19, 2009, the Department hand delivered another IDR to Amazon which
17
18  requested the information not provided on the disks, including customer names.  Amazon did not
19  inform the Department that it was refusing to provide customer names at that point either.  It was
20  not until Amazon filed this lawsuit that the Department became aware of Amazon's alleged
21  concern about matching up customer names with the titles of books, music and videos based on
22  the ASIN numbers Amazon provided.
23
24      14. Realistically, the ASIN numbers provided by Amazon are of no use to the Department.  It
25  is not feasible or practicable to assign differential tax rates to each of the 50 million purchases by
26  manually clicking onto the Amazon website to individually track down what type of product
27  each of the ASIN numbers represents. Based on the computer records provided during the audit,
28

DECLARATION OF WOODARD - 5
10-cv-00664-MJP

N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900  Fax (919) 716-6763

1   it is apparent to the Department that Amazon has the ability to assign general product codes that

2   can electronically track taxable products at different rates for different states and localities.

3   15. To the extent that Amazon cannot produce general product codes that can be used to

4   electronically assign differential tax rates to different types of products (which it has not

5   indicated to be the case), the Department would assess taxes at the highest rate and it would then

6   be up to Amazon to challenge the assessment and to establish that exemptions or lower tax rates

7   applied to some products. *See* N.C. Gen. Stat. §§ 105-164.24 and 105-164.26.

8

9   16. The Department has not sought (and will not seek) the kind of expressive content and

10  personal information that Amazon alleges in its complaint can be found by using the ASIN

11  numbers. Ex. F.  In fact, when Secretary Lay learned of Amazon's First Amendment concerns,

12  which did not occur until Amazon filed its lawsuit, he offered to return the disks in exchange for

13  new disks that did not include the ASIN numbers.  The Secretary offered to swap the disks

14  because it is not possible for the Department to strip the ASIN numbers out of the disks already

15  provided by Amazon.  The Department cannot simply return the disks provided because they

16  contain significant additional information that the Department requires in order to determine

17  Amazon's and its customers' North Carolina sales and use tax liability.  Amazon has raised no

18  objection to the other information included on the disks.  Amazon has resisted this simple and

19  seemingly non-controversial solution to the unnecessary problem it has created.

20  17. In accordance with Departmental policy, the Department is collecting use tax information

21  at the same time it collects sales tax data.  The Department may decide, in the exercise of its

22  discretion, that it is more cost effective to pursue use tax collection against Amazon's customers

23  than to pursue the sales tax liability and collection against Amazon.  Amazon has already taken

24  the position that it does not owe the sales tax, a position it is litigating in other states.  In the

25

26

27

28

DECLARATION OF WOODARD - 6
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

alternative, if the Department pursues sales tax liability and a court ultimately determines that Amazon is not liable, the collection of this data enables the Department to assess use tax against Amazon's customers.  For these reasons, the Department is also collecting use tax data in the event a decision is made to allocate resources to assess use taxes against North Carolina customers who failed to report their purchases as required by the North Carolina revenue laws. At this point, the Department is unable to determine whether use tax was paid on any of the 50 million transactions to North Carolina residents because Amazon has refused to provide customer names.  It therefore lacks the necessary information to determine whether and how much use tax liability is owed to the State and to assess Amazon's customers for these amounts.

18. The North Carolina use tax is reportable on Form D-400, which is the North Carolina individual income tax form.  The instructions to that form provide: "An individual in North Carolina owes use tax on an out-of-state purchase when the item purchased is subject to the North Carolina sales tax and the retailer making the sale does not collect sales tax on the sale. Items that are subject to sales tax include computers and other electronic equipment, canned software, books, audio and video tapes, compact discs, records, clothing, appliances, furniture and other home furnishings, sporting goods, and jewelry.  Out-of-state retailers include mail-order companies, television shopping networks, firms selling over the internet, and retailers located outside North Carolina.  When an out-of-state retailer does not collect sales tax, the responsibility of paying the tax falls on the purchaser." Exhibit G.

19. The sales and use tax audit of Amazon is presently ongoing.  The Department is still gathering information and documentation regarding the transactions.  To date, Amazon has not provided all of the information requested and, as is typical in the audit process, the Department will most likely issue additional requests for information.  Aside from the refusal to provide

DECLARATION OF WOODARD - 7
10-cv-00664-MJP

N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

customer names and addresses, Amazon has been relatively cooperative in providing the necessary documents requested by the Department.  If a taxpayer refuses to provide information requested by the Department, the North Carolina revenue laws authorize the Secretary to issue a summons for the information and to apply to the North Carolina courts for enforcement of the summons. This audit has not reached that stage and it may never do so.

20. The Department has exercised its summons authority in the past and I personally have been involved in that process.  The Department's summons authority is contained in N.C. Gen. Stat. § 105-258.  Once the summons is issued and the taxpayer fails to comply, the Department may apply to the Wake County Superior Court for enforcement.  The Department understands that it has to justify any request for information and that the information requested must assist the Department in determining a taxpayer's North Carolina tax liability.  That information may include, for example, information necessary to determine differential tax rates, including exemptions. Because the titles of books and movies do not assist in assigning the appropriate tax rate, that is not information that would be sought by the Department in a summons or otherwise.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, and that the foregoing declaration was executed on July 12, 2010.

By: _____
H. Alan Woodard, Director Examination Division

DECLARATION OF WOODARD - 8
10-cv-00664-MJP

# EXHIBIT A




## North Carolina Department of Revenue

James B. Hunt, Jr.
Governor

March 22, 2000

Muriel K. Offerman
Secretary

Amazon.com
Post Office. Box 81226
Seattle, Washington  98108-1226

Attention:  Bob Heller

Dear Mr. Heller:

It is our understanding that Amazon.com has associate relationships with multiple businesses and entities in North Carolina.  These relationships are established after your firm and the entity negotiate an operating agreement and execute a registration form.  It is my understanding that this agreement has to be approved by your firm.  As a part of this agreement, your firm pays entities referral fees and commissions on sales that are tracked through the associates' sites that link to Amazon.com.  It is also our understanding that these associates may take additional steps to encourage individuals to visit their site and purchase items from you.  It is our opinion that your firm is engaged in business in North Carolina as a result of your relationship with these in-state associates.  The activity of your in-state associates constitute transacting business in the State per G.S. 105-164.8(b) which states "A retailer who makes a mail order sale is engaged in business in this State and is subject to the tax levied under this Article if one of the following conditions is met . . . (3) The retailer has representatives in this State who solicit business or transact business on behalf of the retailer, whether the mail order sales thus subject to taxation by this State result from or are related in any other way to such solicitation or transaction of business; . . ."

From a review of our records, we have determined that your firm is not registered in North Carolina.  Since you are engaged in business in this State, your firm is liable for collection of sales and use taxes.  This letter is a request of your company to register with the North Carolina Department of Revenue for payment of the North Carolina State and county sales and use taxes.  A registration form is enclosed which should be forwarded to me at Post Office Box 871, Raleigh, North Carolina 27602-0871.

Ex A, Page 10

Amazon.com
Page 2
March 22, 2000

A prompt reply is appreciated.  If you have questions or seek additional information, please contact Andy Sabol, Assistant Director, or me at the following telephone number.

Very truly yours,

Charles D. Collins, Jr., Director
Sales and Use Tax Division
(919) 733-2151

CDC/sb

Enclosure

Ex. A, Page 11

# EXHIBIT B

*Amazon/Nc*

# amazon.com

P.O. Box ____ , Seattle, WA _____ _____ USA

206/622-2335

July 19, 2000

Sabra J. Faires
Assistant Secretary for Tax Administration
State of North Carolina
Department of Revenue
P.O. Box 871
Raleigh, N.C. 27602-0871

Charles D. Collins, Jr.
Director, Sales & Use Tax Division
State of North Carolina
Department of Revenue
P.O. Box 871
Raleigh, N.C. 27602-0871

**RECEIVED**

**JUL 2 4 2000**

**PERKINS COIE**

Re:    Amazon.com LLC

Dear Ms. Faires and Mr. Collins:

I am writing you at the request of Bob Comfort who is out of the office on business this week. Bob regrets that he was unable to draft this letter personally, and wanted me to Thank you for meeting with him on May 10, 2000, to discuss your letter of March 22, 2000.

Your letter said "Amazon.com has associate relationships with multiple businesses and entities in North Carolina." From that, it concluded "It is our opinion that your firm is engaged in business in North Carolina as a result of your relationship with these in-state associates." As we discussed in our meeting, we do not believe that Amazon.com LLC ("Amazon.com") is subject to a sales or use tax collection obligation in North Carolina.

Congress has simplified the resolution of this issue by enacting the Internet Tax Freedom Act (ITFA), which prohibits the state from relying on the associates' role as the basis for nexus. As a result, no further inquiry is necessary; but even without the ITFA, the conclusion would be the same based on the Commerce Clause of the U.S. Constitution or North Carolina's statutes, interpreted consistent with the Constitution. The enclosed memorandum provides a more detailed summary of the reasons for this conclusion, as you requested.

Ms. Faires and Mr. Collins:
State of North Carolina Department of Revenue
July 19, 2000

page 2

As we discussed, the collection obligations imposed by the thousands of state and local jurisdictions are unduly burdensome because of the lack of uniformity. Amazon.com appreciates that some taxing authorities are undertaking methods of simplifying the sales and use tax systems of the various taxing jurisdictions. Amazon.com is interested in participating in these efforts particularly if we are not compelled to expend time and resources to simultaneously defend against assertions of nexus.

Could you please provide us with additional information regarding the scope and level of involvement that you envision for Amazon.com in connection with the Streamlined Sales Tax Project? We would like to present this information to senior management at Amazon.com, who will ultimately need to approve our participation in this project.

In conclusion, we believe that Amazon.com's relationships with its associates are not sufficient to require Amazon.com to collect sales or use tax for North Carolina. We welcome the opportunity to discuss this issue in greater detail or answer any questions that you might have regarding the memorandum enclosed.

You can reach me at 206-266-2708 or Bob Comfort at 206-266-3012.

Very truly yours,

Rich Prem
Director of State and Local Tax

cc:   Bob Comfort
      Gregg Barton – Perkins Coie LLP

RJP:rjp

Ex. B, Page 14

# EXHIBIT C

 

## North Carolina Department of Revenue

Beverly Eaves Perdue
Governor

July 7, 2009

Kenneth R. Lay
Secretary

Mr. Jeffrey P. Bezos
Chairman, President and CEO
Amazon.com
Post Office Box 81226
Seattle, Washington 98108-1226

    Re:    North Carolina Sales Tax Collection Responsibility and Audit

Dear Mr. Bezos:

    We are writing regarding Amazon.com's sales tax collection responsibility to North Carolina. In March of 2000, the North Carolina Department of Revenue informed your company that it was engaged in business in this State as a result of your relationships with affiliates in North Carolina (a copy of the letter is attached). The Department also informed you that, because your company was doing business in the State, it was required to collect and remit state and local sales and use taxes under our law. In addition, the Department instructed you to register for payment of the sales and use taxes. Since that time, you have completely ignored your North Carolina sales tax collection and payment responsibilities.

    As you know, a New York court has recently held that imposition of sales tax collection responsibility under these facts is constitutional. Because you have never filed a return with the State of North Carolina, there is no applicable statute of limitations. Nor does your failure to charge or collect the tax from your purchasers absolve you of any liability. By this letter, the Department is instructing you to report and remit all sales and use taxes due to the State for the period 1 July 2000 to the present. You have 60 days to do so. If you remit all taxes due within 60 days, the failure to file and pay penalties will be waived. Otherwise, the Department will assess all applicable penalties, including the failure to file, failure to pay and 25% large tax deficiency penalty. The Department intends to verify all amounts due to North Carolina through an audit which will begin on your site within the next 90 days. We will contact you regarding the exact dates of the audit.

P.O. Box 25000, Raleigh, North Carolina 27640
Phone (919) 733-7211
State Courier 51-71-00
An Equal Opportunity Employer

Ex. C, Page 16

*Mr. Jeffrey P. Bezos*
*July 7, 2009*
*Page 2*

If you have any questions, please contact me at 919-715-9851.

Sincerely,

Kenneth R. Lay
Secretary of Revenue

KLR/at

Attachment

cc:   John W. Sadoff, Assistant Secretary for Tax Compliance
      H. Alan Woodard, Director of Examinations

Ex. C, Page 17

# EXHIBIT D

# amazon.com

July 24, 2009

Kenneth R. Lay, Secretary
North Carolina Department of Revenue
P.O. Box 25000
Raleigh, North Carolina 27640

Re: *Amazon.com, LLC: North Carolina Sales Tax Issue*

Dear Secretary Lay:

I am the chief tax officer at Amazon.com ("Amazon"). I am writing in response to your letter to Jeffrey Bezos, dated July 7, 2009, concerning Amazon's alleged sales-tax collection responsibility in North Carolina. Amazon is not—and has never been—"engaged in business in" North Carolina for tax-collection purposes; consequently, North Carolina's Department of Revenue (the "Department") may not lawfully require Amazon to collect or remit sales and use taxes on its Internet sales to North Carolina residents.

As you know, the Department wrote to Amazon about this issue on March 22, 2000, suggesting that Amazon's advertising relationships with North Carolina residents constituted "engag[ing] in business" in the State for tax-collection purposes. At that time, the Department took the position that Amazon's third-party resident advertisers amounted to "representatives in this State who solicit business or transact business on behalf of the retailer." N.C. Gen. Stat. § 105-164.8(b)(3).

Your suggestion that Amazon then "completely ignored" North Carolina's position that Amazon was obligated to remit sales taxes to North Carolina, however, is misplaced. In fact, Amazon promptly responded to North Carolina's 2000 inquiry, and a meeting between State officials and Amazon representatives, including myself, was held in Raleigh on May 10, 2000. In addition, Amazon formally responded in writing to the State's letter on July 19, 2000. Amazon's written submission included both a letter and a memorandum from Amazon's counsel explaining why—under the federal Internet Tax Freedom Act, the text of Section 105-164.8(b), and the U.S. Constitution—Amazon is not subject to tax-collection obligations in North Carolina.

Amazon's counsel explained that, under the Commerce Clause of the U.S. Constitution, North Carolina may not compel Amazon to collect taxes in the State because Amazon lacks a "substantial nexus" with North Carolina. Because Amazon's online advertisers do not engage in "continuous local solicitation," *Scripto, Inc. v. Carson*, 362 U.S. 207, 210 (1960), that is "significantly associated" with its ability to do business in North Carolina, *Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 250 (1987), their activities do not give rise to a "substantial nexus." And as the U.S. Supreme Court has repeatedly held, advertising alone does not give rise to a "substantial nexus." *Quill Corp. v. North Dakota*, 504 U.S. 298, 313 n.6 (1992); *accord Nat'l Bellas Hess, Inc. v. Dep't of Revenue*, 386 U.S. 753, 754-55, 758 (1967).

In addition, at the conclusion of the May 10, 2000 meeting, the North Carolina officials in attendance described the formation of the Streamlined Sales Tax Project, which was just then getting under way; indeed, two of those very North Carolina officials held key leadership roles in the Project. It was explained

Ex. D, Page 19

to the Amazon representatives at the meeting that if Amazon were to become involved in the Streamlined Sales Tax Project as a supportive business participant, there would be no further administrative action with respect to the nexus assertion made in the Department's March 22, 2000 letter.  Amazon did indeed become involved and has remained involved in the Project as a business supporter.  As noted in Amazon's letter of July 19, 2000, that involvement came with the expectation that it would obviate the need to expend time and effort to simultaneously defend against assertions of nexus.

Following the May 10, 2000 meeting and Amazon's July 19, 2000 written response, the Department took no further action against Amazon, in apparent recognition that it could not lawfully compel Amazon to collect or remit North Carolina sales and use taxes.  Amazon understands that there has been no relevant change in North Carolina law since 2000.

In your July 7, 2009 letter, you refer to a recent decision by a trial court in New York and incorrectly state that this decision "held that imposition of sales tax collection responsibility *under these facts* is constitutional."  The New York trial court's decision was *not* based on "these facts," (i.e., the facts in North Carolina), but on a first-of-its-kind statute that enacts a "presumption" of in-state solicitation arising from Amazon's mere advertising relationships.  *See* N.Y. Tax Law § 1101(b)(8)(vi).  In other words, the New York statute attempts to circumvent the Commerce Clause's limits on out-of-state taxation, and instead puts the burden on Amazon and other out-of-state retailers to disprove solicitation.  Thus, contrary to the statement in your letter, the New York trial court did *not* hold that imposition of sales-tax collection responsibility on Amazon is constitutional simply because Amazon pays commissions to in-state advertisers, nor did it hold that such advertising relationships themselves are sufficient to give rise to a constitutional "substantial nexus" between an out-of-state retailer and the state.  Rather, the New York trial court simply rejected Amazon's constitutional challenge to the statutory "presumption" itself.[1]  And in any event, Amazon is vigorously defending its rights in New York by pursuing appellate review of the trial court's erroneous decision.

Even if North Carolina were to enact a statutory "presumption" similar to New York's, it would do nothing to fix the serious constitutional and other legal problems inherent in compelling out-of-state retailers like Amazon to collect and remit North Carolina taxes absent a "substantial nexus" with the State.  Indeed, it is well settled under the Due Process Clause of the U.S. Constitution that "a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment.  The power to create presumptions is not a means of escape from constitutional restrictions."  *Speiser v. Randall*, 357 U.S. 513, 526 (1958).

In sum, for a variety of reasons—including the Commerce Clause, the Due Process Clause, the Internet Tax Freedom Act, and the text of the relevant North Carolina tax statute (all of which were discussed at the May 10, 2000 Raleigh meeting and in the July 19, 2000 written responses to the Department's March 22, 2000 letter)—the Department may not compel Amazon to collect or remit North Carolina sales and use taxes on any of its internet sales to North Carolina residents.

---

[1]  Importantly, nothing about the New York trial court's decision precludes Amazon from arguing and proving in a New York tax-collection proceeding that it lacks a "substantial nexus" with New York and, therefore, may not constitutionally be compelled to collect and remit taxes to that state.

*Ex. D, Page 20*

We ask that North Carolina respect these important constitutional and legal principles. Amazon welcomes further discussion with your office concerning this matter and appreciates your consideration.

Very truly yours,

Robert D. Comfort
Chief Tax Officer

Enclosures

c:    Gregg D. Barton, Esq.
      Charles B. Neely, Jr., Esq.
      Nancy S. Rendleman, Esq.

Ex. D, Page 21

# EXHIBIT E



### North Carolina Department of Revenue

Beverly Eaves Perdue                                          Kenneth R. Lay
   Governor                                                     Secretary

October 13, 2009

Robert D. Comfort
Chief Tax Officer
Amazon.com
Post Office Box 81226
Seattle, Washington 98108-1226

Re:     North Carolina Sales Tax Collection Responsibility and Audit

Dear Mr. Comfort:

I am responding to your letters of July 24 and August 27, 2009 regarding Amazon.com's sales and use tax collection responsibility to North Carolina. In your letters, you contend that Amazon is not subject to tax in North Carolina under the language of N.C. Gen. Stat. § 105-164.8(b), the Commerce Clause of the United States Constitution and the Internet Tax Freedom Act. We respectfully disagree with your analysis of the relevant law.

First, Amazon.com is "engaged in business" under N.C. Gen. Stat. § 105-164.8(b)(3) based on its relationships with its affiliates in North Carolina. Those affiliates constitute representatives who solicit or transact business on behalf of Amazon.com. This provision codifies the principle announced by the United States Supreme Court in *Scripto v. Carson* that a state may require tax collection by a remote retailer that had independent contractors in the state who solicited orders for products on its behalf. The General Assembly recently reaffirmed this principle and established a bright line presumption.

Second, other states have rejected your argument that Amazon.com lacks a substantial nexus under the Commerce Clause. New York has held that your company's use of in-state affiliates created substantial nexus. In so holding, the Court relied, in part, on *Scripto*. In addition, the Tennessee Attorney General has ruled that when an in-state resident solicits and refers business on behalf of an out-of-state vendor for consideration, this creates substantial nexus for Commerce Clause purposes.

Finally, the Internet Tax Freedom Act (ITFA) is not a bar to taxation, as you contend. Although the ITFA prohibits the imposition of new taxes on internet-based commerce, it does not prohibit states from enforcing existing taxes on sales of tangible personal property. Significantly, neither the New York decision nor the Tennessee Attorney General's Opinion even mentions the ITFA in their analysis. Most tellingly, your own website states: "Despite the name of the Act, IFTA does not preclude state and local governments from imposing existing sales tax collection requirements on companies selling over the Internet."

P.O. Box 871, Raleigh, NC 27640
State Courier 51-71-00
Website: www.dornc.com
An Equal Opportunity Employer

Ex. E, Page 23

You additionally contend that representatives of the Department of Revenue told Amazon that, if it became involved in the Streamlined Sales Tax Project, the Department would take no further action regarding its determination in 2000 that Amazon had nexus with the State. We have investigated this contention and have found it to be without merit. Neither Sabra Faires nor Charles Collins, former employees of this Department, made any such representation to Amazon. The fact that the Department, for whatever reason, declined to pursue its nexus determination in 2000 in no way precludes the Department from pursuing it at this time. Under the law, Amazon.com has an obligation to collect and remit North Carolina sales and use taxes. We expect Amazon.com to comply with that responsibility.

You state that Amazon welcomes further discussion of this matter. We would like to invite you to North Carolina for such a meeting.

In the meantime, however, we need to schedule an audit at your corporate location to review books and records related to your business activities in this state. We contacted your company in August 2009 in an attempt to arrange an audit appointment. Please advise the person we can contact to confirm an appointment.

If you have any questions, please contact me at 919-740-8180.

Sincerely,

John W. Sadoff
Assistant Secretary for Tax Compliance


cc:    Kenneth R. Lay, Secretary of Revenue
       H. Alan Woodard, Director of Examinations

Ex. E, Page 24

# EXHIBIT F



# North Carolina Department of Revenue

Beverly Eaves Perdue
    Governor

Kenneth R. Lay
    Secretary

---

Release: Immediate
Contact: Beth Stevenson (919) 733-5327
       Director of Public Affairs

April 21, 2010

---

## DOR Responds to Amazon Complaint

Amazon.com, LLC, has filed a complaint against the North Carolina Secretary of Revenue, Kenneth R. Lay, in Washington State federal court seeking to prevent the Secretary from obtaining information needed to fairly and equitably administer the State's tax laws.

The collection and remission of sales tax by Internet retailers such as Amazon falls within the Department of Revenue's responsibility to impartially and efficiently administer tax laws and collect all taxes due the State of North Carolina. In some instances, remote sellers are obligated to collect North Carolina sales tax in conjunction with transactions with individuals.

The Department routinely requests third party, or consumer information, in order to identify and collect any taxes due the state. It requests general information about a transaction including the purchaser's name, address and the item's purchase price in order to properly administer the collection of taxes. Amazon's complaint is misleading in alleging the Department has required detailed information revealing personal consumer preferences, such as book titles. This information is not required to calculate the tax due, and the Department has not requested this information.

"We have requested the same information from other businesses who have complied with their obligation to provide information to the Department," Secretary Lay said. "This is really an issue of fairness and equity for small businesses, the brick and mortar, corner-store operations. These businesses are at a competitive disadvantage when they have to collect sales taxes that other businesses do not. The Department is committed to supporting North Carolina small business and facilitating the equitable collection of taxes from both individual and corporate taxpayers."

####

PO Box 25000, Raleigh, NC 27640
State Courier 51-71-00
An Equal Opportunity Employer

Ex. F, Page 26

# EXHIBIT G

Ex. G, Page 27

# Line Instructions for Filing Form D-400

The references to line numbers on federal income tax forms were correct at the time of printing. If they have changed and you are unable to determine the proper line to use, please contact the Department of Revenue.

## Lines 1 through 5 - Filing Status

Check the same filing status you checked on your federal return. **Important**: If either you or your spouse is a nonresident and had no North Carolina taxable income for the tax year, **see page 4.**

## Line 6 - Federal Taxable Income

Enter your federal taxable income from your federal return. If federal taxable income is less than zero, you were required to enter zero on your federal return. On your North Carolina return, enter the negative amount and fill in the circle to indicate that the amount is negative. (Note: If you are completing a web fill-in form on the Department's website, enter a minus sign to indicate a negative number.)

## Line 13 - North Carolina Taxable Income

- If you were a resident of North Carolina for the entire year, enter the amount from Line 11 on Line 13.

- If you were a part-year resident or a nonresident you must complete Lines 54 through 56 and enter on Line 12 the decimal amount from Line 56. Multiply the amount on Line 11 by the decimal amount on Line 12 and enter the result on Line 13.

Part-year residents and nonresidents should read the instructions on Page 6 for additional information and complete the worksheet for Lines 54 and 55 on Page 12.

## Line 14 - North Carolina Income Tax

To calculate your tax, use one of the following methods:

**North Carolina Tax Table**. Use the Tax Table beginning on Page 17 to determine your tax if your taxable income on Line 13 is less than $68,000. Be sure to use the correct column in the Tax Table. After you have found the correct tax, enter that amount on Line 14.

**Tax Rate Schedule**. Use the Tax Rate Schedule on Page 25 to calculate your tax if your taxable income is $68,000 or more. Enter the amount on Line 14.

## Line 15 - Income Tax Surtax

Go to Page 28 and complete Step 1 and Step 2.

## Line 17 - Tax Credits

See Page 13 for information about tax credits. Complete Form **D-400TC, Individual Tax Credits,** if you are entitled to one or more of the credits.

## Line 19 - Consumer Use Tax

Like all states that have a sales tax, North Carolina has a use tax on out-of-state purchases. The use tax applies to purchases made outside the State for use inside the State. Individuals in North Carolina are responsible for paying use tax on their out-of-state purchases.

An individual in North Carolina owes use tax on an out-of-state purchase when the item purchased is subject to the North Carolina sales tax and the retailer making the sale does not collect sales tax on the sale. Items that are subject to sales tax include computers and other electronic equipment, canned software, books, audio and video tapes, compact discs, records, clothing, appliances, furniture and other home furnishings, sporting goods, and jewelry. Out-of-state retailers include mail-order companies, television shopping networks, firms selling over the internet, and retailers located outside North Carolina. When an out-of-state retailer does not collect sales tax, the responsibility of paying the tax falls on the purchaser.

The use tax is calculated at the same rate as the sales tax. For January 1, 2009 through August 31, 2009, the rate was 7.25% in Mecklenburg County, 7% in Alexander, Catawba, Cumberland, Haywood, Martin, Pitt, Sampson, and Surry counties, and 6.75% in all other counties. For September 1, 2009 through December 31, 2009, the rate was 8.25% in Mecklenburg County, 8% in Alexander, Catawba, Cumberland, Haywood, Martin, Pitt, Sampson, and Surry counties, and 7.75% in all other counties. If you paid another state's sales or use tax on out-of-state purchases, that amount may be credited against the North Carolina use tax due. You may not claim a credit for sales tax or value-added tax paid to another country.

You should report use tax on purchases of food subject to the reduced rate of tax on Form E-554 and use tax on purchases of boats and aircraft on Form E-555.

### Use Tax Worksheet 1
### Taxpayers Who Have Records of All Out-of-State Purchases

1. Enter the total amount of out-of-state purchases including shipping and handling for 1/1/09 through 8/31/09 ............ 1. _____

2. Multiply Line 1 by 7.25% (.0725) if Mecklenburg County resident, 7% (.07) if Alexander, Catawba, Cumberland, Haywood, Martin, Pitt, Sampson, or Surry County resident; 6.75% (.0675) if resident of any other county, and enter the amount ............................... 2. _____

3. Enter the total amount of out-of-state purchases including shipping and handling for 9/1/09 through 12/31/09 ........ 3. _____

4. Multiply Line 3 by 8.25% (.0825) if Mecklenburg County resident, 8% (.08) if Alexander, Catawba, Cumberland, Haywood, Martin, Pitt, Sampson, or Surry County resident; 7.75% (.0775) if resident of any other county, and enter the amount ...................................... 4. _____

5. Enter the tax paid to another state on the purchases. This amount may not exceed the total of Lines 2 and 4 .................... 5. _____

6. Add Lines 2 and 4, then subtract Line 5 and enter the result, rounded to the nearest whole dollar, here and on Form D-400, Line 19 ... 6. _____

### Use Tax Worksheet 2
### Taxpayers Who Do Not Have Records of All Out-of-State Purchases

1. **For purchases of items that cost less than $1,000** See the Use Tax Table on the following page to estimate the use tax due based on your North Carolina taxable income shown on Form D-400, Line 13 and enter the amount .............................. 1. _____

2. **For purchases of items that cost $1,000 or more**
   2a - Enter the total amount of purchases, including shipping and handling, of $1,000 or more for 1/1/09 through 8/31/09 ........................................ 2a. _____

   2b - Multiply Line 2a by 7.25% (.0725) if Mecklenburg County resident, 7% (.07) if Alexander, Catawba, Cumberland, Haywood, Martin, Pitt, Sampson, or Surry County resident; 6.75% (.0675) if resident of any other county, and enter the amount ..................... 2b. _____

   2c - Enter the total amount of purchases, including shipping and handling, of $1,000 or more for 9/1/09 through 12/31/09 .................................... 2c. _____

   2d - Multiply Line 2c by 8.25% (.0825) if Mecklenburg County resident, 8% (.08) if Alexander, Catawba, Cumberland, Haywood, Martin, Pitt, Sampson, or Surry County resident; 7.75% (.0775) if resident of any other county, and enter the amount ..................... 2d. _____

3. Add Lines 1, 2b, and 2d and enter the total amount of use tax ......... 3. _____

4. Enter the tax paid to another state on the purchases. This amount may not exceed the amount on Line 3 ............... 4. _____

5. Subtract Line 4 from Line 3 and enter the result, rounded to the nearest whole dollar, here and on Form D-400, Line 19 ................... 5. _____

Ex. G, Page 28