THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **AMAZON.COM LLC,** | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| **KENNETH R. LAY**, in his official capacity as<br>Secretary of the North Carolina Department of<br>Revenue, | )<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

No. 10-CV-00664

**PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
PURSUANT TO
FED. R. CIV. P. 56(a)**

NOTE ON MOTION CALENDAR:
August 6, 2010

ORAL ARGUMENT REQUESTED

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF CONTENTS

**Page(s)**

I.   PRELIMINARY STATEMENT ...................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 3

III. ARGUMENT ............................................................................................................... 7

    A.   Standard of Review ............................................................................................ 7

    B.   The DOR Fails to Meet the Heightened Standard Applicable to Governmental
         Requests for Information About Individual Purchases of Expressive Material ......... 8

        1.   Buying and Selling of Expressive Materials Are Protected Activities
            Under the First Amendment ............................................................................ 8

        2.   The DOR's Information Requests Implicate the First Amendment ................ 11

        3.   The DOR Must Satisfy a Heightened Standard by Showing a Compelling
            Need for the Materials and a Sufficiently Close Connection Between the
            Materials Sought and the Investigation ......................................................... 13

        4.   The DOR Has Not Made the Heightened Showing of Compelling Need
            and Nexus Between the Material and the Investigation to Justify Intrusion
            into First Amendment Protected Speech......................................................... 17

    C.   To the Extent That the DOR's Request Applies to Video Sales, It Violates the
         Video Privacy Protection Act ................................................................................ 20

IV.  CONCLUSION .......................................................................................................... 23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*ACLU v. Gonzales*,
   478 F. Supp. 2d 775 (E.D. Pa. 2007), *aff'd*, 534 F.3d 181 (3d Cir. 2008)............................ 12

*ACLU v. Heller*,
   378 F.3d 979 (9th Cir. 2004) ........................................................................................ 10

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004)..................................................................................................... 12

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) ......................................................................................................... 8

*Bursey v. United States*,
   466 F.2d 1059 (9th Cir. 1972), *superseded by statute on other grounds*,
   *In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988)........................................ 15, 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)....................................................................................................... 7

*Dirkes v. Borough of Runnemede*,
   936 F. Supp. 235 (D.N.J. 1996) ................................................................................. 21, 22

*Doe v. 2TheMart.com Inc.*,
   140 F. Supp. 2d 1088 (W.D. Wash. 2001) ...................................................................... 11

*Doe v. Reed*,
   2010 WL 2518466 (U.S. June 24, 2010)....................................................................... 9, 10

*In re Anonymous Online Speakers*,
   2010 WL 2721490 (9th Cir. July 12, 2010) ..................................................................... 10

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*,
   2009 WL 3495997 (D.D.C. 2009) ............................................................................... 14, 18

*In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*,
   246 F.R.D. 570 (W.D. Wis. 2007) .................................................................... 12, 13, 14, 20

*Griswold v. Connecticut*,
   381 U.S. 479 (1965)........................................................................................................ 8

*Keenan v. Allan*,
   889 F. Supp. 1320 (E.D. Wash. 1995), *aff'd*, 91 F.3d 1275 (9th Cir. 1996)...................... 7, 8

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Lamont v. Postmaster General*,
381 U.S. 301 (1965)................................................................................9

*Martin v. City of Struthers*,
319 U.S. 141 (1943)................................................................................8

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995)....................................................................9, 10, 20

*NAACP v. Alabama*,
357 U.S. 449 (1958)................................................................................9

*Stanley v. Georgia*,
394 U.S. 557 (1969)................................................................................8

*Salehoo Group, Ltd. v. ABC Co.*,
No. 10-0671 slip op. (W.D. Wash. July 12, 2010) ....................................10, 11

*United States v. C.E. Hobbs Found.*,
7 F.3d 169 (9th Cir. 1993)......................................................................16

*United States v. Curtin*,
489 F.3d 935 (9th Cir. 2007) ..................................................................20

*United States v. Rumely*,
345 U.S. 41 (1953)...............................................................................1, 9

*United States v. Stevens*,
2010 WL 1540082 (U.S. Apr. 20, 2010)...................................................13

*United States v. Trader's State Bank*,
695 F.2d 1132 (9th Cir. 1983) ................................................................16

**STATE CASES**

*In re Grand Jury Subpoena to Kramerbooks & Afterwords*,
26 Media L. Rep. 1599 (D.C. 1998) ..............................................15, 17, 18

*JJR Inc. v. City of Seattle*,
126 Wash. 2d 1, 891 P.2d 720 (Wash. 1995) (*en banc*) ...............................9

*Lubin v. Agora, Inc.*,
882 A.2d 833 (Md. 2005)..............................................................16, 17, 18, 19

*State v. Walker*,
2004 WL 52413 (Wash. Ct. App. Jan. 13, 2004) .......................................21

*Tattered Cover, Inc. v. City of Thornton*,
44 P.3d 1044 (Colo. 2002) (*en banc*).................................................14, 15, 17, 19

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**FEDERAL STATUTES**

18 U.S.C. § 2710 .................................................................................................. 3, 20-22

**STATE STATUTES**

N.C. Gen. Stat. § 105-258 ......................................................................................... 4, 22

**CONSTITUTIONAL PROVISIONS**

First Amendment ...................................................................................................... *passim*

**STATE CONSTITUTIONAL PROVISIONS**

Washington State Const. art. I, § 4 ........................................................................... *passim*

Washington State Const. art. I, § 5 ........................................................................... *passim*

**RULES**

Fed. R. Civ. P. 56(a) ...................................................................................................... 2

Fed R. Civ. P. 56(c) ...................................................................................................... 7

**OTHER AUTHORITIES**

Neil M. Richards, *Intellectual Privacy*, 87 Tex. L. Rev. 387 (2008) ............................. 8

S. Rep. No. 100-599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1 ....................... 21

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# I.     PRELIMINARY STATEMENT

"Once the government can demand of a publisher the names of the purchasers of his publications, the free press as we know it disappears." *United States v. Rumely*, 345 U.S. 41, 57-58 (1953) (Douglas, J., concurring).  In requests of staggering breadth, the North Carolina Department of Revenue ("DOR") demanded that Amazon.com LLC ("Amazon") turn over "all information for all sales" for all North Carolina customers for the past seven years.  In response, Amazon provided detailed records for nearly 50 million transactions – the majority of which involved the purchase of books, movies, and music – but refused to disclose the names and addresses of its customers.  Furnishing this additional information to a taxing authority, which would reveal the beliefs, interests and intimate personal details of its customers, serves no valid purpose and would violate basic constitutional principles.  Through this action, Amazon seeks a declaration establishing its right to sell, and its customers' right to purchase, the broadest range of lawful expressive material free from government scrutiny.

The voluminous transactional data the DOR has obtained from Amazon to date fully describes every product purchased by a North Carolina customer since 2003, including the title and name of every book, movie, and CD.  As to the DOR's purported tax audit of Amazon, the DOR now has all of the transactional data – including the type of products Amazon sold to North Carolina customers, what they paid, and what tax, if any, Amazon collected for each sale – necessary to determine Amazon's compliance with state sales tax laws.  Indeed, the DOR has now conceded as much in its Motion to Dismiss; customer data is needed if and when the DOR decides to collect a use tax from Amazon's customers.  *See* North Carolina (DOR) Motion to Dismiss ("Motion to Dismiss") at 6.

The breadth of the DOR's demands and its unyielding position that it has the right to enforce similar information demands in the future puts Amazon in the untenable position of

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

either risking enforcement proceedings for its refusal to comply with the DOR's information requests or revealing to the DOR the reading, viewing and listening choices of unsuspecting customers by disclosing *millions* of purchase records for expressive works such as books, videos, and music.  Because Amazon's compliance with such a request would violate its rights and its customers' rights under the United States Constitution, the Washington State Constitution, and federal law, Amazon filed this declaratory judgment action.

In response to Amazon's lawsuit, Kenneth R. Lay, the DOR's Secretary, publicly declared that "information revealing personal consumer preferences, such as book titles . . . is not required to calculate the tax due" and offered to return the millions of such records collected to date.  Declaration of Jennifer Galbreath ("Galbreath Decl.") at Ex. D.  In its Motion to Dismiss, the DOR states that "this information is of absolutely no value" to the DOR in its collection of tax revenue from Amazon, but cautions that it may still seek to enforce "a summons that includes customer names."  Motion to Dismiss at 6, 17.  Outside the public eye, the DOR has categorically reserved its right to compel production of the same information about customers and their expressive choices.  Declaration of David A. Zapolsky ("Zapolsky Decl.") ¶ 23 & Ex. 4.

Absent a compelling need for information that the DOR itself now admits it does not need, the DOR cannot satisfy the heightened First Amendment standard courts apply to government demands for reader/viewer lists.  Because the DOR cannot justify its sweeping and purposeless intrusion into the privacy of Amazon's customers, pursuant to Fed. R. Civ. P. 56(a), Amazon respectfully seeks a declaration that the DOR's efforts to compel the disclosure of Amazon's North Carolina customers' purchase histories, as well as the names, addresses or other personal information of those customers, violate the First Amendment to the United States Constitution, the Washington State Constitution art. I, §§ 4 and 5, and, for

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

video media, the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710.

## II.   FACTUAL BACKGROUND

**Amazon's Customer Privacy Policy**.  Amazon is one of the world's leading online retailers of books, music, movies, and other types of products, with millions of customers all over the world.  Zapolsky Decl. ¶ 3.  As with most online retailers, customers make purchases primarily through credit card transactions, which in turn generate detailed electronic records of all purchases.  *Id.*  To assure its customers that Amazon does not voluntarily share the customers' expressive and other product choices, Amazon posts a link to its Privacy Notice at the bottom of practically every page on its website.  *Id.* at ¶ 7.

**DOR's December 2009 Information Request**.  On December 1, 2009, as part of a purported audit of Amazon for compliance with state sales and use tax laws, the DOR sent Amazon an Information Document Request (the "December Information Request"), demanding, in part, that Amazon provide "<u>all</u> information for <u>all</u> sales to customers with a North Carolina shipping address by month in an electronic format" for all dates between August 1, 2003, and February 28, 2010.  Galbreath Decl. ¶ 5 & Ex. A (emphasis added).  In this time period, North Carolina customers purchased nearly 50 million products from Amazon's website.  *Id.* at ¶ 3.  Acting in good faith, Amazon provided the DOR with detailed information about these purchases, including: order ID number, the product code for each item sold on Amazon's website called the <u>A</u>mazon <u>S</u>tandard  <u>I</u>dentification <u>N</u>umber (or "ASIN"),[1] seller, ship-to city or county, postal code, the non-taxable amount of the purchase, and tax audit record identification (the "Initial Data").  *Id.* at ¶ 7.  However, to protect

---

[1] Amazon uses ASIN numbers to identify products in its catalog and its systems.  Sales information for each product is stored by ASIN number as well.  As a general matter, Amazon does not maintain sales records for specific items in its systems by more generic product codes.  Galbreath Decl. ¶ 8.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

customer privacy, including customer choices of expressive material, Amazon did <u>not</u> provide

the DOR any personally identifiable information about any customer, including name,

address, phone number, or e-mail address.  *Id.* at ¶ 9.

**DOR's March 2010 Information Request**.  Despite Amazon's production of all

relevant information necessary for an audit of Amazon, the DOR hand delivered to Amazon a

follow-up request (the "March Information Request," singularly, and together with the

December Information Request, the "Request") demanding Amazon provide the following

customer identification information for each transaction: the "Bill to Name; Bill to Address

(Street, City, State, and Zip); Ship to Name; [and] Ship to Address (Street)" "Product/item

code or description" (the "Customer Data").  Galbreath Decl. ¶ 11 & Ex. B.  The March

Information Request reiterated, rather than eliminated, the prior request for product detail.

The DOR threatened that if Amazon did not disclose the Customer Data by April 19, 2010, it

would "prompt the state to issue a summons in accordance with North Carolina General

Statute § 105-258," *id.*, which allows the DOR to enforce the administrative summons in a

summary state court proceeding.  *See* N.C. Gen. Stat. § 105-258.

On April 19, 2010, Amazon objected to the March Information Request on the

grounds of over-breadth and because it violates Amazon's customers' expectation of privacy,

creates an unreasonable burden on Amazon, and is in violation of the First Amendment,

federal law and Washington constitutional law.  Galbreath Decl. ¶ 12 & Ex. C.  Amazon

notified the DOR that it would not disclose the Customer Data and filed this action the same

day.  *Id.*

**DOR's Response to Amazon's Lawsuit**.  In response to Amazon's objection and the

filing of this lawsuit, the DOR took the position that the DOR is not seeking "information

revealing personal consumer preferences" and conceded in a press release that "[t]his

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

information is not required to calculate the tax due." Galbreath Decl. ¶ 15 & Ex. D. The DOR offered to return the Initial Data in exchange for the customer information Amazon had not provided. *Id.* at ¶ 16. In response to these public assurances, Amazon asked the DOR to (a) confirm that in the event of return the DOR had not created additional copies of the Initial Data, (b) enter into a consent order prohibiting the DOR from seeking the titles of expressive material in the future, and (c) explain whether and why the DOR needs the personally identifiable customer information to audit Amazon. *Id.* at ¶ 17; Zapolsky Decl. ¶ 19 & Ex. 1. Amazon also asked the DOR to issue a revised information request that expressly excluded the names and titles of books, movies, CDs and other expressive materials. *Id.*

The DOR declined to provide Amazon with a binding commitment. Instead, in a letter dated June 7, 2010, the DOR explained that it had issued a new information request "not focused on customer names" and stated that "at least for the time being," the DOR is "deferring action on customer names." Zapolsky Decl. ¶ 21 & Ex. 3. Further, the DOR's most recent information request, issued on June 4, 2010 (the "June Information Request"), does not supersede the earlier request for "<u>all</u> information for <u>all</u> sales" and does not mention the Customer Data the DOR demanded in the March Information Request. Galbreath Decl. ¶ 5 & Ex. A. Indeed, the June Information Request acknowledges that it "seeks additional information, <u>as well as information previously requested and not provided,</u> about the business operations and tax reporting of Amazon.com, Inc. and its subsidiaries." *Id.* at ¶ 21 & Ex. F (emphasis added). The same letter further "reserves the right to request additional information including, but not limited to, information not provided in response to earlier IDR requests." *Id.* In response to a direct inquiry by Amazon's counsel, the DOR, through its counsel, has expressly declined to enter into any binding commitment not to seek information

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

about customer purchases of books, movies, and CDs in the future.  Zapolsky Decl. ¶ 23 & Ex. 4.

Although the DOR has never withdrawn its request for "all information for all sales" and expressly reserved the right to seek information about customers' purchase of expressive material, in its recent public filings in this case, the DOR has reiterated that such information has "absolutely no value" to the DOR and that the DOR "does not . . . require" and "simply does not need" such information – indeed, the DOR admits that the information is not "relevant" to its "tax investigation of Amazon and its customers."  Motion to Dismiss at 6, 8; DOR's Response to Motion to Intervene of Does 1-6 and Bothwell at 3.  The DOR has also conceded that customer names would be relevant if it decides to assess a use tax against Amazon's customers.  Motion to Dismiss at 6.  The June Information Request is clearly directed at determining whether Amazon has any obligation to collect sales tax.  Galbreath Decl. ¶¶ 21, 22 & Ex. F.  Nonetheless, the DOR expressly reiterates in its new filings its threat to enforce a summons for customer names and explicitly states that it just "has not decided" whether to pursue such a course of action.  Motion to Dismiss at 17.

**DOR's Actions Chill First Amendment Freedom**.  Amazon's North Carolina customers purchase works that reflect their beliefs and interests and that discuss highly personal matters.  A few examples of works purchased suffice to show the intimate information revealed in a customer's choice of expressive material: "Bipolar Disorder: A Guide for Patients and Families," by Francis Mark Mondimore; "He Had It Coming: How to Outsmart Your Husband and Win Your Divorce," by Stacy Schneider; "Living With Alcoholism: Your Guide To Dealing With Alcohol Abuse And Addiction While Getting The Alcoholism Treatment You Need," by K M S Publishing.com; "What to Do When You Can't Get Pregnant: The Complete Guide to All the Technologies for Couples Facing Fertility

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Problems," by Daniel A. Potter and Jennifer S. Hanin; and "Outing Yourself: How to Come Out as Lesbian or Gay to Your Family, Friends, and Coworkers," by Michelangelo Signorile. Zapolsky Decl. ¶ 15.  Customers express particular concern about the potential for disclosure of data about their online purchases and their reluctance to purchase online unless their privacy is protected.  *Id.* at ¶ 24.

Most recently, seven Amazon customers (six anonymous) have sought this Court's leave to intervene in this case as plaintiffs on grounds that the DOR's efforts to obtain personally identifiable data and purchase records from Amazon threaten their privacy and First Amendment rights.  *See* Complaint in Intervention for Declaration and Injunctive Relief of Does 1-6 and Bothwell.  Their declarations submitted in support of the motion for intervention provide significant detail as to how the DOR threatens to chill the exercise of First Amendment freedoms and demonstrate that customers purchase titles from Amazon to preserve anonymity and to avoid being seen by their friends and neighbors in a local store as they browse for and select reading, viewing and listening material.  *Id.*

### III.   ARGUMENT

#### A.   Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is warranted "upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This motion, like dismissal for failure to state a claim as urged by Defendants (Motion to Dismiss at 20-25), turns on legal issues, not facts, and thus calls for prediscovery resolution, which is particularly appropriate where First Amendment interests are implicated.  *See, e.g.*, *Keenan v. Allan*, 889 F. Supp. 1320, 1387-88

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

(E.D. Wash. 1995) (*quoting Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir.

1966) ("In the First Amendment area, summary procedures are even more essential."), *aff'd*,

91 F.3d 1275 (9th Cir. 1996).

**B.     The DOR Fails to Meet the Heightened Standard Applicable to Governmental Requests for Information About Individual Purchases of Expressive Material**

**1.     Buying and Selling of Expressive Materials Are Protected Activities Under the First Amendment**

Bookstores, music stores and video stores, whether on Main Street or on the Internet,

provide constitutionally protected forums for the exchange of ideas, affording purchasers the

opportunity to browse and buy books, movies, music, and other expressive works on any topic

imaginable.  "[T]he act of selecting reading material is a basic act of expressive liberty,

regardless of the subject matter of what we read.  [Revelation of] our reading habits . . . not

only makes public these private cognitive processes, but also threatens to chill others in the

future from engaging in the unfettered act of reading."  Neil M. Richards, *Intellectual*

*Privacy*, 87 Tex. L. Rev. 387, 421 (2008).  The First Amendment protects the right to

distribute and the right to receive expressive materials.  *See Stanley v. Georgia*, 394 U.S. 557,

564 (1969) ("[T]he Constitution protects the right to receive information and ideas.");

*Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) (protections include "the right to

distribute, the right to receive, the right to read . . . and freedom of inquiry . . ."); *Bantam*

*Books, Inc. v. Sullivan*, 372 U.S. 58, 64-65 n.6 (1963) (freedom of the press "embraces the

circulation of books as well as their publication"); *Martin v. City of Struthers*, 319 U.S. 141,

143 (1943) (protects "the right to distribute literature" and "the right to receive it").  If

anything, the Washington State Constitution provides even broader protection for speech than

the First Amendment in cases such as this where the speech is expressive (and not, for

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

example, commercial or defamatory). *See*, *e.g.*, *JJR Inc. v. City of Seattle*, 126 Wash. 2d 1, 8, 891 P.2d 720, 723 (Wash. 1995) (*en banc*) ("it is well settled that article 1, section 5 of the Washington State Constitution provides broader free speech protection than the first amendment to the United States Constitution").

The DOR's Request for detailed data about Amazon's customers and their purchases will expose the reading, viewing, and listening habits of individuals who have not broken any law. Many individuals wish to remain anonymous as they browse and purchase expressive material, and the Supreme Court has underscored the value of anonymous expressive activity in a free society:

> Anonymity is a shield from the tyranny of the majority. . . . It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation — and their ideas from suppression — at the hand of an intolerant society.

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (striking down a state statute prohibiting distribution of anonymous campaign literature on First Amendment grounds) (internal citations omitted). Indeed, the Supreme Court has observed:

> Once the government can demand of a publisher the names of the purchasers of his publications, the free press as we know it disappears. Then the spectre of a government agent will look over the shoulder of everyone who reads. . . . Fear of criticism goes with every person into the bookstall. . . . Some will fear to read what is unpopular, what the powers-that-be dislike. . . . [F]ear will take the place of freedom in the libraries, book stores, and homes of the land. Through the harassment of hearings, investigations, reports, and subpoenas government will hold a club over speech and over the press.

*United States v. Rumely*, 345 U.S. at 57-58 (Douglas, J., concurring). This concern is at the heart of Amazon's objections to the DOR's Request. [2]

---

[2] *See also Lamont v. Postmaster General*, 381 U.S. 301, 307 (1965) (striking down a federal statute requiring citizens wishing to receive communist literature to affirmatively identify themselves to the Post Office because the lack of anonymity would have a "deterrent effect" and would chill First Amendment rights to receive expressive materials); *NAACP v. Alabama*, 357 U.S. 449, 466 (1958) (state not entitled to scrutinize organizations' membership lists due to threat of chilling freedom of association). *Compare with Doe v. Reed*,

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The Courts in this Circuit follow the Supreme Court's approach in *McIntyre* that "[a]nonymity provides a shield from the tyranny of the majority" for expressive activity protected by the First Amendment.  *See*, *e.g.*, *ACLU v. Heller*, 378 F.3d 979, 988-90 (9th Cir. 2004) (quoting *McIntyre* in striking down a Nevada statute on First Amendment grounds).  In order to protect online users against disclosure of their identities, this Court and others have applied First Amendment principles with the same rigor with which they apply such principles to political speech and traditional media.  Just this week, both the Ninth Circuit Court of Appeals and this Court reaffirmed the "high hurdle for disclosure" of the identity of anonymous online speakers, the Ninth Circuit observing:

> As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without "fear of economic or official retaliation . . . [or] concern about social ostracism."

*In re Anonymous Online Speakers*, 2010 WL 2721490 at *6 (9th Cir. July 12, 2010) (quoting *McIntyre*, 514 U.S. at 342-43) (with regard to speech about commercial activities, finding no clear error in compelling disclosure of the identity of three online speakers and prohibiting disclosure of two others).  In *Salehoo Group, Ltd. v. ABC Co.*, No. 10-0671 slip op. (W.D. Wash. July 12, 2010), Judge Robart quashed a subpoena for the identity of an anonymous website owner and operator, cautioning:

> Subpoenas seeking the identity of anonymous individuals raise First Amendment concerns.  With the expansion of online expression, the use of subpoenas to unmask anonymous Internet speakers . . . is on the rise. The use of subpoenas in the context of the Internet raises serious concerns because it threatens to cause "a significant chilling effect on Internet communications and thus on basic First Amendment rights."

---

2010 WL 2518466 (U.S. June 24, 2010) (referendum signatures gathered in public as part of public electoral process, while protected by the First Amendment, subject to disclosure generally, but an as-applied challenge upon showing of reasonable probability of harm not foreclosed).

PL'S MOT. SUMM. J. (No. 10-CV-00664) — 10

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

*Id.* at 5 (internal citations omitted) (reviewing cases from other jurisdictions); *see also Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1092, 1093 (W.D. Wash. 2001) (quashing a subpoena seeking identifying information about an anonymous online poster: [p]eople who have committed no wrongdoing should be free to participate in online forums without fear that their identity will be exposed under the authority of the court) (internal citations omitted).

### 2.   The DOR's Information Requests Implicate the First Amendment

The protection that this Court, the Ninth Circuit, and the Supreme Court have afforded to anonymous speech – both on the Internet and in other contexts – applies fully to the DOR's demand that Amazon disclose the names, addresses and purchase habits about its North Carolina customers.  Many of Amazon's North Carolina customers' online purchases of expressive materials could be considered sensitive, personal, controversial or unpopular. Each order of a book, movie, or CD potentially reveals an intimate fact about an Amazon customer, and for that reason, many of Amazon's customers wish to remain anonymous. Disclosure of the titles themselves poses no threat, but connecting the titles of such works to specific individuals will chill the exercise of First Amendment rights.  Public figures who have purchased expressive works and other items from Amazon have the additional concern that their purchase histories will be scrutinized and used for political purposes, appear in the press, or otherwise be made public.

Because of the tremendous amount of personal data that can be collected and stored on electronic computer records, particularly where the State seeks records of literally millions of purchases, the "specter" of Big Brother looms large with regard to online purchases of expressive works.  In contrast to a brick and mortar store, when a customer purchases a work

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

from Amazon, he or she *must* typically use a credit card, and the transaction information –

which necessarily includes the title of the work that is being shipped to the customer – is

electronically stored. Zapolsky Decl. ¶ 5.  As evidenced by the many privacy inquiries that

Amazon receives each year, *id.* at ¶ 7, customers have a heightened awareness that an

electronic record of their expressive choices is created when they shop online.  "Web users

are especially unlikely to provide a credit card or personal information to gain access to

sensitive, personal, controversial, or stigmatized content on the web.  As a result of this desire

to remain anonymous, many users who are not willing to access information non-

anonymously will be deterred from accessing the desired information." *ACLU v. Gonzales*,

478 F. Supp. 2d 775, 806 (E.D. Pa. 2007), *aff'd*, 534 F.3d 181 (3d Cir. 2008); *see also id.* at

812 (forcing users who seek access to online content to reveal their identities online "will chill

speech").  The Supreme Court has expressed concern about Internet users "having to identify

themselves or provide their credit card information" before being able to access online

content. *Ashcroft v. ACLU*, 542 U.S. 656, 667 (2004).

The unique experience of online shopping for expressive materials from the

privacy of one's own home has had a positive effect on the customer's ability to

exercise his or her First Amendment rights to browse and purchase – and Amazon's

right to distribute – expressive materials in an unfettered manner.  Accordingly,

Amazon has acted vigorously to protect its and its customers' First Amendment and

privacy rights.  For example, when served in 2007 with a grand jury subpoena in

connection with a federal tax prosecution in Wisconsin, Amazon disclosed – as here

– the titles of books, CDs, and DVDs but refused to disclose the customers' names.

*In re Grand Jury Subpoena to Amazon.com dated August 7, 2006*, 246 F.R.D. 570

(W.D. Wis. 2007) (refusing to compel disclosure).  The court recognized that

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Amazon "has a legitimate concern that honoring the instant subpoena would chill online purchases by Amazon customers," cautioning against what the court called the "un-American scenario":

> The subpoena is troubling because it permits the government to peek into the reading habits of specific individuals without their prior knowledge or permission. . . . [I]t is an unsettling and un-American scenario to envision federal agents nosing through the reading lists of law-abiding citizens. . . . Taken a step further, if word were to spread over the Net – and it would – that the FBI and the IRS had demanded and received Amazon's list of customers and their personal purchases, the chilling effect on expressive e-commerce would frost keyboards across America. . . . [W]ell-founded or not, rumors of an Orwellian federal criminal investigation into the reading habits of Amazon's customers could frighten countless potential customers into canceling planned online book purchases, now and perhaps forever.

*Id.* at 572-73. Such protected activities must be safeguarded from invasive government demands like the DOR's outstanding Requests, as well as against similar demands that the DOR may make in the future.

### 3. The DOR Must Satisfy a Heightened Standard by Showing a Compelling Need for the Materials and a Sufficiently Close Connection Between the Materials Sought and the Investigation

"The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs." *United States v. Stevens*, 2010 WL 1540082, at *1 (U.S. Apr. 20, 2010) (striking down federal law that made criminal the sale of videos depicting dog fighting). Accordingly, in cases such as this where the government's demand for private information collides with First Amendment rights, the government must make a heightened showing of need, demonstrating both a compelling interest in the requested information and a sufficient nexus between that information and the underlying inquiry or investigation.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

This heightened standard was most recently applied to a government request for online

purchase data in *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*,

2009 WL 3495997 (D.D.C. 2009).  In investigating a company's distribution of adult-oriented

movies, the government sought "a copy of records that show the identity of all movies sold or

distributed, including the date of each transaction, payment received, and method and date of

each [] shipment, from customer purchases from the website/domain name." *Id.* at *1.  The

company withheld information identifying its customers, and on the government's motion to

compel, the court ruled that because "records of customer purchases of expressive

materials . . . are presumptively protected by the First Amendment," the government was

required to "demonstrate[ ] a compelling need . . . and a sufficient nexus between the records

and the . . . investigation," or that the records were not entitled to First Amendment

protection.  *Id.* at *5.

Similarly, in considering Amazon's motion to quash the federal grand jury subpoena

in the tax prosecution, the Wisconsin court held that the "First Amendment concern is a factor

for the court to consider when determining whether to require compliance with the subpoena,"

obligating the government to make a heightened showing of need for the information about

customers who had purchased specific books, CDs, and DVDs.  The subpoena was ultimately

withdrawn after the court refused to compel involuntary disclosure of customer names.  *In re*

*Grand Jury Subpoena to Amazon.com*, 246 F.R.D. at 573.

Other courts have applied this heightened standard to booksellers' customer lists and

have consistently held that a third-party seller of expressive works should not be forced to

reveal the reading lists of unsuspecting buyers in response to a government demand.  As the

Colorado Supreme Court explained in *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044

(Colo. 2002) (*en banc*), "the First Amendment embraces the individual's right to purchase and

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

read whatever books she wishes to, without fear that the government will take steps to discover which books she buys, reads, or intends to read." *Id.* at 1053.  The Court first held that the government must make a heightened showing of a "compelling need *for the precise and specific information sought*" from a seller of expressive content, and must then consider "whether there are reasonable alternative means of satisfying the asserted need and whether the search warrant is overly broad." *Id.* at 1058.  Even if there is a "compelling need," the court must "then balance the law enforcement officials' need for the bookstore record against the harm caused to constitutional interests by the execution of the search warrant." *Id.*  The Court held that the government's need for the book purchase records was not sufficiently compelling to outweigh the harm caused to readers' First Amendment rights and that the search warrant was "not enforceable and should not have issued." *Id*. at 1047.

The mere fact that the government has undertaken an investigation does not excuse compliance with the applicable heightened standard.  For example, in *In re Grand Jury Subpoena to Kramerbooks & Afterwords*, Inc., 26 Media L. Rep. 1599 (D.C. 1998), the Independent Counsel sought to investigate Monica Lewinsky's reading choices to corroborate allegations of a sexual affair with the President of the United States.  Finding that disclosure of a patron's choice of books would have a chilling effect on First Amendment rights, the district court applied a heightened standard to a grand jury subpoena directed to the bookstore and required the government to show a "compelling need for the materials" sought and "a substantial connection between the information sought and the grand jury's investigation." *Id*. at 1601; *see also, e.g., Bursey v. United States*, 466 F.2d 1059, 1081-83 (9th Cir. 1972), *superseded by statute on other grounds*, *In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988) (applying heightened standard to grand jury subpoena seeking to identify subscribers to Black Panther publications and requiring that a "substantial connection" exist between the

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

information sought and an "overriding government interest" and that the subpoena be "no more drastic than necessary") (internal citation omitted); *Lubin v. Agora, Inc.*, 882 A.2d 833, 846 (Md. 2005) (in quashing subpoena, the state's highest court imposed a heightened standard on a subpoena for subscriber lists of an investment newsletter publisher suspected of securities violations, requiring the government to "establish a substantial relation between the information sought and an overriding and compelling State interest").

These heightened standards have applied to tax inquiries whenever a government demand for information conflicts with First Amendment rights, as the Ninth Circuit cases cited by the DOR confirm.  *See* Motion to Dismiss at 21-22, *citing United States v. C.E. Hobbs Found.*, 7 F.3d 169, 173 (9th Cir. 1993) (where a summons in a tax inquiry "burdens the exercise of [First Amendment rights]," the tax authority's action "will be upheld 'only upon demonstration that a compelling governmental interest warrants the burden, and that less restrictive means to achieve the government's ends are not available'" (internal citation omitted)); *United States v. Trader's State Bank*, 695 F.2d 1132, 1133 (9th Cir. 1983) (quashing Internal Revenue Service summons because the IRS failed to show a "rational connection between" disclosure and a legitimate government end and failed to demonstrate a "compelling governmental interest in the disclosure").

Here, as in these precedents, the DOR's Request (and similar future requests the DOR claims the right to make) collide with the First Amendment rights of Amazon to sell, and its customers to purchase, expressive works.  Consequently, to properly pursue its Request, the DOR must demonstrate both a compelling interest in the Customer Data and a sufficient nexus between the DOR's demand for the Customer Data and its audit of Amazon.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**4.    The DOR Has Not Made the Heightened Showing of Compelling Need and Nexus Between the Material and the Investigation to Justify Intrusion into First Amendment Protected Speech**

Since this litigation commenced, the DOR has publicly conceded it does not need the detailed names and titles of expressive works purchased from Amazon to conduct a tax audit of Amazon and "is, at least for the time being, deferring action on customer names" while it pursues other information (although it refuses to back down from its claim of power to demand exactly the same detailed information at any time in the future).  Zapolsky Decl. ¶ 21 & Ex. 3.  The DOR demonstrably fails to satisfy what even it concedes is the heightened standard applicable to the Request because it fails to show (1) "a compelling interest in the information sought or a compelling need for the information sought," or (2) "a sufficient connection between the information sought and the [government] investigation." *Kramerbooks*, 26 Media L. Rep. at 1601; *see also Lubin*, 882 A.2d at 846; *Tattered Cover*, 44 P.3d at 1058.  It is not enough for the DOR to assert that the "government's interest in maintaining a workable tax system" is "compelling."  Motion to Dismiss at 6.  The DOR does not say – and cannot say – that its need for <u>this information</u> is compelling; in fact, the DOR says the opposite – that this information has "absolutely no value" to its inquiry into Amazon's tax compliance. *Id.* at 6, 21.

The sheer numbers involved in this case underscore the vital need for application of this heightened standard.  The DOR sought and obtained the titles of literally millions of expressive materials and has demanded the names and other personal information of the hundreds of thousands of citizens who chose to purchase and/or order those materials.  The DOR claims an ongoing right to demand the same information in the future, without limitation.  In contrast, in *Tattered Cover* and *Kramerbooks*, the courts insisted that the government satisfy a heightened standard with regard to <u>single individuals</u>; here, the potential

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

First Amendment intrusion is multiplied <u>hundreds of thousands of times over</u> by the breadth of the Request.

There is no compelling interest in forcing Amazon to identify specific customers who purchased specific books, music, and DVDs, because Amazon has given the government all financial and transactional information relevant to the DOR's assessment of Amazon's tax liability.  If the DOR wishes to know how much money Amazon received from North Carolina customers, or whether the products purchased were taxable, or what products an anonymous individual in fact purchased, the DOR need look no further than the information already produced.  Galbreath Decl. ¶ 13; *see also In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461*, 2009 WL 3495997, at *7 ("What the names of the customers who made these purchases have to do with establishing this presumption [of the number of sales] is unclear to this Court, and since the records produced by Company X already go towards establishing the presumption, the United States' proffered reason is not compelling.").

In addition to failing to show a compelling need for the information sought by the Request, the DOR cannot satisfy the second element of the heightened showing because a "sufficient connection" does not exist between the information sought and the tax liability investigation.  *Kramerbooks*, 26 Media L. Rep. at 1601.  This requirement prevents the DOR from undertaking a "fishing expedition," *Lubin*, 882 A.2d at 847, that compromises First Amendment rights.  Unfortunately, a fishing expedition is exactly what the DOR appears to be pursuing here.  The Request presents no chance of yielding additional information relevant to the DOR's tax audit of Amazon, and scrutinizing Amazon's customers' purchases of expressive works will not "make or break" or even materially advance the DOR's investigation.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

But even assuming, *arguendo*, that Amazon's disclosure of the Customer Data was the only way to assess Amazon's tax compliance, "the speculative value of the purchaser information does not outweigh the burden that compelled disclosure would place on the First Amendment interests of the individuals identified." *Lubin*, 882 A.2d at 847 (quashing subpoena while acknowledging that the government might "ferret out additional instances of securities fraud by contacting essentially every subscriber"); *see also Tattered Cover*, 44 P.3d at 1063 (the government failed to meet heightened standard for a search warrant directed at booksellers' customer purchase records, even though such records provide "a piece of the evidentiary puzzle."). Even if the DOR's Request did give the DOR additional information of some relevance to Amazon's tax compliance, the burden on Amazon and its North Carolina customers far outweighs the DOR's interest in the Customer Data.

Because customers' identities and specific expressive purchases are not relevant to the DOR's tax audit of Amazon, Amazon can divine only one possible motive for the DOR's interest in customers' names and addresses – to contact the buyers. Certain individuals will surely be distressed if government agents, as part of a tax liability investigation, have access to or ask them about their purchase of a book on alcoholism, a controversial political DVD, or a CD by a provocative recording artist.

Regardless of what the DOR actually does with the Customer Data, customers will be left to wonder whether the DOR is storing lists of the expressive works they purchased for an unspecified and potentially infinite period of time. They may also wonder who exactly had access to those records either within the DOR or other government offices and whether sufficient security measures have been installed. And despite the DOR's public statements (made after Amazon sued) attempting to assure the public that it does not need this information, the DOR refuses to give Amazon any similar assurance in an enforceable form,

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   and instead asserts the ongoing right to require Amazon to produce all of the same

2   information at <u>any</u> time.

3          Worse, Amazon customers may come to expect such questioning in the future and

4   hesitate before purchasing, reading, viewing and listening to certain materials out of

5   embarrassment or fear; indeed, "the chilling effect on expressive e-commerce would frost

6   keyboards across America." *In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. at 573.

7   Customers' desires for anonymity "may be motivated by fear of economic or official

8   retaliation, by concern about social ostracism, or merely by a desire to preserve as much of

9   one's privacy as possible." *McIntyre*, 514 U.S. at 341-42.  Whatever the reason, the DOR's

10  audit of Amazon will not benefit from the disclosure of the Customer Data, while the First

11  Amendment rights of customers (and Amazon itself) will suffer a grave violation if Amazon

12  is forced to comply with the Request.

13

14         Because the DOR has failed to demonstrate a compelling need or any nexus between

15  the Customer Data and its tax audit of Amazon – much less a nexus that would justify such a

16  broad intrusion into activities protected by the First Amendment and the Washington State

17  Constitution – Amazon simply cannot constitutionally be compelled to comply with the

18  Request.

19

20         **C.     To the Extent That the DOR's Request Applies to Video Sales, It Violates
              the Video Privacy Protection Act**

21

22         Because the Request seeks the names and other identifying information of individuals

23  who purchased DVDs, Blu-Ray discs, VHS tapes and other audiovisual materials, it directly

24  conflicts with the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 ("VPPA"); *see*

25  *also United States v. Curtin*, 489 F.3d 935, 959 n.1 (9th Cir. 2007) (concurring opinion)

26  ("Congress has made actionable 'wrongful disclosure of video tape rental or sales records'")

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

(*quoting* VPPA); *State v. Walker*, 2004 WL 52413, at *2-3 (Wash. Ct. App. Jan. 13, 2004);

*Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 240 n.7 (D.N.J. 1996).

In a criminal proceeding, "[a] video tape service provider may disclose personally

identifiable information concerning any consumer" "to a law enforcement agency pursuant to

a warrant, . . . a grand jury subpoena, or a court order," but only upon a showing that "there is

probable cause to believe that the records . . . sought are relevant to a legitimate law

enforcement inquiry" and "with prior notice to the consumer."  18 U.S.C. § 2710(b)(2)(C),

(3); *see also* S. Rep. No. 100-599, at 12 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342-1,

4342-10.  Similarly, disclosure in a civil proceeding must be pursuant to a court order and

only upon "a showing of compelling need for the information that cannot be accommodated

by any other means."  18 U.S.C. § 2710(b)(2)(F).  The consumer must be afforded

"reasonable notice, by the person seeking the disclosure, of the court proceeding" and "the

opportunity to appear to contest the claim of the person seeking the disclosure."  18 U.S.C.

§ 2710(b)(2)(F)(i)-(ii).

Amazon qualifies as a "video tape service provider" under § 2710 because Amazon is

a "person, engaged in the business, in or affecting interstate or foreign commerce, of rental,

sale, or delivery of prerecorded video cassette tapes *or similar audio visual materials*."  18

U.S.C. § 2710(a)(4) (emphasis added).  The personally identifiable information at issue

concerns "consumers" within the meaning of the statute.  18 U.S.C. § 2710(a)(4) (definition

of consumer includes purchasers of video or similar audio visual materials).  Both DVDs and

Blu-Ray discs sold by Amazon are "similar audiovisual materials" within the meaning of the

statute, because they are simply modern incarnations of "prerecorded video tapes."  *See* S.

Rep. No. 100-599, at 12, 14, 1988 U.S.C.C.A.N. at 4342-10, 4342-12.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

Although the proceedings under N.C. Gen. Stat. § 105-258 are a hybrid between a civil action and a law enforcement proceeding, an order compelling Amazon's response to the Request would not satisfy VPPA's requirements for a civil or a criminal proceeding.  If the proceeding is criminal in nature, in order to meet the requirements of section 2710, the DOR must demonstrate "probable cause" to believe that information identifying Amazon's audiovisual purchasers is relevant to the tax liability assessment investigation.  18 U.S.C. § 2710(b)(3).  If civil, the DOR must make "a showing of compelling need for the information" about Amazon's audiovisual purchasers "that cannot be accommodated by any other means."  18 U.S.C. § 2710(b)(2).  For the reasons stated above and because disclosure of identifying information will add nothing of consequence to the DOR's investigation, the DOR cannot even come close to making either showing.

In addition to making the requisite showing of probable cause or compelling need, the DOR must give prior and reasonable "notice to the consumer," that is, to each of the individuals who purchased DVDs, Blu-Ray discs, and VHS tapes in the millions of transactions at issue.  18 U.S.C. § 2710(b)(3).  In a civil proceeding, each affected Amazon customer must be "afforded the opportunity to appear and contest" the DOR's request for the information.  *Id.*  Amazon does not believe that the DOR has notified even a single customer of its planned invasion of privacy and violation of First Amendment rights.

To the extent that the Request involves audiovisual sales, Amazon's compliance would thus be in direct violation of federal law.  To disregard these requirements would violate "the clear intent of the Act," which is to "enable[] consumers 'to maintain control over personal information.'"  *Dirkes*, 936 F. Supp. at 240 (*quoting* S. Rep. No. 100-599, at 8).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# IV.   CONCLUSION

For the foregoing reasons, Amazon is entitled to summary judgment.  Amazon respectfully requests this Court to declare that, as part of an audit of Amazon's tax compliance, the DOR may not require Amazon to disclose the names, addresses, and purchasing habits of its North Carolina customers.  A proposed form of order shall be provided to the Court and to Defendant.

Respectfully submitted this 15th day of July, 2010.

DAVIS WRIGHT TREMAINE LLP

s/ Steven P. Caplow
Steven P. Caplow, WSBA #19843
1201 Third Avenue, Suite 2200
Seattle, WA 98101-3045
Tel:      (206) 622-3150
Fax:      (206) 757-7700
Email:    stevencaplow@dwt.com

Laura R. Handman (*pro hac vice*)
Robert G. Scott, Jr. (*pro hac vice*)
Elizabeth J. Soja (*pro hac vice*)
1919 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20006
Tel: (202) 973-4225
Fax: (202) 973-4499
Email:    laurahandman@dwt.com
          bobscott@dwt.com
          elizabethsoja@dwt.com

*Attorneys for Amazon.com LLC*

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700