THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, LLC,<br>　　　Plaintiff,<br><br>　　　　　　v.<br><br>KENNETH R. LAY, in his official capacity as<br>Secretary of the North Carolina Department of<br>Revenue,<br>　　　Defendant. | No. 2:10-cv-00664-MJP<br><br>**INTERVENORS' MEMORANDUM IN<br>SUPPORT OF MOTION FOR<br>SUMMARY JUDGMENT, OR, IN THE<br>ALTERNATIVE, *AMICI CURIAE*<br>BRIEF** |
| JANE DOE 1, JANE DOE 2, JANE DOE 3,<br>JANE DOE 4, JANE DOE 5, JANE DOE 6,<br>AND CECIL BOTHWELL,<br>　　　Plaintiffs-Intervenors,<br><br>　　　　　　v.<br><br>KENNETH R. LAY, in his official capacity as<br>Secretary of the North Carolina Department of<br>Revenue, and AMAZON.COM, LLC,<br>　　　Defendants in Intervention. | **NOTE ON MOTION CALENDAR:<br>AUGUST 6, 2010** |

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT--
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................ii

**INTRODUCTION**.......................................................................................................1

**FACTUAL BACKGROUND** ......................................................................................2

**ARGUMENT** .............................................................................................................5

    I.      DOR'S INFORMATION REQUESTS TO AMAZON VIOLATE THE
           FIRST AMENDMENT.................................................................................5

           A.     The First Amendment Protects The Right To Receive Information
                   And Ideas Through Books, Films, And Other Expressive Materials
                   Anonymously................................................................................6

           B.     The Significant Chilling Effect Created By DOR's Requests
                   Demonstrates The Severity Of The Threat To The First
                   Amendment..................................................................................10

           C.     DOR Cannot Show A Compelling Interest In The Information
                   Demanded By Its Information Requests, Or A Nexus Between The
                   Information And Its Interest In Tax Collection. ............................18

    II.     DOR'S INFORMATION REQUESTS TO AMAZON VIOLATE THE
           VIDEO PRIVACY PROTECTION ACT....................................................21

    III.    DOR'S POLICY AND PRACTICE OF ISSUING OVERBROAD
           INFORMATION REQUESTS TO SELLERS OF EXPRESSIVE
           MATERIALS VIOLATES THE FIRST AMENDMENT AND THE
           VPPA. ........................................................................................................22

**CONCLUSION** ........................................................................................................24

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- i
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1

2

**TABLE OF AUTHORITIES**

3

**Cases**

4

*Bantam Books v. Sullivan*, 372 U.S. 58 (1963)................................................................ 7

5

*Bates v. City of Little Rock*, 361 U.S. 516 (1960) ...................................................... 20

6

*Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182 (1999)................................ 7

7

8

*Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972), *superseded by statute on
    other grounds, In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988).................. passim

9

*Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D.N.J. 1996)............................ 21

10

*Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963) ................................ 18, 22

11

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) ........................................ 9

12

13

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*,
    Misc. No. 09-118(RCL), 2009 WL 3495997 (D.D.C. Oct. 26, 2009).................................. 6, 18

14

15

*In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D.
    570 (W.D. Wis. 2007)................................................................................ passim

16

*In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr.
    1599 (D.D.C. 1998) (Dkt. No. 21, Ex. B)................................................ 6, 10, 18, 22

17

*In re Grand Jury Subpoena*, 829 F.2d 1291 (4th Cir. 1987) ...................................... 23

18

*Lamont v. Postmaster General*, 381 U.S. 301 (1965)............................................... 7, 8

19

20

*McDonald v. United States*, 335 U.S. 451 (1948) .................................................... 15

21

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)........................................... 7

22

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ....................................... 7

23

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ............................................... 8

24

*Reno v. ACLU*, 521 U.S. 844 (1997)..................................................................... 8

25

*Roaden v. Kentucky*, 413 U.S. 496 (1973)............................................................. 7

26

*Smith v. California*, 361 U.S. 147 (1959) .............................................................. 17

27

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- ii
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

*Stanley v. Georgia*, 394 U.S. 557 (1969) ...................................................................... 6

*Talley v. California*, 362 U.S. 60 (1960) ...................................................................... 7

*Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044 (Colo. 2002) ......................... 6, 10, 18, 19

*United States v. Rumely*, 345 U.S. 41 (1953) ............................................................... 8

*United States v. Stevens*, 130 S. Ct. 1577 (2010) ........................................................ 15

*United States v. Trader's State Bank*, 695 F.2d 1132 (9th Cir. 1983) ......................... 19

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748 (1976) .............................................................................................................................. 6

*Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457 (2001) ....................................... 15

**Statutes**

18 U.S.C. § 2710 ........................................................................................................... 21

**Other Authorities**

Andrew Shain, *N.C. Requirement: Stolen Data Law In Effect Today*, Charlotte Observer, Oct. 1, 2006 .......................................................................................... 17

*DOT Security Breach Affects 25,000 Employees*, WRAL.Com, May 25, 2007, http://www.wral.com/news/local/story/1446009/ .................................................. 17

GAO, *Information Security:  IRS Needs to Address Pervasive Weaknesses*, GAO-08-211 (Jan. 8, 2008), *available at* http://www.gao.gov/cgi-bin/getrpt?GAO-08-211 ................................................................................................................... 16

GAO, *Information Security:  IRS Needs to Continue to Address Significant Weaknesses*, GAO-10-355 (Mar. 2010), *available at* http://www.gao.gov/new.items/d10355.pdf .......................................................... 16

GAO, *Information Security: IRS Electronic Filing Systems*, GAO-01-306 (Feb. 2001), *available at* http://www.gao.gov/new.items/d01306.pdf .............................. 16

Katie Hafner, *After Subpoenas, Internet Searches Give Some Pause*, N.Y. Times, Jan. 25, 2006, at Al .............................................................................................. 9

Mark Johnson, *Data Lost: Laptop Theft Puts Residents At Risk*, Charlotte Observer, Jan. 13, 2007, at 1A ............................................................................ 17

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- iii
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

North Carolina Department of Revenue, Internet Transactions Resolution
Program, http://www.dornc.com/taxes/sales/itrp.html ......................................................... 5, 22

Press Release, Investigation Into Alleged Immigrant List Complete (July 20,
2010), http://www.utah.gov/governor/news_media/article.html?article=3321 ........................ 17

Privacy Rights Clearinghouse, Chronology of Data Breaches: Security Breaches
2005-Present (2010),
http://www.privacyrights.org/sites/default/files/static/Chronology-of-Data-
Breaches_-_Privacy-Rights-Clearinghouse.pdf ........................................................................ 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- iv
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Jane Does 1-6 and Cecil Bothwell ("Intervenors") are individuals whose personal information and constitutional rights to privacy and freedom of expression are directly at issue in this case.  They moved to intervene in this lawsuit on June 23, 2010 (Dkt. No. 21); that motion is still pending.  Intervenors file this memorandum in support of Amazon's motion for summary judgment as proposed intervenors or, in the alternative, request leave to do so as *amici curiae*.  If intervention is granted, Intervenors intend to move for summary judgment on their claims.

## INTRODUCTION

Through overly broad information requests that it has issued to Amazon and that it has threatened to continue issuing to other Internet retailers, the North Carolina Department of Revenue ("DOR") has unnecessarily jeopardized the First Amendment rights of individuals to read, watch, and purchase expressive materials of their choice free from government scrutiny.  In its requests to Amazon, DOR has demanded that Amazon provide "all information" regarding "all sales" to customers with North Carolina shipping addresses for the last seven years.  Amazon responded to DOR with anonymous, detailed descriptions of items purchased by its customers in North Carolina.  That was not sufficient for DOR.  Already in possession of detailed information about what Amazon's customers had purchased, DOR demanded that Amazon further provide it with detailed customer information, including names and addresses, which could be matched to the product descriptions to reveal exactly which books, films, and other expressive materials each person purchased or received in North Carolina.

There are no facts in dispute here.  The only dispute is that DOR does not think there is anything constitutionally improper with its requests, or with its policy and practice of issuing similarly worded requests to other companies.  The First Amendment dictates otherwise.  The law is clear that when a government request for information implicates the First Amendment rights of individuals to read, view, and purchase expressive materials of their choosing anonymously, the government must show a compelling interest in the specific information requested, and a nexus between an ongoing investigation and that information.  DOR cannot do so as a matter of law, given its statements that the detailed, expressive information it has in its

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

possession is of "absolutely no value" to it in the collection of taxes.  DOR's only excuse is to assert—without reference to the actual language of its requests—that it did not ask for this expressive information.  The actual language of DOR's requests, which ask for "all information" regarding "all sales," belies this assertion and establishes that the requests and DOR's policy and practice of issuing such requests are constitutionally overbroad.

Intervenors are individuals whose First Amendment rights are at stake because of DOR's demands to Amazon and to other Internet retailers.  Intervenors have purchased numerous books, films, and other expressive and private materials on Amazon and other websites.  Their purchase records reveal profoundly personal and private details about their intimate family issues, their religious and political beliefs, and their medical and mental health issues.  If DOR were able to obtain this information, Intervenors would be chilled from purchasing certain items in the future, particularly controversial ones, and several would not purchase anything from Amazon.

To alleviate this chilling effect and to restore the well-established right of individuals, including Intervenors, to receive information and ideas of their choosing anonymously, without government intrusion, summary judgment is appropriate against DOR on both the First Amendment and Video Privacy Protection Act grounds.

## FACTUAL BACKGROUND

In December 2009, DOR sent Amazon an information document request asking that it provide "all information for all sales to customers with a North Carolina shipping address by month in an electronic format," for all dates between August 1, 2003 and February 28, 2010. Declaration of Jennifer Galbreath (Dkt. No. 45) Ex. A.  The request, as well as the cover letter sent with it, stated that failure to disclose the information by the due date "may prompt the State to issue a summons in accordance with North Carolina General Statute § 105-258."  *Id.*

It is undisputed that Amazon responded by providing DOR with detailed purchase records for the relevant time period, including Amazon's standard product code for each item ("ASIN number"), which reveals detailed information such as the name, title and brand of the item purchased.  *Id.* ¶ 8; Declaration of H. Alan Woodard (Dkt. No. 43-2) ¶ 13.  Amazon did not,

1
2
however, disclose the customer name or address that corresponds to each purchase record.
Galbreath Decl. ¶ 9; Woodard Decl. ¶ 13.

3
4
5
6
7
8
9
10
DOR sought to force Amazon to provide that information.  In March 2010, DOR sent Amazon another information request stating that Amazon had omitted the "Bill to Name; Bill to Address (Street, City, State, and Zip); Ship to Name; Ship to Address (street); Product/item code or description," and that if Amazon did not provide that information, DOR would issue a summons, which would allow DOR to initiate a summary enforcement proceeding in court against Amazon to force it to turn over the information.  Galbreath Decl. ¶ 11, Ex. B.  DOR attached a list of "required fields" to that request.  *Id.* Ex. B. This list included a field for "Line Item Description," which asks for a "[d]etail[ed] description of [the] line item."  *Id.*

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
The detailed information demanded by DOR implicates the fundamental rights of Amazon's customers, including Intervenors.  If DOR were to receive customer information from Amazon, DOR would be able to combine that information with the detailed product codes that it already has in its possession to determine which North Carolina customers, including Intervenors, purchased which specific books, movies, music, and other expressive and private items.  *Id.* ¶ 13.  That prospect is especially distressing to Intervenors, whose customer records reveal profoundly personal and private details about their intimate family issues, their religious and political beliefs, and their medical and mental health issues.  *See* Declaration of Jane Doe 1 (Dkt. No. 24) ¶¶ 6-9, 11; Declaration of Jane Doe 2 (Dkt. No. 25) ¶¶ 6-8; Declaration of Jane Doe 3 (Dkt. No. 26) ¶¶ 6-13; Declaration of Jane Doe 4 (Dkt. No. 27) ¶¶ 6-8; Declaration of Jane Doe 5 (Dkt. No. 28) ¶¶ 7-11; Declaration of Jane Doe 6 (Dkt. No. 29) ¶¶ 6-7; Declaration of Cecil Bothwell, filed with this memorandum, ¶¶ 8-11.  If DOR were able to obtain information about which specific items Intervenors have purchased or received from Amazon, that would chill Intervenors from purchasing items, especially controversial, personal and sensitive items, on Amazon or other websites.  *See* Jane Doe 1 Decl. ¶¶ 13-14; Jane Doe 2 Decl. ¶¶ 10-11; Jane Doe 3 Decl. ¶¶ 15-16; Jane Doe 4 Decl. ¶¶ 10-11; Jane Doe 5 Decl.¶¶ 13-14; Jane Doe 6 Decl.

27

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 3
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

¶¶ 9-10; Bothwell Decl. ¶ 12-13.  Several Intervenors would simply stop purchasing anything from Amazon altogether.  *See* Jane Doe 4 Decl. ¶ 11; Jane Doe 5 Decl. ¶14.

DOR has now acknowledged that it does not need the specific information about which individuals purchased which specific items through Amazon for the purposes of tax assessment.  *See* Woodard Decl. ¶¶ 9, 16.  DOR has nevertheless refused to destroy or to return the detailed purchasing information that it still has in its possession unless Amazon provides it with different information.  *See* Woodard Decl. ¶ 16; Declaration of David A. Zapolsky (Dkt. No. 46) Ex. 3.  DOR has also refused to acknowledge that it is not entitled to customer information that can be matched to the detailed purchasing information, and DOR has expressly reserved the right to demand such information and to force Amazon to provide it.  *See* Zapolsky Decl. Ex. 4; Galbreath Decl. Ex. F ("The Department reserves the right to request additional information including, but not limited to, information not provided in response to earlier IDR requests.").

DOR's representation that it does not need the detailed purchasing information does not alleviate Intervenors' concerns that DOR might obtain their purchase records, as DOR has expressly claimed the right to do.  Before moving to intervene, Intervenors specifically asked DOR to narrow its requests and return the detailed product information it now admits it does not need.  Declaration of Jennifer Rudinger, filed with this memorandum, Ex. A, B.  DOR refused. *Id.* Ex. C.  Intervenors also asked DOR to change its policy and practice of issuing broadly worded document requests that ask for "all information" by narrowing the requests to avoid sweeping in constitutionally protected expressive and private information.  DOR declined to do that as well, and refused to acknowledge any problems with its broadly worded requests, making it clear that DOR will not change its policy and practice unless forced to by a court.  *Id.* Ex. C.

Intervenors' concerns are heightened by the fact that DOR has issued similar, overbroad information requests to other retailers that encompass details about individuals' purchases of expressive and private items.  *See* Woodard Decl. Ex. F (stating that "[w]e have requested the same information from other businesses").  Indeed, following the filing of this lawsuit, DOR publicly announced that it will issue similar requests for information to any out-of-state Internet

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 4
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

retailer that has not collected sales taxes in North Carolina and does not agree to collect sales

taxes for the next four years.  *See* North Carolina Department of Revenue, Internet Transactions

Resolution Program, http://www.dornc.com/taxes/sales/itrp.html (last visited July 23, 2010).

DOR's threats to Amazon are troubling enough for Intervenors.  *See* Jane Doe 1 Decl. ¶ 13; Jane

Doe 2 Decl. ¶ 10; Jane Doe 3 Decl. ¶ 15; Jane Doe 4 Decl. ¶ 10; Jane Doe 5 Decl.¶ 13; Jane

Doe 6 Decl. ¶ 9; Bothwell Decl. ¶¶ 8-13.  DOR's policy and practice of issuing such broad

information requests—and its threat to do so to other retailers, most of whom will not have either

the resources or desire to fight such requests—only exacerbate those concerns, making

Intervenors seriously consider whether they can purchase certain items over the Internet at all.

*See* Jane Doe 1 Decl. ¶ 14; Jane Doe 2 Decl. ¶ 11; Jane Doe 3 Decl. ¶ 16; Jane Doe 4 Decl. ¶ 11;

Jane Doe 5 Decl.¶ 14; Jane Doe 6 Decl. ¶ 10; Bothwell Decl. ¶ 14.

To ensure that their and other individuals' constitutional rights to expression and privacy

are protected, Intervenors filed a motion to intervene in this suit on June 23, 2010.  Dkt. No. 21.

Pursuant to DOR's request, its deadline for responding to that motion was extended by stipulated

Court Order, Dkt. No. 38; DOR filed its opposition on July 12, 2010, Dkt. No. 41.  That same

day, DOR filed a motion to dismiss in response to Amazon's complaint.  Dkt. No. 43.  Amazon

then filed its motion for summary judgment on July 15, 2010.  Dkt. No. 44.  That motion is noted

for August 6, 2010.

## ARGUMENT

## I.   DOR'S INFORMATION REQUESTS TO AMAZON VIOLATE THE FIRST AMENDMENT.

DOR does not contest the well-established law that when it seeks records concerning

which books, films, or other expressive materials individuals have received, the First

Amendment requires it to show a compelling interest and a nexus between that interest and the

information sought.  *See* Mot. to Dismiss (Dkt. No. 43) at 20-22 (arguing that Amazon fails to

state a claim under the First Amendment because DOR has a compelling interest in tax

collection).  DOR cannot meet its burden here, given its concession that it does not need detailed

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 5
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

information about individuals' expressive purchases for purposes of tax collection. The Court should therefore declare that DOR's requests to Amazon violate the First Amendment and enjoin DOR from requesting and obtaining information about which individuals have been purchasing which books, movies, music, and other expressive and private materials from Amazon.

### A.   The First Amendment Protects The Right To Receive Information And Ideas Through Books, Films, And Other Expressive Materials Anonymously.

Courts have uniformly recognized that government requests for records of which books, films, or other expressive materials individuals have received implicate the First Amendment and trigger exacting scrutiny. *See, e.g.*, *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, Misc. No. 09-118(RCL), 2009 WL 3495997, at *5-9 (D.D.C. Oct. 26, 2009) (denying motion to compel subpoena for identities of customers who obtained movies through a website because government had not shown compelling interest or sufficient connection between the information sought and the criminal investigation); *In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D. 570, 572-73 (W.D. Wis. 2007) (requiring showing of need and modifying a grand jury subpoena seeking information about identity of book buyers because it raised First Amendment concerns); *In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr. 1599, 1600-01 (D.D.C. 1998) (Dkt. No. 21, Ex. B) (requiring government to show compelling interest and a sufficient connection between its investigation and its request for titles of books purchased by Monica Lewinsky); *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) (holding that search of bookseller's customer purchase records necessarily intrudes into constitutionally protected areas).

These cases are grounded in the principle that the First Amendment protects not only the right of individuals to speak and to express information and ideas, but also the corollary right to receive information and ideas through books, films, and other expressive materials. *See, e.g.*, *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 757 (1976) (right to receive advertisements); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) (films); *Bantam Books v.*

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington 98164
(206) 624-2184

*Sullivan*, 372 U.S. 58, 64 n.6 (1963) (books).  The setting of stores like Amazon and other Internet retailers that facilitate the sale and purchase of expressive materials is therefore "presumptively under the protection of the First Amendment."  *Roaden v. Kentucky*, 413 U.S. 496, 504 (1973).

Within this protected setting, privacy and anonymity are vitally important.  Anonymity "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular," because, among other things, it serves as a "shield from the tyranny of the majority."  *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995).  An individual may desire anonymity when engaging in First Amendment activities—like reading, speaking, or associating with certain groups—because of "fear of economic or official retaliation, . . . concern about social ostracism, or merely . . . a desire to preserve as much of one's privacy as possible."  *Id.* at 341-42.  Because eliminating this shield of anonymity and privacy would deter the unfettered exercise of First Amendment rights, the Supreme Court has consistently protected the right to anonymity.  *See, e.g.*, *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 200 (1999) (invalidating identification requirement that discouraged participation in petition circulation process); *McIntyre*, 514 U.S. at 342 (invalidating ban on the distribution of anonymous campaign literature); *Talley v. California*, 362 U.S. 60, 64 (1960) (invalidating ban on the distribution of anonymous handbills because "[t]here can be no doubt that . . . [it] would tend to restrict freedom to distribute information"); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (invalidating order requiring disclosure of organization's membership list because "privacy in group association may . . . be indispensable to preservation of freedom of association").

The Supreme Court has also recognized that anonymity and privacy are essential to preserve the freedom to receive information and ideas through books, films, and other materials of one's choosing.  For example, in *Lamont v. Postmaster General*, 381 U.S. 301, 302 (1965), the Court invalidated a postal regulation that required the recipient of "communist political propaganda" to file a written request with the postmaster before such materials could be delivered.  The regulation violated the First Amendment because it was "almost certain to have a

deterrent effect": "Any addressee [was] likely to feel some inhibition" in sending for literature knowing that government officials were scrutinizing its content. *Id.* at 307. Forced disclosure of reading habits, the Court concluded, "is at war with the 'uninhibited, robust, and wide-open' debate and discussion that are contemplated by the First Amendment." *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

Similarly, in *United States v. Rumely*, 345 U.S. 41, 56 (1953), a Congressional committee investigating possible abuses by political lobbyists demanded that a bookseller identify all customers who had placed orders in bulk for certain titles. The Court held that Congress had no power to demand such information. Although the Court did not rule on the constitutional question, the Court stated that "[s]urely it cannot be denied that . . . the power to inquire into all efforts of private individuals to influence public opinion through books and periodicals . . . raises doubts of constitutionality in view of the prohibition of the First Amendment." *Id.* at 46. As Justice Douglas explained in greater detail in his concurrence: "Once the government can demand of a publisher the names of the purchasers of his publications, the free press as we know it disappears. . . . If the lady from Toledo can be required to disclose what she read yesterday and what she will read tomorrow, fear will take the place of freedom in the libraries, bookstores, and homes of the land." *Rumely*, 345 U.S. at 57-58 (Douglas, J., concurring).

These words ring equally true today in the Information Age, with the prevalence of the Internet and other new technologies. *See Reno v. ACLU*, 521 U.S. 844, 870 (1997) (holding that speech on the Internet deserves the same protections as traditional forms of speech). Although these technological advances provide valuable tools for creating and disseminating information, *id.*, the unprecedented potential for government and companies to store vast amounts of personal information for an indefinite time poses a new threat to the right to personal privacy and free speech. In *In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. at 572-73, the district court recognized this reality in holding that a grand jury subpoena to Amazon requesting the identities of buyers of a certain seller's books raised significant First Amendment concerns. The court

explained its concern over the chilling effect that would flow from enforcing such a subpoena in

the age of the Internet, despite its confidence in the government's good-faith motives:

> [I]f word were to spread over the Net—and it would—that [the
> government] had demanded and received Amazon's list of customers and
> their personal purchases, the chilling effect on expressive e-commerce
> would frost keyboards across America.  Fiery rhetoric quickly would
> follow and the nuances of the subpoena (as actually written and served)
> would be lost as the cyberdebate roiled itself to a furious boil.  One might
> ask whether this court should concern itself with blogger outrage
> disproportionate to the government's actual demand of Amazon.  The
> logical answer is yes, it should:  well-founded or not, rumors of an
> Orwellian federal criminal investigation into the reading habits of
> Amazon's customers could frighten countless potential customers into
> canceling planned online book purchases, now and perhaps forever. . . .
> Amazon . . . has a legitimate concern that honoring the instant subpoena
> would chill online purchases by Amazon customers.

*In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. at 573.

Those observations were not merely speculative.  In 2006, when the government

subpoenaed information from the four major Internet search engines (AOL, Microsoft, Yahoo,

and Google) regarding what their customers were searching for on the Web, the public reaction

was immediate shock, outrage, and fear.  *See, e.g.,* Katie Hafner, *After Subpoenas, Internet

Searches Give Some Pause*, N.Y. Times, Jan. 25, 2006 at Al.  So much so, that the district court

considering a challenge to one of the subpoenas *sua sponte* raised privacy concerns with the

request.  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 687-88 (N.D. Cal. 2006).

As explained below, DOR's requests to Amazon have had a similar chilling effect on

Amazon's users, including Intervenors.  This chilling effect demonstrates exactly why all of

these cases have consistently held that government requests for private and expressive

information raise significant First Amendment concerns that can only be overcome by a showing

of compelling interest and nexus.

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 9
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

**B.    The Significant Chilling Effect Created By DOR's Requests Demonstrates The Severity Of The Threat To The First Amendment.**

Courts considering similar government requests for expressive information have focused on the existence of a chilling effect in concluding that rights to free expression are implicated by such requests.  *See, e.g., In re Kramerbooks*, 26 Med. L. Rptr. at 1600 (relying on evidence of chilling effect, including declaration that showed that many customers threatened not to shop at the bookstore if it turned over documents revealing patron's choice of books, to hold that subpoena implicates the First Amendment); *Tattered Cover, Inc.*, 44 P.3d at 1061 (holding, under state constitutional law, that evidence of chilling effect caused by execution of a search warrant for bookstore's purchase records outweighed the asserted investigative need).  The chilling effect of DOR's potential access to individuals' purchase records is amply illustrated in this case by the declarations of Jane Does 1-6, Dkt. Nos. 24-29, filed with the motion to proceed pseudonymously, and Cecil Bothwell, filed with this memorandum.  Intervenors have compelling reasons for why they want to keep their purchase records away from the eyes of government officials and why they would be chilled from purchasing certain items if their purchase records could become available to the State.  For example:

Jane Doe 1[1]

Jane Doe 1, an engineer, purchased numerous self-help books from Amazon in order to file for divorce and to obtain a restraining order for herself and her child against her abusive former spouse.  She purchased these books after her former spouse's substance abuse problems escalated and her former spouse became violent and threatened to kill her.  Jane Doe 1 Decl. ¶¶ 3, 6.  The books she purchased include:  "You Don't Need A Lawyer," by James Kramon; "Represent Yourself In Court: How to Prepare & Try A Winning Case," by Paul Bergman; "Practical Guide to Family Law," by Matthew S. Cornick; and "How To File For Divorce in North Carolina: With Forms," by Jacqueline D. Stanley.  *Id.*  Jane Doe 1's experience was

---

[1] Use of the pseudonym "Jane Doe" or gender pronouns does not signify that Jane Does 1-6 are male or female.

traumatizing, life-changing, and deeply private for her, and she does not want DOR or anyone else to know about her private family struggles. *Id.* ¶ 7.

In addition, as a recognized expert in information security, her professional reputation is important to her. *Id.* ¶ 8. A review of her Amazon purchase history would reveal not only the intimate family and personal problems, but might also lead someone to draw conclusions about her political or social beliefs. *Id.* ¶ 9. For example, she has bought politically-charged books like "Laura Bush: An Intimate Portrait of the First Lady," by Ronald Kessler, "Hoodwinked: The Documents That Reveal How Bush Sold Us A War," by John Prados, and "Body of Secrets: Anatomy of the Ultra-Secret National Security Agency," by James Bamford. *Id.*

The possibility that DOR might obtain her purchase records from Amazon has made her extremely upset and anxious. *Id.* ¶ 10. This is particularly so because she has personal experience with DOR's inability to keep its records secure: a few years ago, she received information about another taxpayer in an envelope addressed to her. *Id.* Jane Doe 1 would like to continue purchasing items from Amazon, but if DOR were able to obtain her purchasing history from Amazon, she would be chilled from making certain purchases in the future and would have to consider seriously whether to make any purchases on Amazon. *Id.* ¶ 13.

Jane Doe 2

Jane Doe 2, General Counsel of a global firm, has purchased books with overt political leanings, like Michael Moore's "Dude, Where's My Country?" and Al Franken's "Lies and the Lying Liars Who Tell Them: A Fair and Balanced Look at the Right." Jane Doe 2 Decl. ¶¶ 3, 6. She does not want DOR to know about her political leanings or the other private details of her life that can be pieced together from the over 200 items that she has purchased from Amazon since 2003. *Id.* ¶ 4, 8. Although she intends to purchase expressive and private items from Amazon in the future, she would be chilled from doing so if DOR were able to obtain her purchasing history. *Id.* at ¶¶10, 11.

Jane Doe 3

Jane Doe 3, a writer at a software company, is an atheist. Jane Doe 3 Decl. ¶¶ 3, 6. She

has purchased several books from Amazon reflecting her beliefs, including "Godless: How an Evangelical Preacher Became One of America's Leading Atheists," by Dan Barker and Richard Dawkins, "God Is Not Great: How Religion Poisons Everything," by Christopher Hitchens, and "The God Delusion," by Richard Dawkins.  *Id.*  She has also purchased DVDs of the same nature, including "The God Who Wasn't There," a documentary highly critical of modern Christianity which questions the existence of Jesus Christ, and "Religulous," a politically charged documentary by Bill Maher which criticizes organized religions of all types.  *Id.*  She is not "out" about her belief in atheism, and she does not want DOR or anyone else—including her religious co-workers—to learn about her private beliefs.  *Id.* ¶¶ 7-8.

Jane Doe 3 has also purchased other books through Amazon which reveal other profoundly personal and private matters, including books concerning:  ways to save her marriage ("The Seven Principles For Making Marriage Work:  A Practical Guide From the Country's Foremost Relationship Expert," by John M. Gottman); mental health conditions afflicting her former spouse ("Stop Walking On Eggshells:  Taking Your Life Back When Someone You Care About Has Borderline Personality Disorder," by Paul T. Mason); and cancer ("Eating Well Through Cancer:  Easy Recipes & Recommendations During & After Treatment," by Holly Clegg).  *Id.* ¶¶ 9, 10, 12.  She purchased these books through Amazon in part because it was convenient to do so and in part because she did not want others to see her buying those books and carrying them around.  *Id.* ¶11.  She would like to continue purchasing items from Amazon, but she would be chilled from doing so, at least with respect to certain items, if DOR were able to obtain her purchasing records.  *Id.* ¶¶ 15, 16.

Jane Does 4 and 5

Jane Doe 4, a student at the University of North Carolina Law School, has received books from Jane Doe 5, her parent, which may be viewed by some as controversial, such as "Lies the Government Told You: Myth, Power, and Deception in American History," by Andrew P. Napolitano, and "Obama Zombies: How the Liberal Machine Brainwashed My Generation," by Jason Mattera.  Jane Doe 4 Decl. ¶¶ 3, 6.  After graduation, she aspires to work in the public

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 12
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

sector, ideally in a legislative or public policy capacity, and she does not want the State or anyone else to judge her based on what she has been reading.  *Id.* ¶ 8.  She would like to continue using Amazon, but she would be chilled from obtaining certain items from Amazon if her purchasing records were to become accessible to the State, and she would also have to consider seriously whether to purchase any items through Amazon.  *Id.* ¶¶ 10, 11.

Jane Doe 5, an accountant and a Florida resident, purchased books for her child through Amazon after discussing the books and their subject matters with her.  Jane Doe 5 Decl. ¶¶ 3, 8.  She does not want the subjects of her conversations with her child or the potentially controversial books she purchased revealed to the government or to anyone else because that information is deeply personal and private, and may reveal her political beliefs and values.  Jane Doe 5 is also concerned for her professional reputation, as many of her business colleagues and clients would be put off by the subject matter of the items purchased.  *Id.* ¶¶ 8-10.  She intends to continue using Amazon, especially because her child lives in another state, but if DOR were able to access this information, she would be chilled from purchasing certain items on Amazon.  She would also have to consider seriously whether to purchase any items through Amazon.  *Id.* ¶¶ 13-14.

Jane Doe 6

Jane Doe 6, a retired lawyer, has purchased books on potentially sensitive and revealing matters, such as "The Stages of Meditation," by the Dalai Lama.  Jane Doe 6 Decl. ¶¶ 3, 6.  She would like to continue using Amazon, but if DOR were able to access her private and personal purchasing records, she will seriously have to consider whether to purchase certain items from Amazon and to consider what it would mean if the State obtained the information.  *Id.* ¶¶ 7-9.

Cecil Bothwell

Cecil Bothwell, an elected member of the Asheville City Council, has purchased expressive items from Amazon and sold books he has written and published through Amazon.  Bothwell Decl. ¶ 3.  Mr. Bothwell is an atheist.  *Id.* ¶ 5.  When he was elected to the Asheville City Council, his political opponents seized on that and undertook high profile, public efforts to attempt to prevent him from being sworn in to office pursuant to a provision of the North

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 13
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Carolina Constitution which purports to prohibit anyone who "den[ies] the being of Almighty God" from holding public office. *Id.*

Mr. Bothwell eventually overcame that challenge and was permitted to take office, but that experience made him acutely aware of how damaging and potentially life-altering the revelation of personal and intimate details about public officials can be, and how critical it is to make sure that government does not unnecessarily obtain personal and private information about individuals, especially public officials. *Id.* ¶ 6. Because of this experience, Mr. Bothwell does not want to take any chance that his private, personal purchasing records on Amazon will be turned over to the State if they are linked to his name and other identifying information. *Id.* ¶ 8.

He also does not want the State to know the identity of those who have purchased the books he has written and published, many of which concern potentially controversial and sensitive subjects. *Id.* ¶ 9-11. For example, one of these books, written by Mr. Bothwell, is "The Prince of War: Billy Graham's Crusade For A Wholly Christian Empire," a highly critical, unauthorized biography of Billy Graham, one of North Carolina's most famous and popular former residents. *Id.* Mr. Bothwell faced severe criticism and hostility for writing this book, and he is very concerned that his readers and customers will suffer similar adverse consequences, including retaliation, if it were publicly disclosed that they were reading the book, and that they will therefore be chilled from purchasing his books through Amazon were the State to have access to this information. *Id.* That chill, in turn, will prevent him from having his messages heard by as many people as possible. *Id.* ¶ 12.

Mr. Bothwell would like to continue purchasing expressive items through Amazon in the future. *Id.* ¶ 13. He would also like to continue selling his books through Amazon. *Id.* He will be chilled from doing so, however, at least with respect to certain items, if DOR were able to access his records and the records of his customers and readers from Amazon. *Id.*

As demonstrated by Intervenors, the information that DOR is demanding reveals sensitive and highly personal information about these individuals' intimate family struggles, medical and mental health problems, and religious and political beliefs. The declarations of

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 14
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1
2
3
4
5

Intervenors establish that DOR's demand for information about which books, films, and other expressive materials people are purchasing will chill Amazon's users from obtaining certain items in the future from Amazon, and some would simply choose not to purchase any items from Amazon.  Jane Doe 1 Decl. ¶¶ 13-14; Jane Doe 2 Decl. ¶¶ 10-11; Jane Doe 3 Decl. ¶¶ 15-16; Jane Doe 4 Decl. ¶ 10; Jane Doe 5 Decl.¶ 13; Jane Doe 6 Decl. ¶ 9; Bothwell Decl. ¶ 13.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

DOR misses the mark when it argues that the First Amendment claim fails because DOR employees will not have the time to search the 50 million North Carolina customer purchases by ASIN number to learn the title of each book, DVD, or music purchased.  Mot. to Dismiss at 7-8. The First Amendment does not depend on what the government will do with the data it collects about individuals' expressive activities.  First Amendment interests are violated when the government asks for this detailed, expressive information, because individuals will be chilled by the prospect of government collection of this data.  That unacceptable chill is particularly clear here, given that DOR will have a database of over 50 million entries with all of this detailed expressive information.  DOR's argument is essentially that even though it will have this protected information, individuals should simply trust the government not to look at it.  That argument has been rejected by the Supreme Court.  Simply put, "trust us" is not good enough when First Amendment rights are at stake.  *See United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010) ("But the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*.  We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.") (citing *Whitman v. Am. Trucking Assns., Inc.*, 531 U.S. 457, 473 (2001)); *McDonald v. United States*, 335 U.S. 451, 455-56 (1948) ("The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals.").

24
25
26
27

DOR similarly attempts to minimize the First Amendment and privacy concerns by focusing on its confidentiality obligations.  *See* Response to Mot. to File Complaint in Intervention Using Pseudonyms (Dkt. No. 42) at 3.  Those obligations do not "soften the blow" to Intervenors' First Amendment rights to keep their information private from the eyes of the

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 15
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

government.  *Bursey v. United States*, 466 F.2d 1059, 1086 (9th Cir. 1972) (holding that the secrecy of the grand jury proceeding "did little to soften the blow to the First Amendment rights" because "[t]he public did not know what the grand jury learned, but the proceedings were no secret to the Government"), *superseded by statute on other grounds*, *In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988).

Moreover, there is a realistic possibility that DOR's confidentiality obligations might be breached—intentionally or inadvertently.  This concern is not just theoretical.  For example, the Internal Revenue Service ("IRS"), DOR's federal analogue, has had a continuing spate of privacy and security problems over the last decade, despite strict rules regarding the confidentiality of taxpayer information and its best efforts at securing the information.  *See, e.g.,* GAO, *Information Security: IRS Electronic Filing Systems*, GAO-01-306 (Feb. 2001), *available at* http://www.gao.gov/new.items/d01306.pdf (finding that in 2001, the agency's computer systems were highly insecure and vulnerable); GAO, *Information Security:  IRS Needs to Address Pervasive Weaknesses*, GAO-08-211 (Jan. 8, 2008), *available at* http://www.gao.gov/cgi-bin/getrpt?GAO-08-211 (finding that as of 2008, "significant weaknesses in various controls continue to threaten the confidentiality and availability of IRS's financial processing systems and information," and that fully 70 percent of previously identified weaknesses had not been addressed by the agency); GAO, *Information Security:  IRS Needs to Continue to Address Significant Weaknesses*, GAO-10-355 (Mar. 2010), *available at* http://www.gao.gov/new.items/d10355.pdf (finding that as of 2010, 69 percent of the previously identified security weaknesses in key systems had still not been addressed).  Other government agencies have likewise experienced similar security breaches in recent years.  *See, e.g.,* Privacy Rights Clearinghouse, Chronology of Data Breaches: Security Breaches 2005-Present (2010), http://www.privacyrights.org/sites/default/files/static/Chronology-of-Data-Breaches_-_Privacy-Rights-Clearinghouse.pdf (compiling a list of incidents of insider theft, fraud, hacking, break-ins, lost hard drives, and accidental disclosures of personal information from private sector and governmental institutions since January 2005; as of July 2010, this list details over 494 million

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 16
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

records that have been lost).  Indeed, just last week, it was discovered that a database maintained by the State of Utah was improperly accessed, resulting in the public disclosure of personal information and the alleged immigration status of thousands of individuals in Utah.  *See* Press Release, Investigation Into Alleged Immigrant List Complete (July 20, 2010), http://www.utah.gov/governor/news_media/article.html?article=3321.

DOR, like the IRS and other governmental entities, has itself had information security breaches in the past.  Jane Doe 1, for example, received information about another taxpayer from DOR in an envelope addressed to her.  Jane Doe 1 Decl. ¶ 10.  In another incident, a laptop containing confidential information about 30,000 individuals was lost by a DOR employee who left the laptop in her car.  Mark Johnson, *Data Lost: Laptop Theft Puts Residents At Risk*, Charlotte Observer, Jan. 13, 2007, at 1A (reporting that a majority of the more than 200 data security breaches revealed nationwide since 2005 have come from government agencies).  Other government agencies in North Carolina have had similar problems.  *See, e.g.*, Andrew Shain, *N.C. Requirement: Stolen Data Law In Effect Today*, Charlotte Observer, Oct. 1, 2006, at 3B (reporting theft of computer owned by N.C. Division of Motor Vehicles with information about 16,000 people); *DOT Security Breach Affects 25,000 Employees*, WRAL.Com, May 25, 2007, http://www.wral.com/news/local/story/1446009/ (reporting security breach of computer server holding information on 25,000 North Carolina Department of Transportation employees).  The chilling effect from DOR's requests to Amazon is, thus, exacerbated by the realistic possibility that the information will not necessarily remain confidential in DOR's hands.

Because DOR's demands on Amazon are chilling individuals from exercising their right to receive information and ideas from books, films, and other expressive materials, DOR's demands raise serious First Amendment concerns.  *See Smith v. California*, 361 U.S. 147, 150-51 (1959) (holding that "legal devices"—like DOR's requests for information —"cannot be applied in settings where they have the collateral effect of inhibiting the freedom of expression, by making the individual the more reluctant to exercise it").

**C.    DOR Cannot Show A Compelling Interest In The Information Demanded By Its Information Requests, Or A Nexus Between The Information And Its Interest In Tax Collection.**

DOR's information requests for "all information" relating to "all sales" on Amazon fail the heightened judicial scrutiny applicable to government requests for information that implicates the First Amendment.  The Supreme Court has established that to force a disclosure of personal information of the type requested here, the government must show a compelling need for the information and a nexus between the information and a government investigation.  *See, e.g.*, *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963) (holding that a state legislative committee subpoena could not be enforced because "it is an essential prerequisite to the validity of an investigation which intrudes into the area of constitutionally protected rights of speech . . . that the State convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest"); *see also Bursey*, 466 F.2d at 1083 (holding that "[w]hen governmental activity collides with First Amendment rights, the Government has the burden of establishing that its interests are legitimate and compelling and that the incidental infringement upon First Amendment rights is no greater than is essential to vindicate its subordinating interests").

This same standard applies to government requests for a bookseller's customer information.  In *Kramerbooks*, for example, the court drew on the association and anonymous speech cases to hold that to demonstrate the enforceability of a subpoena, the government must show a compelling interest in or need for the information sought and a sufficient connection between the information and the criminal investigation.  *In re Kramerbooks*, 26 Med. L. Rptr. at 1600; *see also In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 2009 WL 3495997, at *5-9 (applying *Kramerbooks* standard to subpoena seeking identity of individuals receiving movies from a website); *In re Amazon.com*, 246 F.R.D. at 572-73 (agreeing with the analysis in *Kramerbooks* and requiring the government to show that the grand jury needs the information); *Tattered Cover*, 44 P.3d at 1056-59 (adopting the *Kramerbooks* standard into state constitutional requirement for a warrant implicating freedom of expression).

1   DOR does not take issue with this standard.  Instead, DOR argues that it has a

2   "compelling interest" in the administration of the tax system and the enforcement of summonses

3   for tax information.  Mot. to Dismiss at 22.  DOR may generally have a compelling interest in

4   administering its tax system, but it is not enough for DOR to assert this broad interest any time it

5   requests tax-related information from individuals.  *See Tattered Cover*, 44 P.3d at 1058 (holding

6   that "because the law enforcement officials' need to investigate crime will almost invariably be a

7   compelling one . . . . the court must engage in a more specific inquiry as to whether law

8   enforcement officials have a compelling need *for the precise and specific information sought*."

9   (emphasis in original)).  DOR has conceded that it has "no reason to request expressive content,

10  such as book or movie titles," in the course of a sales or use tax audit.  Woodard Decl. ¶ 9.  The

11  detailed expressive information that DOR currently has in its possession is, thus, in its own

12  words, "of no use" to DOR.  *Id.* ¶14.  Given this admission, DOR cannot show any legitimate

13  interest, much less a compelling one, in knowing which individuals purchased which specific

14  books, films, and other expressive materials from Amazon or from any other website—the

15  specific information at issue here.

16   Moreover, in its motion to dismiss, DOR failed to address the second prong of the test:

17  whether there is a nexus between the information sought and its investigation, and whether "the

18  incidental infringement upon First Amendment rights" of its requests for information "is no

19  greater than is essential to vindicate its subordinating interests."  *Bursey*, 466 F.2d at 1083.  Even

20  where the government has an interest in enforcing a tax summons, the government must show a

21  nexus between the information and the goals of the investigation.  *See United States v. Trader's*

22  *State Bank*, 695 F.2d 1132, 1133 (9th Cir. 1983) (vacating order of enforcement where

23  government request for information was overbroad and the government failed to show a

24  connection between the documents requested and the goal of assessing tax liability).  Because

25  DOR has completely failed to do so, its requests cannot withstand First Amendment scrutiny.

26   DOR's conclusory assertion of its general interest in tax administration, even if a

27  compelling interest, is not enough to satisfy this second prong.  *See Bates v. City of Little Rock*,

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 19
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

361 U.S. 516, 525 (1960) ("[G]overnmental action does not automatically become reasonably related to the achievement of a legitimate and substantial government purpose by mere assertion . . . ."). Here, DOR's information requests call for the production of information that is unnecessary and, according to DOR, not even desired. DOR has stated that it does not need or want the detailed, expressive information about individuals' purchasing histories to complete a tax assessment of sales and use taxes. Woodard Decl. ¶ 9 ("The exemptions and differential rates of taxation under the North Carolina revenue laws are not based on the expressive content of books, music, or videos."). DOR therefore cannot show a nexus between the expressive information that it has requested and its interest in tax collection, nor that the requests are no greater than essential to satisfy its interest in tax collection.

Moreover, even if DOR could show a nexus between this expressive information and its interests in tax collection, DOR's information requests are overbroad and impermissibly sweep in information about an unknown, but significant, number of individuals for whom DOR has no legitimate need to know any information. These individuals include, for example, the many non-North Carolina residents, like Jane Doe 5, a Florida resident, who send items to individuals in North Carolina through Amazon, but who are not liable for use taxes or any North Carolina taxes. Even though DOR does not need any information regarding these individuals, its requests expressly call for the production of such information. *See* Galbreath Decl. Ex. B (stating that Amazon's response failed to provide "Bill to Name" and "Bill to Address" information). The requests are, thus, constitutionally overbroad. *See Bursey*, 466 F.2d at 1983.

Finally, DOR's information requests are also overbroad because DOR has admitted that it already has enough information to "proceed to issue a sales tax assessment against Amazon, assessing tax on all transactions at the highest rate." Mot. to Dismiss at 17. Any further information that it seeks might arguably be useful only to efforts to collect use taxes, which it has not yet even decided to undertake. *Id.* Because it has not yet decided to conduct any use tax investigations against individuals, there is no specific need for this information. The requests are, thus, unconstitutional because the First Amendment prohibits DOR from demanding

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 20
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

information about its citizens that sweeps in information about their expressive activities without a specific need for such information.

## II.   DOR'S INFORMATION REQUESTS TO AMAZON VIOLATE THE VIDEO PRIVACY PROTECTION ACT.

DOR's information requests are also improper because they violate the Video Privacy Protection Act of 1988, 18 U.S.C. § 2710 ("VPPA"), as the requests would result in the disclosure of which audiovisual materials, such as video tapes and DVDs, individuals have purchased.  The VPPA was passed to prevent exactly this situation from occurring:  Congress passed the Act in reaction to Judge Robert Bork's 1987 Supreme Court nomination, during which a newspaper obtained a list of 146 videotapes that the Bork family had rented.  *See Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 238 (D.N.J. 1996).  Congress was "outraged by the invasion into the Bork family's privacy" and "acted quickly to outlaw certain disclosures of such clearly private information."  *Id.*

DOR's information requests seek the disclosure of this "clearly private information."  The "personally identifiable information" protected by the VPPA is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  Amazon is indisputably such a "video tape service provider" that is "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ."  18 U.S.C. § 2710(a)(4).  As such, it is prohibited from knowingly disclosing information about individuals' purchasing records of audiovisual materials except in narrow circumstances, such as if there is a warrant permitting access to the records.  18 U.S.C. § 2710(b).  DOR's information requests do not fall under these narrow exceptions.  Even if DOR were to apply for a court order to enforce the requests, the VPPA would require it to show a "compelling need for the information that cannot be accommodated by any other means," and DOR would have to give the consumer notice and an opportunity to contest the disclosure before being able to access the records.  18 U.S.C. § 2710(b)(2)(F).  DOR has not shown any intent to provide individual notice to those whose

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 21
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

records it is seeking, and, in any event, it cannot meet the high standard for compelling need for the same reasons that it cannot satisfy First Amendment scrutiny.

### III. DOR'S POLICY AND PRACTICE OF ISSUING OVERBROAD INFORMATION REQUESTS TO SELLERS OF EXPRESSIVE MATERIALS VIOLATES THE FIRST AMENDMENT AND THE VPPA.

Not only has DOR issued overbroad information requests to Amazon, but it has a policy and practice of issuing similar requests to other retailers. *See* Woodard Decl. Ex. F. Indeed, following the filing of this lawsuit, DOR stated that it will continue to issue such requests to out-of-state retailers that do not agree to collect sales tax. *See* Internet Transactions Resolution Program, http://www.dornc.com/taxes/sales/itrp.html. For the same reasons as discussed above, DOR's policy and practice of issuing overbroad information requests that seek "all information" for "all sales" from sellers of expressive materials other than Amazon also violates the First Amendment and, if complied with by sellers of audiovisual material, would violate the VPPA. DOR has stated that it does not need detailed, expressive information like the titles of books or movies purchased in the course of its sales or use tax audits. Woodard Decl. ¶¶ 7-9. It can therefore never succeed in showing a compelling interest in requesting this information in the course of its sales or use tax audits, or a sufficient nexus between the information and such audits, as is required by the First Amendment. *See Gibson*, 372 U.S. at 546; *In re Kramerbooks*, 26 Med. L. Rptr. at 1600-01.

DOR's policy and practice of issuing such overbroad information requests and its public threat to continue doing so to out-of-state retailers has an impermissible "chilling effect on expressive e-commerce" that "would frost keyboards across America." *In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. at 573. That is especially the case because most companies will likely acquiesce to such requests without notifying Intervenors or other customers, as they will have neither the resources nor the desire to do so. As Intervenors' declarations make clear, if DOR could obtain detailed, expressive information about all of their Internet purchases, Intervenors would seriously consider whether they can purchase certain

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 22
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1   expressive and private items over the Internet at all.  *See* Jane Doe 1 Decl. ¶ 14; Jane Doe 2 Decl.

2   ¶ 11; Jane Doe 3 Decl. ¶ 16; Jane Doe 4 Decl. ¶ 11; Jane Doe 5 Decl.¶ 14; Jane Doe 6 Decl. ¶ 10;

3   Bothwell Decl. ¶ 14.

4        That chill is precisely why where, as here, the government seeks information that is

5   protected by the First Amendment and acts in a way that poses a risk of chilling the right to free

6   expression, it "must use a scalpel, not an ax."  *Bursey*, 466 F.2d at 1088; *In re Grand Jury*

7   *Subpoena*, 829 F.2d 1291, 1302 (4th Cir. 1987) (quashing as improper a subpoena requiring

8   videotape distributers to produce copies of videos that depict sexually explicit conduct, and

9   holding that the government must act "in the least intrusive matter possible, which means, at

10  minimum, by identifying the requested material in a way that allows the recipient of the

11  subpoena to know immediately whether an item is to be produced or not").  DOR's information

12  requests fail to "use a scalpel" because they broadly seek "all information" without specifying

13  that they do not need detailed, expressive information.

14       What DOR must do to ensure compliance with the First Amendment and the VPPA is

15  clear and simple:  it must specifically state in the information requests that it issues to retailers

16  that its request does not call for information regarding expressive content, such as book or movie

17  titles.  DOR has refused this straightforward request.  The Court should therefore enjoin DOR

18  from issuing information requests that are not narrowly tailored enough and do not clarify that

19  DOR is not seeking detailed, expressive information.

20

21

22

23

24

25

26

27

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 23
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1

## CONCLUSION

2      For the foregoing reasons, summary judgment should be granted.

3

4      Respectfully submitted this 23rd day of July, 2010.

5

6                                          /s/ Venkat Balasubramani
                                           Venkat Balasubramani, WSBA #28269
7      **AMERICAN CIVIL LIBERTIES UNION OF**     **FOCAL PLLC**
       **WASHINGTON FOUNDATION**                 8426 40th Ave SW
8      Sarah A. Dunne, WSBA # 34869         Seattle, WA 98136
       901 Fifth Ave, Suite 630            Tel:    (206) 529-4827
9      Seattle, Washington  98164          Fax:    (206) 260-3966
       Tel:    (206) 624-2184              Email: venkat@focallaw.com
10     Fax:    (206) 624-2190
       Email: dunne@aclu-wa.org
11                                         **AMERICAN CIVIL LIBERTIES UNION**
                                           **FOUNDATION**
12     **AMERICAN CIVIL LIBERTIES UNION OF**     **Speech, Privacy and Technology Project**
       **NORTH CAROLINA FOUNDATION**            Aden J. Fine (*pro hac vice*)
13     Katherine Lewis Parker (*pro hac vice*)  Mariko Hirose (*pro hac vice*)
       Post Office Box 28004               125 Broad Street, 18th Floor
14     Raleigh, North Carolina 27611       New York, NY 10004
       Tel:    (919) 834-3466              Tel:    (212) 549-2500
15     Fax:    (866) 511-1344              Fax:    (212) 549-2651
       Email:  acluncklp@nc.rr.com         Email:  afine@aclu.org
16                                                 mhirose@aclu.org

17

18

19

20

21

22

23

24

25

26

27

INTERVENORS' BRIEF IN SUPPORT OF
SUMMARY JUDGMENT-- 24
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1

## **CERTIFICATE OF SERVICE**

2

The undersigned certifies that she filed the foregoing Intervenors' Memorandum in

3

Support of Summary Judgment, Or, In The Alternative, *Amici Curiae* Brief, with the Declaration

4

of Cecil Bothwell and the Declaration of Jennifer Rudinger as exhibits, through the Court's

5

CM/ECF system which will provide a notice of filing to counsel for all parties.

6

July 23, 2010.

7

8

*/s/ Mariko Hirose*
Mariko Hirose

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184