THE HONORABLE MARSHA J. PECHMAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, LLC,<br>          Plaintiff,<br><br>                    v.<br><br>KENNETH R. LAY, in his official capacity as<br>Secretary of the North Carolina Department of<br>Revenue,<br>          Defendant.<br><hr>JANE DOE 1, JANE DOE 2, JANE DOE 3,<br>JANE DOE 4, JANE DOE 5, JANE DOE 6,<br>AND CECIL BOTHWELL,<br>          Plaintiffs-Intervenors,<br><br>                    v.<br><br>KENNETH R. LAY, in his official capacity as<br>Secretary of the North Carolina Department of<br>Revenue, and AMAZON.COM, LLC,<br>          Defendants in Intervention. | No. 2:10-cv-00664-MJP<br><br>**INTERVENORS' MEMORANDUM<br>OPPOSING MOTION TO DISMISS,<br>OR, IN THE ALTERNATIVE,** *AMICI<br>CURIAE* **BRIEF**<br><br>**NOTE ON MOTION CALENDAR:<br>AUGUST 6, 2010** |

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...............................................................................................ii

**INTRODUCTION**..........................................................................................................1

**FACTUAL BACKGROUND** ............................................................................................2

**ARGUMENT** ................................................................................................................6

    I.       THE TAX INJUNCTION ACT AND COMITY DO NOT BAR THIS
             CASE BECAUSE THIS LAWSUIT DOES NOT INTERFERE WITH
             STATE TAX COLLECTION. .....................................................................................6

    II.      THIS CASE IS RIPE FOR REVIEW BECAUSE DOR HAS
             THREATENED TO ENFORCE ITS REQUESTS, THE CASE
             PRESENTS A PURELY LEGAL ISSUE, AND THE REQUESTS ARE
             HAVING A CHILLING EFFECT...........................................................................10

    III.     AMAZON AND INTERVENORS STATE A CLAIM FOR VIOLATION
             OF THE FIRST AMENDMENT AND THE VIDEO PRIVACY
             PROTECTION ACT.............................................................................................17

          A.      DOR's Requests For Information Violate The First Amendment.................17

          B.      DOR's Requests For Information Violate The Video Privacy
                Protection Act. ..............................................................................................20

**CONCLUSION** ...........................................................................................................22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Gardner*, 387 U.S. 136 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977) .................................................................... 11

*Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840 (9th Cir. 2007) ........................................................................................................................ 12

*Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) ........................... 14

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979)............................................. 12

*Bates v. City of Little Rock*, 361 U.S. 516 (1960)........................................................................ 19

*BellSouth Telecomm'ns., Inc. v. Farris*, 542 F.3d 499 (6th Cir. 2008) ........................................ 9

*Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327 (9th Cir. 1989) ..................................... 8, 9

*Bradley v. United States*, 817 F.2d 1400 (9th Cir. 1987)........................................................... 18

*Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972), *superseded by statute on other grounds*, *In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988).................... 17, 20

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003).................................. 15, 16

*City of Jefferson City v. Cingular Wireless LLC*, 531 F.3d 595 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 739 (2008) ............................................................................... 9

*Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. 2004) ....................................................................... 22

*Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D.N.J. 1996).................................. 20, 21, 22

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................ 14

*Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996) ................................. 11

*Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963)....................................... 17

*Hernandez v. Comm'r*, 490 U.S. 680 (1989) .............................................................................. 18

*Hibbs v. Winn*, 542 U.S. 88 (2004) ..................................................................................... passim

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*,

Misc. No. 09-118(RCL), 2009 WL 3495997 (D.D.C. Oct. 26, 2009)...................................... 18

*In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D.
570 (W.D. Wis. 2007) ............................................................................................... 13, 18

*In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr.
1599 (D.D.C. 1998) (Dkt. No. 21, Ex. B) .......................................................................... 18

*Laird v. Tatum*, 408 U.S. 1 (1972) .............................................................................. 12

*Lamont v. Postmaster Gen. of the U.S.*, 381 U.S. 301 (1965) ...................................... 17

*Levin v. Commerce Energy*, 130 S. Ct. 2323 (2010) ................................................. 9, 10

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000).................................................. 12, 16

*Luessenhop v. Clinton County*, 466 F.3d 259 (2d Cir. 2006) ....................................... 6, 9

*Maldonado v. Morales*, 556 F.3d 1037 (9th Cir. 2009), *cert. denied*, 130 S. Ct.
1139 (2010).............................................................................................................. 10

*May Trucking Co. v. Or. Dept. of Transp.*, 388 F.3d 1261 (9th Cir. 2004).............................. 7, 8

*Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582 (1995) ............................ 7

*Qwest Corp. v. City of Surprise*, 434 F.3d 1176 (9th Cir. 2006) .................................... 7

*Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052 (9th Cir. 1987)........................... 12

*Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044 (Colo. 2002) .......................... 18

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) ........................... 11, 16

*Truth v. Kent Sch. Dist.*, 542 F.3d 634 (9th Cir. 2008).......................................... 13, 15

*United States v. C.E. Hobbs Found. for Religious Training and Educ., Inc.*, 7 F.3d
169 (9th Cir. 1993)...................................................................................................... 19

*United States v. Richey*, 924 F.2d 857 (9th Cir. 1991) .............................................. 18

*United States v. Rumely*, 345 U.S. 41 (1953)........................................................... 13

*United States v. Stevens*, 130 S.Ct. 1577 (2010)...................................................... 15

*United States v. Trader's State Bank*, 695 F.2d 1132 (9th Cir. 1983) ......................... 19

*Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988)................................ 12, 16

**Statutes**

18 U.S.C. § 2710 ............................................................................................................ 17, 20, 21

28 U.S.C. § 1341 ...................................................................................................................... 6

**Other Authorities**

North Carolina Department of Revenue, Internet Transactions Resolution
     Program, http://www.dornc.com/taxes/sales/itrp.html ............................................... 5

**Rules**

Rule 12(b)(6) ........................................................................................................................... 17

Jane Does 1-6 and Cecil Bothwell ("Intervenors") are individuals whose personal information and constitutional rights to privacy and freedom of expression are directly at issue in this case. They moved to intervene in this lawsuit on June 23, 2010, Dkt. No. 21; that motion is still pending. Intervenors file this memorandum in opposition to Defendant's motion to dismiss as proposed intervenors or, in the alternative, request leave to do so as *amici curiae*.

## **INTRODUCTION**

This case is about whether the First Amendment prohibits the North Carolina Department of Revenue ("DOR") from issuing overbroad requests for "all information" when those requests encompass expressive and private information and are not necessary for tax assessment. In December 2009, DOR sent such a broadly worded information request to Amazon, demanding "all information" for "all sales" between August 1, 2003, and February 28, 2010, to customers with a North Carolina shipping address, and warning that it may issue a summons against Amazon if DOR did not receive the requested information by the due date. Amazon responded by providing detailed information about all of the pertinent sales, including information about the titles of the books, films, music, and other items purchased by its customers. Amazon did not provide customer information with its response. Contending that this response was not sufficient, DOR issued another information request—also on the threat of issuing a summons— demanding customer information for the sales, including names and addressees, that could be matched to the detailed information in its possession to reveal which Amazon customers purchased which specific books, films, and other expressive materials. The First Amendment prohibits such a request, and Amazon filed this lawsuit to prevent DOR from enforcing its requests.

DOR has now moved to dismiss Amazon's complaint on the basis of the Tax Injunction Act ("TIA"), comity, prudential ripeness, and failure to state a claim. None of these grounds bar Amazon's action. The Tax Injunction Act and comity do not strip this Court of jurisdiction because, by DOR's own admission, the relief requested in this case—preventing DOR from requesting or obtaining detailed information about which individuals have purchased which

specific books, films, or other expressive materials—will not interfere with DOR's ability to assess or collect taxes.  DOR's arguments regarding the TIA and comity hang entirely on the notion that this case is about taxes, but it is not:  this case does not challenge DOR's authority to impose sales or use taxes, dispute anyone's tax liability, or seek to enjoin DOR from collecting information that it needs for assessing taxes.  Instead, Amazon and Intervenors seek simply to ensure that DOR does not abuse its audit authority to demand or obtain from Amazon or other retailers information that is protected by the First Amendment and that DOR has admitted that it does not need for purposes of tax assessment.

Ripeness also does not bar jurisdiction because this is a First Amendment case raising a purely legal issue—the type of case in which pre-enforcement challenges are routinely permitted. The issues here are fit for judicial decision because DOR has already repeatedly issued requests for information protected by the First Amendment under threat of enforcement to Amazon and to other retailers.  These requests are not just hypothetically problematic.  They are imposing hardship on Amazon and Intervenors as they have already had an adverse chilling effect on First Amendment rights.  For that reason as well, this case is ripe for adjudication.

Finally, Amazon's and Intervenors' complaints state claims that DOR's requests violate the First Amendment and the Video Privacy Protection Act.  In fact, as established in the motion for summary judgment also pending before this Court, summary judgment is appropriate on those claims because DOR's requests violate the First Amendment and the Video Privacy Protection Act as a matter of law.

## **FACTUAL BACKGROUND**

In December 2009, DOR sent Amazon an information document request asking Amazon to provide "all information for all sales to customers with a North Carolina shipping address by month in an electronic format," for all dates between August 1, 2003 and February 28, 2010. Amazon Complaint (Dkt. No. 1) ¶ 26; Declaration of Jennifer Galbreath (Dkt. No. 45) Ex. A. The request, as well as the cover letter sent with it, stated that failure to disclose the information by the due date "may prompt the State to issue a summons in accordance with North Carolina

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

General Statute § 105-258."  Galbreath Decl. Ex. A.

Amazon responded by providing DOR with detailed purchase records for the relevant time period, including Amazon's standard product code for each item ("ASIN number"), which reveals detailed information such as the name, title, and brand of the item purchased.  Amazon Compl. ¶¶ 27-28.  Amazon did not disclose the customer name or address that corresponds to each purchase record.  *Id.* ¶ 29.

DOR sought to force Amazon to provide that information.  In March 2010, DOR sent Amazon another information request stating that Amazon had omitted the "Bill to Name; Bill to Address (Street, City, State, and Zip); Ship to Name; Ship to Address (street); Product/item code or description," and that if Amazon did not provide that information, DOR would issue a summons, which would allow DOR to initiate a summary enforcement proceeding in court against Amazon to force it to turn over the information.  *Id.* ¶ 31, 33; Galbreath Decl. ¶ 11, Ex. B.  DOR included a list of "required fields" with that request.  Galbreath Decl. Ex. B.  That list included a field for "Line Item Description," which instructed Amazon to provide a "[d]etail[ed] description of [the] line item."  *Id.*

The detailed information demanded by DOR implicates the fundamental rights of Amazon's customers, including Intervenors.  If DOR were to receive customer information from Amazon, DOR would be able to combine that information with the detailed product codes that it already has in its possession to determine which North Carolina customers, including Intervenors, purchased which specific books, movies, music, and other expressive and private items.  Amazon Compl. ¶ 34.  That prospect is especially distressing to Intervenors, whose customer records reveal profoundly personal and private details about their intimate family issues, their religious and political beliefs, and their medical and mental health issues.  *See* Intervenors' Proposed Complaint (Dkt. No. 21) ¶¶ 68-126; Declaration of Jane Doe 1[1] (Dkt. No.

---

[1] Use of the pseudonym "Jane Doe" or gender pronouns does not signify that Jane Does 1-6 are male or female.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

24) ¶¶ 6-9, 11; Declaration of Jane Doe 2 (Dkt. No. 25) ¶¶ 6-8; Declaration of Jane Doe 3 (Dkt. No. 26) ¶¶ 6-13; Declaration of Jane Doe 4 (Dkt. No. 27) ¶¶ 6-8; Declaration of Jane Doe 5 (Dkt. No. 28) ¶¶ 7-11; Declaration of Jane Doe 6 (Dkt. No. 29) ¶¶ 6-7; Declaration of Cecil Bothwell (Dkt. No. 48-1) ¶¶ 8-11.  If DOR were able to obtain information about which specific items Intervenors have purchased or received from Amazon, that would chill Intervenors from purchasing items, especially controversial, personal and sensitive items, on Amazon or other websites.  *See* Intervenors' Compl. ¶¶ 68-126; Jane Doe 1 Decl. ¶¶ 13-14; Jane Doe 2 Decl. ¶¶ 10-11; Jane Doe 3 Decl. ¶¶ 15-16; Jane Doe 4 Decl. ¶¶ 10-11; Jane Doe 5 Decl.¶¶ 13-14; Jane Doe 6 Decl. ¶¶ 9-10; Bothwell Decl. ¶¶ 12-13.  Several Intervenors would simply stop purchasing anything from Amazon altogether.  *See* Jane Doe 4 Decl. ¶ 11; Jane Doe 5 Decl. ¶14.

DOR does not need the specific information about which individuals purchased which specific items through Amazon for the purposes of tax assessment.  Amazon Compl. ¶ 34; *see also* Declaration of H. Alan Woodard (Dkt. No. 43-2), submitted by DOR, ¶¶ 9, 16.  DOR has nevertheless refused to destroy or to return the detailed purchasing information that it has in its possession unless Amazon provides it with different information.  *See* Woodard Decl. ¶ 16; Declaration of David A. Zapolsky (Dkt. No. 46) Ex. 3.  DOR has also refused to acknowledge that it is not entitled to customer information that can be matched to the detailed purchasing information, and DOR has expressly reserved the right to demand such information and to force Amazon to provide it.  *See* Zapolsky Decl. Ex. 4; Galbreath Decl. Ex. F ("The Department reserves the right to request additional information including, but not limited to, information not provided in response to earlier IDR requests.").

DOR's representation that it does not need the detailed purchasing information does not alleviate Intervenors' concerns that DOR might obtain their purchase records, as DOR has expressly claimed the right to do.  Before moving to intervene, Intervenors specifically asked DOR to narrow its requests and to return the detailed product information it now admits it does not need, but DOR refused.  Intervenors' Compl. ¶ 66; Declaration of Jennifer Rudinger (Dkt. No. 48-2) Ex. A-C.  Intervenors also asked DOR to change its policy and practice of issuing

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

broadly worded document requests that ask for "all information" by narrowing the requests to avoid sweeping in constitutionally protected expressive and private information. Rudinger Decl. Ex. B. DOR declined to do that as well, and refused to acknowledge any problems with its broadly worded requests, making it clear that DOR will not change its policy and practice unless forced to by a court. *Id.* Ex. C.

Intervenors' concerns are heightened by the fact that DOR has issued similar overbroad information requests to other retailers that encompass details about individuals' purchases of expressive and private items. Intervenors' Compl. ¶¶ 52-53; Woodard Decl. Ex. F (stating that "[w]e have requested the same information from other businesses"). Indeed, following the filing of this lawsuit, DOR publicly announced that it will issue similar requests for information to any out-of-state Internet retailer that has not collected sales taxes in North Carolina unless they agree to collect North Carolina sales taxes for the next four years. Intervenors' Compl. ¶ 58; North Carolina Department of Revenue, Internet Transactions Resolution Program, http://www.dornc.com/taxes/sales/itrp.html (last visited July 28, 2010). DOR's threats to Amazon are troubling enough for Intervenors. *See* Intervenors' Compl. ¶¶ 75-76, 80, 90, 95, 105, 109, 121; Jane Doe 1 Decl. ¶ 13; Jane Doe 2 Decl. ¶ 10; Jane Doe 3 Decl. ¶ 15; Jane Doe 4 Decl. ¶ 10; Jane Doe 5 Decl.¶ 13; Jane Doe 6 Decl. ¶ 9; Bothwell Decl. ¶¶ 8-13. DOR's policy and practice of issuing such broad information requests—and its threat to do so to other retailers, most of whom will not have either the resources or desire to fight such requests—only exacerbate those concerns, making Intervenors seriously consider whether they can purchase certain items over the Internet at all. *See* Intervenors' Compl. ¶¶ 77, 81, 91, 96, 106, 110, 122; Jane Doe 1 Decl. ¶ 14; Jane Doe 2 Decl. ¶ 11; Jane Doe 3 Decl. ¶ 16; Jane Doe 4 Decl. ¶ 11; Jane Doe 5 Decl.¶ 14; Jane Doe 6 Decl. ¶ 10; Bothwell Decl. ¶ 14.

On April 19, 2010, Amazon filed a complaint for declaratory relief in this Court. Dkt. No. 1. To ensure that their and other individuals' constitutional rights to expression and privacy are protected, Intervenors filed a motion to intervene in this suit on June 23, 2010, as well as a motion to proceed pseudonymously. Dkt. Nos. 21, 23 ("intervention motions"). Pursuant to

1
2
3
4
5
6

DOR's request, its deadline for responding to those motions was extended by stipulated Court Order, Dkt. No. 38; DOR filed its responses on July 12, 2010, Dkt. Nos. 41, 42. That same day, DOR filed a motion to dismiss in response to Amazon's complaint. Dkt. No. 43. Amazon then filed its motion for summary judgment on July 15, 2010. Dkt. No. 44. Intervenors subsequently filed a brief in support of that motion as proposed intervenors or, in the alternative, as *amici curiae*. Dkt. No. 48.

7
8
9

On July 23, 2010, Intervenors filed reply briefs on the intervention motions, Dkt. No. 49-50, which are now ready for decision by the Court. DOR's motion to dismiss and Amazon's motion for summary judgment are both noted for August 6, 2010.

10

## ARGUMENT[2]

11
12
13

**I.    THE TAX INJUNCTION ACT AND COMITY DO NOT BAR THIS CASE BECAUSE THIS LAWSUIT DOES NOT INTERFERE WITH STATE TAX COLLECTION.**

14
15
16
17
18
19
20
21
22
23

The thrust of DOR's argument regarding the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, is that federal-court jurisdiction is improper here because this case involves taxes. Mot. to Dismiss at 9-10. The TIA, however, only bars relief that "enjoin[s], suspend[s], or restrain[s] the assessment, levy or collection of [a] tax under State law." 28 U.S.C. § 1341. The sweeping view advocated by DOR—that the TIA, in effect, prevents federal-court interference with all aspects of state tax administration—was explicitly rejected by the Supreme Court in *Hibbs v. Winn*, 542 U.S. 88 (2004), a case that DOR fails to cite. *See Hibbs*, 542 U.S. at 105 (rejecting the argument); *Luessenhop v. Clinton County*, 466 F.3d 259, 265 (2d Cir. 2006) ("[Circuit cases] and *Hibbs* unambiguously hold that summarily dismissing plaintiffs' causes of action because they pertain to state tax administration in the most general sense would be a patent misreading of the

24
25
26
27

[2] For the reasons set forth in Intervenors' reply memorandum in support of intervention, Dkt. No. 50, the Court should rule on the intervention motions first so that Intervenors have the opportunity to weigh in on the jurisdictional and substantive arguments affecting their constitutional rights. The briefs relating to the motion to dismiss and the motion for summary judgment raise similar legal issues and should be considered at the same time.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

TIA").  Indeed, *Hibbs* specifically took a limiting view of many of the Supreme Court cases on which DOR relies to support its argument.

   *Hibbs* compels the conclusion that the TIA does not bar jurisdiction over this case.  In *Hibbs*, Arizona taxpayers filed a § 1983 suit in federal court challenging a tax credit as unconstitutional.  *See* 542 U.S. at 94-95.  In rejecting the view that the TIA barred all suits pertaining to taxes, the Court found that Congress's objective in passing the TIA was to force taxpayers who sought to avoid paying the tax bill to pursue refund suits in state court instead of attempting to do so in federal court.  *See id.* at 104.  Consistent with this observation, the Court viewed its prior decisions—including the cases cited by DOR to support its broad view of the TIA—as "interpret[ing] and appl[ying] the TIA only in cases Congress wrote the Act to address, *i.e.*, cases in which state taxpayers seek federal-court orders enabling them to avoid paying taxes." *Id.* at 106-07 (holding that prior TIA cases decided by the Court "are not fairly portrayed cut loose from their secure, state-revenue-protective moorings").  Because the taxpayers in *Hibbs* did not seek to avoid paying state taxes and did not ask for relief that would reduce state revenues, the Court held that the case could proceed in federal court.  *See id.* at 108-09.[3]

   Just as in *Hibbs*, neither Amazon nor Intervenors contest their tax liability or seek relief that would restrain DOR's collection of taxes.  Indeed, DOR disregards "the dispositive question" in the Ninth Circuit for whether the TIA applies post-*Hibbs*:  "whether '[f]ederal-court relief . . . would . . . operate[] to reduce the flow of state tax revenue.'" *May Trucking Co. v. Or. Dept. of Transp.*, 388 F.3d 1261, 1267 (9th Cir. 2004) (quoting *Hibbs*, 542 U.S. at 106); *see also Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1184 (9th Cir. 2006) (same).  This Court should therefore begin the TIA analysis by identifying the relief that Amazon and Intervenors seek.  *See*

---

[3] DOR broadly asserted in its response to the motion to intervene that § 1983 claims seeking "relief in a state tax dispute" cannot be brought in federal court under *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582 (1995).  Response (Dkt. No. 41) at 5, 9-10.  That position is not correct.  *Hibbs* was a § 1983 case, and the Supreme Court permitted it to proceed.  *See Hibbs*, 542 U.S. at 94.  DOR fails to explain that the issue in *National Private Truck Council* was whether § 1983 requires state courts to award injunctive or declaratory relief in state tax cases.  *Id.* at 585-586.  The Court held only that § 1983 cannot be used in state court where it cannot be used in federal court because of the TIA.  *See id.* at 588-89.  The Court did not extend the application of the TIA to bar all § 1983 claims.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

*Hibbs*, 542 U.S. at 99.  That relief is for this Court:  (1) to declare that DOR cannot request or obtain information protected by the First Amendment or the Video Privacy Protection Act ("VPPA") in the course of sales or use tax audits of Amazon or other retailers where, as here, DOR has admitted that it does not need the information for tax purposes; (2) to enjoin DOR from requesting or obtaining this information from Amazon or other retailers in the course of such audits; and (3) to order DOR to destroy or return any such information that it already has or may obtain.  *See* Amazon Compl. at 14; Intervenors' Compl. at 32-33.

These requested remedies would not reduce the flow of state tax revenue.  Even DOR admits that.  According to DOR, Amazon has already given DOR all the information that DOR needs to assess taxes against it.  Mot. to Dismiss at 17.  As DOR has explained, it could now "proceed to issue a sales tax assessment against Amazon, assessing tax on all transactions at the highest rate."  *Id.*  That would obviate the need to assess use taxes.  Woodard Decl. ¶ 18, Ex. G. Any additional information that DOR obtains would therefore be useful to the assessment of sales taxes only to the extent that it allows Amazon to claim exemptions and lower tax rates. Relief that would serve to prevent Amazon from claiming exemptions and lower tax rates, just like the requested relief in *Hibbs* that would invalidate a tax credit, would, if anything, increase, rather than decrease, state tax revenue.  Such relief is not barred under the TIA.  *See Hibbs*, 542 U.S. at 108-09; *May Trucking*, 388 F.3d at 1267.

Moreover, DOR has now admitted that it does not actually need the detailed expressive information that it received from Amazon in response to its requests for "all information" for "all sales."  DOR has explained that in order to assess sales or use taxes it never needs "expressive content, such as book or movie titles."  Woodard Decl. ¶¶ 8-9.  "[E]xemptions and differential rates of taxation under the North Carolina revenue laws are not based on the expressive content of books, music, or videos."  *Id.* ¶ 9.  In fact, DOR has now offered to return this information because it does not need it, although it is unwilling to do so absent a bargain from Amazon.  *Id.* ¶ 16.  This case therefore presents the converse of the situation in *Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327, 328 (9th Cir. 1989) (per curiam), cited by DOR, where the TIA

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

deprived the court of jurisdiction because "[t]he requested injunction would preclude [the states] from . . . obtain[ing] the information *necessary for assessment*." *Id.* at 328 (emphasis added). Here, by contrast, the TIA does not deprive the Court of jurisdiction because the requested relief would only preclude the State from obtaining information *not necessary* for assessment.

Because neither Amazon nor Intervenors contest their tax liability in this case or seek any relief that would reduce state revenue, this challenge is outside the purpose and purview of the TIA to restrict taxpayers to refund suits in state courts and prevent disruption of state finances. *See Hibbs*, 542 U.S. at 104-105. It is precisely the type of case that has been permitted to proceed in federal courts after *Hibbs*, despite the TIA. *See, e.g.*, *BellSouth Telecomm'ns., Inc. v. Farris*, 542 F.3d 499, 501 (6th Cir. 2008) (permitting First Amendment challenge to statute banning telecommunications providers from identifying a new tax on customers' bills and passing cost on to customers); *City of Jefferson City v. Cingular Wireless LLC*, 531 F.3d 595, 604 (8th Cir. 2008) (permitting suit for declaration that a taxpayer is engaged in activity that makes it subject to a tax), *cert. denied*, 129 S. Ct. 739 (2008); *Luessenhop*, 466 F.3d at 266 (permitting due process challenge to a state foreclosure proceeding where plaintiffs did not contest the amount of taxes due).

For the same reasons that the TIA does not apply, DOR's passing reference to the comity doctrine also fails to undermine this Court's jurisdiction. *See Hibbs*, 542 U.S. at 107 n.9 (holding that comity did not apply where plaintiffs did not seek district-court aid "in order to arrest or countermand state tax collection"). Although comity did bar jurisdiction in a challenge to the state tax treatment of a competitor in *Levin v. Commerce Energy*, 130 S. Ct. 2323 (2010), the three reasons the Supreme Court gave to distinguish *Hibbs* are dispositive in demonstrating that this case is more like *Hibbs* than like *Levin*, and thus that comity is not an appropriate consideration here. *See Levin*, 130 S. Ct. at 2336. First, *Levin* did not "involve any fundamental right or classification that attracts heightened judicial scrutiny." *Id.* By contrast, this case, like *Hibbs*, implicates fundamental constitutional rights. Second, in *Levin*, the plaintiffs were seeking federal-court aid to improve their financial position within the state tax scheme. *Id.* Here, as in

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

*Hibbs*, no party is challenging its tax liability or its tax treatment under state law.  Finally, in *Levin*, the state courts were better positioned than their federal counterparts to grant a remedy because appropriate relief might have required reshaping provisions of the state's tax code.  *See id.* at 2335, 2336.  By contrast, the relief that Amazon and Intervenors seek is even less disruptive than the invalidation of the tax credit that the plaintiffs sought in *Hibbs*.  Amazon and Intervenors are not asking the Court to invalidate any part of North Carolina's tax code.  They simply ask for limited relief that this Court is well-equipped to grant:  declaratory and injunctive relief to stop DOR from requesting and receiving information protected by the First Amendment that DOR concedes it does not need.  Where "state courts would have no greater leeway than federal courts to cure the alleged violation, nothing would be lost in the currency of comity or state autonomy" by permitting the suit to proceed in a federal forum.  *Levin*, 130 S. Ct. at 2336.

The relief that Amazon and Intervenors seek is, at most, minimally intrusive to DOR's tax collection authority.  If the TIA or comity were to require dismissal of this case, no case that is remotely related to taxes would ever be permitted to proceed in federal court.  The Supreme Court has made clear that that is not the law.  *See Hibbs*, 542 U.S. at 94.  This Court should exercise its jurisdiction over this case.

## II.    THIS CASE IS RIPE FOR REVIEW BECAUSE DOR HAS THREATENED TO ENFORCE ITS REQUESTS, THE CASE PRESENTS A PURELY LEGAL ISSUE, AND THE REQUESTS ARE HAVING A CHILLING EFFECT.

This case is also ripe for adjudication by this Court.  There are two components to ripeness:  constitutional ripeness and prudential ripeness.  *Maldonado v. Morales*, 556 F.3d 1037, 1044 (9th Cir. 2009) (explaining that ripeness consists of constitutional and prudential components), *cert. denied*, 130 S. Ct. 1139 (2010).  DOR does not dispute that the case is constitutionally ripe.  The case also satisfies the two requirements of prudential ripeness:  (1) the issue presented—the constitutionality of DOR's information requests—is "fit[] . . . for judicial decision," and (2) withholding decision on that issue at this time would cause "hardship to the

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

parties" by further chilling their right to free expression.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977).

In arguing that this case is "premature" or "hypothetical," Mot. to Dismiss at 17, DOR obscures the undisputed details of what has already occurred here.  DOR has already twice threatened to enforce the overbroad requests to Amazon for "all information."  It has threatened to issue similar information requests to other out-of-state Internet retailers who do not collect North Carolina sales taxes.  DOR has also refused to amend its requests to Amazon or to alter its policy and practice of issuing such requests to other retailers.  Instead, DOR has insisted that it has the right to issue such requests and that it expressly reserves the right to continue doing so. The result is that DOR has chilled the expressive rights of individuals like Intervenors.

These facts show that the case is "fit[] for judicial decision," as required by the first prong of prudential ripeness, because "[t]he issue presented in this case is purely legal, and will not be clarified by further factual development."  *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985); *see also Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434-35 (9th Cir. 1996) (holding that purely legal issue as to constitutionality of licensing scheme is ripe for decision even where plaintiff had not yet applied for a license).  Here, it is already established that DOR seeks "all information" in its requests, and that it will continue to do so not only from Amazon, but from other out-of-state retailers.  *See* Intervenors' Compl. ¶¶ 52-53, 58; Galbreath Decl. Ex. A ¶ 16; Woodard Decl. Ex. F.  It is also clear that DOR will not voluntarily rescind or amend its requests, or destroy or return the detailed expressive information in its possession absent Amazon's willingness to agree to a bargain.  *See* Intervenors' Compl. ¶ 66; Woodard Decl. ¶ 16; Zapolsky Decl. Ex. 3, Ex. 4; Galbreath Decl. Ex. F; Rudinger Decl. Ex. A-C.  The controversy before this Court is concrete:  DOR takes the position that there is nothing wrong with its requests to Amazon for "all information," or with its policy and practice of issuing such requests, and Amazon and Intervenors contend that they are not permissible under the First Amendment and the VPPA.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DOR misses the mark when it argues that this case is premature because, although DOR has decided that its requests are appropriate and must be complied with, it has not yet decided whether to issue and to enforce a summons.  *See* Mot. to Dismiss at 17.  The law is clear that "one does not have to await the consummation of threatened injury to obtain preventive relief," especially in First Amendment cases.  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (internal quotation marks omitted).  DOR's indecision as to whether it will issue and enforce a summons is no different from the prosecutorial discretion that the government always maintains to not enforce a law.  Regardless of that discretion and other possibilities of non-enforcement, courts, including the Supreme Court, have routinely permitted pre-enforcement challenges.  *See, e.g.*, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988) (permitting pre-enforcement challenge in a First Amendment case); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155-56 (9th Cir. 2000) (finding that case was ripe and that plaintiff had standing to enjoin state officials from pressuring businesses into preventing an erotic art exhibit on their premises and threatening the businesses with sanctions if they allowed such exhibit); *Shell Oil Co. v. City of Santa Monica*, 830 F.2d 1052, 1062 (9th Cir. 1987) (holding that the issue of whether city may impose any safety standards in a new franchise agreement is ripe, despite "mere possibility . . . that a final agreement might not contain any safety standards or that no franchise would be granted at all").  A pre-enforcement challenge is particularly appropriate here because, unlike in the cases cited by DOR, the government action here is undeniably directed against the plaintiffs.  There is no dispute that the purchasing records DOR has requested—and that Amazon and Intervenors are seeking to prevent DOR from obtaining—directly implicate the rights of Amazon and Intervenors.  *Cf., e.g.*, *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972) (dismissing case as non-justiciable where plaintiffs could not complain of specific unlawful government surveillance against them); *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 844 (9th Cir. 2007) (dismissing challenge to provisions of the state judicial code of conduct because of the lack of "a more fully developed factual record, including evidence of

some real threat of enforcement" against the specific judges who were allegedly chilled by the challenged code).

The case is also ripe because DOR has already issued and threatened to enforce the requests for private and expressive information protected by the Constitution and federal law that are being challenged here. *See Truth v. Kent Sch. Dist.*, 542 F.3d 634, 643 (9th Cir. 2008) (holding that the challenge is ripe where plaintiff "complains of discrete events that have already occurred"). Moreover, the requests are unconstitutional as a matter of law because they chill individuals' rights to read, view, and purchase expressive materials anonymously. *See United States v. Rumely*, 345 U.S. 41, 57 (1953) ("Once the government can demand of a publisher the names of the purchasers of his publications, the free press as we know it disappears") (Douglas, J., concurring); *In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D. 570, 573 (W.D. Wis. 2007) ("[I]f word were to spread over the Net . . . that [the government] had demanded and received Amazon's list of customers and their personal purchases, the chilling effect on expressive e-commerce would frost keyboards across America."). This chilling effect is presently occurring and will continue until this matter is resolved. This case does not, therefore, raise merely hypothetical or speculative concerns.

This concrete chilling effect is evidenced by Intervenors' declarations, filed in support of their motion to file the complaint in intervention using pseudonyms (Dkt. Nos. 24-29) and in support of their brief in support of summary judgment (Dkt. No. 48-1). *See* Jane Doe 1 Decl. ¶¶ 13-14; Jane Doe 2 Decl. ¶¶ 10-11; Jane Doe 3 Decl. ¶¶ 15-16; Jane Doe 4 Decl. ¶ 10; Jane Doe 5 Decl.¶ 13; Jane Doe 6 Decl. ¶¶ 9-10; Bothwell Decl. ¶¶ 13-14. Intervenors' Amazon purchases—books like "How To File For Divorce in North Carolina: With Forms," "Stop Walking On Eggshells: Taking Your Life Back When Someone You Care About Has Borderline Personality Disorder," "God: The Failed Hypothesis. How Science Shows That God Does Not Exist," "Obama Zombies: How The Liberal Machine Brainwashed My Generation," and "The Stages of Meditation," by the Dalai Lama—reveal intimate details about their private family issues, mental or medical issues, or religious or political beliefs. Jane Doe 1 Decl. ¶¶ 5-9; Jane

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Doe 2 Decl. ¶¶ 5-8; Jane Doe 3 Decl. ¶¶ 5-13; Jane Doe 4 Decl. ¶¶ 5-8; Jane Doe 5 Decl. ¶¶ 6-11; Jane Doe 6 Decl. ¶¶ 5-7; Bothwell Decl. ¶ 8.  Intervenors are extremely concerned by DOR's requests for such information.  They do not want those details, many of which may be viewed as controversial, to be known to others or to impair their personal relationships, their family lives, their reputations, or their careers.  Jane Doe 1 Decl. ¶¶ 7-9, 11; Jane Doe 2 Decl. ¶¶ 7-8; Jane Doe 3 Decl. ¶¶ 7-13; Jane Doe 4 Decl. ¶¶ 7-8; Jane Doe 5 Decl. ¶¶ 8-11; Jane Doe 6 Decl. ¶ 7; Bothwell Decl. ¶ 8.  If DOR were able to obtain information about which specific items Intervenors have purchased or received from Amazon, that would chill Intervenors from purchasing items, especially controversial, personal and sensitive items, on Amazon or other websites.  *See* Intervenors' Compl. ¶¶ 68-126; Jane Doe 1 Decl. ¶¶ 13-14; Jane Doe 2 Decl. ¶¶ 10-11; Jane Doe 3 Decl. ¶¶ 15-16; Jane Doe 4 Decl. ¶¶ 10-11; Jane Doe 5 Decl.¶¶ 13-14; Jane Doe 6 Decl. ¶¶ 9-10; Bothwell Decl. ¶¶ 12-14.  Several Intervenors would simply stop purchasing anything from Amazon altogether.  Jane Doe 4 Decl. ¶ 11; Jane Doe 5 Decl. ¶14.

The chilling effect of DOR's demands on the First Amendment rights of individuals also establishes that this case meets the second consideration of prudential ripeness because withholding decision in this case would cause "hardship to the parties."  *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1062 (9th Cir. 1995) ("[I]njury to First Amendment rights more readily justifies a finding of ripeness due to the chilling effect on protected expression which delay might produce.").  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  If such irreparable injury were not addressed quickly by the courts, "the legal and practical value of the First Amendment right may be destroyed."  *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1057.

The hardship is particularly acute for Intervenors, who have no control over how recipients of DOR's information requests, including Amazon, will respond to DOR's overbroad requests for their private, personal information.  If their claims are not adjudicated now, there is no way for Intervenors to prevent the recipient of such a request from acceding to DOR's

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

demands.  Indeed, Intervenors will likely not even receive notice that their information is the subject of a request from DOR and that it is about to be disclosed.  At that point, it would be too late to protect Intervenors' constitutional rights to privacy in their expressive activity. Intervenors need their relief now to ensure that their constitutional rights are protected and that those rights are not lost without warning to Intervenors.  By contrast, the hardship, if any, to DOR from having these claims heard now is the same regardless of the timing of the suit given that it has made clear that it will not change its policy and practice of using overbroad language in its information requests unless forced to do so by a court.  *See Truth*, 542 F.3d at 643 (holding that hardship to plaintiff outweighs hardship to defendant where the defendant "has been aware of [plaintiff's] arguments for a long time and has had ample opportunity to take corrective action or change its policies, if it so desired.").

DOR misses the point when it argues that the harm to Amazon and Intervenors is unrealistic or speculative because DOR employees will not have the time to match customer information with the over 50 million detailed Amazon product codes it possesses.  *See* Mot. to Dismiss at 20.  Whether DOR employees can be trusted not to violate further the privacy interests of individuals once they have a database of 50 million entries is irrelevant.  The unconstitutionality of DOR's requests arises from their mere issuance, because that is what creates the chilling effect.  *See supra* at pp. 13-14.  In any event, as explained in Intervenors' brief in support of summary judgment, Dkt. No. 48, at 15, "trust us" is not good enough when First Amendment rights are at stake.  *See United States v. Stevens*, 130 S.Ct. 1577, 1591 (2010) ("But the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*.  We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

Finally, as DOR implicitly concedes, constitutional ripeness is satisfied here.  *See* Mot. to Dismiss at 1-2 (moving for dismissal on the prudential, not constitutional, ripeness doctrine). This component of ripeness is similar to the injury-in-fact requirement under the standing inquiry.  *See Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093-94 (9th Cir. 2003).

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Injury-in-fact and ripeness are both established here because Amazon and Intervenors have an "actual and well-founded fear" that DOR will enforce the information requests that infringe upon their constitutional rights—DOR has already threatened the enforcement of its information requests that encompass Intervenors' private information, and has refused to withdraw or modify its requests.  *See, e.g.*, *Am. Booksellers Ass'n Inc.*, 484 U.S. at 392-93 (finding that case was justiciable where plaintiffs alleged "actual and well-founded fear" of enforcement of law being challenged); *Cal. Pro-Life Council*, 328 F.3d at 1095 (holding that "actual and well-founded fear" of enforcement exists if the statute is aimed at plaintiff's intended speech) (internal quotation marks omitted); *LSO*, 205 F.3d at 1155 (holding that the government's "failure to disavow application of the challenged provision" favors a finding that plaintiff faces a realistic threat of injury).  Moreover, the injury-in-fact requirement is satisfied where, as here, Intervenors' First Amendment rights are currently being infringed.  *See Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393 ("[T]he alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution"); *Cal. Pro-Life Council, Inc.*, 328 F.3d at 1095 (holding that plaintiff established standing and ripeness where he suffered the "constitutionally recognized injury of self-censorship"); *LSO*, 205 F.3d at 1155 ("[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing").

This is, thus, a case in which "[n]othing would be gained by postponing a decision, and the public interest would be well served by a prompt resolution" of whether DOR's issuance of broad information requests to Amazon that encompass information protected by the First Amendment, and its policy and practice of issuing such requests, are unconstitutional.  *Thomas*, 473 U.S. at 581-82 (holding that doubts over the constitutionality of a data-consideration and compensation scheme that has plagued the pesticide industry and hampered the effectiveness of reforms were ripe for adjudication).  That is particularly so for Intervenors' claim challenging DOR's existing policy and practice of issuing similar overbroad information requests, not only to Amazon, but to other companies.  If this case were not ripe, Intervenors might never be notified

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

of exactly when a retailer is about to disclose their private and expressive information to DOR, and thus might never have the opportunity to raise their constitutional rights in court before they are violated. The Court should avoid that result and ensure that Intervenors' constitutional rights are protected and that the chilling effect Intervenors are already suffering is alleviated.

## III.   AMAZON AND INTERVENORS STATE A CLAIM FOR VIOLATION OF THE FIRST AMENDMENT AND THE VIDEO PRIVACY PROTECTION ACT.

As discussed in more detail in Intervenors' memorandum in support of summary judgment (Dkt. No. 48), Amazon and Intervenors not only state valid claims, they are entitled to summary judgment on their claims that DOR's requests violate the First Amendment and the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, as a matter of law. The Court should therefore also deny DOR's Rule 12(b)(6) motion to dismiss Amazon's complaint.

### A.   DOR's Requests For Information Violate The First Amendment.

DOR does not dispute the well-established law that, because its requests for information implicate the First Amendment, it must "convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest." *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963); *see also Bursey v. United States*, 466 F.2d 1059, 1083 (9th Cir. 1972) ("When governmental activity collides with First Amendment rights, the Government has the burden of establishing that its interests are legitimate and compelling and that the incidental infringement upon First Amendment rights is no greater than is essential to vindicate its subordinating interests"), *superseded by statute on other grounds*, *In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988); *see* Mot. to Dismiss at 20-22 (recognizing that DOR must demonstrate a compelling need for the information).

This heightened scrutiny governs the disclosure of individuals' purchasing records from sellers of expressive materials, such as Amazon, because otherwise individuals would be chilled from freely exploring the information and ideas in books, films, and other materials—activities which are protected by the First Amendment. *See Lamont v. Postmaster Gen. of the U.S.*, 381 U.S. 301, 307 (1965) (invalidating requirement that addressees must file written request with

postal service to receive "communist political propaganda" through the mails, because such a requirement is "almost certain to have a deterrent effect"); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, Misc. No. 09-118(RCL), 2009 WL 3495997, at *5-9 (D.D.C. Oct. 26, 2009) (denying motion to compel subpoena for identities of customers who obtained movies through a website because government had not shown compelling interest or sufficient connection between the information sought and the criminal investigation); *In re Grand Jury Subpoena to Amazon.com Dated August 7, 2006*, 246 F.R.D. 570 (W.D. Wis. 2007) (requiring showing of need and modifying a grand jury subpoena seeking information about identity of book buyers because it raised First Amendment concerns); *In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr. 1599, 1600-01 (D.D.C. 1998) (Dkt. No. 21, Ex. B) (requiring government to show compelling interest and a sufficient connection between its investigation and its request for titles of books purchased by Monica Lewinsky); *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) (holding that search of a bookseller's customer purchase records necessarily intrudes into constitutionally protected areas).

DOR's sole argument for dismissal of this claim is that DOR meets this heightened standard because it has a compelling interest in the administration of the tax system and the enforcement of summonses for tax information. For this proposition, it cites a few cases that have no relevance to this case—cases in which a party challenged provisions of the Tax Code as unconstitutional, *see, e.g.*, *Hernandez v. Comm'r*, 490 U.S. 680 (1989), a party filed a frivolous tax return as a form of political protest, *see, e.g.*, *Bradley v. United States*, 817 F.2d 1400 (9th Cir. 1987), or a party was convicted for disclosing confidential tax information, *United States v. Richey*, 924 F.2d 857 (9th Cir. 1991). Although DOR may generally have a compelling interest in administering its tax system, it is not enough for DOR to assert this broad interest any time it requests tax-related information from individuals. *See Tattered Cover*, 44 P.3d at 1058 (holding that "because the law enforcement officials' need to investigate crime will almost invariably be a compelling one . . . . the court must engage in a more specific inquiry as to whether law

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington 98164
(206) 624-2184

enforcement officials have a compelling need *for the precise and specific information sought*" (emphasis in original)).  Here, DOR has conceded that it has "no reason to request expressive content, such as book or movie titles" in the course of a sales or use tax audit.  Woodard Decl. ¶ 9.  The detailed expressive information that DOR currently has in its possession is therefore "of no use" to the Department.  *Id.* ¶14.  Given this admission, DOR cannot show any legitimate interest, much less a compelling one, in knowing which individuals purchased which specific books, films, and other expressive materials from Amazon or from any other website.  DOR's general interest in administering its tax system is, accordingly, not sufficient to justify the specific requests at issue here.

Moreover, DOR fails to address the other prong of the heightened scrutiny required when First Amendment interests are at stake—whether there is a nexus between the interest and the information sought.  *See Bates v. City of Little Rock*, 361 U.S. 516, 525 (1960) ("[G]overnmental action does not automatically become reasonably related to the achievement of a legitimate and substantial government purpose by mere assertion . . . .").  The cases cited by DOR do not demonstrate that DOR's requests are permissible.  To the contrary, they confirm that where a request for information implicates the First Amendment, the government must also establish a nexus between the tax authority's investigation and the information sought.  *See, e.g.*, *United States v. C.E. Hobbs Found. for Religious Training and Educ., Inc.*, 7 F.3d 169, 173 (9th Cir. 1993) (remanding for the district court to decide in part whether the First Amendment was implicated and if so, if there were less restrictive means in which the IRS could satisfy its interest in enforcing the summons); *United States v. Trader's State Bank*, 695 F.2d 1132, 1132 (9th Cir. 1983) (vacating order of enforcement where the government request for information was overbroad and the government failed to show a rational connection between the documents requested and the legitimate end of assessing tax liability).  Here, DOR's information requests call for the production of information that is unnecessary and, according to DOR, not even desired.  Woodard Decl. ¶ 9.  DOR therefore cannot show a nexus between the expressive information that it has requested and its interest in tax collection.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Finally, even if DOR could show a nexus between this expressive information and its interests in tax collection, DOR's information requests are unconstitutionally overbroad. *See Bursey*, 466 F.2d at 1083 (holding that governmental infringement on First Amendment rights must be "no greater than is essential to vindicate its subordinating interests"). The requests, for example, impermissibly sweep in information about individuals for whom DOR has no legitimate need to know any information, such as Jane Doe 5, a Florida resident, who is not liable for use taxes or any North Carolina taxes. The requests are also overbroad because DOR has admitted that it already has enough information to issue a sales tax assessment against Amazon. Mot. to Dismiss at 17. Any further information that it seeks might arguably be useful only to efforts to collect use taxes, which it has not yet even decided to undertake. *Id.* Because it has not yet decided to conduct any use tax investigations against individuals, there is no specific need for this information.

The First Amendment prohibits DOR from using broad language to demand information about its citizens that sweeps in information about their expressive activities without a specific, compelling need for such information. Amazon and Intervenors thus state, and, in fact, should prevail on their First Amendment claims as a matter of law.

**B.      DOR's Requests For Information Violate The Video Privacy Protection Act.**

Amazon and Intervenors also state a claim that DOR's requests for information violate the Video Privacy Protection Act of 1988 ("VPPA"), 18 U.S.C. § 2710, because the requests, if complied with, would result in the disclosure of which audiovisual materials, such as video tapes and DVDs, individuals have purchased. The VPPA was passed to prevent exactly this situation from occurring: Congress passed the Act in reaction to Judge Robert Bork's 1987 Supreme Court nomination, during which a newspaper obtained a list of 146 videotapes that the Bork family had rented. *See Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 238 (D.N.J. 1996). Congress was "outraged by the invasion into the Bork family's privacy" and "acted quickly to outlaw certain disclosures of such clearly private information." *Id.*

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

DOR's information requests seek the disclosure of this "clearly private information." The "personally identifiable information" protected by the VPPA is "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Amazon is indisputably such a "video tape service provider" that is "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials . . . ." 18 U.S.C. § 2710(a)(4). As such, it is prohibited from knowingly disclosing information about individuals' purchasing records of audiovisual materials except in narrow circumstances, such as if there is a warrant permitting access to the records. 18 U.S.C. § 2710(b). DOR's information requests do not fall under any of these narrow exceptions. Even if DOR were to apply for a court order to enforce the requests, the VPPA would require it to show a "compelling need for the information that cannot be accommodated by any other means," and DOR would have to give the consumer notice and an opportunity to contest the disclosure before being able to access the records. 18 U.S.C. § 2710(b)(2)(F). DOR has not shown any intent to provide individual notice to those whose records it is seeking, and, in any event, it cannot meet the high standard for compelling need for the same reasons that it cannot satisfy First Amendment scrutiny.

DOR does not dispute that compliance with its requests would violate the VPPA. It argues only that it cannot be held liable for such a disclosure because it is not a "videotape service provider," even when it is responsible for coercing a "videotape service provider" to disclose the information. Mot. to Dismiss at 23. The VPPA, however, provides broadly that "[a]ny person aggrieved by any act of a person in violation of [§ 2710] may bring a civil action." 18 U.S.C. § 2710(c)(1). Because the "clear intent of the Act is to prevent the disclosure of private information . . . [t]his purpose is furthered by allowing parties . . . to bring suit against those individuals who have come to possess (and who could disseminate) the private information in flagrant violation of the purposes of the Act." *Dirkes*, 936 F. Supp. at 240. Those who come to possess personally identifiable information "as a direct result of an improper release of such information," such as a government entity that forces the release of such information, should thus

be subject to suit under the VPPA.  *Id.  But see Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004) (rejecting that view).  Otherwise, the government could, with impunity, coerce video tape service providers to release the very information protected by the VPPA.  That would be contrary to the clear intent of Congress in passing the VPPA.

If DOR succeeds in coercing Amazon to disclose information to it regarding Amazon customers' purchases of audiovisual materials, both Amazon and DOR would violate Congress's intent to protect individuals' privacy through the VPPA.  Amazon's complaint, thus, states a claim that disclosure of this information pursuant to DOR's information requests violates the VPPA.

## **CONCLUSION**

For the foregoing reasons, Intervenors respectfully request that the Court deny Defendant's motion to dismiss.

Respectfully submitted this 2nd day of August, 2010.

/s/ Venkat Balasubramani
Venkat Balasubramani, WSBA #28269
**FOCAL PLLC**
8426 40th Ave SW
Seattle, WA 98136
Tel:     (206) 529-4827
Fax:    (206) 260-3966
Email: venkat@focallaw.com

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON FOUNDATION**
Sarah A. Dunne, WSBA # 34869
901 Fifth Ave, Suite 630
Seattle, Washington  98164
Tel:     (206) 624-2184
Fax:    (206) 624-2190
Email: dunne@aclu-wa.org

**AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA LEGAL FOUNDATION**
Katherine Lewis Parker (*pro hac vice*)
Post Office Box 28004
Raleigh, North Carolina 27611
Tel:     (919) 834-3466
Fax:    (866) 511-1344
Email:  acluncklp@nc.rr.com

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
**Speech, Privacy and Technology Project**
Aden J. Fine (*pro hac vice*)
Mariko Hirose (*pro hac vice*)
125 Broad Street, 18th Floor
New York, NY 10004
Tel:     (212) 549-2500
Fax:    (212) 549-2651
Email:  afine@aclu.org
              mhirose@aclu.org

1

## **CERTIFICATE OF SERVICE**

2

3
The undersigned certifies that she filed the foregoing Intervenors' Memorandum

Opposing Motion to Dismiss, Or, In The Alternative, *Amici Curiae* Brief, through the Court's

4
CM/ECF system which will provide a notice of filing to counsel for all parties.

5
August 2, 2010.

6

7
*/s/ Mariko Hirose*
Mariko Hirose

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE -- 1
No. 2:10-cv-00664-MJP