THE HONORABLE MARSHA J. PECHMAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, LLC,

                        Plaintiff,

    v.

KENNETH R. LAY, in his official capacity as
Secretary of the North Carolina Department of
Revenue,

                        Defendant.

No.  10-cv-00664-MJP

**NORTH CAROLINA'S
RESPONSE TO MOTION FOR
SUMMARY JUDGMENT**

## NATURE OF THE ACTION

Amazon vainly attempts to manufacture a First Amendment controversy in an effort to preempt NC Revenue's investigation of the North Carolina sales and use tax liability of it and its customers.  Its First Amendment claim is both premature and illusory.  Neither Amazon nor its customers have a First Amendment right to avoid taxes.  *See United States v. Ramsey*, 992 F.2d 831, 833 (8th Cir. 1993).  NC Revenue's tax investigation fails to implicate the First Amendment.

As an initial matter, Amazon's First Amendment challenge suffers from a fatal flaw because its objections to NC Revenue's inquiries are premature.  No summons enforcement action has been instituted in this case.  It is a fundamental principle that courts cannot entertain pre-enforcement challenges to administrative tax summonses.  Here, Amazon has "jumped the gun," racing to the courthouse insisting that NC Revenue has demanded expressive content.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

1   Because no enforcement proceeding exists, the motion for summary judgment must be

2   dismissed.

3          Amazon's challenge suffers from a fatal factual flaw as well.  Amazon's entire First

4   Amendment argument rests on its false insistence that NC Revenue has demanded expressive

5   content from Amazon.  Once the fallacy of this factual premise is revealed, the illusory nature of

6   its First Amendment claim becomes readily apparent.  Amazon cannot defeat NC Revenue's

7   legitimate tax investigation by its deliberate ploy of disclosing meaningless data about its

8   customers' expressive purchasing habits while simultaneously withholding relevant information

9   – a tactic that it has perfected in other litigation.

10          Finally, Amazon's challenge fails because it cannot satisfy the relevant legal standards

11   applicable to a civil tax summons.  Even if a summons enforcement action had been initiated by

12   NC Revenue, as argued in its motion to dismiss, this court is not the proper forum for any of

13   Amazon's objections.  Assuming, however, that such a summons enforcement proceeding had

14   been instituted in the proper forum, Amazon's First Amendment challenge would fail under the

15   standards established by the United States Supreme Court in *United States v. Powell*, 379 U.S.

16   48 (1964).  Amazon ignores this highly-developed body of case law, as well as the analysis

17   applied by the courts when a tax summons is challenged on First Amendment grounds.  Here,

18   Amazon cannot meet its burden to show that the information sought by NC Revenue would

19   infringe its customers' First Amendment rights for the simple reason that the Secretary has not

20   demanded any expressive content.  NC Revenue has made it abundantly clear it is not interested

21   in expressive content and has not instituted an enforcement proceeding asking for such

22   information.  The information actually sought by NC Revenue – customer names, addresses and

23   purchase amounts – is relevant to a compelling governmental interest – the tax investigation of

24   Amazon and its customers.  Any hypothetical summons involving at most general product codes

25   would therefore easily survive scrutiny under the standards established by *Powell* and its

26   progeny.

27

28

NORTH CAROLINA RESPONSE TO MOTION FOR S.J. - 2
10-cv-00664-MJP

## ARGUMENT

**I.  STANDARD OF REVIEW**

**A.  Amazon Must Affirmatively Prove that the Court Has Jurisdiction**

The "threshold question" in every federal case is "determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  As explained by the Ninth Circuit Court of Appeals: "Every court of limited jurisdiction has one first and inescapable duty.  This duty is without exception.  The court must satisfy itself that it has jurisdiction over the cause before it." *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 985 (9th Cir. 1988) (Stephens, J., dissenting) (citing *Bender v. Williamsport School Dist.*, 475 U.S. 534 (1986).  A federal court "is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981), *cert. denied*, 455 U.S. 948 (1982).  Here, jurisdiction not only fails to "affirmatively appear," but, for the reasons explained in NC Revenue's motion to dismiss, the court is affirmatively divested of jurisdiction by 28 U.S.C. § 1341 and other law.

Amazon bears the burden of proving jurisdiction exists and must, in the face of NC Revenue's challenge, "plead and prove it." *United States v. Miller*, 83 A.F.T.R.2d (RIA) 1661, 1999 U.S. Dist. LEXIS 3064, at *1 (W.D. Wash. 1999); *see also In re Townley*, 91 A.F.T.R.2d (RIA) 2231, 2002 U.S. Dist. LEXIS 26497, at *14 (E.D. Wash. 2002).  Amazon has asserted that the court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.  Compl. ¶ 11.  The Declaratory Judgment Act does not confer jurisdiction.  "The Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction; it does not constitute an independent basis for jurisdiction." *Morongo Band of Mission Indians v. California State Board of Equalization*, 849 F.2d 1197, 1201 (9th Cir. 1988).  Sections §§ 1331 and 1343 operate merely as grants of general jurisdiction and do not provide jurisdiction to this court to retain this action for adjudication.  *See, e.g., Ferrel v. Brown*, 847 F. Supp. 1524, 1526 (W.D. Wash. 1993), *aff'd*, 40 F.3d 1049 (9th Cir. 1994); *Salazar v. Heckler*, 787 F.2d 527, 528-29 (10th Cir. 1986).  Nor does the fact that Amazon has raised a First Amendment challenge alter the jurisdictional

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

analysis.   There is no special exemption to the Tax Injunction Act for taxpayers raising First Amendment claims.  *California v. Grace Brethren Church*, 457 U.S. 393, 415 (1982) (Tax Injunction Act bars actions for declaratory judgments).

Because Amazon has not and cannot meet its burden to prove the existence of jurisdiction, this court cannot consider its motion for summary judgment.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1988) (assumption of "hypothetical jurisdiction" offends fundamental principles of separation of powers); *see also California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 913 (9th Cir. 1989) ("Summary judgment is an inappropriate disposition when the district court lacks jurisdiction.").

B.   **Amazon Cannot Make the Requisite Showing of Fact Sufficient to Establish an Essential Element of its Case**

Even if Amazon could somehow meet its burden to prove jurisdiction exists, there are other insurmountable problems with its summary judgment motion.  Amazon asserts that this motion "turns on legal issues, not facts."  SJ Motion at 7.  NC Revenue does not dispute this general proposition but does, however, dispute Amazon's statement of the "facts."  Amazon has misstated the facts in an effort to manufacture a premature and illusory First Amendment claim, falsely asserting that NC Revenue has demanded expressive content about customer purchases.

Amazon itself recognizes that summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id*. Here, because NC Revenue has not demanded expressive content, Amazon has not and cannot make the requisite showing of an infringement of its customers' First Amendment rights.  This element is essential to Amazon's case, and its failure to make this showing is fatal to its First Amendment claim.

Amazon's insistence in misrepresenting the facts demonstrates that this case may not be appropriate for summary judgment.  As illustrated throughout NC Revenue's response, the parties appear to dispute a number of facts that are material to any consideration of Amazon's

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

First Amendment objections to the information actually sought by NC Revenue (even though no summons for any information has been issued).

## II.   AMAZON'S FIRST AMENDMENT CHALLENGE FAILS BECAUSE THERE IS NO SUMMONS ENFORCEMENT ACTION PENDING

Amazon's motion for summary judgment fails as a matter of law because its declaratory judgment action is nothing more than an improper pre-enforcement challenge to a non-existent tax summons.   Any claims or objections Amazon seeks to raise here may be asserted in a summons enforcement proceeding, if and when a summons is actually issued and enforcement proceedings are actually commenced in the state courts of North Carolina.   A summons issued by the North Carolina Secretary of Revenue pursuant N.C. Gen. Stat. § 105-258 is the state equivalent of a civil summons issued by the IRS pursuant to 26 U.S.C. § 7602.   *State v. Davis*, 96 N.C. App. 545, 551, 386 S.E.2d 743, 746 (1989).   Like its federal counterpart, once a summons is issued by the Secretary, it is only enforceable by a judicial proceeding.   *Id*.   In those proceedings, the state court is authorized to determine, among other things, whether the summons violates constitutional protections and to provide parties and intervenors with notice and an opportunity to assert privileges.   *In re Summons Issued to Ernst & Young, LLP*, 363 N.C. 612, 617, 684 S.E.2d 151, 154 (2009).   The case law on IRS tax summonses is equally applicable to NC Revenue's tax summonses and it plainly prohibits pre-enforcement challenges like Amazon's.

It is "firmly established" and "well settled" that courts cannot entertain pre-enforcement challenges to an IRS summons.   *Gutierrez v. United States*, 78 A.F.T.R.2d (RIA) 6616, 1996 U.S. Dist. LEXIS 18875, at *4 (E.D. Wash. 1996); (dismissing action because IRS had not instituted summons enforcement proceedings, among other reasons); M*aisonneuve v. United States*, 103 A.F.T.R.2d (RIA) 1309, 2009 U.S. Dist. LEXIS 24743, at *3 (D. Colo. 2009); *see also Lopes v. Resolution Trust Corp.*, 155 F.R.D 14, 15 (D.R.I. 1994) ("One of the most firmly

NORTH CAROLINA RESPONSE TO MOTION FOR S.J. - 5
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

established principles of administrative law is that courts cannot entertain pre-enforcement challenges to administrative subpoenas."). Instead, a taxpayer "must wait for the IRS to commence enforcement of a summons before challenging it." *Maisonneuve* at *3. Here, Amazon has "jumped the gun" because NC Revenue has not sought to enforce any summons. *See id.* at *3. In fact, there has been no summons issued, making its challenge even more premature.

As explained by the courts, a party summoned by a taxing authority has the option to refuse to comply. *Gutierrez* at *5. A tax summons is not enforceable until the agency seeks to judicially enforce it pursuant to its statutory authority. *Id.*; *see also In re Summons Issued to Ernst & Young,* 363 N.C. at 617, 684 S.E.2d at 154 (summons issued by the Secretary is not self-enforcing). The absence of a summons enforcement proceeding demonstrates that the summoned party "is under no compelled duty to comply with the summons." *Gutierrez* at *5 (internal quotations omitted). Amazon is under no illusion that a summons has not been issued. *See* Galbreath Decl., ¶¶ 6, 11, 22 (recognizing that the IDR's sent by NC Revenue state that failure to disclose "may" prompt the issuance of a summons).

In *Reisman v. Caplin,* 375 U.S. 440 (1964), the IRS issued a summons to an accounting firm seeking certain taxpayer records. The plaintiffs brought an action for declaratory and injunctive relief against enforcement of the summons. The United States Supreme Court denied relief, holding that the plaintiffs had an adequate remedy at law because they could raise their claims in any proceeding brought by the IRS to enforce the administrative summons. *Id*. at 449. "[T]he *Reisman* rule is followed uniformly in all jurisdictions that have considered the issue of pre-enforcement review of administrative agency subpoenas," including the Ninth Circuit. *Lopes*, 155 F.R.D. at 16. "[T]hese courts have all reiterated that the enforcement proceeding is an adequate remedy at law, because all objections . . . can be raised in that proceeding." *Id*. As explained in its motion to dismiss, NC Revenue's summons statute provides an adequate remedy at law in the North Carolina courts.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Supreme Court specifically rejected the argument that "the penalties of contempt risked by a refusal to comply with the summonses are so severe that the statutory procedure amounts to a denial of judicial review." *Reisman*, 375 U.S. at 446.   The Court held that the summoned party may challenge the summons on any appropriate ground at the enforcement proceeding, that third parties may intervene to protect their interests and that the court's order regarding enforcement was appealable. *Id.* at 449.   The Court concluded: "Finding that the remedy specified by Congress works no injustice and suffers no unconstitutional invalidity, we remit the parties to the comprehensive procedure of the Code, which provides full opportunity for judicial review before any coercive sanctions may be imposed." *Id.* at 450.

"The case law is also well settled that the nature of the pre-enforcement objections to the subpoena is irrelevant under *Reisman*.   The courts have consistently held that *all* objections, including constitutional objections, may be raised *only* when the government seeks enforcement in district court." *Lopes*, 155 F.R.D. at 17 (emphasis in original); *see also Howfield v. United States*, 409 F.2d 694, 697 (9th Cir. 1969) (during the enforcement proceeding all defenses of the taxpayer, including constitutional ones, could be raised, argued and passed on by a neutral judicial officer).   "Nor is the form of requested relief relevant, since the absence of jurisdiction to review pre-enforcement challenges to agency subpoenas [p]recludes any relief." *Lopes*, 155 F.R.D. at 17.   As explained in its motion to dismiss, NC Revenue's summons statute provides a full opportunity for judicial review, including any constitutional objections to the summons.

This court has also recognized that, where a tax summons has been withdrawn, there is no existing "case or controversy" and the taxpayer's challenge "must be dismissed for lack of jurisdiction." *Tift v. Internal Revenue Service*, 101 A.F.T.R.2d (RIA) 2645, 2008 U.S. Dist. LEXIS 52391, at *3 (W.D. Wash. 2008) (the court further held that it lacked jurisdiction over the taxpayer's requests for injunctive and declaratory relief because they were barred by the Anti-Injunction Act and the Declaratory Judgment Act).   The court also dismissed the taxpayer's challenge to a withdrawn summons for lack of jurisdiction in *Pacific Fisheries, Inc. v. United States*, 94 A.F.T.R.2d (RIA) 5933, 2004 U.S. Dist. LEXIS 21395, at *1 (W.D. Wash. 2004).

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

There, just as here, the taxpayer expressed concern that a future summons might be issued. *See* SJ Motion at 13 (asking the court to grant anticipatory relief for not only the current "demand" but also for any that NC Revenue may make in the future). The court nevertheless dismissed the action, specifically holding that "[i]f, as Petitioner fears, the Russian Federation does later pursue another summons, Petitioner may take steps at that time to protect itself from harm." *Id.* at *4; *see also Kelley v. United States*, 503 F.2d 93 (9th Cir. 1974) (all these issues can be resolved in due course during enforcement proceedings). Here, because there is no existing summons enforcement action Amazon's summary judgment motion must be dismissed.

## III. NC REVENUE'S TAX INVESTIGATION DOES NOT IMPLICATE FIRST AMENDMENT RIGHTS AS A FACTUAL MATTER

### A.   The Factual Underpinning Necessary for Amazon's Claim Fails

NC Revenue's request for commercial information in connection with its tax investigation of Amazon and its customers does not implicate any First Amendment rights. Amazon's legal challenge rests on the factual premise that NC Revenue has sought to compel disclosure of its customers' expressive purchasing histories and habits. This assertion is false. NC Revenue has not, in fact, demanded or sought to compel production of specific titles or any other expressive content, a point repeatedly explained to Amazon.[1]  Galbreath Decl., Exs. D, E; Zapolsky Decl., Exs. 2, 3; Woodard Decl., ¶ 16.  Amazon has persistently ignored this inconvenient truth, however, because it is fatal to its First Amendment claim. For this reason, Amazon has failed to establish the necessary factual predicate for any colorable constitutional challenge to NC Revenue's request for tax information.

---

[1]  As explained in the previous section, NC Revenue has yet to seek to compel production of any information, much less expressive content, and Amazon's challenge is therefore premature.

NORTH CAROLINA RESPONSE TO MOTION FOR S.J. - 8
10-cv-00664-MJP

### B.     Disclosure of ASIN Numbers Deliberate Ploy to Withhold Customer Names

Amazon maintains that "[a]bsent a compelling need for information that the DOR itself now admits it does not need, the DOR cannot satisfy the heightened First Amendment standard." SJ Motion at 2. This tautology assumes the existence of a critical fact: that NC Revenue has demanded expressive content. NC Revenue has not, however, forced Amazon to identify specific book, movie or music titles. Rather, Amazon's "disclosure" of this information seems to have been a calculated maneuver designed to create an artificial First Amendment objection to NC Revenue's request for customer names. Amazon essentially concedes as much. It explains that "[d]isclosure of the titles themselves poses no threat" but that "connecting the titles of such works to specific individuals will chill the exercise of First Amendment rights." SJ Motion at 11. Of course, this laborious matching exercise is more theoretical than practical. *See* Woodard Decl., ¶ 14. Amazon has informed NC Revenue that, even if it had not provided book, movie and music titles, it has no intention of voluntarily providing customer names. Zapolsky Decl., Ex. 3. In an effort to justify its refusal to provide customer names, Amazon has attempted to create a constitutional issue by purposefully providing NC Revenue with information that could potentially lead to obtaining expressive content. This conclusion is supported by two other facts, as explained below.

### C.     Amazon Previously Used the Same Tactic

This is not the first time Amazon has utilized this tactic in an effort to withhold customer names. Throughout its motion, Amazon heavily relies on its own Wisconsin case that involved a federal criminal mail fraud, wire fraud and tax evasion investigation by a grand jury relating to 24,000 used book sales. *See In re Grand Jury Subpoena to Amazon.com*, 246 F.R.D. 570 (W.D. Wis. 2007). In response to the issuance of a grand jury subpoena – as opposed to a civil tax summons – Amazon apparently provided the government with the ASIN numbers identifying a list of books. It then refused to turn over customer names based on expressive concerns that the used book titles could be associated with the customer names. *See* SJ Motion at 12 (when served with a grand jury subpoena, "Amazon disclosed – as here – the titles of books, CDs, and DVDs

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

but refused to disclose any book customer names"). Amazon incorrectly asserts that the court in that case refused to compel disclosure of customer names. *See* SJ Motion at 12, 14. The court, in fact, held that the government had established a bona fide investigative need to contact and interview at least some of the used book purchasers and "[t]herefore, I will not quash the subpoena."[2] *Subpoena to Amazon*, 246 F.R.D. at 573. Having established the blueprint in Wisconsin, when faced with NC Revenue's request, Amazon simply repeated its tactic of resisting providing customer names based on its unnecessary provision of ASIN numbers that could potentially provide expressive content information.

## D.   <u>Amazon Rebuffed Offer to Return Expressive Content</u>

As has been explained, NC Revenue was not aware until it opened the data files provided by Amazon that Amazon did not include general product codes of the type commonly used in the sales and use tax area – not just in North Carolina – because of the differential tax rates and exemptions for different products enacted by the various states.[3] Similarly, Amazon did not inform NC Revenue that it was refusing to provide customer names when it produced hard disks containing purchase information. When NC Revenue discovered that customer names had not been produced, it immediately requested this information. Amazon never informed NC Revenue during the course of the audit that it had First Amendment concerns about the potential for linking the expressive content of the purchase data to specific customers. *See* Woodard Decl., ¶ 13. Instead, Amazon raced to the courthouse claiming that NC Revenue was demanding not

---

[2]   There, the court agreed to limited contact with a number of customers by a call for volunteers to provide testimony to establish a transactional foundation for the criminal charges. This limitation was the result of the court's concerns that everyone agreed the book buyers themselves "have done nothing wrong and face no direct scrutiny." *Id.* Here, by contrast, Amazon's customers are liable for North Carolina use tax because of the seller's failure to collect sales taxes. The need for customer names is directly related to the determination of whether those customers have complied with the North Carolina tax laws by paying use taxes on their purchases and to the collection of any unpaid taxes. The customer names are also needed to determine potential exemptions for purposes of calculating Amazon's sales tax liability. *See* Woodard Decl., ¶¶ 6, 8; Woodard Decl. II, ¶ 3, 4-8.

[3]   Amazon has provided conflicting information regarding its ability to provide a general tax product code. On the one hand, it has stated that it does not as a general matter maintain sales records by more general product codes. *See* Galbreath Decl., ¶ 8. In apparent conflict with this representation, however, NC Revenue discovered that, beginning in 2008, the data did include a product tax code. *See* Woodard Decl. II, ¶ 11.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

just customer names, but was seeking to compel disclosure of the expressive purchase habits of its North Carolina customers.

Once NC Revenue learned of Amazon's concern about its customers' privacy, Secretary Lay offered to return the disks containing the ASIN numbers in exchange for disks containing the information that NC Revenue did need, including customer names.[4]  This simple solution would mean there could be no burden on First Amendment rights even if customer names were produced.[5]  Amazon rebuffed this offer in an apparent attempt to perpetuate its artificial First Amendment claim.  Its refusal to rectify the very problem it created – and for which it seeks judicial intervention – further illustrates that its provision of ASIN numbers was a deliberate tactic designed to avoid providing customer names, not a necessary measure to protect the expressive rights of its customers.

E.    **The Facts of the Cases Relied on by Amazon Are Inapposite**

NC Revenue does not dispute the general proposition argued by Amazon that the First Amendment protects the right to purchase and sell expressive material.  *See* SJ Motion at 8.  The facts and circumstances of the cases relied on by Amazon bear no resemblance to this tax dispute between Amazon (and potentially its customers) and the State of North Carolina. This tax dispute does not implicate First Amendment rights.  North Carolina tax liabilities are not based on the expressive content of the property purchased and sold.  Because this information has no

---

[4]   The correspondence between NC Revenue and Amazon does not reflect any overreaching by a governmental agency intent on ferreting out the reading and viewing habits of North Carolinians, but instead a willingness to accommodate on the part of NC Revenue.  *See* Zapolsky Decl., Exs. 2, 3; Galbreath Decl., Exs. D, E; Woodard Decl., ¶ 16.  Amazon agrees that NC Revenue has attempted to resolve the First Amendment issue plaintiff created by returning the ASIN data. Zapolsky Decl., ¶¶ 18, 20, 21.  It has not been possible to resolve these issues because plaintiff has made it clear that, even with the return of the original disks containing ASIN numbers, it is unwilling to turn over customer names; it also has been unwilling to discuss providing new disks with the ASIN numbers deleted. Zapolsky Decl., Exs. 3, 4.

[5]   Amazon's representation that NC Revenue did not respond to its questions regarding the existence of any back up tapes is also inaccurate.  As has been explained to plaintiff's counsel, NC Revenue immediately took measures to ensure the security of the data produced over and beyond the usual strict security measures in place at the Department. Zapolsky Decl., Ex. 3.  Amazon's alleged concerns about the deletion of data and any back up of the data has not been specifically addressed in correspondence between the parties because, as discussed in telephone conversations, those are technical issues that counsel indicated would be worked out.

NORTH CAROLINA RESPONSE TO MOTION FOR S.J. - 11
10-cv-00664-MJP

relevance to Amazon's or its customers' tax liability to North Carolina, it has not been sought by NC Revenue.

Amazon relies on irrelevant or inapposite legal authorities in its attempt to establish First Amendment implications. The vast majority of cases relied on by Amazon involve statutes or the enforcement of statutes that are related to or specifically directed to expressive content. *See e.g. Stanley v. Georgia*, 394 U.S. 557 (1969) (criminal statute for possession of obscene materials under which defendant was convicted violated First Amendment); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) (state commission empowered to declare books or magazines obscene and objectionable for sale to minors was unconstitutional censorship abridging First Amendment liberties); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (statute prohibiting distribution of anonymous campaign literature violated First Amendment right to remain anonymous); *Lamont v. Postmaster General*, 381 U.S. 301 (1965) (federal statute requiring written request as prerequisite for delivery of mail from abroad containing communist propaganda held an abridgment of First Amendment rights); *ACLU v. Gonzales*, 478 F. Supp. 2d 775 (E.D. Pa. 2007), *aff'd*, 534 F.3d 181 (3$^{d}$ Cir. 2008) (federal statute providing for criminal and civil penalties for the transmission of sexually explicit materials and communications on internet sites available to minors facially violated First Amendment rights of web site owners); *Ashcroft v. ACLU*, 542 U.S. 656 (2004) (same); *United States v. Stevens*, 130 S. Ct. 1577 (2010) (federal statute criminalizing the commercial creation, sale or possession of depictions of animal cruelty violated First Amendment protection of speech); *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1461*, No. 09-118, 2009 WL 3495997 (D.D.C. 2009) (customer names and identity of movies sold were entitled to First Amendment protection from grand jury investigation because no prior determination had been made that the films being investigated were obscene); *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044 (Colo. 2002) (failure by city police to establish necessity for access to customer purchase record relating to a criminal prosecution for illegal drug manufacturing collided with First Amendment rights); *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972) (Black Panther Party members were

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

protected by the First Amendment from being compelled to answer questions that were not relevant to the subject matter of a grand jury investigation regarding threat to national security).

Because the current tax audit of Amazon and its customers does not involve any questions about the buying and selling of expressive materials, Amazon's claim that NC Revenue's tax investigation implicates the First Amendment is simply incorrect as a matter of fact and law.   Although Amazon attempts to interject a First Amendment expressive content controversy into this tax dispute, it cannot change the fact that NC Revenue's investigation is not aimed at determining the expressive content of the tangible property purchased by North Carolina customers.   Instead, the ultimate question for resolution is whether Amazon – or its customers – will be required to pay the tax due to the State on the 50 million taxable transactions by North Carolina residents during the period under audit.[6]   As explained above, the production of ASIN numbers to NC Revenue appears to simply be a ploy attempting to create a First Amendment controversy similar to its actions in *Grand Jury Subpoena to Amazon.com*, 246 F.R.D. 570.

## IV.   AMAZON'S FIRST AMENDMENT CHALLENGE FAILS BECAUSE NC REVENUE'S REQUEST FOR CUSTOMER NAMES SATISFIES THE LEGAL STANDARDS FOR A TAX SUMMONS

### A.   *Powell* **Standard**

One of the fallacies of Amazon's arguments, even if this action were not a premature pre-enforcement challenge, is that the cases it relies on do not involve civil tax summonses.[7]   The case law regarding the standards for evaluating the validity of tax summonses is highly developed and uniformly applied.   A number of these cases also discuss how a court in an enforcement proceeding is to analyze the intersection of the information sought in a tax

---

[6]   The tax liability for these transactions, prior to any assessment of penalties and interest, is in the ballpark of $50 million.  Woodard Decl., ¶ 13.

[7]   The plaintiff relies primarily on the standard applied to enforcement of subpoenas in grand jury cases in support of its argument for a "heightened" standard in this case.  *See* SJ Motion at 14-15.  Though similar in some respects, these cases do not provide the appropriate standard for the court's review in a tax summons case.  Amazon's reliance on grand jury subpoena case law is therefore inappropriate in the face of case law dealing specifically with civil summonses issued by a taxing authority.

NORTH CAROLINA RESPONSE TO MOTION FOR S.J. - 13
10-cv-00664-MJP

1   summons and the First Amendment rights of a taxpayer.  As explained above, the federal law

2   relating to IRS summonses is equally applicable to a NC Revenue summons.

3          An administrative tax summons must pass muster under the standards announced by the

4   United States Supreme Court in *United States v. Powell*, 379 U.S. 48 (1964).  *See Schlabach v.*

5   *United States*, 79 A.F.T.R.2d (RIA) 693, 1996 U.S. Dist. LEXIS 19775, at *6 (E.D. Wash. 1996)

6   (IRS tax summons); *see also Davis*, 96 N.C. App. at 552, 386 S.E.2d at 746 (adopting *Powell*

7   standards for summons issued by NC Revenue).   Under *Powell*, a summons must meet a four

8   pronged test: that the investigation will be conducted pursuant to a legitimate purpose, that the

9   inquiry may be relevant to that purpose, that the information is not already in the agency's

10  possession and that the administrative steps required by the statute have been followed.  *Powell*,

11  379 U.S. at 57-58; *see also Davis*, 96 N.C. App. at 552, 386 S.E.2d at 746 (summons must be

12  issued for a legitimate purpose, information sought must be relevant to that purpose and not in

13  possession of Department and proper administrative steps must be followed in issuing

14  summons).   The framework announced in *Powell* "has survived the test of time and remains

15  intact today."  *Schlabach* at *4.

16         As explained by the Ninth Circuit Court of Appeals:

17                 When seeking enforcement of an IRS summons, the government
                   must establish that its investigation will be conducted pursuant to a
18                 legitimate purpose, and that its inquiry may be relevant to that
                   purpose.  In turn, the party resisting enforcement must disprove
19                 through facts and evidence the presumed relevance and purpose of
20                 the summons.

21
22  *United States v. Tanoue*, 94 F.3d 1342, 1344 (9th Cir. 1996) (internal citation omitted) (holding

23  taxpayer "failed to carry his 'heavy' burden of disproving presumed relevance and purpose of the

24  summons"); *see also Liberty Financial Services v. United States*, 778 F.2d 1390, 1392 (9th Cir.

25  1985) (taxpayer "must allege specific facts and evidence to support his allegations").

26         The IRS can issue a summons to investigate merely on the suspicion that the law is being

27  violated, or even just because it wants assurance that it is not.  *Powell*, 379 U.S. at 57; *see also*

28  *Davis*, 96 N.C. App. at 522, 386 S.E.2d at 746.  Further, the IRS may issue a summons for

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

documents that may be even "potentially relevant" to an ongoing investigation.  *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984).  "'The [government need] only make a minimal showing with regard to these elements.'" *Schlabach* at \*4 (quoting *United States v. Blackman*, 72 F.3d 1418, 1422 (9th Cir. 1995)); *see also Tanoue*, 94 F.3d at 1345.  Sworn assertions by a revenue agent "'will generally suffice to make out a prima case as to the first three prongs.'" *Schlabach* at \*4 (citing *Liberty Financial Services*, 778 F.2d at 1392).  "Once the agency establishes a prima facie case, the 'burden then shifts to the taxpayer to show an abuse of process.'"  *Id*.  This burden is a heavy one.  *Id*.; *see also Camarata v. United States*, 53 A.F.T.R.2d (RIA) 611, 1983 U.S. Dist. LEXIS 11665, at \*6 (E.D. Wash. 1983) (once the government makes a prima facie case, which requires only a "minimal showing," the burden – which is a heavy one – then shifts to the taxpayer to rebut the government's proof).

## B.    *Powell* Analysis for First Amendment Claims

The *Powell* analysis has been applied in the context of First Amendment challenges. Those cases have analyzed First Amendment objections or claims under the first prong of *Powell* and place the burden on the taxpayers to first make a prima facie showing of an infringement on First Amendment rights before the government must make a showing regarding the need for and relevance of the information sought.

### 1.    Burden on the Challenger

The first hurdle faced by a taxpayer challenging a tax summons is to make a prima facie showing of an infringement on First Amendment rights.  For example, in *Lyons Trading, LLC v. United States*, 101 A.F.T.R.2d (RIA) 837, 2008 U.S. Dist. LEXIS 9682, at \*18-19 (E.D. Tenn. 2008), the court held that the taxpayer "has not met its heavy burden of demonstrating that enforcement would be an abuse of process" by failing to show that enforcement of the tax summons would impinge on its First Amendment right to freedom of speech.  The court specifically contrasted the case before it with the Ninth Circuit case *United States v. Trader's State Bank*, 695 F.2d 1132, 1133 (9th Cir. 1983), where enforcement of a summons was vacated

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

1   because the petitioners had made a prima facie showing of violations of their First Amendment

2   rights.

3        Similarly, in *Goldberg v. United States*, 586 F. Supp. 92, 96 (D. Md. 1984), the court

4   held once the government makes its prima facie case, the burden shifts to the petitioner to

5   disprove the existence of a valid purpose or to present evidence that enforcement of the

6   summons would be an abuse of the court's process or otherwise implicate First Amendment

7   rights.   The court held that the petitioner had "simply failed to produce any evidence" that

8   enforcement of the summons would restrict First Amendment freedoms (in this case the religious

9   activities of church members).   *Id.*   The court specifically found the First Amendment

10  infringement concerns were inapposite to the facts of *Trader's State Bank* because there the

11  summons sought all of the church records when the IRS was only investigating the tax liability

12  of one couple belonging to the church.   *Id.*; *see also Life Science Church v. United States*, 607 F.

13  Supp. 1037, 1040 (N.D. Ohio 1985) (enforcement of third-party summonses allowed because

14  mere allegations of First Amendment infringement are not sufficient "basis for halting otherwise

15  legitimate investigations by the Internal Revenue Service"); *O'Neal v. United States*, 601 F.

16  Supp. 874, 880 (N.D. Ind. 1985) (plaintiffs failed to meet their prima facie burden establishing

17  that the disclosure of information requested in the summons will in fact result in a chilling of

18  First Amendment rights).

19

20       The United States Court of Appeals for the Fifth Circuit explained the analytical steps as

21  follows: "Initially, the issuance of an IRS summons must meet a test of good faith as formulated

22  in *United States v. Powell*."   *United States v. Grayson County State Bank*, 656 F.2d 1070, 1073

23  (5th Cir. 1981), *cert. denied sub nom., First Pentecostal Church v. United States*, 455 U.S. 920

24  (1982).   "Once a prima facie case for enforcement is shown, the burden shifts to the taxpayer to

25  show enforcement would be an abuse of the court's process."   *Id.*   In rejecting the petitioner's

26  First Amendment challenge to the summons the court found that the petitioner "presented no

27  evidence that enforcement of the summons would restrict the religious activities of its members."

28  *Id.* at 1074.

NORTH CAROLINA RESPONSE TO MOTION FOR S.J. - 16
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

2.      **Balancing Test**

Significantly, the court in *Grayson County State Bank* further held that even if a taxpayer could establish that the enforcement of a summons would place an indirect burden on some First Amendment rights, the Supreme Court has employed a two part balancing test to determine if the government's interest outweighs the degree of impairment.  *Id*.  In applying the balancing test and rejecting the challenge to the summons, the court concluded the substantial government interest in maintaining the integrity of its fiscal policies was sufficiently compelling to justify any incidental infringement of plaintiff's First Amendment rights.  *Id*.; *see also Life Science Church*, 607 F. Supp. at 1040 (in balancing the legitimate needs of the IRS against the claimed chilling effect on First Amendment rights, court found the latter less compelling); *O'Neal*, 601 F. Supp. at 880 (having failed to establish their prima facie burden of proof of a chilling effect of disclosure to the IRS, the plaintiffs cannot demand the government establish a compelling need for the information requested).

The United States Court of Appeals for the Second Circuit employed a similar analysis in *St. German of Alaska Eastern Orthodox Catholic Church v. United States*, 840 F.2d 1087 (2$^{d}$ Cir. 1988).  There, after articulating the *Powell* test, the court stated:

> Of course, a constitutional challenge to an IRS summons may raise a "substantial countervailing policy" sufficient to counsel quashal of the summons under scrutiny. The question before us is whether petitioners have carried their burden of raising such a constitutional challenge, or of demonstrating bad faith, improper purpose, or other abuse of process on the part of respondent.

*Id*. at 1092.  The petitioners argued that enforcement of the IRS summons would lead to the disclosure of the names of donors which would burden their First Amendment rights.  The court reasoned that if the requisite burden on the First Amendment right of free expression was shown, then the summons would be upheld "only upon demonstration that a compelling governmental interest warrants the burden, and that less restrictive means to achieve the government's ends are not available." *Id*. at 1093.  Further, any burden on First Amendment rights "must be balanced against the government's interest in enforcing the summons" and disclosure "should not be

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

ordered unless it is substantially related to a compelling governmental interest." *Id.* at 1093, 1094.   The court held the trial court properly applied the pertinent law, carefully evaluated petitioners' First Amendment claims and "balanced them against the government's showing of need for the requested [] records." *Id*. at 1094.   The court concluded the information sought was related to a compelling governmental purpose – that of enforcement of the tax laws – so that the challenged summons presented no violation of constitutional rights. *Id*.

It can be fairly said that none of the cases relied on by Amazon involve a civil tax investigation, except where brief reference is made to two cases cited by NC Revenue in its motion to dismiss. *See* SJ Motion at 16.   Those cases from the Ninth Circuit held, in the context of a First Amendment claim, that the challenger must first make a showing that the tax summons burdens the exercise of First Amendment rights before the government must make any showing that its interest warrants the burden and a connection between the disclosure and the governmental end. *See United States v. C.E. Hobbs Foundation for Religious Training and Education*, 7 F.3d 169, 173 (9th Cir. 1993); *Trader's State Bank*, 695 F.2d at 1133.   These cases also held that the government's interest in enforcing a summons seeking tax information is compelling. *Id*.

### 3.       Enforcement of Tax Policies Is a Compelling Interest

The government's interest in enforcing its tax laws is readily apparent.   It has been uniformly held by the courts that this governmental interest is compelling.   As the Supreme Court stated long ago, "taxes are the lifeblood of government." *Bull v. United States*, 295 U.S. 247, 259 (1935).   "The collection of taxes is an essential part of the process of keeping that lifeblood flowing, and is thus a governmental interest 'sufficiently important to outweigh the possibility of infringement [of *first amendment* rights], particularly when the "free function of our natural institution" is involved.'" *O'Neal*, 601 F. Supp. at 880 n.4 (alternations in original) (quoting *Buckley v. Valeo*, 424 U.S. 1, 66 (1976) (quoting *Communist Party v. Subversive Activities Control Board*, 367 U.S. 1, 97 (1961)).   The Supreme Court has indicated that the investigatory authority of the IRS is "'essential to our self-reporting system, and the alternative

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

could well involve far less agreeable invasions of house, business, and records.'" *St. German*, 840 F.2d at 1092 (quoting *United States v. Bisceglia*, 420 U.S. 141, 146 (1975)). In *St. German*, the court found a compelling governmental interest existed, "that of enforcement of the tax laws." *Id*. at 1094. A litany of Ninth Circuit Court of Appeals and district court cases that have found the government's interest in an enforceable taxation system to be compelling is set forth in NC Revenue's Motion to Dismiss at 21-22. This includes cases where the courts were balancing the governmental interest in tax collection against the First Amendment rights of the taxpayers. *See e.g.*, *Bradley v. United States*, 817 F.2d 1400, 1405 (9th Cir. 1987); *C.E. Hobbs Foundation*, 7 F.3d at 173.

### 4.     Customer Names are Relevant to the Pending Tax Investigation

Amazon incorrectly asserts that furnishing customer names serves no valid purpose and that there is no connection between the information sought and the tax liability investigation. *See, e.g.*, SJ Motion at 1, 18. This is demonstrably untrue.

It is beyond dispute that customer names are critical in order to determine use tax liability. It is also undisputed that Amazon has failed to collect and remit sales taxes on the purchases by its North Carolina customers. As a result, those customers are liable for the use tax under North Carolina law. The rational connection between the disclosure of customer names and a legitimate governmental end is therefore obvious. *See, e.g., Trader's State Bank*, 695 F.2d at 1133. This alone would be sufficient to justify any summons that NC Revenue might decide to issue in the future in order to obtain customer names. "[T]he presence of just one [] permissible purpose for the summons is adequate to satisfy the first element of *Powell*." *Wooden Horse Investments, Inc. v. United States*, 806 F. Supp. 1487, 1491 (E.D. Wash. 1992) (citing *United States v. La Salle National Bank*, 437 U.S. 298 (1978)).

For purposes of establishing relevance in the context of a tax summons, the Ninth Circuit has adopted the standard that documents and information are relevant if "the inspection sought would throw light upon the correctness of the taxpayer's return." *United States v. Ryan*, 455 F.2d 728, 733 (9th Cir. 1971); *see also United States v. Goldman*, 637 F.2d 664, 667 (9th Cir.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

1980) (same).  The tax summons authority allows the IRS "to obtain items of even potential interest to an ongoing investigation." *United States v. Arthur Young & Co*., 465 U.S. 805, 814 (1984).  Even if Amazon were able to demonstrate some burden on First Amendment rights based on producing customer names, NC Revenue could easily satisfy the balancing test used by the courts to determine the rational relationship between that information and the legitimate governmental end; it could also establish that less restrictive means to achieve that end are not available.  *See C.E. Hobbs Foundation*, 7 F.3d at 173; *Trader's State Bank*, 695 F.2d at 1133; *St. German*, 840 F.2d at 1093.

As explained in the declarations of Alan Woodard, customer names are relevant to NC Revenue's investigation of Amazon's sales tax liability.  First, this information is necessary to accurately determine the amount of sales tax due.  Many exemptions depend on the character of the purchaser and, without customer names, NC Revenue cannot make the determinations necessary for an accurate assessment.  *See* Woodard Decl., ¶ 6.  Second, it is often necessary to verify that certain transactions actually occurred or occurred as reported.   Again, without customer names, NC Revenue is unable to verify any transactions.  *See* Woodard Decl. II, ¶ 4.  Finally, customer names are also important in the context of sales for resale.  For example, if there are large volumes of sales being billed to particular customers but being shipped to other North Carolina customers, this could be evidence of resale activities.  It is important that NC Revenue investigate potential sales for resale, not only for the purpose of accurately determining Amazon's sales tax liability (such sales would be exempt and would reduce its tax liability), but also for determining whether another party is liable for the tax (for example, whether the reseller has nexus with the State and is required to collect sales tax on its sales to North Carolina customers).  *See* Woodard Decl. II, ¶¶ 5-8.  In short, as explained in the Woodard Declarations, the assessment of sales and use tax is a very fact-dependent exercise and customer names are important to accurately determine the amount of tax due, verify the accuracy of reported transactions, and investigate the potential tax liability of other individuals or businesses.  *Id.*

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

In sum, Amazon has not established the essential elements of its case and it therefore fails. If and when NC Revenue determines the issuance of a summons is appropriate, it will do so and commence court proceedings to enforce it if necessary. At that time, Amazon would have the ability to challenge the summons before a proper North Carolina judicial official and attempt to meet its burden to show some infringement on First Amendment rights. If Amazon made this requisite showing, NC Revenue would then have to justify the need for and relevance of the information actually sought by any summons. Applying the proper legal standards to the true facts of this case demonstrates that, while Amazon could not meet its burden, NC Revenue would. The facts and the law plainly illustrate that Amazon cannot establish a First Amendment claim and its motion for summary judgment – if reached by the court at all – should be denied.

## V.   AMAZON'S VIDEO PRIVACY PROTECTION ACT CHALLENGE FAILS BECAUSE NC REVENUE HAS NOT DEMANDED VIDEO TITLES

Amazon's argument regarding the Video Privacy Protection Act fails for the same reason that its First Amendment challenge fails – NC Revenue has not sought to compel production of specific video titles. NC Revenue has repeatedly told Amazon, the ACLU and the media that it has absolutely no interest in this information. Once again, the necessary factual predicate for Amazon's legal challenge is absent.

Amazon complains that it "does not believe that the DOR has notified even a single customer of its planned invasion of privacy and violation of First Amendment rights." SJ Motion at 22. This is one fact on which Amazon and NC Revenue agree. Because Amazon has failed to provide NC Revenue with customer names, even if required by the VPPA, NC Revenue is unable to provide individual notice to each one of Amazon's unknown North Carolina customers.

Moreover, as explained in NC Revenue's motion to dismiss, the VPPA fails to trump the Tax Injunction Act as a matter of law. Finally, if and when NC Revenue moves to enforce any summons that it may chose to issue, the North Carolina courts can determine the applicability of the VPPA.

NORTH CAROLINA RESPONSE TO MOTION FOR S.J. - 21
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

## CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment should be denied.

DATED this the 2nd day of August, 2010.

*Pro Hac Vice*:
**ATTORNEY GENERAL ROY COOPER**

By: */s/ Kay Linn Miller Hobart*
Kay Linn Miller Hobart
Special Deputy Attorney General
N.C. State Bar No. 16746
Telephone: (919) 716-6550
Facsimile: (919) 715-3550
Email:  khobart@ncdoj.gov

By: */s/ Tiare B. Smiley*
Tiare B. Smiley
Special Deputy Attorney General
N.C. State Bar No. 7719
Telephone:  (919) 716-6900
Facsimile:  (919) 716-6763
Email:  tsmiley@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC  27602

**MCKAY CHADWELL, PLLC**

By: */s/ Michael D. McKay*
Michael D. McKay
WSBA No. 7040

By: */s/ Thomas M. Brennan*
Thomas M. Brennan
WSBA No. 30662
600 University St., Suite. 1601
Seattle, WA  98101
Telephone:  (206) 233-2800
Facsimile:  (206) 233-2809
Email:  tmb@mckay-chadwell.com

*Attorneys for Defendant*

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763