THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, LLC,

              Plaintiff,

    v.

KENNETH R. LAY, in his official capacity as Secretary of the North Carolina Department of Revenue,

              Defendant.

No. 10-cv-00664-MJP

**REPLY IN SUPPORT OF NORTH CAROLINA MOTION TO DISMISS**

## OVERVIEW

Collectively, states are losing about $23 billion a year in uncollected taxes on internet sales by retailers such as Amazon. North Carolina is estimated to lose $162 million in 2010. Although online purchasers are legally obligated to pay use tax when the retailer fails to collect sales tax, this law is widely ignored. Indicative of the enormity of the problem, North Carolina purchasers paid only $5 million in use tax in 2008 of an estimated $145 million due. NC Revenue has preliminarily estimated that about $50 million in sales or use tax is due the State by either Amazon or its customers for the 50 million purchases made during the audit period, exclusive of interest and penalties. *See* Woodard Decl. III ¶¶ 2-3. In the face of this enormous revenue loss, Amazon remarkably proclaims that this case "is not about taxes."

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 1
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900 Fax (919) 716-6763

Amazon and *amicus* ACLU try to recast the facts in an effort to avoid the "broad jurisdictional barrier" of the Tax Injunction Act and comity. The ACLU's naïve assertion that because NC Revenue "could" issue a sales tax assessment against Amazon, this "would obviate the need to assess use taxes," reflects a fundamental misunderstanding of the basic sales and use tax principles underlying this case. There is no dispute that North Carolina is owed about $50 million in tax as a result of Amazon's commercial transactions with its customers in this State. The only unresolved question is who will ultimately be responsible for that tax, Amazon or its customers? Amazon has made its position on this point very clear, informing NC Revenue that it "may not compel Amazon to collect or remit North Carolina sales or use taxes on any of its internet sales to North Carolina residents." Woodard Decl., Ex. D. Because Amazon's refusal to collect the tax shifts the tax burden onto its customers, the Secretary may have no choice but to proceed against those customers. Yet Amazon asks this court to foreclose that option and prevent the State from assessing and collecting $50 million in state and local tax revenue that will provide police and fire protection, roads and schools and other vital services for all of its citizens.

This case is nothing more than another facet of Amazon's effort to perpetuate its commercial advantage over its brick-and-mortar competitors by aggressive avoidance of state sales and use taxes. Its tax avoidance tactics are well-documented and frequently discussed in state tax literature and the media. In its own filings with the Securities and Exchange Commission, Amazon declares that the "successful assertion by one or more states" that it should collect sales or use taxes could "decrease our ability to compete with traditional retailers and otherwise harm our business." Amazon.com, Inc. U.S. SEC Form 10-K for the year ended December 31, 2008 at 14.[1] A New York Times editorial reprinted in one of North Carolina's largest newspapers similarly observed:

---

[1] *See also* Michael Mazerov, *Amazon's Arguments Against Collecting Sales Taxes Do Not Withstand Scrutiny*, CENTER ON BUDGET AND POLICY PRIORITIES, Nov. 16, 2009 (Amazon's legal challenge in New York is "consistent with aggressive steps Amazon has long taken to minimize the number of states in which it has to charge sales tax"); Michael Mazerov, *Statement: Michael Mazerov, Senior Fellow, on Amazon's Cancellation of its Colorado Affiliate*

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 2
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

> Amazon.com is in court again, fighting what ought to be a losing battle to defend its longstanding practice of not collecting sales taxes in most states where it does business. In the latest case, the company's roundabout argument is that it and its customers have a First Amendment right to tax avoidance . . . . This case is not really about privacy and free speech. It's about how far Amazon is willing to go to protect a business model that relies on not collecting sales tax.

Editorial, *Amazon, North Carolina and sales taxes: Inevitable*, NEW YORK TIMES, May 7, 2010, reprinted in CHARLOTTE OBSERVER, Aug. 5, 2010. Finally, ABC News has asked whether Amazon is "Fighting for Free Speech" or "Against Sales Tax," concluding that: "Amazon is trying to distract attention from its lack of sales tax compliance and its aggressive efforts to avoid collecting tax by whipping up consumer concern about privacy violations where there's really no legitimate concern." Alice Gomstyn, *Amazon.com: Fighting For Free Speech, or Against Sales Tax?*, ABC NEWS, May 11, 2010; *see also* Editorial, *Tar Heel State right to challenge Amazon.com on sales tax*, THE SEATTLE TIMES, April 21, 2010 ("This is not a First Amendment issue. The First Amendment does not make books and movies tax-free.").

Amazon enlists this court's aid in perpetuating its business model of aggressively avoiding state taxes in the guise of a First Amendment claim. This court should decline Amazon's invitation to interfere with NC Revenue's legitimate sales and use tax investigation and the assessment and collection of $50 million in state and local tax revenue.

## ARGUMENT

I.  **THE TAX INJUNCTION ACT BARS THIS ACTION**

   A.  **Amazon's Refusal to Provide Customer Names Restrains the Assessment and Collection of Use Tax against its North Carolina Customers**

Amazon improperly seeks federal intervention in the sales and use tax dispute between it and the State of North Carolina, asking this court to sanction its refusal to provide customer names. Even under its overly restrictive view[2] of the Tax Injunction Act, Amazon's action

---

*Program*, CENTER ON BUDGET AND POLICY PRIORITIES, March 9, 2010 ("We've long known that Amazon doesn't want to collect sales taxes. It is determined to maintain its price advantage over local . . . merchants by not charging tax."). All of the articles referenced herein are attached to the Third Declaration of H. Alan Woodard.
[2] Amazon erroneously asserts that the TIA and comity each impose a "narrow jurisdictional bar." This statement is

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 3
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

plainly interferes with the assessment and collection of North Carolina taxes and is therefore barred.

Amazon and *amicus* ACLU chastise the Secretary for "ignoring" the Supreme Court's decision in *Hibbs v. Winn*, 542 U.S. 88 (2004). That case is wholly inapposite. In *Hibbs*, the state taxing authority did not contend that the relief requested (the return of money from state tuition organizations to the state's general fund) would interfere with the state's levy or collection efforts. *Id*. at 96. Here, by sharp contrast, the relief requested would interfere with NC Revenue's levy or collection efforts, specifically its efforts to levy and collect use tax against Amazon's North Carolina customers. This fact alone renders *Hibbs* inapplicable.

The Court also drew a critical distinction between "claims that would reduce state revenues" and "claims that would enlarge state receipts," observing that the legislative history reflected a concern that federal judgments were "'emptying state coffers.'" *Id*. at 108-09 (quoting *Dunn v. Carey*, 808 F.2d 555, 558 (7th Cir. 1986)). There, because the relief could have only operated to increase state revenues, the Court held that the Tax Injunction Act did not apply. Here, unlike *Hibbs*, the relief requested by Amazon would empty state coffers by about $50 million.

Finally, the Supreme Court's recent decision in *Commerce Energy* places its earlier decision in *Hibbs* in proper perspective: an odd footnote in the Court's long history of jurisprudence regarding the Tax Injunction Act and comity. *Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323, 2335 (2010) ("*Hibbs* was hardly a run-of-the-mine tax case. It was essentially an attack on the allocation of state resources for allegedly unconstitutional purposes"); *see also DIRECTV, Inc. v. Tolson*, 513 F.3d 119, 127 (4th Cir. 2008) ("As the Court of Appeals for the Tenth Circuit observed, *Hibbs*' characterization of prior tax cases was intended to underscore the unusual claim before the Court in *Hibbs*, not to disavow those earlier holdings.").

---

directly contrary to the characterization of the TIA and comity by both the United States Supreme Court and the Ninth Circuit as a "broad jurisdictional barrier." *May Trucking Co. v. Oregon DOT*, 388 F.3d 1261, 1266 (9th Cir. 2004) (taxpayer's "cramped construction runs counter to the Supreme Court's interpretation of the Act as a 'broad jurisdictional barrier'") (quoting *Arkansas v. Farm Credit Services*, 520 U.S. 821, 825 (1997)). *May* was a post-*Hibbs* case.

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 4
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900 Fax (919) 716-6763

Even Amazon cannot seriously dispute that the Tax Injunction Act prohibits federal courts from exercising jurisdiction over any action that would suspend or restrain the assessment, levy or collection of a tax under state law, which is exactly what Amazon's action would do. *See Commerce Energy*, 130 S. Ct. at 2338 (Thomas, J., concurring). Amazon erroneously asserts that it does not seek any relief that would stop the assessment, collection or levy of any tax. Response at 9. This is simply incorrect. Amazon has specifically asked this court to declare that providing customer names and addresses violates the First Amendment. Without customer names, NC Revenue cannot assess and collect use taxes. Amazon's request is therefore a direct impediment to the assessment and collection of state taxes and is barred by the plain language of the TIA as interpreted by the Supreme Court.

Amazon nevertheless claims that it has not challenged any state tax law, does not challenge any claimed tax liability, does not seek to avoid the payment of taxes and blithely concludes the relief it requests would not operate to reduce the flow of state tax revenue. Response at 9. As pointedly observed by the Supreme Court, a litigant cannot avoid the bar of the TIA by artful pleading. *Commerce Energy*, 130 S. Ct. at 2338 (Thomas, J., concurring). The relief sought by Amazon would – in fact – restrain the assessment and collection of use taxes against its customers. In an effort to create jurisdiction where none exists, Amazon and *amicus* ACLU[3] conveniently ignore the fundamental fact that NC Revenue is conducting a dual investigation of the sales and use tax liability of Amazon and its customers.[4] Woodard

---

[3] Inexplicably, the ACLU repeatedly insists that NC Revenue has admitted that Amazon's failure to provide customer names will not interfere with its ability to assess or collect a tax.

[4] The fact that NC Revenue has not yet decided whether to assess use tax on Amazon's customers is another red herring. Unless and until Amazon provides NC Revenue with information about North Carolina purchasers, NC Revenue cannot make an informed decision whether to proceed with use tax assessments. NC Revenue would need to know the number of North Carolina residents that purchased products from Amazon and the total amount purchased by each resident to evaluate whether use tax assessments should be issued. To issue use tax assessments, NC Revenue would need at a minimum the customer name, address and amount purchased. Amazon's tactics have and will restrain the assessment and collection of state taxes. As part of the current audit, North Carolina is also investigating the relationship between Amazon and its "affiliates" in North Carolina to determine whether North Carolina may impose a sales tax on Amazon. This includes investigating Amazon's corporate structure, its intercompany relationships and transactions. Because it is unknown whether NC Revenue would ultimately succeed in asserting sales tax liability against Amazon, it is also investigating the use tax liability of Amazon's customers and the assessment of use tax is a very real possibility.

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 5
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

Declarations; *see also* Compl. ¶¶ 3, 25 (NC Revenue conducting "sales and use tax" audit).

Amazon plainly seeks to avoid taxes. It has informed NC Revenue that it has no intention of voluntarily collecting sales taxes. With this litigation, it also seeks to prevent NC Revenue from assessing use tax against its customers. Amazon freely admits that its business model of not charging sales tax allows it to undercut its brick-and-mortar competitors. *See supra* at 2-3. If North Carolina assesses use tax on its customers, Amazon will lose this commercial advantage. Its motivation for filing this federal lawsuit is tax avoidance, plain and simple.

Amazon ineffectually seeks to distinguish *Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327 (9th Cir. 1989) – a case squarely on point – by claiming that, there, the injunction would have prevented states from knowing the "dollar amount of taxable wages" and would have therefore restrained the assessment of state taxes. Response at 10. Amazon maintains that, here, it has provided the dollar amount of the purchases and disingenuously complains that NC Revenue "fails to explain how Amazon's refusal to disclose its customer names . . . could possibly interfere with DOR's assessment of sales tax against it." Response at 10, 11. NC Revenue has explained on numerous occasions that it is simultaneously conducting a use tax audit of Amazon's customers and that Amazon's refusal to provide customer names directly interferes with NC Revenue's ability to assess this tax. Amazon also inaccurately states that the relief it seeks does not resemble that sought in *Blangeres*. Response at 10. To the contrary, the relief is precisely the same. Here, just as in *Blangeres*, Amazon seeks to withhold necessary information from state taxing authorities.

The other cases relied on by Amazon and its *amicus* ACLU are also distinguishable and cannot save Amazon from the TIA's jurisdictional bar. For example, in *BellSouth Telecommunications, Inc. v. Farris*, 542 F.3d 499, 503 (6th Cir. 2008), the court observed that the taxpayers "do not deny responsibility for the tax, nor do they seek to avoid it." There, the taxpayers only sought to end a ban about what they might say about the tax; they did not seek to avoid the tax. Here, although Amazon avoids mentioning this fact to the court, it has plainly informed NC Revenue that it will not voluntarily collect the tax.

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 6
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

### B.   Summons Enforcement Procedure Provides Adequate Remedy

Amazon argues that even if its declaratory judgment action falls within the purview of the TIA, North Carolina does not provide the plain, speedy and efficient remedy required for the Act to apply. Specifically, it contends that N.C. Gen. Stat. § 105-258 does not satisfy two procedural requirements: first, it argues that under the tax summons procedures a hearing is not "certain" and second, that the state process for enforcing a summons is "inadequate." Response at 12-14.

This argument fails. The North Carolina courts provide a plain, speedy and efficient remedy for Amazon to challenge any summons that NC Revenue might issue, including a summons to produce customer names and commercial information regarding sales to North Carolina customers.[5] The plain, speedy and efficient exception to the TIA's jurisdictional bar provides a very narrow opening which Amazon seeks to broaden beyond all recognition. In order to "be faithful to the congressional intent 'to limit drastically' federal-court interference with state tax systems, we must construe narrowly the 'plain, speedy and efficient' exception to the Tax Injunction Act." *California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982); *see also May Trucking*, 388 F.3d at 1270 (federal courts must construe narrowly this exception to the Tax Injunction Act).

To meet this standard, the state court remedy must meet certain "minimal" procedural criteria; in particular it must provide the taxpayer with a "'full hearing and judicial determination' at which . . . 'any and all constitutional objections'" may be raised. *Grace Brethren Church*, 457 U.S. at 411 (quoting *Rosewell v. La Salle National Bank*, 450 U.S. 503, 512 (1981)). The United States Supreme Court has held that the IRS summons enforcement process provides an adequate remedy at law and that a party cannot file an action for declaratory judgment or injunction in an effort to preempt these procedures. *Reisman v. Caplin,* 375 U.S. 440, 449 (1964). Because the North Carolina summons procedure is modeled after the federal

---

[5] In rather remarkable contrast to its hand-wringing about actual, recurring and direct threats of summons enforcement by NC Revenue in connection with its ripeness argument, here Amazon instead maintains that "DOR has made it abundantly clear that it may *never* give Amazon a state forum of any kind to question DOR's information demands." Response at 13.

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 7
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

procedure, this holding applies equally to the State procedure, as interpreted by the North Carolina appellate courts. *See State v. Davis*, 96 N.C. App. 545, 551, 386 S.E.2d 743, 746 (1989); *see also* I.R.C. § 7604.

As explained in NC Revenue's motion to dismiss, there is no uncertainty about the availability of a remedy in the state court to challenge enforcement of a summons under N.C. Gen. Stat. § 105-258. Enforcement proceedings include court scrutiny to insure a summons does not violate constitutional rights, is not overly broad and was issued for a legitimate purpose. *Davis*, 96 N.C. App. at 552, 386 S.E.2d at 746. The court also has the authority to hear any objections or privileges offered in opposition to the summons and to give notice to third parties. *In re Summons Issued to Ernst & Young*, LLP, 363 N.C. 612, 617, 684 S.E.2d 151, 154 (2009). In addition, just as in *Grace Brethren*, if Amazon is unsuccessful in challenging the summons in superior court, it may appeal the decision to higher state courts and ultimately seek review in the United States Supreme Court. 457 U.S. at 414; *see also* N.C. Gen. Stat. § 7A-27 (appeal of right from the courts of the trial division).

Amazon's reliance on two Ninth Circuit cases that found the state court remedies uncertain or inadequate is misplaced. In *Direct Marketing Ass'n v. Bennett*, 916 F.2d 1451 (9th Cir. 1990), DMA was an out-of-state mail order retailer that was challenging a state statute that required its members to collect use taxes from their California customers. There, the court found the state refund proceedings were available only to taxpayers and those who had received determinations. DMA members were not the taxpayers – the use tax is imposed upon the purchaser rather than the retailer – so their right to seek a tax refund was "uncertain" and "precarious." *Id*. at 1454-55. The court also found that it was speculative whether members would receive determinations allowing them to invoke the refund procedures to challenge the statute. *Id*. at 1457. Because they were risking substantial penalties if they did not collect the taxes, and without determinations could not invoke the refund procedure, the court found the availability of the remedy uncertain. *Id*. The ruling in *Retirement Fund Trust v. Franchise Tax Bd.*, 909 F.2d 1266, 1273-74 (9th Cir. 1990) is equally inapposite. There, the court found the

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 8
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

available procedures speculative and inadequate; in addition, in order to make a challenge to the levy of unemployment taxes, the trust would have to first expose itself to substantial penalties.

By contrast, if Amazon receives a summons it is under no compulsion to comply. If it refuses to comply, it would have a forum in state court at which any and all constitutional or other objections could be raised, including that the summons was overbroad or not issued for a legitimate purpose. A party summoned by a taxing authority has the option not to comply and the penalties for contempt are not so severe that the enforcement procedure amounts to a denial of judicial review. *Reisman*, 375 U.S. at 446; *Gutierrez v. United States*, 78 A.F.T.R.2d (RIA) 6616, 1996 U.S. Dist. LEXIS 18875, at *5 (E.D. Wash. 1996). Exposure to a potential summons enforcement proceeding is not a risk that equates to an uncertain or inadequate state court remedy creating an exception to the TIA.

The review accorded a party subject to a North Carolina's summons enforcement proceeding is fully consistent with the standards of review for a federal summons. *See United States v. Powell*, 379 U.S. 48 (1964); NC Response to Motion for Summary Judgment at 13-15. The fact that the proceedings are subject to the inherent authority of the superior court does not render them an inadequate remedy. Amazon mistakenly points to the description of the summons proceeding as "summary in nature" in *Ernst & Young*. This description means nothing more than the obvious fact that the summons proceeding is not a civil action instituted under the North Carolina Rules of Civil Procedure with the filing of a complaint, an answer, discovery proceedings and ultimately a trial. The legal precedents of *Davis* and *Ernst & Young* regarding NC Revenue's summons proceedings fully demonstrate Amazon's right to appear, be heard and to raise constitutional or other objections; nothing more is required. *La Salle National Bank*, 450 U.S. at 512; *see also Lopes v. Resolution Trust Corp.*, 155 F.R.D. 14, 16 (D.R.I. 1994) ("enforcement proceeding is an adequate remedy at law, because all objections . . . can be raised in that proceeding"). North Carolina's procedures more than meet the standards required by the United States Supreme Court. Amazon therefore cannot invoke the narrow exception to the TIA of an inadequate state court remedy that would allow it to bring this action in federal court.

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 9
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

## II.   COMITY BARS THIS ACTION

Even if the TIA does not bar Amazon's federal court efforts to prevent NC Revenue from obtaining the information necessary to assess and collect state taxes, comity does. "More embracive than the TIA, the comity doctrine applicable in state taxation restrains federal courts from entertaining claims for relief that risk disrupting state tax administration." *Commerce Energy*, 130 S. Ct. at 2328. Amazon baldly asserts that this principle as recently articulated by the Supreme Court is inapplicable. Response at 15. Amazon is wrong.

Even under Amazon's erroneous and parsimonious interpretation of this doctrine as applying only when a litigant seeks to "arrest or countermand state tax collection," this action is precluded. Response at 15. Amazon asks the court to sanction its refusal to provide customer names and addresses which has and will operate to "arrest and countermand" NC Revenue's ability to assess and collect taxes.

Contrary to Amazon's analysis of the law, the similar doctrine of abstention also would require the court to decline to interfere in this state tax matter, even in the face of First Amendment claims. Amazon relies on *J-R Distributors, Inc. v. Eikenberry*, 725 F.2d 482, 487 (9th Cir. 1984), *reversed on other grounds sub nom, Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985), for the proposition that "abstention is generally inappropriate when first amendment rights are at stake." Response at 16. This particular statement by the Ninth Circuit drew a stinging retort by Justice O'Connor:

> This Court has never endorsed such a proposition. On the contrary, even in cases involving First Amendment challenges to a state statute, abstention may be required in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.

*Brockett*, 472 U.S. at 510 (O'Connnor, J., concurring) (internal citations omitted).

Amazon next erroneously asserts that "no procedural mechanism currently exists for Amazon to present its arguments." It states "if and when DOR initiates enforcement proceedings" – effectively conceding that its action is unripe – such a proceeding "would not

REPLY IN SUPPORT OF
N.C. MOTION татиDISMISS. - 10
10-cv-00664-MJP

assure Amazon a fair hearing." Response at 16. For the reasons explained *supra*, this concern is wholly unfounded.

## III. AMAZON'S CLAIM IS NOT RIPE BECAUSE NO SUMMONS EXISTS

Amazon maintains that NC Revenue has made "repeated and targeted threats" of summons enforcement against it.[6] Response at 2. Amazon contends that "[t]hreats of government enforcement of laws, rules or orders – whether in the civil, criminal or administrative context – overcome ripeness concerns" and that the "principles of ripeness do not require Amazon to wait for DOR to enforce its improper and outstanding information request before it obtains relief." Response at 3, 5. The law is to the contrary.

"One of the most firmly established principles of administrative law" is that courts cannot entertain pre-enforcement challenges to administrative summonses. *Lopes*, 155 F.R.D. at 15. The genesis for this rule is the decision of the Supreme Court in *Reisman*, 375 U.S. 440, involving a pre-enforcement challenge to an IRS tax summons. The *Reisman* rule is followed uniformly in all jurisdictions that have considered the issue, including the Ninth Circuit. *Lopes*, 155 F.R.D. at 15; *see also Gutierrez*, 1996 U.S. Dist. LEXIS 18875, at *5 (dismissing pre-enforcement challenge to IRS summons for lack of jurisdiction). Significantly, "[c]ourts have uniformly held that such challenges are not ripe for judicial review." *Lopes*, 155 F.R.D. at 15. Here, there has been no summons and no enforcement proceeding commenced, so Amazon's claim is not ripe.

Amazon's assertions of "hardship" to circumvent the doctrine of ripeness are equally unavailing. NC Revenue's employees are not the "thought police" and are not investigating what Amazon's customers are reading, watching or listening to.[7] *See* Alice Gomstyn,

---

[6] Amazon's argument on this point is diametrically opposed to its earlier contention that North Carolina lacks a plain, speedy and efficient remedy because NC Revenue may never institute a summons enforcement proceeding.
[7] Amazon also complains about North Carolina's refusal to enter into a "consent decree" prohibiting the Secretary from asking for any information in the future that Amazon might find objectionable. The Secretary declined this "offer" for obvious reasons. First, this court has no jurisdiction over the Secretary and his consent cannot alter this fundamental fact. Further, the North Carolina State Constitution prohibits any agreement to restrain the State's power of taxation: "The power of taxation . . . shall never be surrendered, suspended, or contracted away." N.C. CONST. art. V, § 2(1).

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 11
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

*Amazon.com: Fighting For Free Speech, or Against Sales Tax?* (Amazon's efforts to "whip[] up consumer concern about privacy violations" not legitimate). The only thing motivating NC Revenue is the enforcement of the State's sales and use tax laws. To that end, it is seeking commercial information about 50 million sales transactions between Amazon and its customers for which approximately $50 million in unpaid sales or use taxes is due the State. No matter how Amazon tries to twist and turn the facts, this case is about taxes, not the First Amendment.

## IV.  AMAZON'S CLAIMS FAIL AS A MATTER OF LAW

Amazon complains that NC Revenue has "leapfrogged to the merits" by its Rule 12(b)(6) motion. Response at 17. It is Amazon that has improperly "leapfrogged" in this action by prematurely filing a motion for summary judgment. NC Revenue did not move for summary judgment in this case because courts generally are unwilling to reach summary judgment when no answer has been filed. Federal courts have recognized that summary judgment motions before the defendant has answered the complaint are premature and should be denied, although they may be refiled at the proper time. *See, e.g.*, *Mohamed v. Jeppesen Dataplan, Inc.*, 579 F.3d 943, 961 n.9 (9th Cir. 2009) (the court granted dismissal, not summary judgment – "it could not have done otherwise" – where the defendant had not filed an answer); *Walker v. Zenk*, No. 4:CV-01-1644, 2007 U.S. Dist. LEXIS 96351, at *66-67 (M.D. Pa. 2007) (summary judgment motion should be denied without prejudice as premature where the defendant files a motion to dismiss in lieu of answer). Motions to dismiss are not responsive pleadings so the pleadings are not closed and the court will not have set deadlines for discovery and dispositive motions. *Id.* at *67. Amazon's motion for summary judgment should be denied as premature, and as a matter of law for its failure to state a claim for relief, if it is not terminated for lack of jurisdiction.

## **CONCLUSION**

For the reasons stated herein, defendant's motion to dismiss should be granted.

REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 12
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

DATED this the 6th day of August, 2010.

*Pro Hac Vice*:
**ATTORNEY GENERAL ROY COOPER**

By: */s/ Kay Linn Miller Hobart*
Kay Linn Miller Hobart
Special Deputy Attorney General
N.C. State Bar No. 16746
Telephone: (919) 716-6550
Facsimile: (919) 715-3550
Email: khobart@ncdoj.gov

By: */s/ Tiare B. Smiley*
Tiare B. Smiley
Special Deputy Attorney General
N.C. State Bar No. 7719
Telephone: (919) 716-6900
Facsimile: (919) 716-6763
Email: tsmiley@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602

**MCKAY CHADWELL, PLLC**

By: */s/ Michael D. McKay*
Michael D. McKay
WSBA No. 7040

By: */s/ Thomas M. Brennan*
Thomas M. Brennan
WSBA No. 30662
600 University St., Suite. 1601
Seattle, WA 98101
Telephone: (206) 233-2800
Facsimile: (206) 233-2809
Email: tmb@mckay-chadwell.com

*Attorneys for Defendant*
REPLY IN SUPPORT OF
N.C. MOTION TO DISMISS. - 13
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900 Fax (919) 716-6763