THE HONORABLE MARSHA J. PECHMAN

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, LLC,<br><br>         Plaintiff,<br><br>   v.<br><br>KENNETH R. LAY,<br><br>         Defendant.<br>_____<br><br>JANE DOE 1, JANE DOE 2,<br>JANE DOE 3, JANE DOE 4,<br>JANE DOE 5, JANE DOE 6, AND<br>CECIL BOTHWELL,<br><br>         Plaintiffs-Intervenors,<br><br>   v.<br><br>KENNETH R. LAY, and<br>AMAZON.COM, LLC,<br><br>         Defendants in Intervention. | No. 10-cv-00664-MJP<br><br>**NORTH CAROLINA<br>MOTION TO DISMISS<br>COMPLAINT IN INTERVENTION**<br>**(Fed. R. Civ. P. 12)**<br><br>NOTE ON MOTION CALENDAR:<br>September 24, 2010 |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOW COMES defendant Kenneth R. Lay, in his official capacity as Secretary of the
North Carolina Department of Revenue, by and through undersigned counsel, and moves the

NC MTD COMPLAINT IN INTERVENTION- 1
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900  Fax (919) 716-6763

court to dismiss the complaint in intervention filed in this action pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure for the following reasons:

1.   The court lacks jurisdiction of the subject matter of the complaint in intervention on the grounds that declaratory and injunctive relief under 42 U.S.C. § 1983 are barred under the Tax Injunction Act, 28 U.S.C. § 1341 ("TIA") and principles of comity.

2.   The court lacks jurisdiction of the subject matter of the complaint in intervention on the grounds that there is no pending summons enforcement proceeding so that this action is premature and lacks ripeness.

3.   The court lacks subject matter jurisdiction over intervenors' Video Privacy Protection Act ("VPPA") claim as to NC Revenue on the grounds that NC Revenue is not a proper party.

4.   The complaint in intervention fails to state a claim upon which relief can be granted in that the First Amendment and VPPA claims asserted have no basis in law or fact.

In support of this motion to dismiss, NC Revenue has filed the Declaration of Kenneth Lay, North Carolina Secretary of Revenue, the Declaration of Joseph A. Tetro, Director of Technology Services, and the Fourth Declaration of H. Alan Woodard, Director of Examinations.  In addition, NC Revenue relies on the three Declarations of Mr. Woodard filed previously in this action and served on intervenors.

## <u>OVERVIEW AND NATURE OF THE ACTION</u>

Amazon is the only proper defendant in this action brought by intervenors and the only defendant over which this court has jurisdiction.  Intervenors are seven individuals who alleged they purchased books, movies and videos from Amazon, most of whom are residents of North Carolina and have use tax reporting obligations to the State.  During the course of NC Revenue's investigation of the tax liability of Amazon and its North Carolina customers, Amazon unnecessarily provided NC Revenue with the ASIN numbers of its customers' purchases. Intervenors allege that, with this information, NC Revenue could search the Amazon website and potentially learn the titles of the books, movies and music purchased from Amazon – information that intervenors have now "anonymously" placed in the public domain by their pleadings along

NC MTD COMPLAINT IN INTERVENTION- 2
10-cv-00664-MJP

with other details of their personal lives.  NC Revenue has repeatedly explained to intervenors, as well as Amazon, that it did not request and has no need for the ASIN numbers; these numbers are useless in the assessment of either sales tax against Amazon or use tax against Amazon's customers and NC Revenue has eliminated the remote technical possibility of linking customer identities to the expressive content of items purchased.  Intervenors' speculation also ignores the presumption of good faith accorded to government officials.  Without any proof, intervenors ask this court to assume that NC Revenue employees would attempt to pry into the expressive reading, viewing and listening choices of Amazon's North Carolina customers when this information is wholly unnecessary to determine their use tax liability.  Conversely, NC Revenue does need customer names, addresses and purchase amounts to assess and collect taxes, information that Amazon has to date refused to provide.

Instead of bringing an action against Amazon for divulging ASIN numbers that could potentially disclose intervenors' expressive choices of reading, viewing and listening material, they have instead intervened in the existing tax dispute, siding with Amazon in its efforts to prevent NC Revenue from obtaining information necessary to assess and collect state taxes. Intervenors have filed this action under 42 U.S.C. § 1983 asking this court for a declaration that NC Revenue's request for customer names, addresses and purchase amounts violates their free speech and privacy rights.   In addition, intervenors seek a permanent injunction not only enjoining NC Revenue from obtaining customer names from Amazon, but also enjoining NC Revenue from ever asking for this information from any business in any audit.  Such interference with the administration of North Carolina's tax laws should not be countenanced by this court.

The administration of state tax laws, including the investigation and assessment of tax liabilities, is a matter of vital importance to the states.  Congress and the United States Supreme Court have made it abundantly clear that federal district courts are prohibited from interfering with so important a local function as the assessment and collection of taxes.  Based on the United States Supreme Court's broad reading of the Tax Injunction Act and comity principles in state tax matters, the court lacks jurisdiction over intervenors' claims for a variety of reasons.  First,

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

1  because intervenors seek to enjoin the assessment and collection of use taxes against Amazon's

2  North Carolina customers, which likely includes themselves,[1] their complaint, like Amazon's, is

3  barred by the Tax Injunction Act and principles of comity.  In addition, because there is no

4  pending summons enforcement, this action, like Amazon's, is premature and unripe and the court

5  therefore lacks jurisdiction for this reason as well.

6  Next, the court lacks subject matter jurisdiction over intervenors' VPPA claim against

7  NC Revenue because NC Revenue is not a proper party.  The plain language of the Act permits

8  an action only against a video tape service provider, which NC Revenue is not.  This court

9  therefore lacks jurisdiction over NC Revenue and intervenors have failed to state a claim.

10  Intervenors' VPPA claim may only proceed against Amazon, the proper defendant.

11  Finally, intervenors' complaint fails to state a claim.  Intervenors have no First

12  Amendment right not to have their names, addresses and purchase amounts disclosed to NC

13  Revenue in the course of an investigation into their use tax liability to the State.  This case is

14  about taxes, not the First Amendment.  North Carolina does not determine tax liability based on

15  the expressive content of the books, videos or music intervenors are reading, watching or

16  listening to.

17  ## FACTS

18  This is a tax investigation by the North Carolina Secretary of Revenue.  The fact that both

19  Amazon and its North Carolina customers are currently under audit has been explained in

20  previous filings with the court, as well as the operation of the North Carolina sales and use tax

21  and the Secretary's summons authority, and will not be reiterated here.

22

23  During the pendency of this litigation, two events have occurred.  First, NC Revenue

24  recently concluded its Internet Resolution Transaction Program ("ITRP").  *See* Woodard Decl.

---

[1]  It should be noted that this is not a class action and the intervenors are the sole plaintiffs despite the broad sweep of their requests for relief.  Moreover, as explained more fully below, because Amazon refuses to collect North Carolina sales tax on its sales, a fact explained to its customers, each of Amazon's North Carolina customers is legally liable for the use tax on their untaxed purchases from Amazon.  None of the intervenors has alleged that they have paid the use tax which is due the State.  Their omission to do so gives rise to the presumption that they have not paid all taxes due.

NC MTD COMPLAINT IN INTERVENTION- 4
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

II, Ex. 1.  This program was an effort to encourage the voluntary collection of sales taxes by internet retailers, such as Amazon.  NC Revenue explained that, for those participating retailers that agree to collect the sales tax beginning on 1 September 2010, it would not exercise its authority to gather information about their customers in order to collect the use tax.  *Id*. at ¶ 10.  NC Revenue is presently auditing a number of non-participating internet retailers, including Amazon, and has requested customer names from each of those retailers.  Woodard Decl. IV, ¶¶ 11, 14.  This litigation has delayed NC Revenue from obtaining customer names from Amazon.  *Id*. at ¶ 14.  Now that the ITRP has ended, NC Revenue is moving forward in its efforts to obtain customer names from the non-participating internet retailers under audit, including Amazon.  *Id*.

The second event is that NC Revenue has now precluded any possibility that customer names could somehow be linked to expressive content.  Intervenors' First amendment claim has always been more theoretical than real, and any cause for their concern has now been eliminated.  It has always been pure speculation that NC Revenue employees might go online to search Amazon's website with respect to each of the 50 million products sold and shipped to North Carolina customers for purposes of linking customer names with the titles of books, videos or music they have purchased.  Woodard Decl., ¶ 14.  Although NC Revenue asked Amazon to remedy its self-created problem by providing duplicate replacement disks with the ASIN numbers removed, Amazon has resisted this obvious and simple solution.  NC Revenue therefore took it upon itself to remedy the problem created by Amazon.  Woodard Decl. IV, ¶¶ 15, 16.  By deleting the ASIN data field from all electronic databases available to NC Revenue employees, the remote theoretical possibility of linking intervenors' names to specific products has been eliminated.  Woodard Decl. IV, ¶¶ 4-9; Tetro Decl.; Lay Decl.  Additional facts relating to the specific arguments are contained within the brief.

## ARGUMENT

## I.    STANDARD OF REVIEW

The "threshold question in every federal case [is] determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "It is to be presumed that a cause

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

lies outside this limited jurisdiction [of the federal courts], and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Insur. Co.*, 511 U.S. 375, 377 (1994). In the face of NC Revenue's motion to dismiss, intervenors bear the burden of persuading the court that jurisdiction exists. *United States v. Miller*, 83 A.F.T.R.2d (RIA) 1661, 1999 U.S. Dist. LEXIS 3064, at *1 (W.D. Wash. 1999) (party who asserts jurisdiction is present must, when challenged, plead and prove it); *see also In re Townley*, 91 A.F.T.R.2d (RIA) 2231, 2002 U.S. Dist. LEXIS 26497, at *14 (E.D. Wash. 2002) (same).

Significantly, "unlike a Rule 12(b)(6) motion, in a Rule 12(b)(1) motion, the district court is not confined by the facts contained in the four corners of the complaint – it may consider facts and need *not* assume the truthfulness of the complaint." *Americopters, LLC v. FAA*, 441 F.3d 726, 732 n.4 (9th Cir. 2006) (emphasis in original). In support of a Rule 12(b)(1) motion, the moving party may submit affidavits or rely on other evidence properly before the court. It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction. *Colwell v. Dep't of Health and Human Services*, 558 F.3d 1112, 1121 (9th Cir. 2009); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.), *cert. denied*, 493 U.S. 993 (1989). "The district court obviously does not abuse its discretion by looking to this extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual disputes." *St. Clair*, 880 F.2d at 201.

Here, there are multiple jurisdictional defects in the suit brought by intervenors. Intervenors have not and cannot meet their burden to prove the existence of jurisdiction and their action must be dismissed. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1988) (requirement that jurisdiction be established as threshold matter springs from limits of federal judicial power and is inflexible and without exception); *see also Canatella v. California*, 404 F.3d 1106, 1113 (9th Cir. 2005) (intervention cannot create jurisdiction where none otherwise exists).

NC MTD COMPLAINT IN INTERVENTION- 6
10-cv-00664-MJP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   THE TAX INJUNCTION ACT AND PRINCIPLES OF COMITY BAR THIS ACTION.

### A.   The Tax Injunction Act Bars Intervenors' Action.

The Tax Injunction Act prohibits federal court actions that suspend or restrain the assessment or collection of state taxes.  Intervenors seek declaratory and injunctive relief that would prevent NC Revenue from obtaining information necessary to assess and collect a tax.  Their action is therefore barred by the "broad jurisdictional barrier" of the TIA and must be dismissed.  *Arkansas v. Farm Credit Services*, 520 U.S. 821, 825 (1997); *see also Rosewell v. LaSalle National Bank*, 450 U.S. 503, 522 (1981) (the TIA is "first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes").

The passage of the Tax Injunction Act in 1937 represents one manifestation of the aversion repeatedly shown by Congress and the Supreme Court to federal interference with state tax administration.  *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 586 (1995).  The TIA "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S 68, 73 (1976).  The reason for this policy of federal non-interference was articulated by the Court in 1871: "It is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible."  *Dows v. Chicago*, 78 U.S. (11 Wall.) 108, 110 (1871).   The Supreme Court very recently underscored the vitality and criticality of these fundamental principles.   *Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323 (2010).

In *Commerce Energy*, the Court sharply distinguished its earlier decision in *Hibbs v. Winn*, 542 U.S. 88 (2004), and that case cannot confer jurisdiction here.  Unlike this case, in *Hibbs*, the state taxing authority did not contend that the relief requested (the return of money from state tuition organizations to the state's general fund) would interfere with the state's

NC MTD COMPLAINT IN INTERVENTION- 7
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

assessment or collection efforts.  *Id*. at 96.  The Court also drew a critical distinction between "claims that would reduce state revenues" and "claims that would enlarge state receipts."  *Id*. at 108.  There, because the relief could have only operated to increase state revenues, the Court held that the Tax Injunction Act did not apply.  Here, unlike *Hibbs*, the relief requested by intervenors can only serve to reduce state revenues.

The Ninth Circuit has recognized the broad reach of the TIA, stating that "[t]he rule codified in § 1341 is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems."  *Dillon v. Montana*, 634 F.2d 463, 466 (9th Cir. 1980) (internal quotations omitted); *see also Jerron West, Inc. v. California State Board of Equalization*, 129 F.3d 1334, 1338 (9th Cir. 1997) (TIA has been "broadly construed" to bar federal court jurisdiction over actions seeking interference with a state's tax assessment and collection processes), *cert. denied*, 525 U.S. 819 (1998); *May Trucking Co. v. Oregon DOT*, 388 F.3d 1261, 1266 (9th Cir. 2004) (rejecting "cramped construction" as counter to Supreme Court's interpretation of TIA as "broad jurisdictional barrier").

The Court of Appeals for the Ninth Circuit has applied these principles to a comparable situation in *Blangeres v. Burlington Northern, Inc.,* 872 F.2d 327, 328 (9th Cir. 1989) (per curiam) (affirming district court ruling that TIA deprived it of subject matter jurisdiction). There, the court held that even an indirect restraint on the assessment of state taxes violates the TIA.  In that case, the plaintiffs sought to enjoin the production of records by their employer to state taxing authorities.  The court held that "the requested injunction would preclude Idaho and Montana from taxing the Burlington Northern employees because the states would be unable to obtain the information necessary for assessment" and would therefore impermissibly "'restrain assessment' of state taxes."  *Id*.  The court further observed that "[t]he fact that the injunction would restrain assessment indirectly rather than directly does not make the Tax Injunction Act inapplicable."  *Id*.  Just as in *Blangeres*, intervenors seek to prevent a third party from providing information about them (and others) to a state taxing authority.  Without this information, NC

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

Revenue cannot assess a tax against Amazon's North Carolina customers, including intervenors. *Blangeres* is directly on point and requires dismissal of intervenors' action.

In their declarations, intervenors freely admit that they have purchased tangible personal property from Amazon. Most of the intervenors are residents of North Carolina. Intervenors have failed to allege, however, that they remitted the proper amount of use taxes to NC Revenue as required by law. Amazon has admitted that it does not collect sales taxes on sales of its own products shipped to North Carolina and has informed its customers of this fact.[2] Woodard Decl. IV, ¶ 12. As a result, Amazon's customers are liable for the use tax under North Carolina law. As clearly explained on the North Carolina individual income tax form: "An individual in North Carolina owes use tax on an out-of-state purchase when the item purchased is subject to North Carolina sales tax and the retailer making the sale does not collect sales tax on the sale . . . . When an out-of-state retailer does not collect sales tax, the responsibility of paying the tax falls on the purchaser." Woodard Decl., ¶ 18, Ex. G. Of course, ignorance of the law is no defense to failure to comply. It is firmly established that taxpayers are presumed to know the law and that a mistake of law does not excuse liability. *Wells v. Comm'r*, 99 T.C.M. (CCH) 1032, 2010 Tax Ct. Memo LEXIS 4, at *11 (2010); *see also United States v. Aguilar*, 883 F.2d 662, 673 (9th Cir. 1989) (ignorance of the law as no defense an "ancient doctrine").

Because Amazon has refused to collect sales taxes on sales of its products shipped to North Carolina customers, those customers are liable for the use tax. Significantly, although intervenors have admitted making multiple tax-free purchases from Amazon, not one has alleged that she remitted the proper amount of use tax due on those purchases to NC Revenue.[3] Based on intervenors' failure to provide this evidence within their control, a presumption arises that

---

[2] Significantly, Amazon does collect North Carolina sales tax for a list of "select merchants." Based on its collection of sales tax on its own products in five states and elsewhere for selected merchants, Amazon, like other internet retailers, plainly understands the application of sales tax rates and exemptions based on the "type of item purchased" without reference to expressive content. Woodard Decl. IV, ¶¶ 11-14.

[3] NC Revenue does not dispute that Jane Doe 5 would have no use tax obligation to North Carolina if she in fact is not a resident of the State and otherwise lacks sufficient contacts for the assessment of a use tax. *See* Woodard Decl. II, ¶ 9.

NC MTD COMPLAINT IN INTERVENTION- 9
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

intervenors did not, in fact, remit the proper amount of use tax to NC Revenue.[4]  *Wichita Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158, 1165 (1946), *aff'd*, 162 F.2d 513 (10th Cir. 1947); *see also Hann v. Venetian Blind Corp.*, 111 F.2d 455, 459 (9th Cir. 1940).

The use tax is not a recent development created for online purchasing.  Rather, it has long been recognized that the function of the use tax is "to prevent the evasion of the North Carolina sales tax" by persons purchasing property outside of North Carolina for use within the State, as intervenors have done.  *Johnston v. Gill*, 224 N.C. 638, 643, 32 S.E.2d 30, 33 (1944).  Intervenors cannot dispute that customer names are critical for NC Revenue to assess any unpaid use tax liability from Amazon's customers, including themselves.  Intervenors' action therefore falls squarely within the TIA's jurisdictional bar as interpreted by the Ninth Circuit because it interferes with NC Revenue obtaining the information necessary to assess a tax.

## B.   Principles of Comity Bar Intervenors' Action.

Even if the TIA did not bar intervenors' efforts to enlist the federal court to interfere with NC Revenue obtaining the information necessary to assess use taxes against Amazon's North Carolina customers, comity does.  "More embracive than the TIA, the comity doctrine applicable in state taxation cases restrains federal courts from entertaining claims for relief that risk disrupting state tax administration."  *Commerce Energy,* 130 S. Ct. at 2328 (citing *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100 (1981)).  Here, intervenors' claims not only seek to restrain the assessment and collection of state taxes, but "risk disrupting tax administration" and are therefore barred by the more embracive doctrine of comity.

In *Commerce Energy*, the Court granted certiorari to resolve the disagreement among the Circuits as to the effect of its decision in *Hibbs* on the comity doctrine.  The Sixth Circuit agreed with the Seventh and Ninth Circuits, which had read *Hibbs* to rein in the comity doctrine, and it disagreed with the Fourth Circuit, which had concluded that *Hibbs* left the comity doctrine

---

[4]   Of course, even if intervenors had made such allegations, NC Revenue would still be required to verify the correctness of those allegations and that the proper amount of tax had in fact been paid.  Further, any such allegations by this microcosm of Amazon's North Carolina customers would not resolve the much larger question of whether use tax had been remitted on the remainder of the 50 million transactions.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

untouched in *DIRECTV, Inc.* v. *Tolson*, 513 F.3d 119 (4th Cir. 2008).  The Court reaffirmed the continuing vitality of comity after *Hibbs*: "Our post-Act decisions, however, confirm the continuing sway of comity considerations, independent of the Act."  *Commerce Energy*, 130 S. Ct. at 2331.  The *Commerce Energy* decision corrected the restrictions improperly placed on the broad application of comity by some of the lower federal courts.  The Court stated "[a]lthough our precedents affirm that the comity doctrine is more embracive than the TIA, several Courts of Appeals, including the Sixth Circuit in the instant case, have comprehended *Hibbs* to restrict comity's compass . . . .  *Hibbs*, however, has a more modest reach."  *Id*. at 2332.

Those same precedents counsel restraint here.  In *LaSalle National Bank*, 450 U.S. at 525-26 n.33, the Court observed that, even where the Tax Injunction Act would not bar federal court interference in state tax administration, "principles of federal equity may nevertheless counsel the withholding of relief."  Similarly, in *Fair Assessment*, 454 U.S. at 111, the Court stated: "The Court's reliance in *Great Lakes* upon the necessity of federal-court respect for state taxing schemes demonstrates not only the post-Act vitality of the comity principle, but also its applicability to actions seeking a remedy other than injunctive relief."  More recently, the Court emphasized: "We have long recognized that principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *National Private Truck Council*, 515 U.S. at 586.

In both *Great Lakes* and *Fair Assessment*, the Court focused not on the specific form of relief requested, but on the fact that "in every practical sense" it would "operate to suspend collection of the state taxes until the litigation is ended."  *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943); *Fair Assessment*, 454 U.S. at 111.  Because of this disruptive effect on state tax administration, comity required federal court restraint.  *Fair Assessment*, 454 U.S. at 111 (section 1983 action for damages barred by comity and TIA); *Great Lakes*, 319 U.S. at 299 (declaratory judgment action barred by comity).  Here, just as in *Fair Assessment* and *Great Lakes*, the practical effect of the relief requested by intervenors will operate to suspend collection of state taxes at least until the litigation is ended and perhaps

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900  Fax (919) 716-6763

thereafter.   This litigation already has resulted in delaying NC Revenue's use tax audit of Amazon's customers while similar audits of other internet retailers and their customers are proceeding.  Woodard Decl. IV, ¶14.  Principles of comity bar the disruptive effect of this action on North Carolina's tax system and intervenors' claims must be dismissed for this reason as well.

## C.  <u>North Carolina Provides an Adequate Remedy</u>.

Although there is a limited exception to the jurisdictional bar of the TIA and comity, that exception has no application here.  "While the Act excludes jurisdiction over actions seeking district court intrusion into the state taxation process, the Act provides an exception where there is no adequate state remedy."  *Jerron West,* 129 F.3d at 1338.  In order to be faithful to the concerns underlying the TIA, the Supreme Court has held that this "plain, speedy and efficient" exception must be narrowly construed.  *California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982); *see also May Trucking*, 388 F.3d at 1270 (federal courts must construe narrowly this exception to the Tax Injunction Act).   The state remedy must meet "certain minimal *procedural* criteria."  *LaSalle National Bank*, 450 U.S. at 512 (emphasis in original).  Specifically, it must provide a taxpayer "with a 'full hearing and judicial determination' at which [the taxpayer] may raise any and all constitutional objections."  *Id*. at 514.

Here, intervenors have a "plain, speedy and efficient" remedy in the North Carolina state courts to challenge any summons that NC Revenue might issue and seek to enforce, including a summons requesting customer names and purchase amounts.  The United States Supreme Court has held that the IRS summons enforcement process provides an adequate remedy at law and that a party cannot file an action for declaratory or injunctive relief in an effort to preempt these procedures.  *Reisman v. Caplin,* 375 U.S. 440, 449 (1964).   Because the North Carolina summons procedure is modeled after the federal procedure, this holding applies equally to the State procedure, as interpreted by the North Carolina appellate courts.  *See State v. Davis*, 96 N.C. App. 545, 551, 386 S.E.2d 743, 746 (1989); *see also* I.R.C. § 7604.  Like its federal counterpart, a state summons is not self-enforcing.  *Davis*, 96 N.C. App. at 551, 386 S.E.2d at 746.  Because the Secretary must seek enforcement of his summons from the superior court, "the

NC MTD COMPLAINT IN INTERVENTION- 12
10-cv-00664-MJP

court's scrutiny of the order will ensure that no abuse of process occurs." *Id.* The Court of Appeals explained that a summons under N.C. Gen. Stat. § 105-258 would violate constitutional protections if it were "overly broad, not issued in good faith for a legitimate purpose, or not relevant to that purpose." *Id.* at 552, 386 S.E.2d at 746. The review accorded a party subject to North Carolina's summons enforcement proceeding is fully consistent with the standards of review for a federal summons. *See United States v. Powell*, 379 U.S. 48 (1964). Like its federal counterpart, the Secretary's administrative summons power is necessary to "allow[] investigations on the suspicions that a [tax] law is being violated or even because the Department wants assurances that it is not." *Davis*, 96 N.C. App. at 552, 386 S.E.2d at 746.

Recently, the North Carolina Supreme Court held that N.C. Gen. Stat. § 105-258 "expressly gives the Superior Court of Wake County jurisdiction over summons enforcement proceedings." *In re Summons Issued to Ernst & Young, LLP,* 363 N.C. 612, 617, 684 S.E.2d 151, 154 (2009). Pursuant to this "express grant of jurisdiction," the state court has the inherent authority to take any and all actions reasonably necessary to administer its duties under the statute, including providing third parties with notice and an opportunity to assert privileges. *Id.* This holding is entirely consistent with that of the United States Supreme Court in *Reisman*. Indeed, in *Ernst & Young*, the superior court plainly adhered to *Reisman* by providing notice and an opportunity to be heard to the taxpayer, Wal-Mart, who then intervened in the action and litigated the matter through the appellate courts.

The legal precedents of *Reisman*, *Ernst & Young* and *Davis* fully demonstrate intervenors' right to appear, be heard and to raise constitutional or other objections at any summons enforcement action under N.C. Gen. Stat. § 105-258; nothing more is required. *LaSalle National Bank*, 450 U.S. at 512; *see also Lopes v. Resolution Trust Corp.*, 155 F.R.D. 14, 16 (D.R.I. 1994) ("enforcement proceeding is an adequate remedy at law, because all objections . . . can be raised in that proceeding"). North Carolina's procedures more than meet the "minimal procedural standards" required by the United States Supreme Court. Here, if and when NC Revenue exercises its authority to issue and enforce a summons, N.C. Gen. Stat. § 105-

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6900   Fax (919) 716-6763

258 provides a "plain, speedy and efficient" remedy for intervenors to raise any objections to the information requested.[5]   Furthermore, NC Revenue has eliminated the theoretical possibility that customer names and expressive content could be linked.   No better relief could be provided by the courts.   Intervenors therefore cannot invoke the narrowly construed exception of an inadequate state court remedy that would allow them to bring this action in federal court.

**D.      § 1983 Does Not Overcome the Jurisdictional Bar of the TIA and Comity.**

Intervenors' claims are barred by the jurisdictional bar of the TIA and comity.   The fact that intervenors bring their action under 42 U.S.C. § 1983 does not change this result.   The TIA forecloses declaratory and injunctive relief in the federal courts and has been held specifically to bar claims brought under 42 U.S.C. § 1983.   In *National Private Truck Council*, 515 U.S. at 588, the Court held: "[T]he background presumption that federal law generally will not interfere with administration of state taxes leads us to conclude that Congress did not authorize injunctive or declaratory relief under § 1983 in state tax cases when there is an adequate remedy at law."   The Court further explained that "[o]ur interpretation is supported not only by the background principle of federal noninterference discussed in *Fair Assessment*, but also by the principles of equitable restraint discussed at length in that case."   *Id.* at 590.   The complaint in intervention is brought under 42 U.S.C. § 1983 and thus falls squarely and indisputably within the TIA's prohibition as interpreted by the United States Supreme Court.

Nor does the fact that intervenors attempt to raise a First Amendment challenge alter the jurisdictional analysis.   There is no special exemption to the Tax Injunction Act for taxpayers raising First Amendment claims.   As the Supreme Court has explained: "Carving out a special exception [to the TIA] for taxpayers raising First Amendment claims would undermine significantly Congress' primary purpose to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes."   *Grace Brethren Church*, 457 U.S. at 416-17 (internal quotations omitted).

---

[5]   Proceedings in superior court under the statute are public proceedings.   If a summons enforcement proceeding is commenced, the intervenors will be provided an opportunity to appear in the North Carolina courts to oppose NC Revenue's request for customer information.   Woodard Decl. IV, ¶ 17.

NC MTD COMPLAINT IN INTERVENTION- 14
10-cv-00664-MJP

The Eleventh Circuit Court of Appeals has squarely addressed the intersection of the TIA, the First Amendment and § 1983, unequivocally holding that the TIA prevails.  The court rejected the argument that "the Tax Injunction Act does not relieve federal courts of jurisdiction over any of the claims raised, because important constitutional rights are at issue" as "simply incorrect."  *Miami Herald Publishing Co. v. Hallandale*, 734 F.2d 666, 672 (11th Cir. 1984).  The court further explained: "Nor is the jurisdictional bar to challenging state tax laws in federal courts avoided when suit is brought under 42 U.S.C. § 1983; this remains the case even though the § 1983 action may involve significant first amendment issues."  *Id*. at 672-73 (internal citations omitted) (citing *Fair Assessment*, 454 U.S. 100; *Grace Brethren Church*, 457 U.S. at 415).  Here, too, the fact that intervenors cast their action as a First Amendment challenge brought under § 1983 cannot overcome the jurisdictional bar of the TIA and comity.

## III.   THE COURT LACKS JURISDICITION BECAUSE THERE IS NO SUMMONS ENFORCEMENT ACTION PENDING.

Even if intervenors could somehow overcome the "broad jurisdictional barriers" of the TIA and comity, the court lacks jurisdiction for another separate and independent reason – there is no summons enforcement action pending.[6]  "One of the most firmly established principles of administrative law" is that courts cannot entertain pre-enforcement challenges to administrative summonses.  *Lopes*, 155 F.R.D at 15.

The genesis for this rule is the decision of the Supreme Court in *Reisman,* involving a pre-enforcement challenge to an IRS tax summons.  There, the IRS issued a summons under I.R.C. § 7602 to an accounting firm seeking records relating to certain taxpayers, the Bromleys.  The summons directed the accountants to appear before the IRS and provide testimony and records.  The Bromleys brought an action for declaratory and injunctive relief against the IRS and the accounting firm prior to the time for responding to the summons, alleging that the

---

[6]  This jurisdictional defect is sometimes phrased in terms of ripeness.  *See, e.g., Lopes*, 155 F.R.D. at 15 ("Courts have uniformly held that such challenges are not ripe for judicial review."); *see also Southern Pacific Transp. Co. v. Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990) ("Ripeness is more than a mere procedural question; it is determinative of jurisdiction.  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.").

NC MTD COMPLAINT IN INTERVENTION- 15
10-cv-00664-MJP

accounting firm intended to comply.  The United States Supreme Court denied declaratory and injunctive relief, holding that the Bromleys had an adequate remedy at law.  The Court held that both the parties summoned and those affected by a disclosure may appear or intervene in any summons enforcement action and challenge the summons by asserting their constitutional or other claims.  *Reisman,* 375 U.S. at 445, 449.  It specifically held that any enforcement action would be an adversary proceeding affording judicial determination of all challenges to the summons.  *Id*. at 446.

"[T]he *Reisman* rule is followed uniformly in all jurisdictions that have considered the issue of pre-enforcement review of administrative agency subpoenas," including the Ninth Circuit.  *Lopes*, 155 F.R.D. at 16.  "[T]hese courts have reiterated that the enforcement proceeding is an adequate remedy at law, because all objections . . . can be raised in that proceeding."  *Id*.  For example, in *Gutierrez v. United States*, 78 A.F.T.R.2d (RIA) 6616, 1996 U.S. Dist. LEXIS 18875, at *5 (E.D. Wash. 1996), the court dismissed an action challenging four IRS summonses for lack of jurisdiction because the IRS had not instituted summons enforcement proceedings under I.R.C. § 7604.   Similarly, in *Maisonneuve v. United States*, 103 A.F.T.R.2d (RIA) 1309, 2009 U.S. Dist. LEXIS 24743, at *3 (D. Colo. 2009), the court held that it was "well settled that courts cannot sustain pre-enforcement challenges to IRS summonses."  The Ninth Circuit Court of Appeals has also specifically held that "[a] remedy at law exists through intervention of the taxpayer in judicial proceedings brought by the Commissioner in enforcement of his summons."  *Kelley v. United States*, 503 F.2d 93, 93 (9th Cir. 1974) (citing *Reisman*, 375 U.S. 440).[7]

A First Amendment challenge does not overcome the failure of jurisdiction.  "The case law is also well settled that the nature of the pre-enforcement objections to the subpoena is irrelevant under *Reisman*.  The courts have consistently held that *all* objections, including constitutional objections, may be raised *only* when the government seeks enforcement in district

---

[7]   Both *Reisman* and *Kelley* were decided prior to the time that the Internal Revenue Code was amended to add I.R.C. § 7609, which provides a statutory right of intervention in enforcement actions relating to third party summons. Tax Reform Act of 1976, P.L. 94-455, § 1205(a).

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

court." *Lopes*, 155 F.R.D. at 17 (emphasis in original).   The Ninth Circuit concurs.   *See Howfield v. United States*, 409 F.2d 694, 697 (9th Cir. 1969) ("entirely adequate remedy at law" exists because all defenses to a summons, including constitutional ones, could be raised, argued and passed on by a neutral judicial officer during enforcement proceedings).   "Nor is the form of requested relief relevant, since the absence of jurisdiction to review pre-enforcement challenges to agency subpoenas [p]recludes any relief."   *Lopes*, 155 F.R.D. at 17.

This court has also recognized that, where a tax summons has been withdrawn, there is no existing "case or controversy" and the taxpayer's challenge "must be dismissed for lack of jurisdiction."   *Tift v. Internal Revenue Service*, 101 A.F.T.R.2d (RIA) 2645, 2008 U.S. Dist. LEXIS 52391, at *3 (W.D. Wash. 2008) (the court further held that it lacked jurisdiction over the taxpayer's requests for injunctive and declaratory relief because they were barred by the Anti-Injunction Act and the Declaratory Judgment Act).   This court also dismissed another challenge to a withdrawn summons for lack of jurisdiction despite the petitioner's concern that a future summons might be issued.   *Pacific Fisheries, Inc. v. United States*, 94 A.F.T.R.2d (RIA) 5933, 2004 U.S. Dist. LEXIS 21395, at *1 (W.D. Wash. 2004).   The court observed that if a later summons were issued, the petitioner "may take steps at that time to protect itself from harm."   *Id.* at *4.[8]

The federal case law on IRS tax summonses is equally applicable to NC Revenue's tax summonses and it plainly prohibits pre-enforcement challenges like that brought by intervenors. North Carolina's summons procedure is modeled after the federal procedure.[9]   A summons

---

[8]   This court dismissed the action on the grounds of mootness because the tax summons had been withdrawn.  Here, the action is both premature and moot.  The basis for intervenors' claim has been mooted by NC Revenue's actions to eliminate the problem of ASIN numbers unnecessarily created by Amazon.  Article III of the federal constitution deprives the court of jurisdiction unless an actual and ongoing controversy exists.  When there is no longer a possibility that a party can obtain relief and subsequent events establish the alleged violations could not reasonably be expected to recur, federal courts lack jurisdiction. See *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003); *Ruiz v. City of Santa Maria*, 160 F.3d 543, 548-49 (9th Cir. 1998); *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988).

[9]   North Carolina's summons procedure is contained in N.C. Gen. Stat. § 105-258, which incorporates the procedure for both the issuance and enforcement of a summons.  The federal procedure is contained in I.R.C. § 7602, which provides the authority to issue a summons, and I.R.C. § 7604, which provides the procedure for enforcing a summons.  The North Carolina statute contains language very similar to that in both I.R.C. §§ 7602(a) and 7604(a) and (b).

NC MTD COMPLAINT IN INTERVENTION- 17
10-cv-00664-MJP

issued by the North Carolina Secretary of Revenue pursuant N.C. Gen. Stat. § 105-258 is the state equivalent of a civil summons issued by the IRS pursuant to 26 U.S.C. § 7602. *Davis*, 96 N.C. App. at 551, 386 S.E.2d at 746. Like its federal counterpart, once a summons is issued by the Secretary, it is only enforceable by a judicial proceeding. *Id*. In those proceedings, the state court is authorized to determine, among other things, whether the summons violates constitutional protections and to provide parties and intervenors with notice and an opportunity to assert privileges. *In re Summons Issued to Ernst & Young*, 363 N.C. at 617, 684 S.E.2d at 154. Intervenors therefore have the ability to intervene in any summons enforcement action NC Revenue may institute in North Carolina state courts in the future. Indeed, the summons enforcement litigation in *Ernst & Young* confirms this fundamental fact. There, when the Secretary brought a summons enforcement action in state court to enforce a summons issued to Ernst & Young, consistent with *Reisman*, the court ordered that Wal-Mart be provided with notice. Wal-Mart then filed a motion to intervene which the court allowed. In fact, it was Wal-Mart, not Ernst & Young, that litigated the summons through the superior court, the North Carolina Court of Appeals and the North Carolina Supreme Court. As the *Ernst & Young* litigation unequivocally demonstrates, intervenors have access to a judicial forum for the determination of any constitutional or other claim they may wish to raise in the event NC Revenue commences a summons enforcement action. Unless and until such time, however, their pre-enforcement challenge is premature and must be dismissed for lack of jurisdiction.

## IV. INTERVENORS' COMPLAINT FAILS TO STATE A CLAIM BECAUSE CUSTOMER IDENTITIES ARE NOT PROTECTED UNDER THE FIRST AMENDMENT.

Intervenors' complaint fails to state a claim for relief. Intervenors have no First Amendment right not to have their names, addresses and purchase amounts disclosed to NC Revenue in the course of an investigation into their use tax liability to the State of North Carolina. "[N]ot all of a bookseller's records are protected by the First Amendment." *Tattered Cover, Inc. v. Thornton*, 44 P.3d 1044, 1053 n.17 (Colo. 2002). This point was obvious to the

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

court: "Certainly, bills and other bookstore records that do not list the titles of books purchased by customers" are not protected by the First Amendment. *Id*. Intervenors must understand this fundamental concept because they have relied on this authority in their filings with the court.

Regarding intervenors' speculation that NC Revenue may link the customer names that NC Revenue does not currently possess with ASIN numbers, it is firmly established that "[t]he good faith of such [taxing] officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party." *Sunday Lake Iron Co. v. Wakefield*, 247 U.S. 350, 353 (1918).

## V.  INTERVENOR'S VPPA CLAIM MUST BE DISMISSED

### A.     <u>The Court Lacks Jurisdiction Because NC Revenue Is Not a Proper Party</u>.

Intervenors' VPPA claim must be dismissed as to NC Revenue because NC Revenue is not a proper party. Under the plain language of the VPPA, Amazon is the only proper defendant. The court therefore lacks jurisdiction over intervenors' VVPA claim against NC Revenue. *See Bosset v. Internal Revenue Service*, 97 A.F.T.R.2d (RIA) 1991, 2006 U.S. Dist. LEXIS 97669 (M.D. Fla. 2006) (dismissing complaint against IRS for lack of subject matter jurisdiction because IRS not a proper party); *see also Parenti v. Internal Revenue Service*, 91 A.F.T.R.2d (RIA) 1136, 2003 U.S. Dist. LEXIS 3641 (W.D. Wash. 2003) (court only has jurisdiction over proper party defendants, which did not include employees of the IRS).

Intervenors allege that "[i]f DOR obtains these personally identifiable video or audiovisual purchase records, DOR will also be in violation of the Act for possessing private information as a direct result of the violation of the Act, knowing that such material has not lawfully been provided to it under the Act." Compl. ¶ 147. It asks this court for a declaration that "DOR's demand for the disclosure of personally identifiable customer information from Amazon concerning the sales of video or audiovisual material violates the [VPPA]." Compl. p. 32.

NC MTD COMPLAINT IN INTERVENTION- 19
10-cv-00664-MJP

While intervenors may have a colorable claim against Amazon under the VPPA,[10] the Act does not apply to NC Revenue.  18 U.S.C. § 2710(b) plainly states: "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]."  Because NC Revenue is not a video tape service provider, it cannot be liable under the Act and is therefore not a proper party.  The Court of Appeals for the Sixth Circuit has held that, under the plain language of the statute, only a video tape service provider (VTSP) can be liable under the VPPA and that any party that did not meet the statutory definition of a VTSP was not a proper party in an action brought under 18 U.S.C. § 2710.  *Daniel v. Cantrell*, 375 F.3d 377, 381-82, 384 (6th Cir. 2004), *cert. denied*, 543 U.S. 1060 (2005).  Intervenors have forecast that they intend to rely on an older district court decision from New Jersey, *Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D.N.J. 1996), for their claim against NC Revenue.  The Court of Appeals for the Sixth Circuit has correctly and harshly criticized this decision, however, stating: "We do not know what statute the court in *Dirkes* was reading."  *Daniel*, 375 F.3d at 383 n.3. The Court of Appeals for the Eleventh Circuit has also questioned *Dirkes*: "[A]ny statement that the district court in New Jersey may have made in *Dirkes* has been weakened since the Sixth Circuit recently expressly rejected the *Dirkes* court's reasoning regarding who could be sued under the VPPA."  *Kehoe v. Fidelity Federal Bank*, 421 F.3d 1209, 1216 n.6 (11th Cir. 2005), *cert. denied*, 547 U.S. 1051 (2006).  Under the clear weight of authority, NC Revenue is not a proper party and intervenors' VPPA claim must be dismissed as to it.

Finally, even if NC Revenue could somehow be considered a proper party in light of *Daniel*, the provisions of the VPPA simply cannot trump the jurisdictional bar of the TIA. *Blangeres*, 872 F.2d at 328 ("The statute does not expressly provide an exception to the Tax Injunction Act.  We will not carve out exceptions to the Tax Injunction Act unless Congress

---

[10]   NC Revenue takes no position on this issue other than Amazon is the only proper party defendant to any claims intervenors have under the VPPA.

NC MTD COMPLAINT IN INTERVENTION- 20
10-cv-00664-MJP

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

clearly expresses an intent to create an exception."). Intervenors' VPPA claim against NC Revenue must be dismissed for lack of jurisdiction.

### B.     Intervenors' VPPA Challenge Fails to State a Claim.

Even if the court were to exercise jurisdiction over intervenors' VPPA claim against NC Revenue, it nevertheless must be dismissed. The VPPA imposes liability on a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any customer of such provider." 18 U.S.C. § 2710(b). Most fundamentally, because NC Revenue is not a video tape service provider, it cannot be liable under the VPPA and intervenors have failed to state a claim as to NC Revenue. In addition, because no customer names have been provided to NC Revenue, no violation of the VPPA has occurred. Intervenors' speculation that Amazon may provide customer names and that NC Revenue could then link the customer names with the ASIN titles is insufficient to state a claim for a current violation of the VPPA. As explained above, this claim also fails because the good faith of taxing officers is presumed.

### CONCLUSION

For the reasons stated herein, defendant's motion to dismiss should be granted and the complaint in intervention should be dismissed in its entirety.

**N.C. Department of Justice**
Post Office Box 629
Raleigh, North Carolina  27602
(919) 716-6900   Fax (919) 716-6763

DATED this the 2nd day of September, 2010.

*Pro Hac Vice*:

**ATTORNEY GENERAL ROY COOPER**
By: */s/ Kay Linn Miller Hobart*
Kay Linn Miller Hobart
Special Deputy Attorney General
N.C. State Bar No. 16746
Telephone: (919) 716-6550
Facsimile: (919) 715-3550
Email:  khobart@ncdoj.gov

By: */s/ Tiare B. Smiley*
Tiare B. Smiley
Special Deputy Attorney General
N.C. State Bar No. 7719
Telephone:  (919) 716-6900
Facsimile:  (919) 716-6763
Email:  tsmiley@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC  27602

**MCKAY CHADWELL, PLLC**

By:  */s/ Michael D. McKay*
Michael D. McKay
WSBA No. 7040

By: */s/ Thomas M. Brennan*
Thomas M. Brennan
WSBA No. 30662
600 University St., Suite. 1601
Seattle, WA  98101
Telephone:  (206) 233-2800
Facsimile:  (206) 233-2809
Email:  tmb@mckay-chadwell.com

*Attorneys for Defendant*

NC MTD COMPLAINT IN INTERVENTION- 22
10-cv-00664-MJP