THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, LLC,
     Plaintiff,

     v.

KENNETH R. LAY, in his official capacity as
Secretary of the North Carolina Department of
Revenue,
     Defendant.

JANE DOE 1, JANE DOE 2, JANE DOE 3,
JANE DOE 4, JANE DOE 5, JANE DOE 6,
AND CECIL BOTHWELL,
     Plaintiffs-Intervenors,

     v.

KENNETH R. LAY, in his official capacity as
Secretary of the North Carolina Department of
Revenue, and AMAZON.COM, LLC,
     Defendants in Intervention.

No. 2:10-cv-00664-MJP

**INTERVENORS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
COMPLAINT IN INTERVENTION**

**NOTE ON MOTION CALENDAR:
SEPTEMBER 24, 2010**

**Oral Argument Requested**

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ...................................................................................................ii

**INTRODUCTION**...............................................................................................................1

**ARGUMENT** ....................................................................................................................2

I.      DOR'S DELETION OF ITS ELECTRONIC COPIES OF THE
        DETAILED PRODUCT INFORMATION HAS NOT CHANGED
        ANYTHING ..................................................................................................2

        A.      Intervenors' Constitutional Concerns And Legal Claims Remain
                The Same .........................................................................................2

        B.      Intervenors' Claims Have Not Been Rendered Moot By DOR's
                Deletion Of Its Electronic Copies Of The Detailed Product
                Information ......................................................................................6

II.     THE TAX INJUNCTION ACT AND COMITY DO NOT BAR THIS
        CASE  BECAUSE THIS LAWSUIT DOES NOT INTERFERE WITH
        STATE TAX  ASSESSMENT OR COLLECTION..................................................8

III.    THIS CASE IS RIPE FOR REVIEW BECAUSE IT PRESENTS
        PURELY LEGAL ISSUES, DOR HAS ALREADY THREATENED TO
        ENFORCE ITS REQUESTS,  AND THE REQUESTS ARE
        PRESENTLY HAVING A CHILLING EFFECT .....................................................11

IV.     INTERVENORS STATE CLAIMS FOR VIOLATION OF THE FIRST
        AMENDMENT AND THE VIDEO PRIVACY PROTECTION ACT ...................19

        A.      DOR's Requests For Information Violate The First Amendment.................20

        B.      DOR's Requests For Information Violate The Video Privacy
                Protection Act ...............................................................................21

**CONCLUSION** ................................................................................................................23

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

# TABLE OF AUTHORITIES

**Cases**

*Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045 (9th Cir. 1995) .......... 12, 13, 14, 18

*Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327 (9th Cir. 1989) (per curiam) .................... 9

*Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972), *superseded by statute on other grounds*, In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988)........................... 4

*Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)........................................ 14

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982)................................................... 7

*Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. 2004) ........................................................................ 22

*Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D.N.J. 1996)...................................... 21, 22

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975) .......................................................... 15

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................... 12, 14, 18

*Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir. 1996) ................................. 12

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000)............................................................................................................................................ 7

*Goodman v. United States*, 369 F.2d 166 (9th Cir. 1966) ............................................................ 3

*Hell's Angels Motorcycle Corp. v. County of Monterey*, 89 F. Supp. 2d 1144 (N.D. Cal. 2000), *aff'd on other grounds sub. nom Hell's Angels Motorcycle Corp. v. McKinley,* 360 F.3d 930 (9th Cir. 2004)....................................................................... 17

*Hibbs v. Winn*, 542 U.S. 88 (2004) ................................................................. 8, 9, 10, 11

*Howfield, Inc. v. United States*, 409 F.2d 694 (9th Cir. 1969) ............................................. 13, 15

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, Misc. No. 09-118(RCL), 2009 WL 3495997, (D.D.C. Oct. 26, 2009)....................................... 3

*In re Grand Jury Subpoena for N.Y. State Income Tax Records*, 607 F.2d 566 (2d Cir. 1979)....................................................................................................................................... 15

*In re Grand Jury Subpoena to Amazon.com Dated Aug. 7, 2006*, 246 F.R.D. 570 (W.D. Wis. 2007)......................................................................................................................... 4

*In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr. 1599 (D.D.C. 1998) ........................................................................................... 4

*In the Matter of the Summons Issued to Ernst & Young, LLP*, 684 S.E.2d 151 (N.C. 2009) ..................................................................................................... 17

*Lamont v. Postmaster Gen.*, 381 U.S. 301 (1965) ........................................... 3

*Levin v. Commerce Energy*, 130 S. Ct. 2323 (2010) ................................. 10, 11

*Lopes v. Resolution Trust Corp.*, 155 F.R.D. 14 (D.R.I. 1994) ..................... 15

*LSO, Ltd. v. Stroh*, 205 F.3d 1146 (9th Cir. 2000)......................................... 14

*May Trucking Co. v. Oregon Department of Transportation*, 388 F.3d 1261 (9th Cir. 2004).................................................................................................. 8, 10

*McDonald v. United States*, 335 U.S. 451 (1948) ........................................... 5

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)............................. 3

*N. Y. Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006)........................... 17

*National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582 (1995)............................................................................................................ 10

*Perlman v. United States*, 247 U.S. 7 (1918)................................................. 15

*Porter v. Bowen,* 496 F.3d 1009 (9th Cir. 2007) ............................................. 6

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) .............................................. 11

*Reisman v. Caplin*, 375 U.S. 440 (1964) ................................... 13, 14, 15, 17

*Ripplinger v. Collins*, 868 F.2d 1043 (9th Cir. 1989) ................................... 11

*Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169 (9th Cir. 2009).......................................................................................................... 6

*Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044 (Colo. 2002)........... 4

*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568 (1985) ........ 12, 19

*Truth v. Kent Sch. Dist.*, 542 F.3d 634 (9th Cir. 2008)................................. 12

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968) ............. 7

*United States v. King*, 608 F.3d 1122 (9th Cir. 2010) ............................. 21, 22

*United States v. N.Y. Tel. Co.*, 644 F.2d 953 (2d Cir. 1981)............................................................ 16

*United States v. Rumely*, 345 U.S. 41 (1953)................................................................................. 3

*United States v. Stevens*, 130 S. Ct. 1577 (2010)......................................................................... 5

*United States v. W.T. Grant Co.*, 345 U.S. 629 (1953).................................................................. 7

*Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383 (1988) ............................................... 14, 16

*Whitman v. Am. Trucking Ass'ns., Inc.*, 531 U.S. 457 (2001) ........................................................ 5

**Statutes**

18 U.S.C. § 2710............................................................................................................... 19, 21

26 U.S.C. § 7609.................................................................................................................... 16

28 U.S.C. § 1341...................................................................................................................... 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## **INTRODUCTION**

The motion to dismiss Intervenors' complaint filed by the North Carolina Department of Revenue ("DOR") is largely a regurgitation of DOR's motion to dismiss Amazon's complaint. Although DOR has rewritten a few parts of its brief and changed its litigation strategy slightly, the legal issues raised are identical. DOR again repeats its arguments that the Tax Injunction Act and comity preclude the Court from hearing this case, Intervenors' claims are not ripe, and Intervenors have not stated valid First Amendment and Video Privacy Protection Act ("VPPA") claims. As Intervenors explained in their brief in opposition to the motion to dismiss Amazon's complaint, Dkt. No. 51, none of these arguments bar Intervenors' action. Neither the Tax Injunction Act nor principles of comity divest this Court of jurisdiction to resolve Intervenors' or Amazon's First Amendment and VPPA claims because the relief requested – preventing DOR from requesting and obtaining individuals' names and addresses in conjunction with information about the products they purchased – will not reduce the flow of state tax revenues. The claims are also ripe for judicial review because this is a First Amendment case raising a purely legal issue – the type of case in which pre-enforcement challenges are routinely permitted – and because DOR has already issued direct requests for this protected information under threat of enforcement to Amazon and to other Internet retailers. The harm to Intervenors' First Amendment rights from these requests is not speculative. It is occurring now and cannot be prevented by a future enforcement proceeding at some unknown later date, as the requests have already had a significant chilling effect on Intervenors' First Amendment rights and will continue to do so until DOR is forced to stop issuing such requests. Finally, Intervenors have stated valid claims that DOR's requests violate the First Amendment and the VPPA. In fact, as established in the motion for summary judgment also pending before this Court, summary judgment is appropriate on those claims because DOR's requests violate the First Amendment and the VPPA as a matter of law.

DOR's present motion is atmospherically different from its prior motion in that DOR has now – five months after this litigation was initiated – attempted to change litigation strategies by

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

deleting some of the constitutionally protected information in its possession in an attempt to avoid the clear constitutional problems with its requests. This latest shift in DOR's litigation strategy has not, however, affected the merits of Intervenors' legal claims or alleviated Intervenors' concerns. Although DOR has now apparently deleted the detailed product information from its computers, DOR still has the original compact discs containing detailed product information. Moreover, DOR has also still not agreed to refrain from asking for this same information again from Amazon or from other Internet retailers. In fact, in its motion, DOR admits that it has recently issued virtually identical requests to other Internet retailers, including ones who sell books and videos, and that it will soon be issuing more such information requests. The constitutional concerns and harm created by DOR's requests, thus, still remain. Because DOR's broadly worded requests for "all information" about "all sales" made by Amazon and other retailers and shipped to anyone in North Carolina violate the First Amendment and the VPPA, the motion to dismiss should be denied.

Rather than repeat all of the arguments Intervenors made in opposition to DOR's motion to dismiss Amazon's complaint, this brief will focus on several specific issues raised by DOR's present motion. Intervenors incorporate the rest of their prior arguments by reference. *See* Intervenors' Mem. in Opp'n to Mot. to Dismiss Amazon's Compl. (Dkt. No. 51) ("Intervenors' MTD Mem.").

## ARGUMENT[1]

## I.   DOR'S DELETION OF ITS ELECTRONIC COPIES OF THE DETAILED PRODUCT INFORMATION HAS NOT CHANGED ANYTHING.

### A.   Intervenors' Constitutional Concerns And Legal Claims Remain The Same.

DOR has now apparently decided to delete the electronic copies of the detailed product information regarding individuals' purchases of books, movies, music, and other expressive and private materials that were previously stored on DOR's computer network and two of its

---

[1] The factual background of this lawsuit is detailed in Intervenors' brief in support of Amazon's motion for summary judgment, Dkt. No. 48, at 2-5, and in Intervenors' brief in opposition to the motion to dismiss Amazon's complaint, Dkt. No. 51, at 2-6, and will not be repeated here.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington 98164
(206) 624-2184

1  employees' computers.  DOR claims that this deletion has "precluded any possibility that

2  customer names could somehow be linked to expressive content" and that "any cause for

3  [Intervenors'] concern has now been eliminated."  Mot. to Dismiss Compl. in Intervention

4  ("Mot.") (Dkt. No. 64) at 5.  That is hardly correct.

5       First, although DOR has now deleted its electronic copies of the detailed information

6  revealing which books, music, movies, and other items individuals in North Carolina purchased

7  from August 1, 2003 to February 28, 2010, DOR still has the original compact discs that it

8  received from Amazon containing this information.  Decl. of Kenneth R. Lay (Dkt. No. 64-4), ¶

9  4 ("I have personally taken possession of these disks"); Fourth Decl. of H. Alan Woodard (Dkt.

10  No. 64-2), ¶ 10.[2]  DOR simply has fewer copies of the information, and fewer people have

11  access to it.  As a result, little has changed.  *Cf. Goodman v. United States*, 369 F.2d 166, 168

12  (9th Cir. 1966) (holding that district court had jurisdiction over taxpayers' claim for return of

13  improperly seized property because "although all of the originals have been returned to

14  [taxpayers], they still seek the return of any copies of those records").

15       The First Amendment protects the right of Intervenors and every other individual in

16  North Carolina and elsewhere to read books, watch movies, listen to music, and otherwise

17  engage in expressive activities anonymously, free from government scrutiny.  *See* Intervenors'

18  Mem. in Supp. of Amazon's Mot. for Summ. J. ("Intervenors' SJ Mem.") (Dkt. No. 48) at 6-9

19  (discussing *Lamont v. Postmaster Gen.*, 381 U.S. 301 (1965), *United States v. Rumely*, 345 U.S.

20  41 (1953), *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995), and other cases).

21  Government requests for such information, like DOR's requests, raise significant First

22  Amendment issues and trigger exacting scrutiny.  *Id.* at 6, 18 (discussing *In re Grand Jury*

23  *Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, Misc. No. 09-118(RCL), 2009

24  WL 3495997, at *5-9 (D.D.C. Oct. 26, 2009); *In re Grand Jury Subpoena to Amazon.com Dated*

25

26  [2] DOR previously submitted a declaration stating that "it is not possible for the Department to strip the ASIN
numbers out of the disks already provided by Amazon."  Woodard Decl. (Dkt. No. 43-2), ¶ 16.  No explanation has
27  been provided for how DOR was now apparently able to do so.

INTERVENORS' OPP. TO MOT. TO DISMISS -- 3
No. 2:10-cv-00664-MJP

*Aug. 7, 2006*, 246 F.R.D. 570, 572-73 (W.D. Wis. 2007); *In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr. 1599, 1600-01 (D.D.C. 1998); *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002)).

These well-established, fundamental First Amendment rights do not depend on which government entity or official is scrutinizing the expressive material or attempting to obtain information about what people are reading or writing. No government entity or official – whether it be Defendant Lay or a low-level employee – is permitted to demand, obtain, or retain constitutionally protected expressive, private information from individuals absent a compelling interest and sufficient nexus between that interest and the specific information requested. In other words, it matters not that Defendant Lay is the only DOR employee now with access to the information. DOR's attempt to "eliminate" Intervenors' First Amendment and VPPA claims by deleting its electronic copies of the product information, but retaining the original compact discs, is, accordingly, unavailing. *See Bursey v. United States*, 466 F.2d 1059, 1086 (9th Cir. 1972) (holding that confidentiality of grand jury proceedings "did little to soften the blow to the First Amendment rights" because "[t]he public did not know what the grand jury learned, but the proceedings were no secret to the Government"), *superseded by statute on other grounds*, *In re Grand Jury Proceedings*, 863 F.2d 667 (9th Cir. 1988).

Defendant Lay's representation that he "will insure" that the compact discs containing this sensitive and highly personal information are not accessed by DOR employees or anyone else (other than him) does not change anything. The First Amendment harm in this case does not occur solely when DOR accesses the information. Nor do Intervenors' claims depend on what DOR does with the data. The unconstitutionality of DOR's requests arises from their issuance and from DOR's possession of the information, because, as Intervenors' declarations, Dkt. Nos. 24-29 and 48-1, make clear, individuals are and will be unconstitutionally chilled by the prospect of the government collecting this detailed, expressive data about them. DOR's argument is essentially that even though it still has this protected information, individuals should simply trust DOR not to look at it. "Trust us" is not an adequate response when First Amendment rights are

at stake.  *See, e.g.*, *United States v. Stevens*, 130 S. Ct. 1577, 1591 (2010) ("But the First

Amendment protects against the Government; it does not leave us at the mercy of *noblesse*

*oblige*.  We would not uphold an unconstitutional statute merely because the Government

promised to use it responsibly.") (citing *Whitman v. Am. Trucking Ass'ns., Inc.*, 531 U.S. 457,

473 (2001)); *McDonald v. United States*, 335 U.S. 451, 455-56 (1948) ("The right of privacy was

deemed too precious to entrust to the discretion of those whose job is the detection of crime and

the arrest of criminals.").[3]

Second, even if DOR had in fact destroyed or returned the originals and all electronic and

physical copies of the information, that would still not change anything because DOR has

refused to agree – despite numerous requests, from both Intervenors and Amazon – not to ask for

the same information again from Amazon or from other Internet retailers.  *See* Rudinger Decl.

(Dkt. No. 48-2), Exhs. A-C (detailing Intervenors' pre-lawsuit requests and DOR's refusal);

Zapolsky Decl. (Dkt. No. 46), ¶ 19; Galbreath Decl. (Dkt. No. 45), Exh. F (Amazon-DOR

communications).  Instead, DOR has expressly reserved the right to demand the information

from Amazon again, notwithstanding its admission that the information is of no use to it.

Zapolsky Decl. ¶ 23, Exh. 4.  Moreover, DOR's present motion makes clear that DOR has issued

virtually identical document requests to other Internet retailers, including ones who sell books

and videos, and that DOR will issue more such requests shortly.  Mot. at 5, 12; Fourth Woodard

Decl. ¶ 11, 14.  As a result, the chill to Intervenors' and other individuals' First Amendment

rights still exists.  Intervenors' complaint seeks to invalidate the requests to Amazon as well as

DOR's policy and practice of issuing such overbroad requests encompassing expressive

information.  Intervenors' Compl. (Dkt. No. 61) at 32-33, ¶¶ a-f.  Whether DOR destroyed or

returned all of the detailed product information received from Amazon in connection with its

---

[3]  Neither DOR's declarations nor its brief states that no one at DOR has ever looked at this now-deleted product information.  Nor do they say that DOR possesses no notes, memoranda, emails or other documents concerning this product information.  The latest Woodard Declaration does not even state that no copies of the data were made by anyone *previously* had access to it on DOR's H drive, stating only that Woodard is satisfied that "no one who is not assisting on the Amazon audit had access to or created any other copies of the data that was downloaded onto the H drive."  Fourth Woodard Decl., ¶ 6.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

December 2009 document request would, thus, not eliminate Intervenors' First Amendment and VPPA claims.

### B. Intervenors' Claims Have Not Been Rendered Moot By DOR's Deletion Of Its Electronic Copies Of The Detailed Product Information.

DOR separately contends – in a footnote – that Intervenors' action has been rendered moot by DOR's deletion of its electronic copies of the detailed product information.  Mot. at 17 n.8.  There is no factual or legal basis for that argument.

"A claim is moot if it has lost its character as a present, live controversy."  *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172-73 (9th Cir. 2009) (internal quotation marks and citation omitted).  Thus, if a defendant "perform[s] the action sought by a plaintiff in litigation," a claim may be rendered moot.  *Id*. at 1173.  That is not this case.  As explained above, nothing has changed about Intervenors' constitutional concerns or the validity of their legal claims because DOR still has the detailed product information and because, even if DOR no longer had the information, DOR has refused to acknowledge that its requests are constitutionally impermissible or to agree to refrain from asking for the information again.  Those are the very issues on which Intervenors are requesting declaratory and injunctive relief in this action.  Intervenors' Compl. at 32-33, ¶¶ a-f.  Intervenors' claims are, thus, not moot.  *See, e.g.*, *Porter v. Bowen,* 496 F.3d 1009, 1017-18 (9th Cir. 2007) (holding that California Secretary of State's letter stating that vote-swapping websites would not be prosecuted pending legislative clarification did not render moot First Amendment challenge by websites to threatened prosecution, where Secretary did not concede the unconstitutionality of his earlier threat nor assure that he would not threaten to initiate prosecutions in the future).

Even if DOR's litigation shift had eliminated the constitutional and statutory infirmities with its prior requests to Amazon, such a voluntary cessation of those particular unconstitutional information requests would not be sufficient to render Intervenors' claims moot.  "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  *Friends of the Earth, Inc. v.*

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1   *Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v.*

2   *Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  A defendant's voluntary post-litigation

3   conduct will only moot a case "if subsequent events made it absolutely clear that the allegedly

4   wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v.*

5   *Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)).  "The heavy burden of

6   persuading the court that the challenged conduct cannot reasonably be expected to start up again

7   lies with the party asserting mootness." *Friends of the Earth*, 528 U.S. at 189 (citation and

8   internal quotation marks omitted).

9         DOR cannot meet this "heavy burden."  DOR has adamantly maintained its position that

10   its requests raise no constitutional concerns.  In fact, despite the express language of the requests

11   – which demand "all information" about "all sales" – DOR still insists that it did not even ask for

12   detailed product information.  Mot. at 2-3, 5.  The continued dispute over the legality of DOR's

13   broad requests establishes that this case is not moot.  *See, e.g.*, *United States v. W.T. Grant Co.*,

14   345 U.S. 629, 632 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive

15   the tribunal of power to hear and determine the case . . .   A controversy may remain to be settled

16   in such circumstances, . . . e.g., a dispute over the legality of the challenged practices." (internal

17   citations omitted)).  DOR has also refused to agree not to request this information from Amazon

18   or from other Internet retailers in the future, which is part of the relief Intervenors seek.  Thus,

19   even if DOR's deletion of product information had eliminated Intervenors' constitutional

20   concerns with respect to the prior requests to Amazon, the action would not be moot.  *See, e.g.*,

21   *Friends of the Earth*, 528 U.S. at 189 (holding that a case is not rendered moot unless it is

22   "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

23   recur") (internal quotation marks and citation omitted).

24

25

26

27

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

## II.   THE TAX INJUNCTION ACT AND COMITY DO NOT BAR THIS CASE BECAUSE THIS LAWSUIT DOES NOT INTERFERE WITH STATE TAX ASSESSMENT OR COLLECTION.

As explained in Intervenors' earlier brief, neither the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, nor principles of comity strip this Court of jurisdiction to hear Intervenors' federal constitutional and statutory claims.  Intervenors' MTD Mem. at 6-10; *see also* Amazon's Opp'n to Mot. to Dismiss (Dkt. No. 52) at 8-17.  DOR does not cite any new or different facts or law that change this result.

The Supreme Court's decision in *Hibbs v. Winn*, 542 U.S. 88 (2004), and the Ninth Circuit's subsequent decision in *May Trucking Co. v. Oregon Department of Transportation*, 388 F.3d 1261 (9th Cir. 2004), make clear that Intervenors' complaint is not barred by the TIA. Intervenors are not challenging DOR's authority to impose sales or use taxes or disputing anyone's tax liability.  Although Amazon and DOR dispute whether Amazon is obligated to collect sales taxes on North Carolina's behalf, that disagreement is not at issue in this case.  The actual relief requested – preventing DOR from requesting and obtaining individuals' names and addresses in conjunction with detailed information about the products they purchased, *see* Intervenors' Compl. at 32-33, ¶¶ a-f – will not decrease North Carolina's tax revenues given that DOR has admitted that this information is "of no use" to it and is not necessary for tax assessment, tax levy or tax collection purposes.  *See* Woodard Decl. (Dkt. No. 43-2), ¶¶ 9, 14. Indeed, DOR has conceded that it already has enough information to "proceed to issue a sales tax assessment against Amazon, assessing tax on all transactions at the highest rate."  Mot. to Dismiss Amazon's Compl. (Dkt. No. 43) at 17.  As a result, the TIA does not strip this Court of jurisdiction over Intervenors' constitutional and federal statutory claims.  *Hibbs*, 542 U.S. at 106, 108-09 (holding that the TIA does not preclude federal court jurisdiction because the plaintiffs did not seek to contest their tax liability or inhibit tax collection); *May Trucking*, 388 F.3d at 1267 ("After *Hibbs*, the dispositive question" is "whether '[f]ederal-court relief . . . would . . . operate[] to reduce the flow of state tax revenue.'") (quoting *Hibbs*, 542 U.S. at 106).

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

DOR attempts to avoid this result by repeating its previous unfounded assertion that this lawsuit will prevent it from assessing and collecting taxes. Mot. at 3. That assertion is premised on an inaccurate re-writing of Intervenors' complaint and requested relief. Contrary to DOR's representation, Intervenors are not seeking a "declaration that [DOR's] request for customer names, addresses and *purchase amounts* violates their free speech and privacy rights." *Id*. (emphasis added). Intervenors brought this action to prevent DOR from obtaining individuals' names and addresses in combination with *product purchase information*, not *purchase amounts*. Intervenors' Compl. ¶¶ 6, 7, 48, 57; *id*. at 32-33, ¶¶ a-f; Mot. to Intervene (Dkt. No. 21) at 1-4, 5-7. Again, preventing DOR from requesting and obtaining this information will not have any impact on DOR's ability to assess or collect sales or use taxes.[4]

As both Intervenors and Amazon have previously pointed out, the Supreme Court's controlling decision in *Hibbs* rejected the sweeping view of the TIA proposed by DOR – that the TIA prevents federal court interference with all aspects of state tax administration. *Hibbs*, 542 U.S. at 105; *see* Intervenors' MTD Mem. at 6-10 (discussing *Hibbs*). DOR now attempts to avoid the clear holding of *Hibbs* by claiming that here, unlike in *Hibbs*, the state tax authority is contending that the requested relief would interfere with its assessment or collection efforts. Mot. at 7-8. DOR's contentions, however, are irrelevant; what matters is whether the requested relief will actually impede such efforts. Because the information Intervenors seek to prevent DOR from obtaining is not necessary for tax assessment or collection purposes, the requested relief will not stop DOR from assessing or collecting any sales or use taxes.[5] To the contrary,

---

[4] DOR alleges that Intervenors should be presumed not to have complied with their use tax obligations because their complaint does not say anything to the contrary. The absence of such allegations should not be read to imply non-compliance. Such allegations have nothing to do with this motion or with this case. The relevant question for this motion is whether the TIA is applicable. Indeed, DOR itself seems to acknowledge the irrelevancy of such allegations, stating that even if Intervenors were in compliance with their use tax obligations, that would be irrelevant because Intervenors represent only a microcosm of North Carolina taxpayers. Mot. at 10 n.4.

[5] DOR again contends that *Blangeres v. Burlington Northern, Inc.*, 872 F.2d 327 (9th Cir. 1989) (per curiam), requires a finding that the TIA bars this suit. As explained previously, this case presents the converse of the circumstances in *Blangeres*. The TIA was implicated there because the plaintiffs attempted to prevent their employer from disclosing their wages to the tax authority – information that was "necessary for assessment" of income taxes. *Id.* at 328. Here, by contrast, the requested relief would, according to DOR's own admissions, only preclude DOR from obtaining information *not necessary* for assessment.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

just as the requested relief in *Hibbs* would have invalidated a tax credit, the relief requested here would, if anything, increase, rather than decrease, tax revenue because it would serve to prevent Amazon from claiming exemptions and lower tax rates.  Intervenors' MTD Mem. at 8.  Such relief is not barred by the TIA.  *Hibbs*, 542 U.S. at 108-09; *May Trucking*, 388 F.3d at 1267.[6]

For the same reasons that the TIA does not apply, the comity doctrine also does not divest the Court of jurisdiction.  *See Hibbs*, 542 U.S. at 107 n.9 (holding that comity did not apply where plaintiffs did not seek federal court aid "in order to arrest or countermand state tax collection").  As previously explained, *Levin v. Commerce Energy*, 130 S. Ct. 2323 (2010), is not to the contrary.  The three reasons provided in *Levin* to distinguish *Hibbs* demonstrate that this case is more like *Hibbs* than like *Levin*, and thus that comity is not an appropriate consideration here.  *See Levin*, 130 S. Ct. at 2336.  First, *Levin* did not "involve any fundamental right or classification that attracts heightened judicial scrutiny."  *Id.*  By contrast, this case, like *Hibbs*, implicates fundamental constitutional rights.  Second, in *Levin*, the plaintiffs were seeking federal court aid to improve their financial position within the state tax scheme.  *Id.*  Here, as in *Hibbs*, no party is challenging its tax liability in this action or its tax treatment under state law.  Finally, in *Levin*, the state courts were better positioned than their federal counterparts to grant a remedy because appropriate relief might have required reshaping provisions of the state's tax code.  *See id.* at 2335-36.  By contrast, Intervenors and Amazon are not asking the Court to invalidate or reshape any part of North Carolina's tax code.  They simply ask for limited relief that this Court is well-equipped to grant:  declaratory and injunctive relief to stop DOR from requesting and receiving information protected by the First Amendment that DOR concedes it does not need.  DOR does not even attempt to respond to these critical differences between *Levin*

---

[6] DOR again asserts that § 1983 claims are precluded by the TIA, citing *National Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582 (1995).  Mot. at 14.  The TIA does not prevent all § 1983 cases from proceeding in federal court.  It only prevents those to which the TIA applies.  *See Hibbs*, 542 U.S. at 94 (permitting a § 1983 case to proceed).  *National Private Truck Council* is not to the contrary.  *See* 515 U.S. at 588-89 (holding only that § 1983 cannot be used in state court where it cannot be used in federal court because of the TIA).

INTERVENORS' OPP. TO MOT. TO DISMISS -- 10
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

and *Hibbs*/this case. The Court should follow the dictates of *Hibbs* and hold that comity does not bar this action from proceeding in this Court.

That is especially the case because this lawsuit involves First Amendment and federal statutory issues. This Court is in a much better position to resolve those issues and has a greater interest in adjudicating those federal issues than a state court does.[7] Indeed, the Ninth Circuit has made clear that "the guarantee of free expression is always an area of particular federal concern," *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989), and that "'constitutional challenges based on the first amendment right of free expression are the kind of cases that the federal courts are particularly well-suited to hear,'" *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (internal quotation marks and citation omitted). As *Levin* itself recognizes, where "state courts would have no greater leeway than federal courts to cure the alleged violation, nothing would be lost in the currency of comity or state autonomy" by permitting the suit to proceed in a federal forum. *Levin*, 130 S. Ct. at 2336. The Court should exercise its jurisdiction over this action and resolve these federal issues now.

## III.   THIS CASE IS RIPE FOR REVIEW BECAUSE IT PRESENTS PURELY LEGAL ISSUES, DOR HAS ALREADY THREATENED TO ENFORCE ITS REQUESTS, AND THE REQUESTS ARE PRESENTLY HAVING A CHILLING EFFECT.

DOR again asserts that Intervenors' claims are not ripe because DOR has not yet begun a summons enforcement proceeding against Amazon. Mot. at 15. For the same reasons previously stated, that argument is still without merit. *See* Intervenors' MTD Mem. at 10-17; Amazon's Opp'n at 2-8; Amazon's Reply In Supp. of Mot. for Summ. J. (Dkt. No. 54) at 6-9. Where, as here, the case presents purely legal issues and does not require further factual development, numerous direct threats of enforcement have already been made, and delaying adjudication would harm the plaintiffs, the claims are ripe for judicial review.

DOR has conceded that this case involves purely legal issues. *See* Opp'n to Amazon's Mot. for Summ. J. (Dkt. No. 53) at 4 ("Amazon asserts that this motion 'turns on legal issues, not

---

[7] Amazon's complaint includes a claim under the Washington State Constitution. This Court is also better situated to rule on that claim then a North Carolina state court.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington 98164
(206) 624-2184

facts.'  NC Revenue does not dispute this general proposition but does, however, dispute

Amazon's statement of the 'facts.'") (internal citation omitted).  DOR takes the position that

there is nothing legally wrong with its requests for "all information" about "all sales," or with its

policy and practice of issuing requests containing that language.  Intervenors and Amazon

contend that the requests are not permissible under the First Amendment and the VPPA.  The

case is therefore ripe.  *See, e.g.*, *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581

(1985) (holding that a case is ripe if "[t]he issue presented in this case is purely legal, and will

not be clarified by further factual development"); *Freedom to Travel Campaign v. Newcomb*, 82

F.3d 1431, 1434-35 (9th Cir. 1996) (holding that purely legal issue as to constitutionality of

licensing scheme is ripe for decision even where plaintiff had not yet applied for a license).

This case is also ripe because it involves matters that have already occurred.  *See Truth v.

Kent Sch. Dist.*, 542 F.3d 634, 643 (9th Cir. 2008) (holding that a challenge is ripe where

plaintiff "complains of discrete events that have already occurred").  DOR has already issued and

threatened to enforce the requests for private and expressive information protected by the

Constitution and federal law that are being challenged here.  DOR has also refused to withdraw

its requests.  Moreover, Intervenors' declarations, Dkt. Nos. 24-29 and 48-1, demonstrate that

DOR's requests have already created a significant chilling effect.  *See* Intervenors' MTD Mem.

at 13-14 (discussing the specific statements in the declarations).  This chilling effect is presently

occurring and will continue until this matter is resolved.  This case is ripe, therefore, because it

does not involve merely hypothetical or speculative events or concerns.

The chilling effect of DOR's demands further establishes that the case is ripe because

withholding decision in this case until a later date would cause "hardship to the parties."  *Am.-

Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1057-58 (9th Cir. 1995).  "[I]njury to

First Amendment rights more readily justifies a finding of ripeness due to the chilling effect on

protected expression which delay might produce."  *Id*. at 1062 (internal quotation marks and

citation omitted).  "The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  If that

irreparable injury to Intervenors is not addressed quickly, "the legal and practical value of the First Amendment right may be destroyed."  *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1057-58.

DOR ignores this clear caselaw and asserts that the lack of a pending summons enforcement proceeding in a North Carolina state court *per se* means that this action is not ripe. That position is without merit.  DOR relies on *Reisman v. Caplin*, 375 U.S. 440 (1964), and its progeny for this proposition.  Neither *Reisman* nor any of the subsequent cases applying it establish that Intervenors' claims are not ripe.  In *Reisman*, the wrong complained of was that the IRS's summonses would force an unlawful seizure of records requiring the taxpayers to incriminate themselves.  *Id.* at 442.  Because those rights could not be violated until after the records were obtained by the IRS, the harm could not occur until after the enforcement proceeding and, even then, only if the summonses were upheld.  As a result, the Supreme Court concluded that a subsequent enforcement proceeding, in which the individuals whose records were requested would have an opportunity to challenge the request, would be an adequate remedy at law for those individuals because an effective defense at that proceeding would prevent any harm from ever being suffered by those individuals.  In other words, because the harm at issue in *Reisman* and in the other cases would not occur until after the completion of the enforcement proceeding – and because it would never occur if the enforcement proceeding resulted in invalidation of the record requests – a pre-enforcement challenge would not be appropriate in those circumstances.  *See, e.g.*, *Reisman*, 375 U.S. at 449 ("It follows that with a stay order a witness would suffer no injury while testing the summons."); *Howfield, Inc. v. United States*, 409 F.2d 694, 697 (9th Cir. 1969) ("appellants will suffer no prejudice by following this course" and raising their objections during an enforcement proceeding).

Here, by contrast, the harm is occurring now.  The constitutional harm of which Intervenors complain stems from the significant chilling effect that has already resulted from DOR's requests, and that will continue to occur until a court prevents DOR from requesting and obtaining this constitutionally protected information.  *See* Jane Doe 1 Decl. ¶¶ 13-14; Jane Doe 2

Decl. ¶¶ 10-11; Jane Doe 3 Decl. ¶¶ 15-16; Jane Doe 4 Decl. ¶¶ 10-11; Jane Doe 5 Decl. ¶ 13; Jane Doe 6 Decl. ¶¶ 9-10; Bothwell Decl. ¶¶ 12-14; Intervenors' MTD Mem. at 13-14.  Unlike in *Reisman* and its progeny, the harm here does not stem solely from any ultimate disclosure of the records.  *See, e.g.*, *Virginia* v. *Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("[T]he alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution."); *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (holding that plaintiff established standing and ripeness in a pre-enforcement challenge where he suffered the "constitutionally recognized injury of self-censorship").  As a result, even if an enforcement proceeding subsequently occurs and DOR's document requests are invalidated, that proceeding will not be able to undo or to eliminate the significant First Amendment harm that is already being suffered.  That is constitutionally unacceptable.  *Elrod*, 427 U.S. at 373; *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1057-58.  A subsequent enforcement proceeding will not, thus, be an adequate remedy at law of the sort discussed in *Reisman* for the harm and claims at issue here or prevent future demands for similar information.[8]

It is for this very reason – the chilling effect caused by a threat to First Amendment rights – that courts routinely permit pre-enforcement challenges where First Amendment rights are at stake.  *See, e.g., Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988) (permitting pre-enforcement challenge in a First Amendment case); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155-56 (9th Cir. 2000) (same).  DOR completely ignores these well-established principles of First

---

[8]  *Reisman* is factually different from the circumstances here for another reason.  In *Reisman*, the Supreme Court prefaced its analysis by observing that "[t]he case reaches us at a stage when the only affirmative action taken by the Commissioner is the issuance of the summonses for the accountants to appear" and that "[t]he accountants have not yet refused to do so."  *Reisman*, 375 U.S. at 444.  Here, by contrast, DOR has taken numerous affirmative actions to require compliance with the requests, including several explicit direct threats of enforcement against these and future requests, DOR has already obtained much of what it sought, and Amazon has indicated that it will not further comply with the requests.  This case, thus, presents a far more concrete and ripe controversy than *Reisman*.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Amendment law.  The Court should reject DOR's attempt to expand the *Reisman* principle to circumstances like this case where harm is already occurring, pre-enforcement.[9]

DOR's ripeness argument should also be rejected because the Supreme Court has recognized that where, as here, records about individuals are requested from a third-party, the individuals whose records are at stake must be permitted to bring an immediate action challenging the requests to avoid permanent frustration of their rights.  *See, e.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975) (holding that the district court had jurisdiction over the plaintiff's pre-enforcement, injunctive relief challenge to a congressional subpoena to a third-party holder of its records because "unless a court may inquire to determine whether a legitimate legislative purpose is present, compliance by the third person could frustrate any judicial inquiry") (internal citations omitted); *id.* at 514 (Marshall, J., concurring) (emphasizing that it was proper for the district court to give the party whose records were targeted a forum to "assert its constitutional objections to the subpoena, since a neutral third party could not be expected to resist the subpoena by placing itself in contempt"); *cf. Perlman v. United States*, 247 U.S. 7, 13 (1918) (recognizing that where a subpoena is directed to a third-party, the target need not await a refusal to comply and contempt finding in order to have a right to appeal, because otherwise the target would be "powerless to avert the mischief"); *see also In re Grand Jury Subpoena for N.Y. State Income Tax Records*, 607 F.2d 566, 570 (2d Cir. 1979) (stating that the reason for the "*Perlman* doctrine" is that "the holder of the privilege has no power to cause the custodian of the information to risk a contempt citation for non-disclosure").

Targets of third-party record requests, such as Intervenors, are permitted to bring pre-enforcement challenges because they may otherwise never have an opportunity to raise their objections either before the third-party complies with the requests or a court in an enforcement

---

[9] Although some of the cases cited by DOR contain language indicating that *Reisman* applies to all objections, including constitutional objections, none of those cases, including *Reisman*, involved First Amendment objections. *See, e.g., Howfield*, 409 F.2d at 695-697 (involving a Fourth Amendment unlawful seizure claim); *Lopes v. Resolution Trust Corp.*, 155 F.R.D. 14, 15 (D.R.I. 1994) (Fourth Amendment claim).  As discussed, First Amendment claims raise unique issues and are treated with special care both because of the fundamental importance of free speech to our society and because of the chilling effect present where First Amendment rights are at stake.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

proceeding orders the third-party to provide the records.[10]   That is the case here, both with respect to DOR's requests to Amazon and with respect to the numerous requests made to other unidentified Internet retailers.[11]   Contrary to DOR's representations, it is far from certain that Intervenors or any of the innumerable other individuals whose rights are at stake would receive notice of any enforcement proceedings commenced by DOR or an opportunity to challenge such proceedings.[12]   Indeed, DOR has refused to provide Intervenors with descriptions or copies of any information document requests it has issued to Amazon or to other Internet retailers.  *See* Rudinger Decl. (Dkt. No. 48-2), Exhs. B and C.  Although Intervenors have now seen most of the requests to Amazon, Intervenors have still not seen a copy of the most recent document request apparently sent by DOR to Amazon.  Nor have Intervenors seen Amazon's response to that most recent demand.  Thus, even though Intervenors are now parties to this case, Intervenors are still outsiders – without any notice or opportunity to issue objections – to the document requests being issued to Amazon.

This problem is even more acute with respect to the requests to the unidentified other Internet retailers.  Intervenors and, presumably, all other North Carolina residents, have not been provided with any notice of these other requests by either DOR or the third-party recipients of the requests.  Those requests may very well have already been complied with or are in the process of being complied with – without any opportunity for Intervenors or others to challenge

---

[10]   Congress recognized this fundamental problem with tax authority requests to third-parties, enacting 26 U.S.C. § 7609 in 1976 to make sure that taxpayers would actually be able to bring such a challenge.  *See United States v. N.Y. Tel. Co.*, 644 F.2d 953, 956-57 (2d Cir. 1981) ("The new procedure was not designed to give the taxpayer new substantive rights, but only to provide an early opportunity for him, as the person with the greatest interest in protecting the existing substantive rights, to secure recognition of those rights.").  This statute entitles the target of a third-party request to receive notice, *id.* at § 7609(a), and to initiate a proceeding to quash the summons, *id.* at § 7609(b).

[11]   That Amazon has refused to comply with DOR's requests does not affect this principle.  A target's right to challenge a third-party request for its records does not depend on the third-party's willingness or lack of willingness to comply.  Because a target has no control over the third-party's ultimate compliance decision, targets are permitted to bring prompt challenges to such a request.

[12]   Intervenors and Amazon have standing to raise the rights of these other individuals not before the Court because this case involves First Amendment rights.  *See, e.g., Am. Booksellers Ass'n*, 484 U.S. at 392-93.  These principles are therefore equally applicable to Amazon, even though it is the direct recipient of the requests, as Amazon's objections are based, in part, on the harm to its customers, who are the targets of the third-party requests.

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

the production of their personal and private records.  *See N. Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (holding that district court appropriately "entertain[ed]" action seeking declaration that third-party request for records would violate the First Amendment, rather than requiring the plaintiff to await later opportunity to bring a motion to quash, because otherwise the plaintiff "may have no chance to assert its claim of privileges" and "it is unknown whether subpoenas have been issued . . . or . . . whether the carriers have already complied").[13]

Although the decision in *In the Matter of the Summons Issued to Ernst & Young, LLP*, 684 S.E.2d 151 (N.C. 2009), states that the North Carolina court overseeing a summons enforcement proceeding has the authority to provide notice and an opportunity to assert objections to the taxpayer whose records are at issue, that decision makes clear that such authority is purely discretionary and is exercised only in "rare instances."  *Id.* at 154.  Moreover, unlike in *Ernst & Young*, where there was one known taxpayer (Wal-Mart) whose records were at issue and who could easily be provided with notice, here, there are potentially hundreds of thousands or millions of people whose constitutionally protected information is at stake, all of whom will be unknown to the state court.  In these circumstances, it is not certain that the court could provide actual notice, even if it decided to do so.  Even if notice were somehow provided, given the practicalities involved, it is highly unlikely that the court would provide every individual whose records are at stake with the opportunity to intervene and file objections in what is supposed to be a summary enforcement proceeding.  DOR's all-curing future enforcement proceeding will, thus, very likely be a non-existent, inadequate remedy for Intervenors and the other affected individuals.[14]

---

[13] Because notice and an opportunity to raise any objections may not be given to Intervenors or to the other individuals whose records are at issue, North Carolina's summary enforcement proceeding is not a "plain, speedy and efficient" remedy sufficient to overcome the exception to the TIA for Intervenors and these other individuals.  *See* Amazon's Opp'n to the Mot. to Dismiss at 12-14.

[14] *Reisman* is not to the contrary.  *See Hell's Angels Motorcycle Corp. v. County of Monterey*, 89 F. Supp. 2d 1144, 1152 (N.D. Cal. 2000), *aff'd on other grounds sub. nom Hell's Angels Motorcycle Corp. v. McKinley*, 360 F.3d 930 (9th Cir. 2004) (distinguishing *Reisman* on the grounds that in *Reisman* the summons was sent to accountants employed by the taxpayers' attorney, not to a disinterested, neutral third-party, and that the IRS contacted the taxpayers first before issuing the third-party summons, giving them notice, such that "the [*Reisman*] Court was not

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Intervenors are seeking to have the Court invalidate the requests to Amazon and DOR's policy and practice of issuing such requests to other Internet retailers with the same overbroad "all information" language.  If Intervenors are not permitted to have their claims heard now, when they know about an actual DOR request, they likely will never be able to challenge DOR's policy.  The only reason Intervenors know about these requests to Amazon is because Amazon filed this lawsuit.  Unlike Amazon, many of the recipients of DOR's document requests will have neither the financial resources nor the willingness to challenge such requests, meaning that DOR will be able to avoid constitutional scrutiny by sending these requests to third-parties.  The Court should not countenance that result.

Even if Intervenors and others would have an opportunity to raise their objections in a later proceeding, that is still not constitutionally sufficient in circumstances where, as here, it is not clear when such an enforcement proceeding will ever occur.  DOR has threatened to enforce its requests, on numerous occasions, but it has not done so yet.  As DOR sees things, only it can initiate those proceedings, and in its own choice of forum.  According to DOR, Intervenors and all of the other individuals whose private, sensitive, and highly personal information is at stake can do nothing but wait for DOR to decide whether to commence an enforcement proceeding.  That indefinite delay is not constitutionally permissible, especially where First Amendment rights are at stake.  *See, e.g.*, *Elrod*, 427 U.S. at 373; *Am.-Arab Anti-Discrimination Comm.*, 70 F.3d at 1062. [15]

The factual background of this case vividly illustrates why Intervenors' claims are ripe for adjudication and should be heard now.  For years, Amazon and DOR have been engaged in a fight over whether Amazon is obligated to collect sales taxes on behalf of North Carolina.  The individuals who reside in North Carolina, including Intervenors, have now been caught up in this

---

faced with the question of how to protect the taxpayers' right to make that challenge in the case of a subpoena issued to a disinterested third party").

[15] This delay is especially not acceptable given DOR's statement that enforcement proceedings in North Carolina may take years before they are resolved.  Mot. to Dismiss Amazon's Compl. (Dkt. No. 43) at 17.  Any delay, let alone such a lengthy delay, in adjudication of Intervenors' rights is constitutionally infirm because of the irreparable harm already being suffered by the loss of First Amendment rights.

INTERVENORS' OPP. TO MOT. TO DISMISS -- 18
No. 2:10-cv-00664-MJP

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

dispute.  Amazon and DOR each claim that the other side is engaging in "ploys" and "tactics" by involving these individuals in their fight.  DOR has accused Amazon of unnecessarily creating a First Amendment issue by providing DOR with allegedly non-requested product information.  Resp. to Mot. for Summ. J. (Dkt. No. 53) at 9.  Amazon, in turn, contends that DOR is now threatening to go knocking on its customers' doors.  Reply to Mot. for Summ. J. (Dkt. No. 54) at 11-12.  What is indisputable is that hundreds of thousands of individuals in North Carolina, including Intervenors, are now caught in the middle, with their constitutionally protected, extremely private, and sensitive information at stake.  All the while, their fundamental First Amendment rights are being infringed.  This is precisely the kind of situation that is fit for judicial review.  If DOR were correct that Intervenors could not ask this Court to put an end to this situation because DOR has unilaterally not yet decided to initiate an enforcement proceeding, DOR would indefinitely be able to prevent Intervenors from ending the irreparable harm to their First Amendment rights.  That is not and should not be the law.

This is, thus, a case in which "[n]othing would be gained by postponing a decision, and the public interest would be well served by a prompt resolution" of whether DOR's issuance of broad information requests to Amazon that encompass information protected by the First Amendment, and its policy and practice of issuing such requests, are unconstitutional.  *Thomas*, 473 U.S. at 581-82.

## IV.   INTERVENORS STATE CLAIMS FOR VIOLATION OF THE FIRST AMENDMENT AND THE VIDEO PRIVACY PROTECTION ACT.

As discussed in detail in Intervenors' memorandum in support of summary judgment, Dkt. No. 48, and in their brief in opposition to DOR's motion to dismiss Amazon's complaint, Dkt. No. 51, Amazon and Intervenors not only state valid claims, they are entitled to summary judgment on their claims that DOR's requests violate the First Amendment and the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710.  Nothing in DOR's present motion affects that analysis.

1

## A.      DOR's Requests For Information Violate The First Amendment.

2

3      The First Amendment prohibits DOR from demanding information about individuals that

4   sweeps in information about their expressive activities absent a specific, compelling need for

5   such information and a sufficient nexus between that interest and the requests at issue.  *See supra*

6   at 3-4.  As previously explained, because DOR has admitted that the detailed expressive

7   information at issue in this lawsuit is not necessary for tax purposes and is "of no use" to it, DOR

8   cannot demonstrate either a compelling interest in obtaining that information or a sufficient

9   nexus to its requests.  Intervenors thus state, and should prevail on, their First Amendment claims

10   as a matter of law.  *See* Intervenors' SJ Mem. at 5-21; Intervenors' MTD Mem. at 17-20.[16]

11      DOR attempts to avoid the caselaw establishing that its requests are unconstitutionally

12   overbroad by ignoring the actual language of its requests.  Although DOR repeatedly asserts that

13   it did not ask for the information at issue in this lawsuit – product information in combination

14   with user names and addresses – the express language of its requests belies that claim.  DOR

15   asked for "all information" about "all sales" shipped into North Carolina from August 1, 2003 to

16   February 28, 2010.  Galbreath Decl. ¶ 5, Exh. A.  That request plainly calls for the production of

17   "all information" about the products purchased in such sales, including the titles and names of

18   the books, movies, music, and other private items purchased by Intervenors and other

19   individuals, regardless of whether DOR actually desired such information.

20      DOR also claims that Intervenors' complaint fails to state a claim because "Intervenors

21   have no First Amendment right not to have their names, addresses and *purchase amounts*

22   disclosed to NC Revenue."  Motion at 18 (emphasis added).  As already discussed, *see supra* at

23   9, Intervenors are seeking to prevent DOR from obtaining their names and addresses in

24   conjunction with information about the *products they purchased* through Amazon, not their

25   *purchase amounts.  See, e.g.*, Intervenors' Compl., ¶¶ 6, 7, 48, 57; *id*. at 32-33, ¶¶ a-f; Mot. to

26   ---

[16] In an attempt to avoid further complicating the schedule and delaying adjudication of the three motions already pending, Intervenors have not yet filed their own motion for summary judgment.  Intervenors intend to do so promptly after the Court resolves the pending motions.

27

INTERVENORS' OPP. TO MOT. TO DISMISS -- 20
No. 2:10-cv-00664-MJP

**AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON**
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

Intervene at 1-4, 5-7.  This information is indisputably protected by the First Amendment.  *See supra* at 3-4.  Intervenors have therefore stated a valid First Amendment claim, one that DOR cannot eliminate by attempting to re-write Intervenors' complaint.

      **B.**     **DOR's Requests For Information Violate The Video Privacy Protection Act.**

DOR does not dispute that the clear intent of the VPPA is to prevent individuals' video records from being disclosed to anyone, including government entities.  DOR also does not dispute that compliance with its requests would violate the VPPA because it would result in the disclosure of which video materials individuals, including Intervenors, have purchased.  Instead, DOR argues that it cannot be held liable because it is not a "videotape service provider."  Mot. at 20.  That interpretation ignores the clear intent and language of the statute.  The VPPA broadly provides that "[a]ny person aggrieved by any act of a person in violation of [§ 2710] may bring a civil action."  18 U.S.C. § 2710(c)(1).  The statute further provides that government entities can only obtain personally identifiable video material in certain limited circumstances, none of which are present here.  *Id.* at § 2710(b)(2)(C), (b)(3).  Moreover, the statute expressly prohibits government entities, including DOR, from "receiv[ing] in evidence" such personally identifiable information in any proceeding, as DOR is now attempting to do.  *Id.* at § 2710(d).  Were DOR correct that its actions do not violate the statute on the ground that a government entity like it cannot be held liable under the statute, that would mean that a Congressional committee – e.g., the Senate Judiciary Committee – could lawfully require a videotape service provider to provide information to it disclosing the video records of an individual – e.g., a Supreme Court candidate.  That would obviously be at odds with the clear history and intent of the VPPA, which was enacted to preclude that exact possibility from ever occurring again.  *See Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 238-40 (D.N.J. 1996) (discussing the enactment of the VPPA in response to the disclosure of Supreme Court nominee Judge Robert Bork's video records).  The Court should not reach such an absurd and unjust result.  *See, e.g.*, *United States v. King*, 608 F.3d 1122, 1127 (9th Cir. 2010) ("[C]ourts should avoid, if possible, a statutory interpretation

that would produce an absurd and unjust result which Congress could not have intended[.]")
(internal citations, alterations, and quotation marks omitted).

The *Dirkes* court recognized all of this, holding that because the "clear intent of the Act is to prevent the disclosure of private information . . . [t]his purpose is furthered by allowing parties . . . to bring suit against those individuals who have come to possess (and who could disseminate) the private information in flagrant violation of the purposes of the Act," and that those who come to possess personally identifiable information "as a direct result of an improper release of such information," should be subject to suit under the VPPA.  *Dirkes*, 936 F. Supp. at 240.  The Sixth Circuit, which rejected this interpretation of the VPPA, *see Daniel v. Cantrell*, 375 F.3d 377 (6th Cir. 2004), ignored both the clear intent and language of the statute.  This Court should not follow the Sixth Circuit's lead in interpreting the VPPA to permit the very harm it was intended to prevent – the disclosure of personally identifiable video information – because doing so would render the VPPA absurd and meaningless.  *See, e.g., King*, 608 F.3d at 1127.[17]

DOR is essentially arguing that it can force anyone, with impunity, to violate a federal statute that specifically regulates the circumstances under which protected information can be disclosed to DOR.  That cannot be the law.  Intervenors' complaint, thus, states a claim that disclosure of this video information pursuant to DOR's information requests violates the VPPA.

---

[17]  DOR's citation to *Kehoe v. Fidelity Fed. Bank & Trust*, 421 F.3d 1209 (11th Cir. 2005), in support of its interpretation of the VPPA, is misplaced, at best.  *Kehoe* did not involve a claim under the VPPA, and *Kehoe* did not reject the VPPA analysis of *Dirkes*.  *Kehoe* mentioned *Dirkes* in connection with its discussion of a completely unrelated point:  whether a cause of action exists without proof of actual harm.  *Kehoe*, 421 F.3d at 1216 n.6.

AMERICAN CIVIL LIBERTIES UNION OF WASHINGTON
901 Fifth Ave., Suite 630, Seattle, Washington  98164
(206) 624-2184

1

## **CONCLUSION**

2

For the foregoing reasons, Intervenors respectfully request that the Court deny DOR's

3

motion to dismiss.

4

Respectfully submitted this 20th day of September, 2010.

5

6

**AMERICAN CIVIL LIBERTIES UNION OF**
**WASHINGTON FOUNDATION**
Sarah A. Dunne, WSBA # 34869
901 Fifth Ave, Suite 630
Seattle, Washington  98164
Tel:    (206) 624-2184
Fax:    (206) 624-2190
Email: dunne@aclu-wa.org

**FOCAL PLLC**
Venkat Balasubramani, WSBA #28269
8426 40th Ave SW
Seattle, WA 98136
Tel:    (206) 529-4827
Fax:    (206) 260-3966
Email: venkat@focallaw.com

7

8

9

10

11

**AMERICAN CIVIL LIBERTIES UNION OF**
**NORTH CAROLINA FOUNDATION**
Katherine Lewis Parker (*pro hac vice*)
Post Office Box 28004
Raleigh, North Carolina 27611
Tel:    (919) 834-3466
Fax:    (866) 511-1344
Email:  acluncklp@nc.rr.com

**AMERICAN CIVIL LIBERTIES UNION**
**FOUNDATION**
**Speech, Privacy and Technology Project**
Aden J. Fine (*pro hac vice*)
125 Broad Street, 18th Floor
New York, NY 10004
Tel:    (212) 549-2500
Fax:    (212) 549-2651
Email:  afine@aclu.org

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

INTERVENORS' OPP. TO MOT. TO DISMISS -- 23
No. 2:10-cv-00664-MJP

1

## CERTIFICATE OF SERVICE

2

The undersigned certifies that he filed the foregoing Intervenors' Opposition to Motion to

3

Dismiss Complaint in Intervention, through the Court's CM/ECF system which will provide a

4

notice of filing to counsel for all parties.

5

September 20, 2010.

6

7

*/s/ Aden Fine*
Aden Fine

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CERTIFICATE OF SERVICE -- 1
No. 2:10-cv-00664-MJP