UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM LLC, | CASE NO. C10-664 MJP |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT LAY'S MOTIONS TO DISMISS |
| v. | |
| KENNETH R. LAY, in his official capacity as Secretary of the North Carolina Department of Revenue, | |
| Defendant. | |
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, AND CECIL BOTHWELL, | |
| Plaintiffs- Intervenors, | |
| v. | |
| KENNETH R. LAY, in his official capacity as Secretary of the North Carolina Department of Revenue, and AMAZON.COM, LLC, | |
| Defendants in Intervention | |

1    The matter comes before the Court on Plaintiff Amazon.com LLC's ("Amazon") motion

2    for summary judgment (Dkt. No. 44), Defendant Kenneth R. Lay's motion to dismiss Plaintiff's

3    complaint (Dkt. No. 43), and motion to dismiss Plaintiffs-Intervenors' complaint in intervention

4    (Dkt. No. 64).  Having reviewed the motions, Intervenors' memoranda in support of the motion

5    for summary judgment (Dkt. No. 48), the responses (Dkt. Nos. 52, 53, 65), Intervenors'

6    memorandum in support of Plaintiff's opposition (Dkt. No. 51), the replies (Dkt. Nos. 54, 56,

7    67), the relevant filings in the record, and having heard oral argument on all three motions on

8    October 13, 2010, the Court GRANTS Plaintiff's motion for summary judgment and DENIES

9    Defendant's motions to dismiss.

10                                        **Background**

11    Amazon.com LLC and the North Carolina Department of Revenue ("DOR") have long

12    disputed whether Amazon must collect and remit North Carolina sales and use taxes.  (Woodard

13    Decl. ¶ 4.)  Amazon has conducted nearly 50 million transactions with North Carolina residents

14    from August 1, 2003 to February 28, 2010, apparently without collecting or remitting North

15    Carolina sales and use taxes.  (Galbreath Decl. ¶ 3.)  Amazon and the DOR are presently locked

16    in a dispute that implicates the First Amendment rights of Amazon's customers, including the

17    Intervenors.

18    As part of an audit of Amazon, the DOR, whose secretary is Defendant Lay, sent a

19    request on December 1, 2009 to Amazon seeking "'all information for all sales to customers with

20    a North Carolina shipping address by month in an electronic format for all dates between August

21    1, 2003, and February 28, 2010." (Complaint ¶ 26.)  Notably, the request was made as part of

22    DOR's investigation of Amazon's tax liability, not its customers' tax liability.  (See First

23    Woodard Decl. ¶ 17; Dkt. No. 43 at 17.)  In response, Amazon provided the DOR with "detailed

24

1    information about millions of purchases made by North Carolina customers during the relevant

2    time period." (Id. ¶ 27.)  Amazon provided the order ID number, seller, ship-to city, county,

3    postal code, the non-taxable amount of the purchase, and the tax audit record identification. (Id.)

4    In addition, Amazon provided the Amazon Specific Identification Number ("ASIN") for every

5    purchase, a number which permits access to the specific and detailed description of the product.

6    (Id. ¶ 28.)  Amazon identifies products in its catalog and maintains its sales records using ASIN

7    numbers, rather than more generic product codes.  (Galbreath Decl. ¶ 8.)  Collectively, this

8    information permits the DOR to learn of the "title and description of every book, DVD, music

9    selection, or other item purchased by the customer." (Compl. ¶ 28.)  Amazon did not include the

10   name, address, phone number, e-mail address or other personally identifiable information of any

11   customer. (Id. ¶ 29.)

12        On March 19, 2010, the DOR requested Amazon provide the "Bill to Name; Bill to

13   Address (Street, City, State, and Zip); Ship to Name; Ship to Address (Street); [and]

14   Product/item code or description." (Compl. ¶ 31; Dkt. No. 45 at 11.)  The DOR reiterated its

15   request for "all information for all sales to customers with a North Carolina shipping address."

16   (Dkt. No. 45 at 11.)  The DOR threatened that it would file a summons pursuant to North

17   Carolina General Statute § 105-258 if Amazon did not comply. (Id.)  In response, on April 19,

18   2009, Amazon filed a complaint in this Court and sent a letter to DOR explaining that it wished

19   not to violate its customer's privacy rights by disclosing any personal identifiers.  Amazon

20   maintains that if the DOR obtains the information it seeks, it will possess all information

21   necessary to know the expressive content of all purchases from Amazon by individual North

22   Carolina residents. (Compl. ¶ 34.)

23

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 3

1    After Amazon filed its complaint, the DOR sent a letter explaining that it "is not seeking

2    information regarding the titles of books and CDs purchased by North Carolina customers."

3    (Dkt. No. 45 at 17 (emphasis in original).)  The DOR explained that the information "is not

4    required in order for the Department to calculate the amount of sales or use tax properly due the

5    State."  (Id.)  The DOR stated that it only requested "the name and bill to and ship to address for

6    all sales to customers with a North Carolina shipping address" and "a general product code or

7    description, for example, 'book.'"  (Id.)  Amazon contends that it only keeps product information

8    in ASIN format.  (Galbreath Decl. ¶ 8.)  However, beginning in June 2008, Amazon developed a

9    five-digit product tax code that includes a more generic product description, such as "general

10   books," digital books, "candy," or "general food."  (Second Woodard Decl. ¶ 11.)  The DOR

11   obtained information in this format from Amazon that was responsive to its requests.  (Id.)

12   On June 4, 2010, the DOR sent a third document request to Amazon.  (Dkt. No. 45 at 18.)

13   The request sought "additional information, as well as information previously requested and not

14   provided about the business operations and tax reporting of Amazon.com."  (Id.)  DOR offered

15   to return the initial data Amazon sent, including the ASIN, in exchange for more general product

16   coder information.  (Zapolsky Decl. ¶ 21; Woodard Decl. ¶ 16.)  However, the DOR maintains

17   that it "cannot simply return the disks provided because they contain significant additional

18   information that the Department requires in order to determine Amazon's and its customers'

19   North Carolina sales and use tax liability."  (Woodard Decl. ¶ 6.)   The DOR now states that it has

20   removed the data Amazon gave it from its computers, but that the CDs with the information are

21   now stored in the Secretary Lay's desk.[1]  (Fourth Woodard Decl. ¶¶ 6-7; Lay Decl. ¶ 4.)

22

23   _____

24   [1] At oral argument, counsel for Defendant advised that Mr. Lay's term as Secretary was
     due to expire within one week.

To calculate the proper sales tax, the DOR "routinely requires" general information about the product, the name and address of purchaser, the price, and the freight charges. (Woodard Decl. ¶ 8.)  The name of the individual permits the DOR to determine if any exceptions to the sales or use tax apply.  (Id. ¶ 6.)  Absent the name of the buyer, the DOR can calculate Amazon's tax liability with only the product description, the county in which the sale was made, and the price.  (Woodard Decl. ¶ 15.)  However, the DOR maintains that it cannot calculate the correct amount of Amazon's tax liability (including any exemptions) without the names and specific addresses of the purchasers and that it seeks always to "arrive at the correct amount of liability." (Second Woodard Decl. ¶ 7; Woodard Decl. ¶ 8.)  Nevertheless, the DOR has stated that it can and "would assess taxes at the highest rate and it would then be up to Amazon to challenge the assessment and to establish that the exemptions or lower tax rate applied to some products." (Woodard Decl. ¶ 15.)

Amazon pursues two main claims: (1) that the First Amendment and Article 1, Sections 4 and 5 of the Washington State Constitution bar the revelation of the identities of its customers' purchases and any specifics as to the content of the purchases; and (2) that the Video Privacy Protection Act, 18 U.S.C. § 2710, bars compliance with the DOR's March 2010 request. (Compl. ¶¶ 40-56.)  Amazon seeks a declaration "that, to the extent the March Information Request demands that Amazon disclose its customers' names, addresses or any other personal information, it violates the First Amendment and 18 U.S.C. § 2710." (Compl. at 14.)  Amazon also asks for the same declaration with respect to the Washington State Constitution." (Id.)

Represented by the American Civil Liberties Union, Jane Does 1-6 and Cecil Bothwell (collectively "Intervenors") obtained the Court's permission to intervene in this action and filed a complaint in intervention.  (Dkt. No. 58; Dkt. No. 61.)  The Intervenors allege the same basic

1    facts, but add personal information regarding purchases they have made on Amazon and the

2    fears they have that the government may track their purchases and their fear of buying more

3    materials online.  They pursue two claims: (1) one pursuant to the First and Fourteenth

4    Amendments; and (2) one pursuant to the Video Privacy Protection Act.  (Dkt. No. 61 at 29-31.)

5           The relief the Intervenors seek is quite broad.  Intervenors seek three forms of declaratory

6    relief: (1) a declaration that the DOR's "demand for personally identifiable purchase records

7    violates the free speech and privacy rights of Intervenors and other individuals in North

8    Carolina"; (2) a declaration that the "DOR's policy and practice of issuing information document

9    requests to out-of-state websites and other businesses that encompass constitutionally protected

10   information violates the free speech and privacy rights of Intervenors and other individuals in

11   North Carolina," and (3) a declaration that the "DOR's demand for the disclosure of personally

12   identifiable customer information from Amazon concerning sales of video or audiovisual

13   materials violates the Video Privacy Protection Act, 28 U.S.C. § 1710 [sic]."  (Id. at 32.)

14          Intervenors also seek three forms of injunctive relief.  They desire an injunction:

15          including but not limited to, a permanent injunction: prohibiting DOR from
            requesting that Amazon provide personally identifiable customer information or
16          detailed information about the specific items purchased by Amazon customers;
            prohibiting DOR from receiving that information from Amazon; and ordering
17          DOR to destroy or return any records or past uses of such records that it already
            has or may obtain containing detailed information about the items shipped to
18          Amazon's North Carolina customers.

19   (Id. at 32.)  Intervenors seek a second injunction "prohibiting DOR from issuing information

20   document requests that encompass constitutionally protected information about individuals'

21   expressive and private activities; and ordering DOR to destroy or return any information it

22   receives about individuals' expressive and private activities."  (Id.)  Intervenors lastly seek:

23          appropriate injunctive relief, including, but not limited to, a permanent injunction:
            prohibiting Amazon from disclosing personally identifiable customer information

24

1      concerning sales of video or audiovisual material to DOR absent the receipt of
     informed, written consent from the affected customers or a warrant, grand jury
2      subpoena, or court order permitting such disclosure; prohibiting DOR from
     receiving personally identifiable customer information concerning sales of video
3      or audiovisual material absent the receipt of informed, written consent from the
     affected customers or a warrant, grand jury subpoena, or court order permitting
4      such disclosure; and prohibiting DOR from issuing future information document
     requests that call for the disclosure of personally identifiable customer
5      information concerning the sales of video or audiovisual material absent the
     receipt of informed, written consent from the affected customers or a warrant,
6      grand jury subpoena, or court order permitting such disclosure.

7 (Id. at 33.)

8      On July 15, 2010, Amazon filed a motion for summary judgment three days after the

9 DOR filed a motion to dismiss.  (Dkt. Nos. 43, 44.)  The ACLU filed amicus briefs in support of

10 Amazon in both motions.  (Dkt. Nos. 48, 51.)  On August 16, 2010, the Intervenors filed their

11 complaint in intervention, which the DOR moved to dismiss on September 2, 2010.  (Dkt. Nos.

12 61, 64.)  The Court heard oral argument on October 13, 2010 on all three motions.

13                         **Analysis**

14      The Court addresses the jurisdictional attacks made by the DOR before turning to the

15 merits of Amazon's motion for summary judgment.  The DOR challenges the Court's

16 jurisdiction over both Amazon's and the Intervenors' complaints.  It asserts that: (1) the claims

17 are not ripe because no harm has been suffered and because no tax summons has issued; (2) the

18 Tax Injunction Act bars the proceedings; and (3) comity requires the Court not to exercise

19 jurisdiction.  The DOR also makes a jurisdictional attack to the Intervenors' Video Privacy

20 Protection Act claim, which the Court addresses before its analysis of the merits of Amazon's

21 claims.

22 A.     Standard

23

24

1    On a motion to dismiss under Rule 12(b)(1), "the district court is not confined by the

2  facts contained in the four corners of the complaint—it may consider facts and need not assume

3  the truthfulness of the complaint." Americopters, LLC v. Fed. Aviation Admin., 441 F.3d 726,

4  732 n.4 (9th Cir. 2006). The Court "need not presume the truthfulness of the plaintiffs'

5  allegations." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

6    Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

7  admissions on file, and affidavits show that there are no genuine issues of material fact for trial

8  and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

9  Material facts are those "that might affect the outcome of the suit under the governing law."

10  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The underlying facts are viewed in

11  the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith

12  Radio Corp., 475 U.S. 574, 587 (1986). The party moving for summary judgment has the burden

13  to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H.

14  Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the

15  burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an

16  element essential to that party's case, and on which that party will bear the burden of proof at

17  trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

18  B.    Ripeness

19    DOR seeks dismissal on the theory that Amazon and the Intervenors have suffered no

20  harm and their claims are not ripe. This argument is not correct.

21    "[A] reasonable threat of prosecution, for standing purposes, dispenses with any ripeness

22  problem." LSO, Ltd. v. Stroh, 205 F.3d 1146, 1156 (9th Cir. 2000). "Courts have long

23  recognized that [o]ne does not have to await the consummation of threatened injury to obtain

24

1   preventive relief." California Pro-Life Council, Inc. v. Getman, 328 F.3d 1088, 1094 (9th Cir.

2   2003) (quotation omitted).  This is so "[p]articularly in the First Amendment-protected speech

3   context, [where] the Supreme Court has dispensed with rigid standing requirements." Id.  As the

4   Ninth Circuit recently held, "[i]n the context of First Amendment speech, a threat of enforcement

5   may be inherent in the challenged statute, sufficient to meet the constitutional component of the

6   ripeness inquiry." Wolfson v. Brammer,  616 F.3d 1045, 1059 (9th Cir. 2010) (citing Arizona

7   Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003)).

8          Here, Amazon seeks to avoid disclosing the names of its North Carolina customers on the

9   grounds that doing so would violate the customers' First Amendment rights.  This is so, Amazon

10  alleges, because the DOR already possesses detailed information about Amazons' customers'

11  purchases of expressive material, such that any revelation of identities would permit the

12  government to peer into and track North Carolina residents' literary, audio, and visual habits.

13  DOR continues to request information that threatens these rights and it has suggested it will try

14  to enforce the tax laws against individuals, such as the Intervenors, if Amazon does not comply.

15  (Woodard Decl. ¶ 17.)  As the declarations from the Intervenors make clear, the fear of

16  disclosure of their reading, watching, and listening habits poses an imminent threat of harm and

17  chill to the exercise of First Amendment rights.  (Dkt. Nos. 24-29, 48-1.)  There is thus sufficient

18  threat of enforcement to make the matter ripe for adjudication.  See Getman, 328 F.3d at 1094.

19  The DOR's argument that the claims are not ripe because no tax summons has issued ignores

20  that First Amendment claims are generally ripe "when the threatened enforcement effort

21  implicates First Amendment rights. . . ." Bayless, 320 F.3d at 1006.  The claims are ripe.

22  C.     Tax Injunction Act as to Amazon

23

24

1    The DOR argues that Amazon's complaint violates the Tax Injunction Act and that the

2    Court lacks jurisdiction.  The Court disagrees.

3    The Tax Injunction Act precludes jurisdiction where: (1) the court is asked to "enjoin,

4    suspend, or restrain the assessment, levy or collection of any tax under State law"; and (2)

5    "where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. §

6    1341.  Both elements must be satisfied for the Act to apply.

7    The Tax Injunction Act bars district courts from "issuing an injunction enjoining the

8    collection of state taxes" and from "issuing a declaratory judgment holding state tax laws

9    unconstitutional."  California v. Grace Brethren Church, 457 U.S. 393, 408 (1982).  The

10    Supreme Court has held the Act "proscribes interference only with those aspects of state tax

11    regimes that are needed to produce revenue – i.e., assessment, levy, and collection."  Hibbs v.

12    Winn, 542 U.S. 88, 105 n.7 (2004).  In Hibbs the Court affirmed jurisdiction over a suit brought

13    by Arizona taxpayers who sought to enjoin the state's use of tax credits for religious schools

14    under the Establishment Clause.  The Court held that a suit "not seeking to stop the collection (or

15    contest the validity) of a tax imposed on plaintiffs . . . [was] outside" the Act's purview.  Id. at

16    104.  The Court also held that "assessment" is the official recognition of liability that triggers the

17    levy and collection of state taxes.  Id. at 101-02.  The Court noted that prior Supreme Court cases

18    finding the Act applicable "involved a plaintiff who mounted federal litigation to avoid paying

19    state taxes (or to gain a refund of such taxes)."  Id. at 106.

20    The Hibbs Court provides a two-step process to assess the application of the Act.  First,

21    the Court is to consider closely the nature of the relief requested.  Hibbs, 542 U.S. at 99.  Second,

22    the Court is to consider whether the relief will enjoin, suspend, or restrain the assessment, levy,

23    or collection of state taxes.  Id.

24

1    As an initial matter, the Court makes clear its inquiry focuses solely on whether the relief

2  Amazon requests will impede the DOR in assessing or collecting a tax from Amazon.  This

3  narrow focus is the result of the fact the DOR made its request of Amazon solely in the context

4  of a tax audit of Amazon, not its customers.  (See Woodard Decl. ¶ 17; Dkt. No. 43 at 17.)  Any

5  inquiry as to whether North Carolina residents owe taxes is hypothetical.  (Dkt. No. 43 at 16;

6  Woodard Decl. ¶¶ 11-12 (reaffirming that the audit is of Amazon only), ¶ 17 (stating that "the

7  Department is also collecting use tax data in the event a decision is made to allocate resources to

8  assess use taxes against North Carolina customers . . ." (emphasis added).)

9    The relief sought by Amazon does not require the Court to enjoin, suspend, or restrain the

10  assessment, levy or collection of tax.  Amazon has provided DOR with information as to every

11  sale within the time period requested, including the name of the city, county, and postal code for

12  each shipment, a detailed description of the product, and the total amount paid.  (Zapolsky Decl.

13  at 3-4, ¶ 10; Galbreath Decl. at 2-3, ¶ 7.)  According to DOR's own explanation of North

14  Carolina law, this permits it to calculate the tax rate because it possesses the type of good, the

15  county to which the item was shipped, and the date.  (Woodard Decl. ¶¶ 4-5, 8.)  Amazon's

16  proposed declaratory judgment would exempt Amazon from turning over the "names, addresses

17  or any other personal information" of its customers.  (Dkt. No. 1 at 14.)  This only implicates

18  DOR's ability to determine whether an exemption applies to any particular transaction that

19  would alleviate some tax burden on Amazon.  (Woodard Decl. ¶. 6.)  While this may frustrate

20  the DOR's desire to provide a proper calculation of the exact tax owed by Amazon, the DOR has

21  admitted that any lack of names does not impede a tax assessment.  The DOR has stated that it

22  can and will impose a tax on Amazon, and that it will simply be up to Amazon to seek a lower

23  tax rate.  (Woodard Decl. ¶ 15; Motion to Dismiss at 17 ("In lieu of proceeding with a summons

24

1   enforcement action, NC Revenue could proceed to issue a sales tax assessment against Amazon,

2   assessing tax on all transactions at the highest right.").)  The DOR's stated position moots its

3   argument that the declaratory relief would impede its assessment of Amazon's tax liability—the

4   sole focus of the matter before the Court.  The Court DENIES the DOR's motion to dismiss

5   Amazon's complaint under the Tax Injunction Act.

6        DOR argues that the recent Supreme Court case in <u>Levin v. Commerce Energy, Inc.</u>, 130

7   S.Ct. 2323 (2010) supports a contrary view.  In that case, the Court held the Tax Injunction Act

8   barred a request for declaratory and injunctive relief to stop tax exemptions enjoyed by certain

9   sellers of natural gas on the grounds that it violated the Commerce and Equal Protection Clauses.

10   <u>Id.</u> at 2328-29.  Such a broad request for relief does not exist here.  Amazon's request does not

11   implicate the validity of North Carolina's tax scheme.  The requested relief also does not

12   impinge on the assessment or collection of taxes.  It is a narrowly-tailored request for relief to

13   avoid turning over information that is unnecessary for the DOR to possess in order to calculate

14   Amazon's tax liability.  <u>Commerce Energy</u> is distinguishable and does not support the DOR's

15   position.

16        DOR relies heavily on another case that is distinguishable: <u>Blangeres v. Burlington</u>

17   <u>Northern, Inc.</u>, 872 F.2d 327, 328 (9th Cir. 1989) (per curiam).  In <u>Blangeres</u>, a four paragraph

18   per curiam opinion, the court held the Tax Injunction Act barred a suit by employees who sought

19   to enjoin their employer from giving employment records to two state taxing authorities.  <u>Id.</u>  In

20   affirming the applicability of the Tax Injunction Act, the court noted that the taxing authorities

21   wanted this specific information and made a showing that this was the only way to obtain it.

22   Here, however, the DOR's document request to Amazon is not part of an investigation of North

23   Carolina residents' tax liability, and the DOR has not made a showing that its investigation of

24

1  Amazon is the only way to acquire such information.  <u>Blangeres</u> does not impact the Court's

2  decision.

3          The Court does not discuss the adequacy of the state remedies (the Act's second

4  element).  However, as explained below, the state law remedy is not adequate.  This is an

5  independent reason to deny the DOR's motion to dismiss on this issue.

6  D.      <u>Tax Injunction Act as to Intervenors</u>

7          Although some of the Intervenors' requests for relief run afoul of the Tax Injunction Act,

8  the Act does not apply because there is no adequate state remedy.  The Court examines the

9  declaratory relief Intervenors seek before looking at the Injunctive relief requested.

10         The declaratory relief Intervenors seek largely avoids implicating the Tax Injunction Act.

11 The first request asks the Court to find the DOR demand for "personally identifiable purchase

12 records" violates the First Amendment.  (Dkt. No. 61 at 32 ¶ a.)  This request is similar to

13 Amazon's request and does not impede DOR's ability to assess or collect any taxes due from

14 Amazon.  It falls outside the scope of the Act.  Similarly, Intervenors' request for a declaration

15 that the personally identifiable information related to audiovisual and video materials is improper

16 does not run afoul of the Tax Injunction Act.  (<u>Id.</u> at ¶ e.)  However, Intervenors' request for a

17 declaration that DOR's policy of requesting information from unnamed out-of-state websites

18 does implicate and potentially hamper DOR's ability to assess and collect its taxes.  (<u>Id.</u> at ¶ c.)

19 The request is vague and difficult to surmise in scope.  In their argument, Intervenors contend

20 that they are only seeking relief from the forced revelation of individuals' names and address in

21 combinations with product purchase information.  (Dkt. No. 65 at 14.)  Intervenors' actual

22 pleadings, however, do not match their argument.  Reading the pleadings liberally, the Court is

23

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 13

1   convinced such a broad and vague request could hamper DOR's ability to assess tax liability in

2   certain instances.

3         The injunctive relief Intervenors seek largely mirrors the declaratory relief they seek.

4   The first request seeks only to prohibit Amazon from using personally identifiable customer

5   information in the future.  (Dkt. No. 61 at 32 ¶ b.)  This falls outside the Act.  It does not appear

6   to impede any tax assessment of Amazon because DOR already possesses the information

7   needed to assess Amazon.  Similarly, the third injunction request does not appear to violate the

8   Act.  It seeks to prohibit Amazon from disclosing any personally identifiable customer

9   information regarding video and audiovisual materials in the future without the customers'

10  consent.  (Id. at 33 ¶ e.)  An injunction issued as requested would not impede North Carolina's

11  ability to assess or collect its taxes, as it need only comply with the Video Privacy Protection Act

12  to avoid violating any injunction that might issue as the Intervenors request.  However, the

13  second injunctive request is extremely broad and exceeds the scope of this litigation.  It seeks to

14  enjoin DOR "from issuing information document requests that encompass constitutionally

15  protected information about individuals' expressive and private activities."  (Id. at ¶ d.)  Unlike

16  Amazon's requested declaratory relief, this request could hamper legitimate future requests made

17  by the DOR in a different context that would impair the DOR's ability to run its tax scheme.

18        The mere fact that some of the relief the Intervenors request falls within the Tax

19  Injunction Act's ambit is not fatal to jurisdiction.  These claims are not barred by the Act because

20  there is no "plain, speedy and efficient remedy" available in North Carolina.  Federal courts

21  "must construe narrowly [this] exception to the Tax Injunction Act."  Grace Brethren, 457 U.S.

22  at 413.  A "plain, speedy and efficient remedy" requires there to be a "full hearing and judicial

23  determination in which the party may assert federal rights."  May Trucking Co. v. Or. Dep't of

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 14

1   Transp., 388 F.3d 1261, 1270 (9th Cir. 2004) (internal citation and quotation omitted).  "For

2   state-court remedies to be 'plain,' the procedures available in state court must be certain."  Id.  A

3   state remedy "is not plain within the meaning of the Tax Injunction Act . . . 'if there is

4   uncertainty regarding its availability or effect.'"   Direct Mktg. Ass'n, Inc. v. Bennett, 916 F.2d

5   1451, 1453 (9th Cir. 1990) (quoting Ashton v. Cory, 780 F.2d 816, 819 (9th Cir. 1986)).

6        Amazon and the Intervenors have demonstrated that they lack a "plain" remedy in North

7   Carolina should a tax summons issue.  28 U.S.C. § 1341.  The procedure governing tax summons

8   disputes in North Carolina lacks certainty.  North Carolina's Supreme Court recently held that a

9   summons challenge is "a proceeding of a civil nature with its own specialized procedure that

10  supplants the Rules of Civil Procedure."  In re Summons to Ernst & Young, LLP, 684 S.E.2d

11  151, 156 (N.C. 2009).  The process is summary and requires little weighing of evidence.  Id.  A

12  superior court handling such a summons "has the inherent authority to take all actions reasonably

13  necessary to properly administer its duties under N.C.G.S. § 105-258(a)."  Id. at 154.  There is no

14  certainty that constitutional and federal statutory objections can be made or whether the

15  Intervenors could appear as well.  The Court notes that the court in Ernst & Young permitted a

16  party to intervene, but that decision does not appear to have been grounded in any particular rule

17  or procedure that might be applicable in any future case.  Id. at 153.  The DOR has pointed to no

18  set of procedural rules that are applicable or available for this Court to review.  The Ernst &

19  Young case suggests that it is simply up to the judge handling the summons to determine

20  whether or not to hear such objections.  The DOR argues that the tax summons process is

21  adequate simply because it was modeled after the IRS summons enforcement process, which has

22  been held to be adequate.  (Dkt. No. 56 at 7 (citing Reisman v. Caplin, 375 U.S. 440, 449

23  (1964)).)  This is inadequate to show a plain remedy exists.

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 15

1    Because the Court does not find there to be an adequate state remedy, the Court DENIES

2    the DOR's motion to dismiss on this issue.

3    E.    Comity Is Not A Bar

4    DOR also invokes comity as grounds for the Court's lack of jurisdiction.  The Court is

5    not persuaded.

6    Where state taxes are at issue, federal courts are generally cautioned from passing

7    judgment on the constitutionality of state taxation of commercial activity.  Commerce Energy,

8    130 S.Ct. at 2330.  Unlike the relief sought in Commerce Energy, Amazon and the Intervenors

9    do not ask the Court to rule on the validity of North Carolina's tax scheme.  As explained above,

10   Amazon's requests for relief do not require the Court to restrain North Carolina in assessing or

11   collecting a tax from Amazon or to pass judgment on the constitutionality of North Carolina's

12   taxation system.  The Court is aware that the Intervenors' request relief that may implicate

13   concerns of comity.  The Court will therefore fashion the most appropriately narrow relief

14   possible.  The Court DENIES the motions to dismiss on the issue of comity.

15   F.    Jurisdiction and the Video Privacy Protection Act

16   The DOR seeks dismissal of both Amazon's and the Intervenors' claims brought under

17   the Video Protection and Privacy Act ("VPPA").  (Dkt. No. 64 at 21.)

18   The Act makes it illegal for a video tape service provider to disclose "personally

19   identifiable information concerning any consumer."  18 U.S.C. § 2710(b)(1).  The Act permits

20   the Court to issue injunctive relief.  18 U.S.C § 2710(c)(2)(D).

21   In its motion to dismiss, the DOR attacks Amazon's VPPA claim on the grounds that the

22   Tax Injunction Act bars its application.  As explained above, that bar does not exist.  There is no

23   jurisdictional bar to Amazon's VPPA claim.  The Court addresses the merits of the claim below.

24

1    The DOR argues that the Intervenors' VPPA claim is improper because only "video tape

2    service providers" can be liable under the Act and the DOR is not such a provider.  (Dkt. No. 64

3    at 21.)  The Court disagrees.  The VPPA provides "[a]ny person aggrieved by any act of a person

4    in violation of this section may bring a civil action in a United States district court."  18 U.S.C. §

5    2710(c)(1).  One violation of the section occurs when "[a] video tape service provider . . .

6    knowingly discloses, to any person, personally identifiable information concerning any

7    consumer."  18 U.S.C. § 2710(b)(1).  The Act can also be violated when personally identifiable

8    information is obtained from a video tape service provider in any manner other than as narrowly

9    provided by the Act.  See id. § 2710(b)(2).  For example, a law enforcement agency can legally

10   obtain video records only if it has a valid warrant.  18 U.S.C. § 2710(b)(2)(C).  Without a proper

11   warrant, the agency violates the Act by improperly obtaining the record.  A "person aggrieved by

12   any act of [the agency] in violation" of the VPPA could file suit against that agency, which is a

13   "person in violation of [the VPPA]."  18 U.S.C. § 2710(c)(1).  The Court is aware that "video

14   tape service providers" are the only person expressly defined as a person who can be liable under

15   the Act.  18 U.S.C. § 2710(b)(1).  However, there is no limitation in section (c)(1) that the civil

16   action must only be brought against the video tape service provider.  It strikes the Court as

17   logical that suits can be brought against those who receive personally identifiable information in

18   violation of the Act.  Had Congress intended to limit the scope of civil actions it could have, but

19   apparently did not.

20   To read the VPPA's civil suit provision as limited to suits against video tape service

21   providers ignores the Act's plain language and its intent to protect disclosure of private

22   information to those who are not providers, but who nonetheless may attempt access the

23   information.  The Court agrees with the statutory analysis in Dirkes v. Borough of Runnemede,

24

1  that the purpose of the VPPA is to prevent the disclosure of private information and to allow

2  parties to "bring suit against those individuals who have come to possess . . . the private

3  information in flagrant violation of the purposes of the Act."  936 F. Supp. 235, 240 (D.N.J.

4  1996).  The Court is aware that the Sixth Circuit has come to an opposite conclusion, but the

5  Court disagrees with the Sixth Circuit's analysis of the plain language of the Act.  See Daniel v.

6  Cantrell, 375 F.3d 377, 381-82 (6th Cir. 2004).  The Court DENIES the DOR's motion to

7  dismiss on this issue.

8  G.      First Amendment

9      Amazon pursues summary judgment as to its First Amendment claim that the DOR's

10  request for all information related to Amazon's sales to North Carolina residents violates the

11  First Amendment.  The Court agrees and GRANTS the motion.

12      The First Amendment protects a buyer from having the expressive content of her

13  purchase of books, music, and audiovisual materials disclosed to the government.  Citizens are

14  entitled to receive information and ideas through books, films, and other expressive materials

15  anonymously.  In the context of distribution of handbills, the Supreme Court held that anonymity

16  "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular."

17  McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995); Talley v. California, 362 U.S.

18  60, 64 (1960) (protecting anonymity in handing out campaign literature).  The fear of

19  government tracking and censoring one's reading, listening, and viewing choices chills the

20  exercise of First Amendment rights.  In a concurring opinion, Justice Douglas highlighted the

21  deleterious effect of governmental meddling in the reading habits of its citizens:  "Some will fear

22  to read what is unpopular what the powers-that-be dislike. When the light of publicity may reach

23

24

1   any student, any teacher, inquiry will be discouraged." United States v. Rumely, 345 U.S. 41,

2   57-58 (1953) (Douglas, J., concurring).

3          Two district courts addressing subpoenas seeking book purchase records have similarly

4   held the First Amendment rights are implicated where the government seeks the disclosure of

5   reading, listening, and viewing habits.  In In re Grand Jury Subpoena to Amazon.com Date

6   August 7, 2006, 246 F.R.D. 570 (W.D. Wis. 2007), the court held that the government had to

7   show a compelling need to obtain the personal identities and titles of books certain persons

8   purchased through Amazon from a seller suspected of tax evasion.  The government served

9   Amazon a subpoena duces tecum seeking the identities of customers of the criminal defendant

10  and information about their purchases.  Id. at 571.  Amazon provided the requested information,

11  except the identities of the purchasers, objecting that the revelation of the purchasers' identities

12  would violate their First Amendment rights.  Id. at 572.  The court agreed.  The court barred the

13  government from contacting anyone who did not consent to talking to the government, noting

14  that the First Amendment was implicated where the government might "peek into the reading

15  habits of specific individuals without their prior knowledge or permission."  Id. at 572.  A similar

16  result was reached by a district court handling a subpoena request to obtain the book purchasing

17  records of Monica Lewinsky.  In re Grand Jury Subpoena to Kramerbooks & Afterwords, Inc.,

18  26 Med. L. Rptr. 1599, 1600-01 (D.D.C. 1998).  The court held that the Independent Counsel

19  investigating President Clinton had to show a compelling interest and sufficient nexus to sustain

20  his request.  Id.

21         The DOR relies on a string of inapposite cases that involve the validity of tax summonses

22  generally.  None of the cases involved challenges on First Amendment grounds.  For example,

23  the DOR invokes United States v. Powell, 379 U.S. 48 (1964) as the measure of whether a tax

24

1    summons is constitutional.  While that case did address the validity of tax summonses generally,

2    it has no bearing on a challenge to a tax-related request that implicates the First Amendment.

3    The Court primarily addressed whether a tax summons had to satisfy probable cause, which is

4    not a present concern.  See id. at 51-58.  The cases the DOR cites do not alter the Court's view as

5    to the First Amendment's applicability in this matter.

6         Amazon and the Intervenors have established that the First Amendment protects the

7    disclosure of individual's reading, listening, and viewing habits.  For example, the Intervenors

8    make uncontroverted statements that they fear the disclosure of their identities and purchases

9    from Amazon to the DOR and that they will not continue to make such purchases if Amazon

10   reveals the contents of the purchases and their identities.  (Dkt. Nos. 25-29.)  The DOR concedes

11   that the First Amendment protects them from such disclosures.  In fact, the DOR has repeatedly

12   stated it does not want detailed information about purchases for fear of implicating the First

13   Amendment.  (See Dkt. No. 43 at 8.)  However, DOR has consistently requested this very

14   information by reaffirming its broad requests.  At the same time, the DOR has also refused to

15   give up the detailed product information about Amazon's customers' purchases.  (Woodard Decl.

16   ¶ 16.)  The pending request for "all information as to all sales" by Amazon implicates the First

17   Amendment rights of Amazon's customers and the Intervenors.[2]  While the DOR states that it

18   could not possibly match the names to the purchases, its promise of forbearance is insufficient to

19   moot the First Amendment issue.  See United States v. Stevens, 130 S.Ct. 1566, 1591 (2010)

20   (stating that the Court "would not uphold an unconstitutional statute merely because the

21   _____

22        [2] The DOR suggested at oral argument that the Court should look to the state of mind of
     Defendant Lay to intuit that the request is more narrowly than the actual language of the request.
23   This argument is particularly unavailing where counsel admitted that Defendant Lay did not draft
     the request.  It is simply implausible that Amazon or any other recipient of a request from the
24   DOR should have to divine the unspoken intent of the Department to comply with a request.

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 20

1  Government promised to use it responsibly").  The Court finds the disclosure of the identities

2  and detailed information as to the expressive content of Amazons' customers' purchases will

3  have a chilling effect that implicates the First Amendment.

4  　　　　Given that the DOR's request implicates the First Amendment, the DOR must show "a

5  compelling governmental interest warrants the burden, and that less restrictive means to achieve

6  the government's ends are not available."  United States v. C.E. Hobbs Found., 7 F.3d 169, 173

7  (9th Cir. 1993) (setting for the standard for a First Amendment challenge to an IRS summons).

8  There must also be a "substantial relation between the information sought and a subject of

9  overriding and compelling state interest."  Gibson v. Fla. Legislative Investigation Comm., 372

10  U.S. 539, 546 (1963) (in the context of a legislative subpoena).  The DOR must "actually need[]

11  the disputed information."  In re Grand Jury Subpoena to Amazon.com, 246 F.R.D. at 572.

12  　　　　The DOR concedes that it has no legitimate need or use for having details as to North

13  Carolina Amazon customers' literary, music, and film purchases.  In spite of this, the DOR

14  refuses to give up the detailed information about Amazon's customers' purchases, while at the

15  same time requesting the identities of the customers and, arguably, detailed records of their

16  purchases, including the expressive content.  With no compelling need for both sets of

17  information, the DOR's request runs afoul of the First Amendment.  It bears noting, too, that the

18  DOR's requests for information were made solely in the context of calculating Amazon's

19  potential tax liability.  Amazon has provided all of the data necessary to determine its tax

20  liability, except any potential tax exemptions.  The DOR has failed to articulate the compelling

21  need to calculate these possible exemptions, particularly where it has admitted that it can and

22  will assess Amazon at the highest rate and it would permit Amazon to "challenge the assessment

23  and . . . establish that exemptions or lower tax rates applied to some products."  (Woodard Decl.

24

1  ¶ 15.)  Even assuming there is a compelling need to calculate Amazon's tax liability inclusive of

2  exemptions, the DOR's requests are not the least restrictive means to obtain the information.

3  The request is overbroad.  The Court GRANTS the motion for summary judgment.

4  H.    Washington State Constitution

5         Amazon makes little mention of the Washington Constitution in its motion, other than to

6  remark that its protections of speech are arguably broader than the First Amendment.  (Dkt. No.

7  44 at 13-14 (citing JJR Inc. v. City of Seattle, 126 Wn.2d 1, 8 (1995)).)  The DOR does not

8  respond directly to Amazon's Washington law claim.  The Court does not reach this issue, as

9  Amazon has not adequately briefed the issue.  The Court does not grant relief under the

10 Washington Constitution.

11 I.    VPPA

12        Amazon argues that disclosure of personal identifiable information in response to the

13 DOR's request would violate the VPPA.  The Court agrees.

14        Under the VPPA, Amazon qualifies as a "video tape service provider."  18 U.S.C. §

15 2710(a)(4).  The records the DOR seeks include "personally identifiable information," as the

16 VPPA defines that term includes "information which identifies a person ahs having requested or

17 obtained specific video materials or services from a video tape service provider."  18 U.S.C. §

18 2710(a)(3).  As explained above, Amazon may not disclose records regarding its customer's

19 video or audiovisual purchases except in limited circumstances.  18 U.S.C. § 2710(b).  Relevant

20 to this case, Amazon may only disclose the information:

21        pursuant to a court order, in a civil proceeding upon a showing of compelling
          need for the information that cannot be accommodated by any other means, if--
22        (i) the consumer is given reasonable notice, by the person seeking the disclosure,
          of the court proceeding relevant to the issuance of the court order; and
23        (ii) the consumer is afforded the opportunity to appear and contest the claim of the
          person seeking the disclosure.

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 22

1    18 U.S.C § 2710(b)(2)(F).

2        The DOR's request runs afoul of the VPPA. It requires Amazon to disclose the

3    personally identifiable information about its customers to the government in violation of the Act.

4    The DOR argues that this issue is not ripe because it has not requested specific video titles. (Dkt.

5    No. 52 at 21.) This statement is incorrect. The DOR asked for "all information for all sales,"

6    which clearly calls for information about the video titles. (Compl. ¶ 26.) Should the DOR later

7    issue a tax summons, it must show compelling need for the information in order to avoid

8    violating the VPPA. As explained above, the DOR lacks a compelling need for the identities and

9    detailed information about North Carolina Amazon customers' video and audiovisual purchases.

10   The Court GRANTS summary judgment on this issue.

11   J.    Scope of Relief

12       The nature of the declaratory relief offered by the Court is critical to the ruling. As

13   explained above, the Intervenors seek broad relief that extends beyond the factual and legal

14   dispute before the Court. The Court is aware of the sensitive nature of this case. The declaratory

15   relief issued here is of limited scope and cannot be interpreted to grant Amazon a free pass from

16   complying with any valid tax law of North Carolina or elsewhere.

17       Amazon seeks "a declaration that, to the extent the March Information Request demands

18   that Amazon disclose its customers' names, addresses or any other personal information, it

19   violates the First Amendment and 18 U.S.C. § 2710." (Dkt. No. 1 at 14 ¶ 1.) This request is

20   notably narrow because it is specifically tied to the March Information Request. The DOR's

21   request sought "all information for all sales" by Amazon to customers in North Carolina. As

22   phrased, the request is overly broad. The Court, however, adds an additional limit to the

23   declaratory relief Amazon proposes. The declaratory relief Amazon requests is valid only as

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 23

long as the DOR continues to have access to or possession of detailed purchase records obtained

from Amazon.  Thus, the Court grants a declaratory relief as follows: to the extent the March

Information Request demands that Amazon disclose its customers' names, addresses or any other

personal information, it violates the First Amendment and 18 U.S.C. § 2710, only as long as the

DOR continues to have access to or possession of detailed purchase records obtained from

Amazon (including ASIN numbers).  Issuing the declaratory relief as phrased does not prohibit

the DOR from issuing a new request for information as to only the names and addresses of

Amazon's customers and general product information, assuming that DOR destroys any detailed

information that it currently possesses.  The Court does not issue the second requested

declaration because Amazon has not adequately addressed its Washington Constitution claim.

Because the Intervenors have not moved for relief the Court does not issue any of the

relief they request in their complaint.  The Court notes that much of the declaratory and

injunctive relief sought overlaps with the declaratory relief issued by this order.  (See Dkt. No.

651 at 32 ¶¶ a, b, e, f.)  The Court doubts that any broader relief requested would be properly

issued on the record developed thus far.  (See id. ¶¶ c, d.)

K.      Motion to Strike

Amazon asks the Court to strike the Third Declaration of H. Alan Woodard submitted

with DOR's reply brief to its motion to dismiss.  The declaration contains news articles and

editorials and new factual assertions.  Woodard's declaration does not set out or explain the

foundation for his ability to attest to the accuracy of the news articles and the factual assertions

made in the declaration.  The Court GRANTS the motion and STRIKES the declaration and the

articles attached thereto.

1    Amazon also asks the Court to strike Section IV of DOR's reply brief filed in support of

2  its motion to dismiss where it presents new arguments for the first time.  (Dkt. No. 56 at 12.)

3  Arguments cannot be raised properly for the first time on reply.  The Court GRANTS the motion

4  and strikes this portion of the briefing.  The Court also notes that the argument the DOR pursues,

5  that summary judgment is premature, is untenable.  "A party may move for summary judgment

6  at any time."  Fed. R. Civ. P. 56(c)(1)(A).  The DOR cites <u>Mohamed v. Jeppesen Dataplan, Inc.</u>,

7  579 F.3d 943, 961 n.9 (9th Cir. 2009), for the proposition that summary judgment may not be

8  granted before the defendant files an answer.  This is a thoroughly incorrect reading of <u>Jeppesen</u>

9  and the law.  In a footnote, the court in <u>Jeppesen</u> reiterated that the lower court could not have

10  granted summary judgment in that case because it was unclear whether any issues of fact were in

11  dispute, in part because the defendant had yet to even answer.  The court did not establish a rule

12  that no summary judgment can be filed before an answer is been filed.  Here, contrary to the

13  facts in <u>Jeppesen</u>, the DOR has filed two motions to dismiss, several declarations, and "does not

14  dispute th[e] general proposition" that Amazon's summary judgment motion "turns on legal

15  issues, not facts."  (Dkt. No. 53 at 4.)  Having failed to raise a genuine issue of material fact,

16  DOR cannot properly rely on <u>Jeppesen</u> and otherwise ignore Rule 56(c)(1)(A).

17                                                      **Conclusion**

18    The Court DENIES the DOR's two motions to dismiss.  The jurisdictional arguments are

19  not proper.  There is no jurisdictional bar to either Amazon's or the Intervenors' complaints.  The

20  Court GRANTS Amazon's motion for summary judgment.  Amazon has shown a right to obtain

21  declaratory relief given that the DOR's information requests run afoul of the First Amendment

22  and the VPPA.  The Court therefore declares: to the extent the March Information Request

23  demands that Amazon disclose its customers' names, addresses or any other personal

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 25

1  information, it violates the First Amendment and 18 U.S.C. § 2710, only as long as the DOR

2  continues to have access to or possession of detailed purchase records obtained from Amazon

3  (including ASIN numbers).

4          The clerk is ordered to provide copies of this order to all counsel.

5          Dated this 25th day of October, 2010.

6

7

8          _____
           Marsha J. Pechman
9          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND DEFENDANT
LAY'S MOTIONS TO DISMISS- 26